Peter Shimamoto (Bar No. 123422)
pshimamoto@willenken.com
Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:   (213) 955-9250

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCK G. WOODALL, a.k.a. Buck Woodall, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE WALT DISNEY COMPANY, a Delaware Corporation; WALT DISNEY PICTURES; a Division of the Walt Disney Corporation; WALT DISNEY ANIMATION STUDIOS, a Division of the Walt Disney Company; DISNEY ENTERPRISES, INC., a Delaware Corporation; DISNEY CONSUMER PRODUCTS, INC., a California Corporation; DISNEY CONSUMER PRODUCTS & INTERACTIVE MEDIA, INC., a California Corporation; WALT DISNEY DIRECT-TO-CONSUMER & INTERNATIONAL, a Division of the Walt Disney Company; DISNEY BOOK GROUP, LLC, a Delaware Limited Liability Company; | Case No.: 2:20-cv-03772-CBM-E<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Request for Judicial Notice; and [Proposed] Order Filed Concurrently Herewith]**<br><br>Date:     October 20, 2020<br>Time:     10:00 a.m.<br>Place:    Courtroom 8B<br><br>Assigned to Hon. Consuelo B. Marshall |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISNEY INTERACTIVE STUDIOS, INC., a California Corporation; DISNEY STORE USA, LLC, a Delaware Limited Liability Company; DISNEY SHOPPING, INC., a Delaware Corporation; BUENA VISTA HOME ENTERTAINMENT, INC., a California Corporation; BUENA VISTA BOOKS, INC., a California Corporation; MANDEVILLE FILMS, INC., a California Corporation; JENNY MARCHICK, an individual; PAMELA RIBON, an individual; and DOES 1-10, inclusive,

Defendants.

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE THAT on October 20, 2020, at 10:00 a.m., or as

3  soon thereafter as the matter may be heard, in Courtroom 8B of the United States

4  District Court, Central District of California, located at 350 W. 1st Street, Los

5  Angeles, CA 90012, before the Honorable Consuelo B. Marshall, defendants The

6  Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios,

7  Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer

8  Products & Interactive Media, Inc., Walt Disney Direct-to-Consumer &

9  International, Disney Book Group, LLC, Disney Interactive Studios, Inc., Disney

10  Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc.,

11  Buena Vista Books, Inc., Mandeville Films, Inc., Jenny Marchick, and Pamela

12  Ribon (collectively, "Defendants) will, and hereby do, move this Court pursuant to

13  Rules 8, 9(b) and 12(b)(6) of the Federal Rule of Civil Procedure for an order

14  dismissing the First Amended Complaint ("FAC") without leave to amend.

15      The First Amended Complaint fails to satisfy federal pleading standards

16  because it does not contain sufficient factual matter to state a claim that is plausible

17  on its face.

18      Plaintiff's copyright cause of action (First Cause of Action) should be

19  dismissed because Plaintiff has failed to demonstrate that he owns a valid

20  copyright in the material he alleges was infringed. Plaintiff's copyright cause of

21  action also fails because the First Amended Complaint fails to adequately allege

22  copying. In addition, Plaintiff's copyright claim fails because application of the

23  extrinsic test of substantial similarity demonstrates that the feature film *Moana* is

24  not substantially similar to *Bucky* as a matter of law.

25      In addition, Plaintiff's copyright cause of action against the Disney

26  defendants that the First Amended Complaint alleges were not involved with the

27  production of *Moana* (Disney Enterprises, Inc., Disney Consumer Products, Inc.,

28  Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-to-

Consumer & International, Disney Book Group, LLC, Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc. and Buena Vista Books, Inc.) fails because the FAC does not identify any substantial similarities between *Bucky* and any products manufactured or sold by any of those defendants. The First Amended Complaint also does not state a valid claim for contributory or vicarious infringement against any of those defendants because it only contains conclusory assertions and does not identify any facts supporting such liability.

Plaintiff's Second and Third Causes of Action under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836, and the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code. §3426 et seq., fail because none of Plaintiff's alleged "trade secrets" were used in *Moana*. In addition, the trade secrets causes of action fail because the material that Plaintiff alleges is a trade secret was publicly available.

Plaintiff's tort causes of action for fraud (Fourth Cause of Action), fraudulent concealment (Fifth Cause of Action), false promises (Sixth Cause of Action), and tortious interference with contractual relations (Seventh Cause of Action) all fail because no *Bucky* material was used in *Moana*. In addition, the First Amended Complaint fails to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure with respect to claims based on alleged fraud.

The cause of action for tortious interference with contractual relations also fails for the additional reason that the statute of limitations for such a cause of action is two years, and the First Amended Complaint was filed more than two years after Plaintiff concedes he discovered Defendants' alleged wrongful actions.

Finally, the Eighth Cause of Action for an accounting should be dismissed because no such cause of action exists under California law.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial

1    Notice, Declaration of Kenneth Trujillo-Jamison, all pleadings and papers on file

2    in this action, and on such other or further matters the Court may consider prior to

3    its ruling on this Motion.

4         This Motion is made following the conference of counsel pursuant to Local

5    Rule7-3, which took place on September 14, 2020.

6

7                                  Respectfully submitted,

8    Dated:  September 22, 2020          WILLENKEN LLP

9

10                                By: */s/ Peter Shimamoto*

11                                   Peter Shimamoto

12                                   Attorneys for Defendants

13                                   THE WALT DISNEY COMPANY,
                                     WALT DISNEY PICTURES, WALT

14                                   DISNEY ANIMATION STUDIOS,
                                     DISNEY ENTERPRISES, INC.,

15                                   DISNEY CONSUMER PRODUCTS,
                                     INC., DISNEY CONSUMER

16                                   PRODUCTS & INTERACTIVE

17                                   MEDIA, INC., WALT DISNEY
                                     DIRECT-TO-CONSUMER &

18                                   INTERNATIONAL, DISNEY BOOK

19                                   GROUP, LLC, DISNEY
                                     INTERACTIVE STUDIOS, INC.,

20                                   DISNEY STORE USA, LLC, DISNEY

21                                   SHOPPING, INC., BUENA VISTA

22                                   HOME ENTERTAINMENT, INC.,
                                     BUENA VISTA BOOKS, INC.,

23                                   MANDEVILLE FILMS, INC., JENNY

24                                   MARCHICK, and PAMELA RIBON

25

26

27

28

1
2

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................2

    A.     The Complaint....................................................................2

    B.     First Amended Complaint.................................................2

    C.     Bucky ....................................................................................3

    D.     Moana...................................................................................4

III.   THE COMPLAINT FAILS TO SATISFY BASIC PLEADING REQUIREMENTS ...............................................................................6

IV.    THE COPYRIGHT CAUSE OF ACTION SHOULD BE DISMISSED ..........................................................................................8

    A.     The Elements Necessary to Prove Copyright Infringement .................8

    B.     Plaintiff has Failed to Demonstrate Copyright Ownership in the Bucky Material Allegedly Infringed......................................................9

    C.     The FAC Does Not Adequately Allege Copying .............................. 10

    D.     Bucky And Moana Are Not Substantially Similar As A Matter of Law ............................................................................................... 10

        1.     Plot and Sequence of Events ................................. 11

        2.     Characters ................................................................ 11

        3.     Themes...................................................................... 14

        4.     Dialogue ................................................................... 14

        5.     Settings .................................................................... 14

        6.     Mood and Pace ....................................................... 15

        7.     Plaintiff Cannot Prevail on a Selection and Arrangement Theory....................................................................... 15

    E.     The Copyright Claim Against the "Commercialization" Defendants Should be Dismissed ..................................................... 19

