Peter Shimamoto (Bar No. 123422)
pshimamoto@willenken.com
Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:   (213) 955-9250

Attorneys for Disney Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCK G. WOODALL, a.k.a. Buck Woodall, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE WALT DISNEY COMPANY, a Delaware Corporation; WALT DISNEY PICTURES; a Division of the Walt Disney Corporation; WALT DISNEY ANIMATION STUDIOS, a Division of the Walt Disney Company; DISNEY ENTERPRISES, INC., a Delaware Corporation; DISNEY CONSUMER PRODUCTS, INC., a California Corporation; DISNEY CONSUMER PRODUCTS & INTERACTIVE MEDIA, INC., a California Corporation; WALT DISNEY DIRECT-TO-CONSUMER & INTERNATIONAL, a Division of the Walt Disney Company; DISNEY BOOK GROUP, LLC, a Delaware Limited Liability Company; | Case No.: 2:20-cv-03772-CBM-E<br><br>**DISNEY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Filed Concurrently with Declarations of Peter Shimamoto and Kenneth M. Trujillo-Jamison, and Proposed Order]**<br><br>Date:      October 27, 2020<br>Time:     10:00 a.m.<br>Place:    Courtroom 8B<br><br>Assigned to Hon. Consuelo B. Marshall |

DISNEY INTERACTIVE STUDIOS, INC., a California Corporation; DISNEY STORE USA, LLC, a Delaware Limited Liability Company; DISNEY SHOPPING, INC., a Delaware Corporation; BUENA VISTA HOME ENTERTAINMENT, INC., a California Corporation; BUENA VISTA BOOKS, INC., a California Corporation; MANDEVILLE FILMS, INC., a California Corporation; JENNY MARCHICK, an individual; PAMELA RIBON, an individual; and DOES 1-10, inclusive,

                    Defendants.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on October 27, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8B of the United States District Court, Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, before the Honorable Consuelo B. Marshall, defendants The Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios, Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-to-Consumer & International, Disney Book Group, LLC, Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc., and Buena Vista Books, Inc. (collectively, "Disney Defendants") move this Court pursuant to Rule 11 of the Federal Rules of Civil Procedure for sanctions against plaintiff Buck G. Woodall ("Plaintiff") and his counsel Sanchez-Medina, Gonzalez, Quesada, Gomez & Machado, LLP.

Sanctions should be imposed pursuant to Rule 11 because the causes of action asserted in the First Amended Complaint for alleged violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the California Uniform Trade Secret Act, Cal. Civ. Code § 3426 *et seq.*, are neither warranted by existing law nor supported by the relevant facts. The alleged "trade secrets" do not qualify as trade secrets because the material at issue was deposited with the Copyright Office in connection with plaintiff's copyright registrations and therefore was publicly available. In addition, plaintiff posted a substantial amount of the alleged "trade secret" information on his website. These defects were known to plaintiff and his counsel, or would have been ascertained by a reasonable inquiry, prior to the filing of the First Amended Complaint.

Pursuant to Federal Rule of Civil Procedure 11(c), the Disney Defendants should be awarded their attorney's fees and costs incurred in connection with this motion, as well as their attorney's fees and costs incurred in connection with the

portion of their motion to dismiss the First Amended Complaint that relates to plaintiff's trade secrets causes of action.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 1, 2020, a subsequent letter dated September 2, 2020, and the service of a copy of this motion and accompanying documents on Plaintiff's counsel on September 3, 2020. (Declaration of Peter Shimamoto ¶¶ 2-3)

This Motion is supported by the attached Memorandum of Points and Authorities, the Declarations of Peter Shimamoto and Kenneth Trujillo-Jamison filed concurrently herewith, all pleadings, records and papers on file in this action, such matters of which this Court may take judicial notice, and upon such other evidence and argument as may be considered by this Court before it rules on this Motion.