V.     PLAINTIFF'S TRADE SECRETS CLAIMS FAIL ............................... 20

VI.    PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED ..................... 22

|   | A. | Plaintiff's Tort Causes of Action Fail Because Bucky Was Not Used in Moana | 22 |
|---|----|-----|-----|
|   | B. | Plaintiff's Fraud-Based Claims Fail to Satisfy Rule 9(b) | 23 |
|   | C. | Plaintiff's Tortious Interference Claim is Barred by the Statute of Limitations | 24 |

| VII. | THERE IS NO CAUSE OF ACTION FOR AN ACCOUNTING | 25 |
|------|-----|-----|
| VIII. | CONCLUSION | 25 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Abdin v. CBS Broadcasting Inc.*,
    971 F.3d 57 (2d Cir. Aug. 17, 2020)...............................................................11

*Allen v. Academic Games League of America, Inc.*,
    89 F.3d 614 (9th Cir. 1996) ............................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................6, 20, 24

*Astor-White v. Strong*,
    817 Fed. Appx. 502 (9th Cir. Aug. 21, 2020)................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................24

*Benay v. Warner Bros. Entertainment, Inc.*,
    607 F.3d 620 (9th Cir. 2010) .........................................................................11

*Braddock v. Jolie*,
    691 Fed. Appx. 318 (9th Cir. 2017)...............................................................11

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) .........................................................................15

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) .........................................................................23

*Forcier v. Microsoft Corp.*,
    123 F. Supp. 2d 520 (N.D. Cal. 2000) ...........................................................25

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
    139 S.Ct. 881 (2019).........................................................................................9

*Funky Films, Inc. v. Time Warner Entertainment Co.*,
    462 F.3d 1072 (9th Cir. 2006) ..............................................................9, 10, 11

*Gonzalez v. Planned Parenthood of L.A.*,
    759 F.3d 1112 (9th Cir. 2014) .......................................................................22

*Henried v. Four Star Television*,
    266 Cal. App. 2d 435 (1968) .........................................................................23

*Jolly v. Eli Lilly & Co.*,
    44 Cal. 3d 1103 (1988) ...................................................................................25

*KEMA, Inc. v. Koperwhats*,
    658 F.Supp.2d 1022 (N.D. Cal. 2009) ...........................................................21

*Kenworthy v. Brown*,
    248 Cal. App. 2d 298 (1967) .....................................................................24, 25

*Kidron v. Movie Acquisition Corp.*,
  40 Cal.App.4th 1571 (1996) ............................................................. 8

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ..................................................... 15, 20

*MAI Systems Corp. v. Peak Computer, Inc.*,
  991 F.2d 511 (9th Cir. 1993) .......................................................... 22

*Manchester v. Sivantos GmbH*,
  2019 WL 3531419 (C.D. Cal. Aug. 2, 2019) .................................... 21

*Maritz Inc. v. Carlson Mktg. Grp., Inc.*,
  2009 WL 3561521 (N.D. Cal. Oct. 30, 2009) ................................... 24

*Masterson v. Walt Disney Co.*,
  2020 WL 4435103 (9th Cir. Aug. 3, 2020) ...................................... 11

*Mobile Active Defense, Inc. v. Los Angeles Unified School District*,
  2015 WL 12860491 (C.D. Cal. Dec. 14, 2015) ................................ 21

*Nguyen v. JP Morgan Chase Bank*,
  2012 WL 294936 (C.D. Cal. Feb. 1, 2012) ...................................... 25

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) .............................................................. 22

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ............................................. 10, 11, 16

*Ryder v. Lightstorm Entertainment, Inc.*,
  246 Cal. App. 4th 1064 (2016) ........................................................ 22

*Schaffer Family Investors, LLC v. Sonnier*,
  120 F. Supp. 3d 1028 (C.D. Cal. 2015) ........................................... 25

*Siegler v. Sorrento Therapeutics, Inc.*,
  2019 WL 3532294 (S.D. Cal. Aug. 2, 2019) ............................... 21, 22

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ............................................. 8, 9, 10, 15

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .......................................................... 23

*Tanksley v. Daniels*,
  902 F.3d 165 (3rd Cir. 2018) .......................................................... 16

*Vander Music v. Azteca Int'l Corp.*,
  2011 WL 13177301 (C.D. Cal. Jan. 21, 2011) ................................ 20

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................... 23, 24

*Well-Made Toy Mfg. Corp. v.Goffa Int'l Corp.,*
  354 F.3d 112 (2d Cir. 2003), *abrogated on other grounds by*
  *Reed-Elsevier, Inc. v. Muchnick,* 559 U.S. 154 (2010) .......................................20

**Statutes**

18 U.S.C. §1836............................................................................................20

Cal. Civ. Code. §3426 et seq. .......................................................................20

Cal. Code Civ. P. § 339 ................................................................................24

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................23, 24

Fed. R. Civ. P. 12(b)(6) ..................................................................................2

**Other Authorities**

Jud. Council Cal. Civ. Jury Instr. (CACI) No. 3600 (2020) .........................8

1                **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff's First Amended Complaint relies on an unspecified 13-year conspiracy as the only basis for his copyright infringement, trade secret, and assorted fraud, tortious interference, and accounting claims. At no point does Plaintiff explain why his correspondence with Ms. Marchick (who is related to Plaintiff by marriage) can possibly be imputed to Walt Disney Animation Studios ("Disney Animation"), the entity that created the animated motion picture *Moana*. Marchick did not work for Disney Animation. Neither she nor her employer at the time, Mandeville Films, had any role in connection with *Moana*, as reflected by the fact that neither of them received a credit in that film. The Court should dismiss the FAC because Plaintiff's reliance on vague and conclusory conspiracy allegations fails to satisfy federal pleading standards.

Moreover, a comparison of the two works demonstrates that *Moana* is not substantially similar to *Bucky* as a matter of law. *Moana* is a musical that takes place several thousand years ago in ancient Polynesia. Its protagonist is a 16-year-old Polynesian female named Moana. She is the village chief's daughter and is being groomed to lead her people when she comes of age. When the crops on her island begin to die and the fish disappear, she leaves the safety of her island to embark on a long, dangerous voyage to save her people from extinction. She is assisted in her quest by an anthropomorphic ocean (which had chosen her for this task when she was a toddler) and enlists the help of the demigod Maui. After engaging in multiple battles, Moana ultimately saves her people by restoring the heart of the goddess who is the source of life. She also rediscovers her people's heritage as the greatest ocean voyagers the world has ever known.

*Bucky* differs from Moana in virtually every respect. It is not a musical and primarily takes place in modern times. Its protagonist is a blonde Caucasian 13-year-old boy from New Mexico named Bucky, who travels with his family to Kaui

DEFENDANTS' MOTION TO DISMISS FAC

1   for vacation. There is no imminent threat to Bucky's family or way of life.

2   Instead, Bucky's chief goals are to learn how to surf and to get closer to Leolani, a

3   teenage Hawaiian girl he likes. To that end, he joins Leolani and her teenage

4   friends in their efforts to find evidence of ancient ruins that will prevent the

5   commercial development of a public beach where they all like to surf. The teens go

6   to search for evidence at the town hall and are eventually sucked into a time portal

7   and travel hundreds of years into the past. After they solve various riddles and

8   return to their own time, Bucky finds ancient ruins on the beach, which prevents its

9   commercial development. Leolani kisses him.

10      *Bucky* and *Moana* are not remotely similar, much less *substantially* similar.

11  The copyright cause of action should be dismissed with prejudice.

12      The remaining causes of action asserted in the FAC also fail for the reasons

13  set forth below. The FAC should be dismissed in its entirety. (Fed R. Civ. P.

14  12(b)(6).)

15  **II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

16      **A.    The Complaint**

17      Plaintiff filed a Complaint *pro se* on April 24, 2020. (Dkt. 1) The Complaint

18  asserted causes of action for copyright infringement and an accounting. It was

19  never served on any of the Defendants.

20      **B.    First Amended Complaint**

21      Plaintiff subsequently retained counsel, who filed the First Amended

22  Complaint ("FAC") on July 22, 2020. (Dkt. 18) The FAC added ten Disney entities

23  as defendants. It also added six causes of action (federal and state trade secrets,

24  fraud, fraudulent concealment, false promises, and tortious interference with

25  contractual relations).