Respectfully submitted,

Dated:  September 3, 2020          WILLENKEN LLP


                                  By: */s/ Peter Shimamoto*
                                      Peter Shimamoto
                                      Attorneys for Disney Defendants

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................................. 1

II.     STATEMENT OF FACTS ............................................................... 1

        A.      Complaint .................................................................... 1

        B.      First Amended Complaint ............................................... 3

III.    THE APPLICABLE LEGAL STANDARD ..................................... 5

IV.     THE TRADE SECRETS CAUSES OF ACTION VIOLATE RULE
        11 ...................................................................................... 7

V.      DEFENDANTS SHOULD BE AWARDED THEIR ATTORNEY'S
        FEES AND COSTS .................................................................. 10

VI.     CONCLUSION .......................................................................... 10

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Business Guides, Inc. v. Chromatic Communications Enters., Inc.,*
  498 U.S. 533 (1991) ................................................................................. 6

*Christian v. Mattel, Inc.,*
  286 F.3d 1118 (9th Cir. 2002) ............................................................ 6, 10

*Continental Air Lines, Inc. v. Group Sys. Int'l Far East, Ltd.,*
  109 F.R.D. 594 (C.D. Cal. 1986) ............................................................. 6

*Edgerly v. City and County of S.F.,*
  599 F.3d 946 (9th Cir. 2010) .............................................................. 6, 10

*Holgate v. Baldwin,*
  425 F.3d 671 (9th Cir. 2005) .................................................................... 6

*Hudson v. Moore Bus. Forms, Inc.,*
  836 F.2d 1156 (9th Cir. 1987) .................................................................. 6

*Islamic Shura Council of S. Cal.,*
  757 F.3d 870 (9th Cir. 2014) .................................................................. 10

*KEMA, Inc. v. Koperwhats,*
  658 F. Supp. 2d 1022 (N.D. Cal. 2009) ................................................... 8

*Manchester v. Sivantos GmbH,*
  2019 WL 3531419 (C.D. Cal. Aug. 2, 2019) ........................................... 7

*Mobile Active Def., Inc. v. Los Angeles Unified Sch. Dist.,*
  2015 WL 12860491 (C.D. Cal. Dec. 14, 2015) ....................................... 8

*Siegler v. Sorrento Therapeutics, Inc.,*
  2019 WL 3532294 (S.D. Cal. Aug. 2, 2019) ........................................... 8

**Statutes**

17 U.S.C. § 705(b) ........................................................................................ 8

17 U.S.C. § 408(b) ........................................................................................ 8

18 U.S.C. § 1839(3)(A) ................................................................................ 7

Cal. Civ. Code § 3426.1(d)(2) ..................................................................... 7

**Rules**

37 C.F.R. § 201.2(b)(1) ................................................................................ 8

37 C.F.R. § 201.2(d)(2) ................................................................................ 8

37 C.F.R. § 202.20(c) ................................................................................... 8

1

Fed. R. Civ. P. 11(b) ............................................................................ 5, 6

Fed. R. Civ. P. 11(c)(1) ............................................................................ 7

Fed. R. Civ. P. 11(c)(2) .......................................................................... 10

Fed. R. Civ. P. 11(c)(4) ...................................................................... 7, 10

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Rule 11 sanctions should be imposed against plaintiff and his counsel because the trade secrets causes of action asserted in the First Amended Complaint ("FAC") are neither warranted under existing law nor supported by the relevant facts. The material at issue does not qualify as trade secrets because, as set forth in the Complaint and the First Amended Complaint, such material was publicly available.

The FAC asserts that the alleged "trade secrets" are materials that plaintiff purportedly provided to defendant Jenny Marchick regarding his proposed animated project *Bucky*. That material does not qualify as a "trade secret" for two reasons.

First, the Complaint and the FAC state that plaintiff deposited a substantial portion of the material with the Copyright Office in connection with his 2004 and 2014 copyright registrations. Indeed, that material forms the basis for plaintiff's copyright infringement claim. Material that has been deposited with the Copyright Office does not qualify as a trade secret because it is publicly available.