26      The FAC alleges that Plaintiff provided defendant Jenny Marchick with

27  certain material regarding Plaintiff's project *Bucky* sometime after Marchick

28  purportedly executed a Confidentiality Agreement in October 2003. (FAC ¶29)

1  The FAC alleges that around January 2005, Plaintiff provided additional *Bucky*

2  material to Marchick during a meeting at the offices of Mandeville Films, where

3  she worked at the time. (*Id.* ¶30) The FAC alleges that Mandeville's offices were

4  "located within the Disney studio facilities in Burbank" and that Mandeville had a

5  "first look" deal with Disney. (*Id.*) The FAC refers to the material that Woodall

6  purportedly provided as the "Presentation Package" and attaches it as Exhibit A.

7  (Dkt. 18-1)

8      The FAC alleges that Plaintiff provided an animated trailer for *Bucky* to

9  Marchick and Mandeville around the middle of 2008. (FAC ¶31) The FAC asserts

10  that Plaintiff subsequently provided an updated fully animated concept trailer with

11  storyboards on a DVD, character illustrations, executive summary, and other

12  material. (*Id.* ¶32) The FAC states that Woodall provided a "final draft script for

13  the trailer" to Marchick and Mandeville in July 2011. (*Id.* ¶33)

14      The FAC identifies a number of alleged similarities between *Moana* and

15  certain elements from the various versions of *Bucky*. (*Id.* ¶34)

16  **C.    *Bucky***

17      Exhibit A contains multiple versions of *Bucky*, at varying stages of

18  development, with differing plots and characters. It is set in the present. The

19  protagonist is a blonde Caucasian 13-year-old boy from New Mexico named

20  Bucky whose parents treat him like a baby and who goes on vacation to Kaui with

21  his parents. (Dkt. 18-1 at 3, 7-9, 15, 108-110, 123)

22      Bucky becomes friends with three Hawaiian teens (one girl and two boys) he

23  meets at the beach. He develops a romantic interest in the girl, Leolani. The teens

24  learn that a developer, Shamar, is planning on turning a public beach into a private

25  resort. (*Id.* at 21-30)

26      The teens decide to take a trip to the town hall to see if they can find any

27  records of an ancient temple on the beach, which would prevent the development.

28  The teens take a canoe onto the ocean, where they encounter a fierce storm. Their

canoe is destroyed and they are sucked into a giant whirlpool. When they emerge on the other side, they realize they have traveled back in time hundreds of years and are on the island of Hawaii. They also realize they need to return to the time portal by that night or they will be permanently trapped in the past. (*Id.* at 36-48)

They encounter a teenage Hawaiian girl, Princess Pualani and explain their predicament. Pualani takes Bucky to see the goddess Pele. Pele gives Bucky a riddle to solve, which involves visiting various physical locations. Pualani and Bucky say goodbye. (*Id.* at 48-67)

Bucky and the other teens see the time portal that leads back to the present. They go through the portal and arrive at the beach where Shamar is about to start the demolition for the construction. Bucky realizes that the beach is the last location in Pele's riddle. He notices that there is something under the bushes below the explosives. They clear out the bushes and find an ancient Hawaiian temple. The beach is saved. Bucky is hailed as a hero. Leolani gives him a kiss. (*Id.* at 80-97)

**D.    *Moana***

*Moana* is set two thousand years ago in Polynesia. (*Moana* at 22:38-22:42) (Audio commentary bonus track).[1] Moana is the daughter of her tribe's chief, and is being groomed to lead the tribe herself when she comes of age. She is drawn to the ocean, but no one on her island of Motunui is allowed to travel past the reef because it is too dangerous. (*Id.* at 5:43-15:00)

Moana's grandmother, Tala, tells Moana how they reached that point. The goddess Te Fiti was the source of life, which spread around the world. The demigod Maui stole Te Fiti's heart, thinking it would give him the power of life. He used a magic fish hook that allowed him to change into other animals. As Maui tried to escape, the fire demon Te Ka attacked him, causing his fish hook and Te

---

[1] All timestamps refer to the DVD version of *Moana* submitted concurrently with this Motion. (RJN Ex. A)

DEFENDANTS' MOTION TO DISMISS FAC

Fiti's heart to sink into the ocean. After Te Fiti lost her heart, darkness and death began to spread around the world, making the ocean dangerous to travel. Tala says that one day someone will find Te Fiti's heart, get Maui, and take him across the ocean to return her heart. This will restore life to the world and make the ocean safe for travel. (*Id.* at 00:54-4:06, 26:00-27:10)

When Moana is sixteen, crops on Motunui begin to fail, and fish begin to disappear. Tala takes Moana to a remote part of the island where there is a cave full of boats. Moana sees a vision of her ancestors joyously sailing on the ocean. Moana realizes that her people were ocean voyagers. Tala hands Moana a luminescent green object—Te Fiti's heart. The ocean had tried to give it to Moana when she was a toddler, but Tui had taken Moana away. Tala had retrieved the heart and kept it.  (*Id.* at 13:20-27:15)

Tala then falls gravely ill. On her deathbed, Tala tells Moana that she needs to find Maui and take him to return Te Fiti's heart. (*Id.* at 28:25-30:25) Moana sneaks out, steals one of the boats from the cave and ventures out into the ocean. She encounters a fierce storm which takes her Maui's island. Moana tells Maui he has to come with her to return Te Fiti's heart. (*Id.* at 31:10-43:34)

While Moana and Maui are on the ocean, they are attacked by Kakamora, small ocean pirates clad in coconut shell armor. They steal Te Fiti's heart, but Moana and Maui manage to retrieve it and escape. (*Id.* at 44:50-49:10)

Moana and Maui then go to retrieve Maui's magic hook from Tamatoa, a giant talking (and singing) crab who is a collector of valuable items. Tamatoa lives in Lalotai, the Realm of Monsters. (*Id.* at 49:57-51:31, 54:48-54:55) On their journey to Lalotai, Maui gives Moana sailing lessons. When they arrive, they battle Tamatoa and escape with the hook. (*Id.* at 52:45-1:05:42)

On their way to Te Fiti's island, Maui gives Moana more sailing lessons, and lets her sail the boat. When they arrive, Maui has a fierce battle with Te Ka but is unable to defeat her. The boat and Maui's hook are badly damaged. Maui decides

1   they cannot win, blames Moana for their defeat and leaves. (*Id.* at 1:12-25-1:17:48)

2       Although Moana is initially ready to give up, she changes her mind, repairs

3   the boat and sails back to Te Fiti's island. She battles Te Ka. Just when it appears

4   Te Ka is about to win, Maui returns to help Moana. Moana reaches Te Fiti's island,

5   but Te Fiti is not there. (*Id.* at 1:18:00-1:27:40)

6       Moana has an epiphany. She holds Te Fiti's heart up in the air. Te Ka sees it

7   and approaches Moana. When she arrives, Moana places the heart on Te Ka's

8   chest. Te Ka transforms into Te Fiti. Life immediately begins to flower on the

9   island and spread across the water. Te Fiti gives Maui a new hook and returns

10  Moana's boat, fully restored. (*Id.* at 1:27:15-1:31:55)

11      Moana sails back to Motunui. She is greeted joyously by her parents and the

12  islanders. (*Id.* at 1:33:35-1:34:50) The film ends with Moana, her parents and other

13  members of her tribe sailing a fleet of boats across the ocean, with Moana leading

14  the way. She has helped her people regain their identity as the greatest ocean

15  voyagers the world has ever known. (*Id.* at 1:35:25-1:36:13)

16  **III.   THE COMPLAINT FAILS TO SATISFY BASIC PLEADING**

17  **REQUIREMENTS**

18      The FAC should be dismissed because it fails to satisfy the basic pleading

19  requirements of Rule 8 of the Federal Rules of Civil Procedure. The Supreme

20  Court stated in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), that, "[t]o survive a motion

21  to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

22  state a claim to relief that is plausible on its face." *Id.*at 678. There must be "more

23  than a sheer possibility that a defendant has acted unlawfully." *Id.* Rule 8 "does not

24  unlock the doors of discovery for a plaintiff armed with nothing more than

25  conclusions." *Id.* at 678-79.