Second, the *Bucky* material does not constitute a trade secret because, as referenced in the Complaint and the First Amended Complaint, plaintiff posted a substantial amount of that material on his website.

These fatal defects in plaintiff's trade secrets causes of action were well known to both plaintiff and his counsel, or would have been revealed by even a cursory investigation into the law and the facts. Rule 11 sanctions therefore should be imposed against plaintiff's counsel and plaintiff.

## II.   STATEMENT OF FACTS

### A.   Complaint

Plaintiff's initial Complaint was filed *pro se*. It asserted causes of action for copyright infringement and an accounting against The Walt Disney Company,

Walt Disney Pictures, Walt Disney Animation Studios, Mandeville Films, Inc.,
Jenny Marchick and Pamela Ribon. It alleged that the animated motion picture
*Moana* infringed the copyright in various materials that plaintiff had created for a
proposed animated film or television project titled *Bucky*.

The Complaint alleged that plaintiff had submitted a collection of materials
regarding *Bucky* to defendant Mandeville Films, Inc. through defendant Jenny
Marchick in 2005, when Marchick was employed by Mandeville. (Complaint [Dkt.
1] ¶ 2) The Complaint alleged that Mandeville's offices were located on the Disney
studio lot in Burbank, and alleges on information and belief that Mandeville had a
"first look" deal with Disney. (Cplt. ¶ 2)

The Complaint referred to the *Bucky* materials collectively as the
"Presentation Package" and described it as "a theatrical motion picture package
and presentation, with major themes, script outline, character development,
illustrations and budgets." The Complaint attached the alleged "Presentation
Package" as Exhibit B. The cover page of that Exhibit states that it comprises "All
material shared with Jenny Marchick from 2004 to 2011." (Dkt. 1, p.23) Exhibit B
is 199 pages. (Dkt. 1, pp. 24-222)

The Complaint alleged that "portions of the Presentation Package were also
granted Federal Copyright protection by the USPTO in 2004 and updated in 2014
(see Exhibit 'A') attached hereto, containing 203 pages of materials." (Cplt. ¶ 1)
Copies of the registrations are attached as Exhibit A. (Dkt. 1, pp. 18-21)

The Complaint alleged that plaintiff "provided to Mandeville a fully
animated concept trailer and storyboards on a DVD *along with his website address,*
*which at the time contained background image references, story development,*
*character illustrations, executive summary, and more*, all comprising the
Presentation Package in 2008." (Cplt. ¶ 3) (emphasis added).

The Complaint alleged that plaintiff first saw *Moana* in June or July of 2017,
after it was released on DVD. (Cplt. ¶ 5) The Complaint alleged that plaintiff

1   discovered the alleged copyright infringement at that time when he compared the

2   *Moana* DVD with the *Bucky* Presentation Package. *Id.*

3          The Complaint was never served on any of the Defendants.

4          **B.      First Amended Complaint**

5          Counsel subsequently appeared on plaintiff's behalf and filed the First

6   Amended Complaint ("FAC"). (Dkt. 18) The FAC added as defendants ten Disney

7   entities that had no involvement in the production of *Moana*. The FAC also added

8   six more causes of action: (1) violation of the Defend Trade Secrets Act

9   ("DTSA"), 18 U.S.C. §1836; (2) violation of the California Uniform Trade Secrets

10  Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*; (3) fraud; (4) fraudulent

11  concealment; (5) false promises; and (6) tortious interference with contractual

12  relations. The FAC is signed by Gustavo D. Lage, of Sanchez-Medina, Gonzalez,

13  Quesada, Gomez & Machado, LLP.

14         The FAC alleges that Marchick executed a Confidentiality Agreement dated

15  October 22, 2003. (Dkt. 18 ¶ 29) The FAC attaches a copy of the alleged

16  agreement as Exhibit C. That document states that "any information provided by

17  Buck Creations Multimedia and Raining Heart Productions is confidential," but

18  excludes "information which is in the public domain through other means." (Dkt.