26      The only *facts* that Plaintiff alleges to support his assertion are (1) he

27  submitted *Bucky* material to Marchick (FAC ¶¶29-33), (2) Marchick worked at

28  Mandeville Films, which was located on the Disney lot and had a first look deal

with Disney (*id. ¶*30), (3) Marchick purportedly told Plaintiff "in words or substance that she would get the Presentation Package "to the right people" (FAC ¶30), and (4) *Moana* is purportedly similar to *Bucky*. (*Id.* ¶34) Based on those flimsy allegations, Plaintiff posits a vast, decades long conspiracy involving more than ten companies and individuals to steal *Bucky* for *Moana*.

The FAC should be dismissed because Plaintiff's conspiracy allegation is implausible on its face. Plaintiff does not allege that he ever met or spoke with anyone from Disney Animation.[2] Plaintiff does not allege that Marchick ever worked for Disney Animation. Plaintiff (who is related to Marchick by marriage) admits that Marchick told him his *Bucky* materials never "went beyond [her] desk." (FAC ¶26) Instead, Plaintiff argues that Marchick spent at least *8 years* encouraging him to develop *Bucky* so she could steal his ideas and pass them on to Disney Animation for *Moana*. *Moana*'s credits, however, show that neither Marchick nor Mandeville received a credit in that film. (*Moana* at 1:36:16-1:46:30) Even at this stage, Plaintiff's assertion that his relative conspired for at least 8 years to harm him is baseless and lacks any support. Moreover, as described in detail below, *infra* §IV.D, *Bucky* and *Moana* are not remotely similar.

In addition to the matters noted above, the following are conspicuously absent from the FAC:

- Any allegation that Marchick explicitly stated that she would provide or had provided any *Bucky* material to Disney Animation.
- Any facts demonstrating that Marchick actually provided any *Bucky* material to Disney Animation.
- Any facts showing that any Disney entities that were not involved with

---

[2] The FAC does allege that Plaintiff was assisted by "Kurt Weldon, a writer affiliated with Disney, in completing the animated trailer." (FAC ¶33) Plaintiff does not allege that Weldon provided any *Bucky* information to any Disney entity.

DEFENDANTS' MOTION TO DISMISS FAC

*Moana*'s production (*e.g.*, merchandise companies) played *any* role in *Moana*'s creation or production, much less that there is any reason to believe they would have known of any alleged theft of Plaintiff's *Bucky* material for use in *Moana*. *See, e.g., Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1582 (1996) (conspirator must have "actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose"); Jud. Council Cal. Civ. Jury Instr. (CACI) No. 3600 (2020) (same).

- Any facts supporting the assertion that Ribon had any knowledge of Plaintiff or *Bucky*. The FAC's *only* factual allegation regarding Ribon is that she received a "Story By" credit in *Moana*. (FAC ¶38.b) The FAC then makes the conclusory assertion that she helped in "morphing the *Bucky* screenplay into the *Moana* screenplay." The FAC does not identify any facts indicating why this is *plausible* (*i.e.*, how Ribon received the *Bucky* materials), and not merely a "sheer possibility."

The FAC therefore fails to satisfy the requirement that a complaint plead facts sufficient to state a claim for relief that is plausible on its face. Instead, the FAC is based on a wild, unsupported conspiracy theory. Plaintiff cannot "unlock the doors of discovery" based on such implausible allegations.

## IV. THE COPYRIGHT CAUSE OF ACTION SHOULD BE DISMISSED

### A. The Elements Necessary to Prove Copyright Infringement

A plaintiff alleging copyright infringement must prove (1) ownership of a valid copyright and (2) that the defendant copied protected aspects of the plaintiff's work. *Skidmore v. Led Zeppelin,* 952 F.3d 1051, 1064 (9th Cir. 2020) (*en banc*). The second prong consists of two elements: (1) copying and (2) unlawful appropriation. *Id.* A plaintiff can attempt to prove copying by demonstrating that the defendant had access to the plaintiff's work and that the two works share similarities that are probative of copying. *Id.*

8

1   With respect to unlawful appropriation, the Ninth Circuit has stated that its
2   hallmark is that "the works share *substantial* similarities." *Skidmore,* 952 F.3d at
3   1064 (emphasis in original). The substantial similarity analysis consists of two
4   separate tests: an extrinsic test and an intrinsic test. A plaintiff must satisfy *both*
5   tests in order to prevail on a copyright infringement claim. *Id.* at 1064. Thus, if a
6   plaintiff cannot satisfy the extrinsic test, there is no need to consider the intrinsic
7   test. *Funky Films, Inc. v. Time Warner Entertainment Co.,* 462 F.3d 1072, 1077
8   (9th Cir. 2006).

9   **B.    Plaintiff has Failed to Demonstrate Copyright Ownership in the**
10   ***Bucky* Material Allegedly Infringed**

11   A copyright infringement claim can only be based on material that has been
12   registered with the Copyright Office. *Fourth Estate Public Benefit Corp. v. Wall-*
13   *Street.com, LLC,* 139 S.Ct. 881, 886 (2019). Although Plaintiff attached two
14   copyright registrations as exhibits to the FAC, Plaintiff has failed to demonstrate
15   what content those registrations cover, as he did not file the deposit materials.

16   The FAC asserts that the material Plaintiff purportedly provided to Marchick
17   is attached to the FAC as Exhibit A. That material is 321 pages. However, the FAC
18   states that the amount of material that Plaintiff actually registered with the
19   Copyright Office is only "approximately 203 pages of materials." (FAC ¶28, at
20   9:18) Moreover, the most recent copyright registration is dated 2014, but several of
21   the items in Exhibit A (including the only document that is an actual script) bear
22   dates after 2014. (Dkt. 18-1 at 2, 102) It therefore is clear that Plaintiff does not
23   own a copyright registration in all of the material that he alleges was copied.[3]

24   As demonstrated below, however, even if the Court were to consider all of

25
26
27   [3] Due to the pandemic, the Copyright Office has not been providing certified
     copies of deposit materials. Defendants therefore have been unable to obtain copies
28   of the material deposited in connection with Plaintiff's copyright registrations.

1  the material contained in Exhibit A, the FAC should still be dismissed because

2  *Bucky* and *Moana* are not substantially similar as a matter of law.

3        **C.**    **The FAC Does Not Adequately Allege Copying**

4        As demonstrated above in Section III, *supra*, the FAC does not adequately

5  allege that any of the Defendants other than Marchick and Mandeville had access

6  to any of Plaintiff's *Bucky* materials. In addition, as described below, *infra* §IV.D,

7  Bucky and Moana do not share sufficient similarities to support an inference of

8  copying. The FAC therefore fails to allege copying. The copyright claim should be

9  dismissed.

10       **D.**    ***Bucky* And *Moana* Are Not Substantially Similar As A Matter of**

11               **Law**

12       Plaintiff's copyright cause of action also should be dismissed because

13 Plaintiff cannot satisfy the extrinsic test of substantial similarity. No amendment of

14 the pleadings, discovery or expert testimony can change that.

15       The extrinsic test examines the objective similarities between the works,

16 considering only the protectable elements of the plaintiff's expression. *Skidmore,*

17 952 F.3d at 1064; *Rentmeester v. Nike, Inc.,* 883 F.3d 1111, 1118 (9th Cir. 2018).

18 Unprotectable elements, such as ideas, concepts, public domain material, and

19 scénes à faire, are filtered out. *Rentmeester,* 883 F.3d at 1118. An objective

20 comparison is then made between the protectable elements of plaintiff's work and

21 the defendant's work. *Id.* For literary works, the extrinsic test focuses on

22 "articulable similarities between the plot, themes, dialogue, mood, setting, pace,

23 characters and sequence of events in the two works." *Funky Films,* 462 F.3d at

24 1077.