19  18-3)

20         The FAC alleges that after Marchick signed the Confidentiality Agreement,

21  plaintiff began providing her with material regarding *Bucky*. The FAC alleges that

22  in January 2005, Woodall provided the "Presentation Package" to Marchick by

23  delivering it to her at an in-person meeting at Mandeville's offices on the Disney

24  studio facilities in Burbank. (FAC ¶ 30) The FAC attaches the Presentation

25  Package as Exhibit A. (Dkt. 18-1) With one exception, none of the documents state

26  that they were owned, created or provided by Buck Creations Multimedia or

27  Raining Heart Productions. The only exception is the document on pages 270 to

28

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

1    288 of Exhibit A, which states that the copyright is owned by Buck Creations

2    Multimedia. (Dkt. 18-1, at pp. 270-288)

3        The FAC alleges that approximately 203 pages of the Presentation Package

4    were registered with the Copyright Office in 2004 and updated in 2014. (FAC

5    ¶ 28) The registrations are attached to the FAC as Exhibit B. (Dkt. 18-2)

6        The FAC alleges that plaintiff provided Marchick with a comprehensive

7    animated trailer for *Bucky* in or about the middle of 2008. (FAC ¶ 31) The FAC

8    alleges that plaintiff subsequently provided Marchick with "storyboards on a DVD,

9    which at the time contained background image references, story development,

10   character illustrations, executive summary, and other constituents to develop the

11   film." (FAC ¶ 32)

12        The FAC alleges that plaintiff subsequently retained a writer affiliated with

13   Disney, Kurt Weldon, to assist plaintiff in completing the animated trailer. The

14   FAC alleges that plaintiff required Weldon to sign a confidentiality agreement and

15   provide it to Woodall through Buck Creations Multimedia in November 2006.

16   (FAC ¶ 33) The FAC does not attach a copy of the alleged confidentiality

17   agreement. The FAC alleges that plaintiff and Weldon "completed the final draft

18   script for the trailer in July 2011" and that plaintiff sent Marchick a copy in July

19   2011. (FAC ¶ 33)

20        With respect to the trade secrets causes of action, the FAC alleges that all

21   material that plaintiff provided to Marchick after 2003, including all of the material

22   in Exhibit A, constitutes trade secrets. (FAC ¶ 59) The FAC alleges that plaintiff

23   took "reasonable measures to keep [the trade secrets] secret, including, without

24   limitation, assuring that all persons gaining access to the Woodall Trade Secrets

25   execute confidentiality agreements or otherwise clearly articulate their covenant

26   not to disclose any of the Woodall Trade Secrets to the general public, directly or

27   indirectly." (FAC ¶¶ 60, 72) The FAC alleges that the Defendants engaged in a

28

1   conspiracy to misappropriate plaintiff's alleged trade secrets and use them in

2   *Moana* without plaintiff's knowledge or consent. (FAC ¶¶ 56-57, 62, 73)

3       The FAC alleges that each of the Defendants was "bound by the

4   Confidentiality Agreement executed in favor of Woodall." (FAC ¶ 61) The FAC

5   does not allege that any defendant other than Marchick signed a Confidentiality

6   Agreement regarding any of the *Bucky* materials.

7       The FAC seeks damages of at least $20 million with respect to the trade

8   secrets causes of action. (FAC ¶¶ 64, 76)

9   **III.   THE APPLICABLE LEGAL STANDARD**

10       Rule 11 of the Federal Rules of Civil Procedure provides in part:

11   (b)  By presenting to the court a pleading, written motion, or other paper—

12   whether by signing, filing, submitting, or later advocating it—an attorney or

13   unrepresented party certifies that to the best of the person's knowledge,

14   information, and belief, formed after an inquiry reasonable under the

15   circumstances:

16       (1) it is not being presented for any improper purpose, such as to

17       harass, cause unnecessary delay or needlessly increase the cost of

18       litigation;

19       (2) the claims, defenses, and other legal contentions are warranted

20       by existing law or by a nonfrivolous argument for extending,

21       modifying or reversing existing law or for establishing new law;

22       (3) the factual contentions have evidentiary support or, if

23       specifically so identified, will likely have evidentiary support after

24       a reasonable opportunity for further investigation or discovery;...