25       The extrinsic test "may often be decided as a matter of law." *Funky Films,*

26 462 F.3d at 1076-77; *Rentmeester,* 883 F.3d at 1118. In *Rentmeester*, the Ninth

27 Circuit held that the district court's dismissal pursuant to Rule 12(b)(6) was

28 appropriate because the works at issue were before the court and therefore "capable

of examination and comparison," and "[n]othing disclosed during discovery could

alter the fact that the allegedly infringing works are as a matter of law not

substantially similar" to plaintiff's work. *Rentmeester,* 883 F.3d at 1123.

Dismissals of copyright infringement claims involving literary works

pursuant to motions to dismiss have been affirmed by the Ninth Circuit on

numerous occasions in the last decade alone, as well as by other Circuits. *See*

*Masterson v. Walt Disney Co.,* 2020 WL 4435103, at *1 & n.1 (9th Cir. Aug. 3,

2020) (collecting cases).[4] Application of the extrinsic test here demonstrates that

*Moana* and *Bucky* are not substantially similar as a matter of law.

### 1.    *Plot and Sequence of Events*

As described above, *supra* §§II.C & D, the plots and sequences of events of

*Moana* and *Bucky* are not remotely similar, much less *substantially* similar.[5]

Infringement claims have been dismissed as a matter of law in cases involving

works that shared significantly more similarities than those present here. *See, e.g.,*

*Benay v. Warner Bros. Entertainment, Inc.,* 607 F.3d 620, 625 (9th Cir. 2010);

*Funky Films*, 462 F.3d at 1077-78.

### 2.    *Characters*

Plaintiff indirectly alleges that a few characters in *Moana* are similar to

characters in *Bucky*. They are not.

<u>*Bucky/Moana* (FAC ¶34.a)</u>—Bucky is a 21st century white 13-year-old male

from New Mexico with overprotective parents. His parents treat him like a baby

---

[4] In addition to the many cases cited in *Masterson*, dismissals of copyright infringement claims involving films or television shows were also affirmed in *Astor-White v. Strong,* 817 Fed. Appx. 502 (9th Cir. Aug. 21, 2020), *Braddock v. Jolie,* 691 Fed. Appx. 318 (9th Cir. 2017), and *Abdin v. CBS Broadcasting Inc.,* 971 F.3d 57 (2d Cir. Aug. 17, 2020).

[5] Indeed, the trailers for the two works demonstrate that they are completely different. *Compare* Dkt. 18-1 at 212 *with* Deft's RJN Ex. B.

DEFENDANTS' MOTION TO DISMISS FAC

1   and do not want him to engage in activities (surfing) that many kids his age and
2   younger do. He has no particular purpose in life. His only goals after he arrives in
3   Kaui are to learn how to surf and get closer to Leolani. He saves the beach almost
4   by accident. He embarks on the trip with the other teens and volunteers to see Pele
5   because he has been told he needs to protect Leolani. His primary goal is romance,
6   not saving the beach.

7        In contrast, Moana is a Polynesian 16-year-old female from several thousand
8   years ago who is the daughter of the village chief and will be the chief herself
9   when she comes of age. Her parents encourage her to become a leader. The only
10  activity she is prohibited from doing (going beyond the reef) is also forbidden to
11  adults. When she embarks on her journey to return Te Fiti's heart, she knows what
12  her goal is and exactly what she must do to achieve it. She does it to save her
13  island and her people, not for romance.

14       Moana is a leader who is entering young adulthood and is motivated by the
15  desire to help her people. Bucky is an adolescent transitioning out of childhood
16  who wants to surf and date a cute Hawaiian girl.

17       _Kamapua'a/Maui_ (FAC ¶¶34.l, m, n)—Plaintiff's contention that Maui and
18  Kamapua'a are similar also fails. As an initial matter, they are both characters in
19  Polynesian folklore and therefore cannot be the subject of an infringement claim,
20  since Plaintiff does not own their rights. (RJN Exs. F-1 at 5-7, F-2 at 7-10, F-3 at
21  16-36) In addition, Kamapua'a and Maui are _different_ characters in Polynesian
22  folklore, and therefore are not substantially similar.

23       In addition, they are entirely different in _Bucky_ and _Moana_. Maui is a central
24  protagonist in _Moana_ and is essential to help Moana complete her quest. He has a
25  big personality. He seems brash and self-centered, but ultimately reveals himself to
26  be sensitive, loyal, brave, funny and self-sacrificing. He becomes Moana's friend
27  and mentor. He is in more scenes than any character other than Moana. Although
28  he occasionally shape shifts into various animals, he is a human and is in human

1  form for the vast majority of the movie.

2      In contrast, Kamapua'a is one of the villains in *Bucky*. He only appears

3  sporadically and is hidden in a cave the majority of the time. When he does appear,

4  he is half man, half hog. (Dkt 18-1 at 115) His only personality traits are being

5  unpleasant, angry and manipulative. He displays no redeeming qualities. He is

6  neither a mentor nor a friend to Bucky. He is completely different from Maui.

7      *Pele/Te Ka* (FAC ¶34.k)—Plaintiff contends that Pele and Te Ka are similar

8  because they are both goddesses who emerge from lava. Pele is a figure in

9  Polynesan folklore and cannot be the subject of a copyright claim. (RJN Exs. F-1

10  at 5-8, F-2 at 7, F-3 at 4-16)

11      In addition, Pele and Te Ka are not similar in the two works. Bucky

12  encounters Pele in a cave where she gives him a riddle to solve. Te Ka has a fierce

13  battle with Moana and Maui as she tries to prevent them from reaching Te Fiti. It is

14  ultimately revealed that Te Ka is actually Te Fiti, and when she receives her heart,

15  she restores life that spreads across the world. Pele and Te Ka are entirely different

16  characters, with entirely different roles in the two works.

17      *Menehune/Kakamora* (FAC ¶34.q) —As with Kamapua'a and Pele, the

18  Menehune and Kakamora do not support Plaintiff's substantial similarity claim

19  because they are both based in Polynesian folklore. (RJN Ex. F-4 at 8, 16) In

20  addition, they are very different in the two works. The Menehune in *Bucky* live in

21  the forest. (Dkt. 18-1 at 252) They never engage in physical combat with any of the

22  teens and subsequently help the teens escape from the island. The Menehune are

23  depicted as wearing only a loincloth and a metal helmet. (Dkt. 18-1 at 230)

24      In contrast, the Kakamora in *Moana* are pirates who live on the ocean, not

25  forest dwellers. They wear coconut armor that covers virtually their entire bodies.

26  Moana and Maui encounter the Kakamora on the ocean (not land). The Kakamora

27  try to steal Te Fiti's heart, which Moana needs to accomplish her quest. Moana

28  personally engages in an extended battle with them. They are very different from

1   the Menehune.

2       In addition to the lack of similarity between characters that Plaintiff

3   incorrectly alleges are similar, there are numerous significant characters in *Bucky*

4   and *Moana* that do not have any arguable counterparts in the other. For example,

5   the ocean is a major character in *Moana.* Indeed, "moana" means "ocean" in Maori

6   and other Polynesian languages. (RJN Ex. E) The ocean chooses Moana to be the

7   person to return Te Fiti's heart, and helps her numerous times on her quest.

8   (*Moana* at 5:43-7:14, 27:15-27:30, 34:09-34:12, 42:56-44:30, 1:12:08-1:12:15,

9   1:17:57-1:18:30, 1:34:43:1:34:47) The ocean in *Bucky* is not sentient and only has

10  a passive role.

11      Similarly, *Bucky* has no characters comparable to Te Fiti, Tomatoa, or

12  Heihei, the chicken. Conversely, *Moana* does not have any characters comparable

13  to Leolani, Kimo, Cosmo, Na'ilima, Shamar, Scrub, Jake, or Princess Pualani, all

14  of whom are significant characters in *Bucky*.