25   Fed. R. Civ. P. 11(b).

26       The Supreme Court has stated that, "A signature certifies to the court that

27   the signer has read the document, has conducted a reasonable inquiry into the facts

28   and the law and is satisfied that the document is well grounded in both, and is

1    acting without any improper motive." *Business Guides, Inc. v. Chromatic*

2    *Communications Enters., Inc.,* 498 U.S. 533, 542 (1991). Similarly, the Ninth

3    Circuit has stated that "[t]he attorney has a duty prior to filing a complaint not only

4    to conduct a reasonable factual investigation, but also to perform adequate legal

5    research that confirms whether the theoretical underpinnings of the complaint are

6    'warranted by existing law or a good faith argument for an extension, modification

7    or reversal of existing law'." *Christian v. Mattel, Inc*., 286 F.3d 1118, 1127 (9th

8    Cir. 2002).

9         Where a Rule 11 motion focuses on a complaint, the court must conduct a

10   two prong inquiry to determine whether (1) the complaint is legally or factually

11   baseless from an objective perspective and (2) the attorney conducted a reasonable

12   and competent inquiry before signing and filing it. *Holgate v. Baldwin,* 425 F.3d

13   671, 676 (9th Cir. 2005) (affirming imposition of Rule 11 sanctions); *Christian,*

14   286 F.3d at 1127.

15        Rule 11 sanctions can be based on a portion of complaint. *Holgate,* 425 F.3d

16   at 677 (sanctions may be imposed where only one of the causes of action asserted

17   in the complaint lacks merit); *Hudson v. Moore Bus. Forms, Inc.,* 836 F.2d 1156,

18   1162-63 (9th Cir. 1987) (finding that unreasonably inflated damages claim

19   supported Rule 11 sanctions even if the substantive claims did not).

20        Rule 11 sanctions can be imposed against the client and attorney jointly and

21   severally for Rule 11 violations based on papers signed by the attorney. *Edgerly v.*

22   *City and County of S.F.,* 599 F.3d 946, 963 (9th Cir. 2010) (affirming award of

23   sanctions against attorney and client based on frivolous motions for

24   reconsideration); *Continental Air Lines, Inc. v. Group Sys. Int'l Far East, Ltd.,* 109

25   F.R.D. 594, 600 (C.D. Cal. 1986) (sanctions imposed jointly on attorney and client

26   because client was aware of facts that made motion frivolous).

27        If the court determines that Rule 11(b) has been violated, it "may impose an

28   appropriate sanction on any attorney, law firm, or party that violated the rule or is

1  responsible for the violation. Absent exceptional circumstances, a law firm must be

2  held jointly responsible for a violation committed by its partner, associate, or

3  employee." Fed. R. Civ. P. 11(c)(1).

4      Where a sanction is imposed pursuant to a motion, the court can issue "an

5  order directing payment to the movant of part or all of the reasonable attorney's

6  fees and other expenses directly resulting from the violation." Fed. R. Civ. P.

7  11(c)(4).

8  **IV.    THE TRADE SECRETS CAUSES OF ACTION VIOLATE RULE 11**

9      Plaintiff's trade secret claims violate Rule 11 because the material at issue

10  clearly does not constitute a trade secret.[1] The alleged "Woodall Trade Secrets" do

11  not qualify as trade secrets because, as referenced in the Complaint and the FAC,

12  the material at issue was publicly available in at least two ways.