15      Thus, the characters in *Moana* and *Bucky* are not substantially similar.

16          *3.     Themes*

17  *Bucky* involves the theme of a shy boy with overprotective parents learning

18  to become more independent, developing friendships with teens from a different

19  culture, and learning the importance of protecting nature from development.

20      *Moana* involves a theme of female empowerment in pursuit of the greater

21  good of the community, and the rediscovery of one's heritage.

22          *4.     Dialogue*

23      Plaintiff does not allege any similarities in dialogue between *Bucky* and

24  *Moana*.

25          *5.     Settings*

26      The majority of *Bucky* takes place in present day Kaui, with all of the

27  features of modern life (*e.g*., helicopters, cars, resorts, cell phones). There is only a

28  single scene that involves a canoe trip on the ocean.

1    *Moana* is set in Polynesia several thousand years ago. A substantial portion

2    of *Moana* takes place on the ocean. Other settings for *Moana* are Maui's small

3    deserted island, Lalotai the Realm of Monsters, and Te Fiti's and Te Ka's island.

4    There are no comparable settings in *Bucky*.

5              6.    *Mood and Pace*

6    *Bucky* describes itself as a "time travel adventure." (Dkt. 18-1 at 2, 213)

7    There is no time travel in *Moana*. *Bucky* involves burgeoning romances between

8    the protagonist and two teenage Hawaiian females. There is no romance in *Moana*.

9    Bucky's journey lasts less than a day (sunrise to sunset). Moana's lasts nearly a

10   week. *Moana* is a musical. *Bucky* is not.

11              In sum, a comparison of the plots, sequences of events, characters, themes,

12   dialogue, settings, mood and pace in *Bucky* and *Moana* demonstrates that they are

13   not remotely similar, much less *substantially* similar.

14              7.    *Plaintiff Cannot Prevail on a Selection and Arrangement*

15                    *Theory*

16              *Moana* and *Bucky* also are not substantially similar under a "selection and

17   arrangement theory." The Ninth Circuit stated in its *en banc* decision in *Skidmore*

18   that copyright infringement cannot be found based on random similarities between

19   works. *Skidmore,* 952 F.3d at 1075. "Presenting a 'combination of unprotectable

20   elements' without explaining how these elements are particularly selected and

21   arranged amounts to nothing more than trying to copyright commonplace

22   elements….Without such arrangement, there is no liability for taking 'ideas and

23   concepts' from the plaintiff's work, 'even in combination'." *Id.* Thus, "a selection

24   and arrangement copyright is infringed only where the works share, *in substantial*

25   *amounts*, the 'particular,' *i.e*, the 'same,' combination of unprotectable elements."

26   *Id.* (emphasis added). *See also, e.g., Cavalier v. Random House, Inc.,* 297 F.3d

27   815, 825 (9th Cir. 2002) (compilation of random similarities insufficient);

28   *Litchfield v. Spielberg,* 736 F.2d 1352, 1356-57 (9th Cir. 1984) (same).

DEFENDANTS' MOTION TO DISMISS FAC

1     The Ninth Circuit stated in *Rentmeester* that in order for works to be
2   considered substantially similar under a selection and arrangement theory, the
3   works "must be similar enough that '*the ordinary observer, unless he set out to*
4   *detect the disparities, would be disposed to overlook them*." 883 F.3d at 1121
5   (emphasis added). *See also Tanksley v. Daniels,* 902 F.3d 165, 174 (3rd Cir. 2018)
6   (applying same standard in affirming dismissal of copyright infringement claim
7   regarding *Empire* television series).

8     The FAC contains a random list of alleged similarities between *Bucky* and
9   *Moana*. (FAC ¶34) Those alleged similarities are isolated items that were cherry
10  picked from multiple versions of *Bucky* and combined in a single list. They are not
11  arranged in any particular sequence because they are random selections from
12  multiple works. They do not support a selection and arrangement theory because
13  there is no explanation as to how they are particularly selected and arranged. In
14  addition, even if one were to accept that all of the alleged similarities exist (they do
15  not), they would not support a selection and arrangement theory because they do
16  not constitute a substantial portion of either *Bucky* or *Moana*. As a matter of law,
17  no ordinary observer would be disposed to overlook the disparities between the
18  two. Indeed, the opposite is true: an ordinary observer would have to strain to find
19  *any* similarity between *Bucky* and *Moana*. Plaintiff therefore cannot prevail on a
20  selection and arrangement theory of infringement.

21     In addition, almost all of the similarities alleged by Plaintiff simply do not
22  exist. Many of those alleged similarities have been refuted above, *supra* §IV.C.2,
23  and will not be repeated here. Plaintiff's other alleged similarities also fail.

24  • FAC ¶34.b: The reference to "unfettered access to the sea" is not contained
25       in any script or treatment in *Bucky*, but rather only in Plaintiff's biography.
26       (Dkt. 18-1 at 107) *Bucky* involves keeping a beach public so people can surf.
27       *Moana* involves the Polynesians' rich heritage as the greatest ocean
28       explorers the world has ever known.

- <u>FAC ¶34.c</u>: Bucky only has a brief ocean "voyage," and learns nothing about ancient Polynesian culture while he is there. (*Id.* at 37-38, 40-44) Moana spends a substantial amount of time traveling on the ocean.

- <u>FAC ¶34.d</u>: The animals in *Bucky* are a turtle and dolphin who rescue him in times of danger. Bucky did not know them before going to Kaui. (*Id.* at 13-15, 20, 26-27, 43-44, 85-86, 98) The animal spirit in *Moana* is Moana's grandmother, who takes the form of a manta ray. (*Moana* at 21:00-21:10, 31:27-31:42, 1:18:45-1:19:10)

- <u>FAC ¶34.e</u>: *Moana* is set in Polynesia several thousand years ago. It would be virtually impossible to avoid showing a Polynesian village and the typical activities of that time. In contrast, an "ancient Polynesian village" is not a "backdrop" of *Bucky*, which primarily takes place in the present. A Hawaiian village from the past is only briefly seen in *Bucky*. (Dkt. 18-1 at 45-47, 56-57) No one in that village tells "stories of ancient Polynesia."

- <u>FAC ¶34.f</u>: There are different opening scenes in various versions in *Bucky*. The ones that show an aerial view involve Bucky's family taking a helicopter tour of Kaui. The opening scene in *Moana* is a stylized retelling of the story of Te Fiti and Maui.

- <u>FAC ¶34.g</u>: No version of *Bucky* in Exhibit A has an opening sequence of Bucky as a baby at a Polynesian beach. Plaintiff appears to be referring to a stand-alone drawing of a baby drinking from a bottle while his diaper is being pulled down by a dog. (Dkt 18-1 at 269) It is not referenced in any treatment or script. The scene showing Moana as a toddler at the ocean is an integral part of the movie, as that is when the ocean chooses Moana to receive Te Fiti's heart. (*Moana* at 6:36-7:00)

- <u>FAC¶ 34.h</u>: Although there are turtles in both works, they are completely different. The turtle in *Bucky* is an adult named Bombshell. Bombshell is one of Bucky's protectors and saves Bucky multiple times. (Dkt. 18-1 at 13-

17
DEFENDANTS' MOTION TO DISMISS FAC

15, 20, 26-27, 98) The turtle in *Moana* is a baby, with no name, who Moana encounters when she is a toddler. Moana saves the turtle by helping it avoid predators and reach the sea. (*Moana* at 5:00-5:33)

- FAC ¶34.i: The necklaces in the two works are entirely different. The necklace in *Bucky* belongs to Leolani. She says it protects her while she is surfing. She loans it to Bucky to help him while he is learning to surf. The necklace in *Moana* is a wayfinding necklace that is passed down through the generations in Moana's tribe. (*Moana* at 25:40-25:48) Moana receives the necklace from her grandmother. (*Id.* at 30:02-30:10)

- FAC ¶34.j: There is no sea navigation by the stars in *Bucky*, as the only ocean trip takes place during the day. (Dkt. 18-1 at 37-38, 40-44) Navigation by the stars is a central concept in *Moana*, as it is one of the reasons the Polynesians were such accomplished wayfinders. Maui teaches Moana how to navigate by the stars over the course of the film and her eventual mastery enables her to lead her people to regain their identity as ocean explorers.