13      <u>First</u>, the FAC alleges that at least 203 pages of the material that plaintiff

14  purportedly provided to Marchick was deposited with the Copyright Office in

15  connection with plaintiff's copyright registrations. (FAC ¶28)

16      It is well established that information that has been deposited with the

17  Copyright Office in connection with a copyright registration does not qualify as a

18  trade secret because such material is available to the public. In *Manchester v.*

19  *Sivantos GmbH*, 2019 WL 3531419 (C.D. Cal. Aug. 2, 2019), for example, the

20  defendant moved for summary judgment with respect to plaintiff's trade secrets

21  claim under the CUTSA on the ground that the material had been deposited with

22  the Copyright Office. The court stated:

23

24

---

25  [1]   In order to qualify as a trade secret under the DTSA, the owner of the alleged

26  trade secret must have "taken reasonable measures to keep such information

27  secret." 18 U.S.C. § 1839(3)(A). Similarly, the CUTSA requires that a trade

28  secret be "the subject of efforts that are reasonable under the circumstances to

    maintain its secrecy." Cal. Civ. Code § 3426.1(d)(2).

*Courts have consistently denied the existence of a trade secret where, as here, the claimed trade secret is submitted without redaction for registration with the United States Copyright Office…*

In order to obtain registration, an applicant must submit one or two complete copies of the work to the Copyright Office. *See* 17 U.S.C. § 408(b); 37 C.F.R. § 202.20(c). Accordingly, Plaintiff must have submitted her claimed secrets to the Copyright Office, which submission was publicly accessible. Although the Copyright Office does place restrictions on requests for reproductions, 37 C.F.R. § 201.2(d)(2), the same restrictions do not apply to requests for inspection. *Compare* 17 U.S.C. § 705(b) ("[A]rticles deposited in connection with completed copyright registrations and retained under the control of the Copyright Office, shall be open to public inspection.") *with* 37 C.F.R. § 201.2(b)(1) (providing for public inspection at the Copyright Office of material deposited in connection with a completed copyright registration).

2019 WL 3531419, at *4-5 (emphasis added) (citations omitted). The court held that, since plaintiff had deposited the material at issue with the Copyright Office in connection with her copyright registrations, the material did not constitute a trade secret.

Numerous other courts have reached the same conclusion. *See, e.g.*, *Siegler v. Sorrento Therapeutics, Inc.*, 2019 WL 3532294, at *12-13 (S.D. Cal. Aug. 2, 2019) (material deposited with Copyright Office does not constitute trade secret under DTSA or CUTSA); *Mobile Active Def., Inc. v. Los Angeles Unified Sch. Dist.*, 2015 WL 12860491, at *5 (C.D. Cal. Dec. 14, 2015) (material deposited with Copyright Office is publicly accessible and does not constitute a trade secret under CUTSA); *KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1030-31 (N.D. Cal. 2009) (same).

1  Thus, none of the material covered by plaintiff's copyright registrations
2  constitutes a trade secret.

3  <u>Second</u>, plaintiff's trade secrets causes of action are frivolous because
4  plaintiff publicly posted a substantial amount of *Bucky* material on his website.
5  Plaintiff's initial Complaint stated that plaintiff "provided to Mandeville a fully
6  animated concept trailer and storyboards on a DVD, *<u>along with his website</u>*
7  *<u>address, which at the time contained background image references, story</u>*
8  *<u>development, character illustrations, executive summary, and more</u>*, all comprising
9  the Presentation Package in 2009.  (Cplt. ¶ 3, at p.3:19-24) (emphasis added)
10  Similarly, Exhibit A to the FAC expressly states that plaintiff had a "website for
11  the Bucky project, available at http://www.buckcreations.com/main.html and
12  www.blazingsunhawaii.com." (Dkt. 18-1 at p. 269) The Complaint and the FAC
13  therefore explicitly state that a substantial amount of *Bucky* material was posted on
14  plaintiff's website.