- FAC ¶34.o: The characters in *Bucky* who shape shift into bugs are the antagonists, Shamar, Jake and Scrub, and they do it to try to thwart the teens. (Dkt. 18-1 at 39-40, 48-59) The only character who briefly shape shifts into a bug in *Moana* is Maui, a major protagonist, and he does it to try to help Moana fulfill her quest.

- FAC 34.r: The whirlpool in *Bucky* is a time portal that the teens encounter during a storm in the middle of the ocean that transports them to old Hawaii. (Dkt. 18-1 at 41-42) The "whirlpool" in *Moana* is a vertical tube inside an island that Maui and Moana voluntarily dive through to reach Tamatoa. (*Moana* at 57:14-58:01)

- FAC ¶34.s: The "giant creature" in *Bucky* is a dragon that appears at the very beginning and very end of *Bucky*. (Dkt. 18-1 at 3, 9, 98) It does not have a name, and is not a character in the actual story. The giant creature in

1    *Moana* is Te Fiti. She is a central part of *Moana*'s plot.

2    • FAC 34.u: The visual depictions in *Bucky* and *Moana* are not "strikingly

3         similar." Pele and Te Ka look very different. Plaintiff does not identify any

4         specific similarities in "the location and surroundings of the island" in the

5         two works.

6         The similarities alleged by Plaintiff therefore do not support a selection and

7    arrangement theory of copyright infringement. Plaintiff's copyright cause of action

8    should be dismissed with prejudice.

9         **E.    The Copyright Claim Against the "Commercialization"**

10             **Defendants Should be Dismissed**

11        The FAC distinguishes between the Disney entities that were purportedly

12   involved with the "exploitation, development and release" of *Moana* (The Walt

13   Disney Company, Walt Disney Pictures and Walt Disney Animation Studios), and

14   the remaining Disney defendants (whom the FAC calls the "commercialization

15   entities") that were purportedly involved with the production and distribution of

16   products derived from Moana.[6] (FAC ¶38.d)

17        The FAC does not allege a viable claim of direct copyright infringement

18   against any of the "commercialization entities" because it does not identify any

19   substantial similarities between *Bucky* and any product that was produced or sold

20   by any of those entities. For example, Plaintiff would only have a claim for

21   copyright infringement with respect to a Tomatoa or Heihei doll if he established

22   that they are substantially similar to something in *Bucky*. *See, e.g., Allen v.*

23   *Academic Games League of America, Inc.,* 89 F.3d 614, 617 (9th Cir. 1996) (to

24

25        [6] The FAC identifies those entities as Disney Enterprises, Inc., Disney Consumer
26   Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney
     Direct-to-Consumer & International, Disney Book Group, LLC, Disney Interactive
27   Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home
28   Entertainment, Inc. and Buena Vista Books, Inc. (FAC ¶38.d)

prove infringement with respect to a derivative work, a plaintiff must prove the derivative work is substantially similar to the plaintiff's work); *Litchfield,* 736 F.2d at 1357 (same); *Well-Made Toy Mfg. Corp. v.Goffa Int'l Corp.,* 354 F.3d 112, 116-117  (2d Cir. 2003) (same), *abrogated on other ground by Reed-Elsevier, Inc. v. Muchnick,* 559 U.S. 154 (2010). The FAC does not identify any such similarities.

The FAC also does not allege viable claims for contributory or vicarious infringement because those allegations consist only of improper conclusions. (FAC ¶¶50, 51) They do not identify any *facts* that would support a finding of liability. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. The FAC therefore fails to state a cause of action for contributory or vicarious infringement. *See, e.g., Vander Music v. Azteca Int'l Corp.,* 2011 WL 13177301, at *5-7 (C.D. Cal. Jan. 21, 2011) (granting motion to dismiss claims for contributory and vicarious infringement because complaint only contained conclusory allegations and did not identify any facts supporting those allegations).

The copyright cause of action therefore should be dismissed as to the "commercialization entities."

## V.    PLAINTIFF'S TRADE SECRETS CLAIMS FAIL

Plaintiff's trade secrets claims (Second and Third Causes of Action) under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836, and the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code. §3426 et seq., should be dismissed for multiple reasons. *First,* as described above with respect to the copyright cause of action, no *Bucky* material was used in *Moana*. Defendants therefore did not use any of Plaintiff's alleged "trade secrets."

*Second,* the alleged information does not qualify as a trade secret under either the DTSA or the CUTSA because plaintiff did not keep such information

secret. The FAC alleges that at least 203 pages of the material that plaintiff purportedly provided to Marchick was deposited with the Copyright Office in connection with plaintiff's copyright registrations. (FAC ¶28) It is well established that information that has been deposited with the Copyright Office in connection with a copyright registration does not qualify as a trade secret because deposit material is accessible by the public. *See, e.g., Siegler v. Sorrento Therapeutics, Inc.,* 2019 WL 3532294, at *12-13 (S.D. Cal. Aug. 2, 2019) (granting motion to dismiss with prejudice); *KEMA, Inc. v. Koperwhats,* 658 F.Supp.2d 1022, 1030-31 (N.D. Cal. 2009) (granting motion to dismiss). *See also Manchester v. Sivantos GmbH,* 2019 WL 3531419, at *4-5 (C.D. Cal. Aug. 2, 2019); *Mobile Active Defense, Inc. v. Los Angeles Unified School District,* 2015 WL 12860491, at *5 (C.D. Cal. Dec. 14, 2015).

In addition, plaintiff has conceded that much of the information that he now alleges is a "trade secret" was publicly available on his website. Plaintiff's Complaint states that he "provided to Mandeville a fully animated concept trailer and storyboards on a DVD, *along with his website address, which at the time contained background image references, story development, character illustrations, executive summary, and more*, all comprising the Presentation Package in 2009. (Dkt. 1 ¶3, at 3:19-24) (emphasis added) Similarly, Exhibit A to the FAC expressly states that plaintiff had a "website for the Bucky project, available at http://www.buckcreations.com/main.html ..." (Dkt. 18-1 at p. 269) Copies of printouts from Plaintiff's www.buck.creations.com website from 2006 and 2009 confirm that substantial amounts of *Bucky* material were posted on Plaintiff's website. (RJN Exs. C & D)

Plaintiff knew when he filed the Complaint and the FAC that his *Bucky* material was publicly available and was not a trade secret. Plaintiff's trade secrets

1  claims should be dismissed with prejudice.[7]

2  **VI.    PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED**

3  **A.    Plaintiff's Tort Causes of Action Fail Because *Bucky* Was Not**

4  **Used in *Moana***

5  Plaintiff's tort causes of action for fraud, fraudulent concealment, false

6  promises, and tortious interference with contractual relations (Fourth through

7  Seventh Causes of Action) are all based on the false premise that Defendants stole

8  Plaintiff's *Bucky* materials and used it in *Moana*.[8] As demonstrated above, *Moana*

9  did not use any material from *Bucky*. *See supra* §IV.D. Plaintiff's tort claims

10  therefore fail.[9] *See Ryder v. Lightstorm Entertainment, Inc.,* 246 Cal. App. 4th

11  1064, 1080 (2016) (fraud claim dismissed because absence of substantial similarity

12

13  ───────────────

14  [7] Plaintiff also fails to identify the alleged trade secrets with the requisite
specificity. *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 522 (9th Cir.
15  1993); *Siegler,* 2019 WL 3532294, at*12-13.