15  A review of the www.buckcreations.com website from 2006 and 2009
16  confirms that, as stated in the Complaint and FAC, plaintiff's website contained
17  voluminous information regarding *Bucky*, including story descriptions, character
18  descriptions, character illustrations, video excerpts, executive summary, and more.
19  (Trujillo-Jamison Decl., Exs. 1 & 2) Indeed, one of the documents in Exhibit A to
20  the FAC appears to be photographs of *Bucky* material that also was displayed on
21  plaintiff's www.buckcreations.com website. (*Compare* Dkt. 18-1 at pp. 277-288
22  *with* Trujillo-Jamison Decl., Ex. 1, at pp. 78-93)

23  In addition to the information displayed on his website, plaintiff also entered
24  *Bucky* in a public pitch contest in 2006 run by Animation Magazine. (Trujillo-
25  Jamison Decl., Ex. 3)

26  Thus, Plaintiff and his counsel knew that the allegation that plaintiff kept his
27  *Bucky* project secret was false when they filed the Complaint and the FAC. The
28

9

1 FAC's trade secrets causes of action constitute a textbook violation of Rule 11.

2 Sanctions should be imposed against plaintiff and his counsel.

3 **V.    DEFENDANTS SHOULD BE AWARDED THEIR ATTORNEY'S**

4 **FEES AND COSTS**

5       Defendants should be awarded their attorney's fees and costs incurred in

6 connection with this motion, as well as their attorney's fees and costs in connection

7 with the portion of a motion to dismiss the FAC that relates to plaintiff's trade

8 secrets claims. *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to

9 the prevailing party the reasonable expenses, including attorney's fees, incurred for

10 the motion."); Fed. R. Civ. P. 11(c)(4) (sanctions can include "an order directing

11 payment to the movant of part or all of the reasonable attorney's fees and other

12 expenses directly resulting from the violation"). *See also, e.g.*, *Islamic Shura

13 Council of S. Cal.,* 757 F.3d 870, 873 (9th Cir. 2014) ("Fee sanctions compensate a

14 party for the costs of enforcing the rule when the party taking the challenged

15 position has refused to withdraw or correct it."); *Edgerly,* 599 F.3d at 963

16 (affirming award against attorney and client of the attorney's fees defendant

17 incurred in responding to frivolous motions); *Christian*, 286 F.3d at 1131-32

18 (finding that award of attorney's fees for frivolous copyright claim was

19 appropriate, but noting that the amount of the fees should be reasonable in light of

20 claim's frivolousness and directly caused by the sanctionable conduct).

21       If plaintiff does not dismiss his frivolous trade secrets causes of action,

22 defendants will submit to the Court documentation of their attorney's fees and

23 costs incurred in connection with this motion and the portion of their motion to

24 dismiss that relates to the trade secrets causes of action asserted in the FAC.

25 **VI.    CONCLUSION**

26       The trade secrets causes of action asserted in the First Amended Complaint

27 violate Rule 11 because they are neither warranted under the applicable law nor

28 supported by the facts. Defendants should be awarded their attorney's fees and

1   costs in connection with this motion and the portion of their motion to dismiss that

2   pertains to the trade secrets causes of action.

3

4                                        Respectfully submitted,

5
    Dated:  September 3, 2020            WILLENKEN LLP
6

7
                                         By: */s/ Peter Shimamoto*
8                                             Peter Shimamoto
                                              Attorneys for Disney Defendants
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

1

## **CERTIFICATE OF SERVICE**

2

3          I hereby certify that I electronically filed the foregoing with the Clerk of the

4     Court using the CM/ECF system which will send notification of such filing to the

5     Electronic Service List for this Case.

6
                                                    WILLENKEN LLP
7     Dated:  September 24, 2020

8
                                          By: */s/ Peter Shimamoto*
9                                               Peter Shimamoto
10                                              Attorneys for Disney Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28