16  [8] *See* FAC ¶ 87 (fraud) (Defendants "literally pirate[d] his intellectual property
relating to *Bucky* and the Presentation Materials); *id.* ¶ 92 (fraudulent concealment)
17  (Defendants "actively poach[ed] away from Woodall all of his ideas concerning his
18  life's work entitled *Bucky* and expressed, *inter alia*, within the Presentation
Package"); *id.* ¶ 102 (false promises) (Marchick "st[ole] and pirate[d] [Plaintiff's]
19  materials and utilize[d] them to aggrandize her career and obtain success in the
20  movie industry by making an animated movie using the *Bucky* materials (including
the Presentation Package); *id.* ¶ 111 (tortious interference with contractual
21  relations) ("Defendants pushed Marchick to assist them in extracting an ever-
22  increasing number of film-related materials for *Moana* from Woodall").

23  [9] On a motion to dismiss, courts "need not . . . accept as true allegations that
contradict matters properly subject to judicial notice or by exhibit" or "by
24  documents referred to in the complaint." *Gonzalez v. Planned Parenthood of L.A.*,
25  759 F.3d 1112, 1115 (9th Cir. 2014); *see also Peter F. Gaito Architecture, LLC v.
Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (where the works are
26  incorporated into the complaint, "the works themselves supersede and control . . .
contrary allegations, conclusions or descriptions of the works contained in the
27  pleadings"). The Court may take judicial notice of *Moana*, which refutes Plaintiff's
28  contention that *Bucky* was used in *Moana*.

DEFENDANTS' MOTION TO DISMISS FAC

1   shows that plaintiff's material was not used in defendants' film); *Henried v. Four*
2   *Star Television,* 266 Cal. App. 2d 435 (1968) (same).

3        **B.     Plaintiff's Fraud-Based Claims Fail to Satisfy Rule 9(b)**

4        Plaintiff's tort claims also fail because they fail to satisfy Rule 9(b). "FRCP
5   9(b) applies where a plaintiff alleges fraud." *See Destfino v. Reiswig*, 630 F.3d 952,
6   958 (9th Cir. 2011). "It is established law…that Rule 9(b)'s particularity
7   requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA*,
8   317 F.3d 1097, 1103 (9th Cir. 2003). Here, Plaintiff's tort causes of action fail to
9   meet Rule 9(b)'s particularity requirements in two critical ways.

10       *First*, the FAC's fraud allegations fail to differentiate among the Defendants.
11  When alleging fraud against multiple defendants, Rule 9(b) "require[s] plaintiffs to
12  differentiate their allegations . . . and inform each defendant separately of the
13  allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG*
14  *LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007); *see also Vess*, 317 F.3d at 1106-07
15  (affirming dismissal under Rule 9(b) where the plaintiff "alleges a fraudulent
16  conspiracy" but did not "provide the particulars of when, where, or how the alleged
17  conspiracy occurred").

18       The FAC's allegations do not meaningfully differentiate among the
19  Defendants. For example, Plaintiff alleges in the fraud claim that Defendant
20  Marchick operated "in conjunction and with the express ratification and approval
21  of *all other Defendants* named in this Complaint" (FAC ¶¶ 83, 84) (emphasis
22  added), and that "Marchick and *the Defendants* actively realized that they could
23  not complete *Moana* without Woodall doing it for them . . . ." (*Id.* ¶ 86) (emphasis
24  added). Similarly, Plaintiff alleges in the fraudulent concealment claim that "*[t]he*
25  *Defendants* knew – in fact intended – for Woodall to deliver very valuable
26  intellectual property to them and to actually do the work for them that was required
27  in their minds to commercialize their secret film project *Moana* which they never
28  disclosed to Woodall and actively concealed from him." (*Id.* ¶ 92) These

1    allegations "lump multiple defendants together," and fail to "differentiate" among

2    the "Defendants," in violation of Rule 9(b). *See Swartz*, 476 F.3d at 764.

3        *Second*, Plaintiff's fraud allegations are insufficiently particular because they

4    fail to identify "'the who, what, when, where, and how' of the misconduct

5    charged," as required by Rule 9(b). *Vess*, 317 F.3d at 1106. For example, Plaintiff

6    alleges in the fraud claim that "Defendants were actively duping [him] not only to

7    steal the materials identified in this Complaint but actually to induce [him] to work

8    for the Defendants in completing tasks for them . . . . " (FAC ¶ 87) Similarly,

9    Plaintiff alleges in the fraudulent concealment claim that "the Defendants . . . . told

10   [him] that they were actively working on successfully commercializing *Bucky* for

11   the benefit of all parties." (*Id.* ¶93) These allegations do not specify who engaged

12   in the conduct, what specifically was done, and when, where, and how it occurred.

13       Plaintiff's allegation of an alleged conspiracy among all the Defendants is

14   nothing more than a legal conclusion that is unsupported by any factual allegations.

15   That is insufficient as a matter of law. *Ashcroft*, 556 U.S. at 678-79; *Bell Atlantic*

16   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

17   **C.    Plaintiff's Tortious Interference Claim is Barred by the Statute of**

18   **Limitations**

19       Plaintiff's Seventh Cause of Action for tortious interference with contractual

20   relations fails for the additional reason that it is barred by the statute of limitations.

21   The applicable statute of limitations is two years. *Kenworthy v. Brown*, 248 Cal.

22   App. 2d 298, 301 (1967); Cal. Code Civ. P. § 339. The limitations period "begins

23   to run no later than the date of the breach or termination of the underlying

24   contract." *Maritz Inc. v. Carlson Mktg. Grp., Inc.*, 2009 WL 3561521, at *2 (N.D.

25   Cal. Oct. 30, 2009). Here, the FAC fails to identify a specific date when

26   Defendants allegedly interfered with his purported contract with Marchick. The

27   FAC does allege that *Moana* was released in theaters in November 2016. (FAC ¶

28   34.) Plaintiff filed his tortious interference claim in July 2020, more than two years

1   later. Plaintiff's tortious interference claim is therefore time-barred. *See*

2   *Kenworthy*, 248 Cal. App. 2d at 302-03 (affirming dismissal of tortious

3   interference claim filed more than two years after the last action that constituted

4   the alleged tortious interference).

5       Plaintiff cannot avoid the statute of limitations by relying on the discovery

6   rule. Under the discovery rule, "the statute of limitations begins to run when the

7   plaintiff suspects or should suspect that [its] injury was caused by wrongdoing."

8   *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988). Here, Plaintiff alleges he

9   discovered Defendants' alleged wrongdoing in June 2017 when he purportedly

10  first viewed *Moana* on DVD. (Complaint [Dkt. 1] at ¶5; FAC ¶ 36.) Plaintiff did

11  not assert his tortious interference claim until more than three years later, in July

12  2020. The interference claim is therefore barred by the statute of limitations. *See,*

13  *e.g.*, *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530-31 (N.D. Cal. 2000).

14  **VII.   THERE IS NO CAUSE OF ACTION FOR AN ACCOUNTING**

15      Plaintiff's accounting claim (eighth cause of action) fails as a matter of law

16  because "accounting is a remedy and not a cause of action." *Schaffer Family*

17  *Investors, LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1049 (C.D. Cal. 2015); *see also*

18  *Nguyen v. JP Morgan Chase Bank*, 2012 WL 294936, at *3-4 (C.D. Cal. Feb. 1,

19  2012) (same reason for dismissal).

20  **VIII.  CONCLUSION**

21      All of the causes of action asserted in the First Amended Complaint should

22  be dismissed with prejudice. They are deficient as a matter of law, and no

23  amendment of the pleadings, discovery or expert testimony can change that.

24

25  Dated:  September 22, 2020                WILLENKEN LLP

26                                            By: */s/ Peter Shimamoto*
                                              _____
27                                               Peter Shimamoto
28                                               Attorneys for Defendants

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3        I hereby certify that I electronically filed the foregoing with the Clerk of the

4  Court using the CM/ECF system which will send notification of such filing to the

5  Electronic Service List for this Case.

6

Dated:  September 22, 2020         WILLENKEN LLP

7

8

By: */s/ Peter Shimamoto*

9             Peter Shimamoto

10            Attorneys for Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28