1  Peter Shimamoto (Bar No. 123422)
   pshimamoto@willenken.com
2  Kenneth M. Trujillo-Jamison (Bar No. 280212)
3  ktrujillo-jamison@willenken.com
   WILLENKEN LLP
4  707 Wilshire Blvd., Suite 3850
5  Los Angeles, California 90017
   Telephone:  (213) 955-9240
6  Facsimile:   (213) 955-9250

7
   Attorneys for Disney Defendants
8

9
                  UNITED STATES DISTRICT COURT
10
               CENTRAL DISTRICT OF CALIFORNIA
11

12

13 | BUCK G. WOODALL, a.k.a. Buck | Case No.: 2:20-cv-03772-CBM-E
   | Woodall, an individual,
14 |                              | **DISNEY DEFENDANTS' REPLY**
15 |               Plaintiff,     | **IN SUPPORT OF THEIR MOTION**
   |                              | **FOR RULE 11 SANCTIONS**
16 | v.
17 |                              | Date:      October 27, 2020
   | THE WALT DISNEY COMPANY, a   | Time:      10:00 a.m.
18 | Delaware Corporation; et al.,| Place:     Courtroom 8B
19 |
   |               Defendants.    | Assigned to Hon. Consuelo B. Marshall
20

21

22

23

24

25

26

27

28

_____
DISNEY DEFENDANTS' REPLY ISO MOTION FOR RULE 11 SANCTIONS

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................... 1

II.     PLAINTIFF'S OPPOSITION CONFIRMS THERE IS NO
        REASONABLE BASIS FOR HIS TRADE SECRET CLAIMS ................... 1

        A.      Bucky Materials Posted to Plaintiff's Public Website Cannot
                Sustain His Trade Secret Misappropriation Claims............................. 1

        B.      Plaintiff's Deposited Materials with the Copyright Office
                Cannot Sustain a Trade Secret Misappropriation Claim .................... 2

        C.      Rule 11 Applies to the Trade Secrets Causes of Action ...................... 4

        D.      Plaintiff's Allegations of an "Improper Purpose" Lack Merit ............. 4

III.    PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE
        DENIED ................................................................................................... 5

IV.     CONCLUSION ........................................................................................ 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Art of Living Foundation v. Does,*
    2011 WL 2441898 (N.D. Cal. Jun. 15, 2011)......................................................1

*Hirel Connectors, Inc. v. United States,*
    2004 WL 5639770 (C.D. Cal. Jan. 23, 2004) ....................................................3

*MAI Systems Corp. v. Peak Computer, Inc.,*
    991 F.2d 511 (9th Cir. 1993) ...............................................................................3

*Nguyen v. Barnes & Nobles, Inc.,*
    763 F.3d 1171 (9th Cir. 2014) .............................................................................2

*Religious Technology Ctr. v. Netcom On-Line Communication Services, Inc.,*
    923 F. Supp. 1231 (N.D. Cal. 1995) ...............................................................1, 2

*Siegler v. Sorrento Therapeutics, Inc.,*
    2019 WL 3532294 (S.D. Cal. Aug. 2, 2019)......................................................3

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.,*
    2008 WL 166950 (N.D. Cal. Jan. 17, 2008)........................................................1

*Syncsort Inc. v. Innovative Routines, Int'l,*
    2011 WL 36515331 (D.N.J. Aug. 18, 2011) .......................................................1

*Wilson v. Huuuge, Inc.,*
    944 F.3d 1212 (9th Cir. 2019) .............................................................................2

DISNEY DEFENDANTS' REPLY ISO MOTION FOR RULE 11 SANCTIONS

## I.    INTRODUCTION

The Opposition's kitchen-sink presentation highlights the propriety of a Rule 11 sanctions award here. There is no dispute that Plaintiff and his attorneys knew when they filed the First Amended Complaint ("FAC") that Plaintiff's materials did not qualify as trade secrets because they were: (1) voluntarily posted by Plaintiff on his public website and/or (2) deposited with the Copyright Office.

## II.   PLAINTIFF'S OPPOSITION CONFIRMS THERE IS NO REASONABLE BASIS FOR HIS TRADE SECRET CLAIMS

### A.    *Bucky* Materials Posted to Plaintiff's Public Website Cannot Sustain His Trade Secret Misappropriation Claims

The Opposition does not provide any reasonable explanation for asserting trade secret misappropriation claims based on materials that Plaintiff voluntarily posted online for many years. First, all of the cases Plaintiff's Opposition cites concerning materials published on the internet are inapplicable because the information in those cases was published by third parties, not by the trade secret owner.[1] Here, it is Plaintiff who voluntarily posted his *Bucky* material on his website. Plaintiff therefore failed to satisfy the requirement that a trade secret owner take reasonable measures to keep the information secret.

Second, Plaintiff's contention that public disclosure of an element of a trade secret (*e.g.*, a portion of computer code) does not eliminate protection for the

---

[1] *See Syncsort Inc. v. Innovative Routines, Int'l,* 2011 WL 36515331, at *14 (D.N.J. Aug. 18, 2011) (for the most part, only "minimal portions" of the alleged trade secret were posted on the internet; more extensive information was posted only on a foreign website and was removed quickly; in all instances the information was posted by third parties); *Silicon Image, Inc. v. Analogix Semiconductor, Inc.,* 2008 WL 166950, at *16 (N.D. Cal. Jan. 17, 2008) (serious question as to whether the information posted on the internet revealed enough information to be useful to competitors; information was posted on a Chinese website by third parties); *Art of Living Foundation v. Does,* 2011 WL 2441898, at *12 (N.D. Cal. Jun. 15, 2011) (information was posted by the defendant, not by the plaintiff); *Religious Technology Ctr. v. Netcom On-Line Communication Services, Inc.,* 923 F. Supp. 1231, 1255 (N.D. Cal. 1995) (information that was posted "may not disclose the secrets themselves" and was published by third parties).

DISNEY DEFENDANTS' REPLY ISO MOTION FOR RULE 11 SANCTIONS

1  combination of elements that constitute the trade secret as a whole misses the

2  point. As stated in one of the cases Plaintiff cites, trade secret protection is lost

3  with respect to the material that was publicly disclosed. *Religious Technology Ctr.*

4  *v. Netcom On-Line Communication Services, Inc.,* 923 F. Supp. 1231, 1255 (N.D.

5  Cal. 1995) (publication of portions of alleged trade secret in articles eliminates any

6  trade secret protection for the information that was published). Plaintiff therefore

7  does not have a trade secret claim with respect to any of the information that was

8  on his website.

9         Plaintiff's posted "confidentiality agreement" avails him nothing. Including

10 a "confidentiality agreement" on one of his website's many pages does not convert

11 the material on the website's other pages into a trade secret because there was no

12 requirement that visitors to the website accept the agreement *before* they accessed

13 the *Bucky* material. *See, e.g. Wilson v. Huuuge, Inc.,* 944 F.3d 1212, 1220-21 (9th

14 Cir. 2019). *Nguyen v. Barnes & Nobles, Inc.,* 763 F.3d 1171, 1175-79 (9th Cir.

15 2014). Plaintiff does not even identify when the agreement was posted; notably, it

16 does not appear in the version of the website that existed in 2009.[2] (Dkt. 68-5)

17 Plaintiff has completely failed to demonstrate that the website contained a

18 confidentiality agreement during the entire time the *Bucky* material was available.

19         **B.     Plaintiff's Deposited Materials with the Copyright Office Cannot**

20                 **Sustain a Trade Secret Misappropriation Claim**

21         Plaintiff does not dispute that material voluntarily deposited with the

22 Copyright Office does not qualify as a trade secret because it is publicly available.

23 Instead, Plaintiff argues that sanctions are inappropriate because not all of what he

24 _____

25 [2] Plaintiff's contention that Defendants represented to the Court that they were filing the entirety

26 of Plaintiff's website as it existed on May 2, 2006 is inaccurate. As described in Defendants'
   Motion to Dismiss and their RJN, Exhibits C and D of Defendants' RJN are "printouts *from*"

27 Plaintiff's website. (Dkt. 68 at 31; Dkt. 68-1 at 5 (emphasis added)). Contrary to Plaintiff's
   protestations, Defendants never represented that those Exhibits were "copies of the *entire*

28 Website." (Opposition at 20.)

1 contends is a trade secret was registered. In so doing he not only misses the point,

2 but also mischaracterizes his own FAC, which repeatedly and expressly alleges

3 that *all* of Plaintiff's materials are trade secrets (FAC ¶¶ 56, 59), *including* all

4 materials registered with the Copyright Office.[3] The only place the FAC identifies

5 *Bucky* material allegedly used in *Moana* is in the copyright infringement section.[4]

6 (FAC ¶34) Thus, the FAC's only basis for alleging trade secret misappropriation is

7 the use of the publicly available materials deposited with the Copyright Office.

8      Plaintiff's "head start" argument does not help him. Any *Bucky* materials

9 Plaintiff deposited with the Copyright Office in 2004 were publicly available seven

10 years before Plaintiff even alleges work on *Moana* began, so they could not

11 possibly provide a "head start." Plaintiff has never identified what 2014 *Bucky*

12 materials deposited with the Copyright Office even existed in 2011 (the last date

13 the FAC alleges Plaintiff gave Marchick any *Bucky* material), let alone were given

14 to Marchick. At least two of the documents that Plaintiff extensively relies on for

15 his trade secrets causes of action (one of them being the only script) bear dates of

16 2016 and 2015, and could not have been provided to Marchick in 2011. (Dkt. 18-1

17 at 2-98, 102, 135, 186) It is simply not permissible for Plaintiff to assert trade

18 secrets claims based on documents that did not even exist in 2011.

19      Moreover, the cases Plaintiff cites all state that to prevail on a trade secrets

20 cause of action, the information at issue must have constituted a trade secret at the

21 time of misappropriation. Plaintiff alleges that Marchick told him she would

22

23

24 [3] As Plaintiff acknowledges in his Opposition, the alleged trade secrets must be identified with specificity. *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 522 (9th Cir. 1993);

25 *Siegler v. Sorrento Therapeutics, Inc.,* 2019 WL 3532294, at*12-13 (S.D. Cal. Aug. 2, 2019).

26 [4] *Hirel Connectors, Inc. v. United States,* 2004 WL 5639770 (C.D. Cal. Jan. 23, 2004), does not assist Plaintiff. In that case, a small portion of the plaintiff's trade secrets were published on the

27 internet by a third party without the plaintiff's permission. *Id.* at *20-21. *Hirel Connectors* has no application to the current case because it is the Plaintiff, not a third party, who voluntarily

28 deposited the *Bucky* materials with the Copyright Office.

1  provide the *Bucky* material to third parties (FAC ¶ 30), yet he made no effort to

2  have any of those third parties sign a confidentiality agreement or otherwise agree

3  to keep his material secret. Plaintiff therefore failed to make reasonable efforts to

4  keep the material secret.

5  **C.  Rule 11 Applies to the Trade Secrets Causes of Action**

6  Plaintiff's argument that sanctions should not be imposed to avoid "chilling

7  an attorney's enthusiasm or creativity in pursuing new theories" (Dkt. 75 at 19:6-7)

8  is unsupportable. There is no dispute that both Plaintiff and his counsel knew that

9  Plaintiff had posted his materials online yet keep insisting that those materials are

10  trade secrets. Similarly, reasonable inquiry would have disclosed that material

11  deposited with the Copyright Office in connection with a copyright registration can

12  no longer be a trade secret. The Disney Defendants notified Plaintiff of these

13  defects in the trade secrets causes of action in their meet and confer and in their

14  motion papers. Plaintiff's continued reliance on this material constitutes a clear

15  violation of Rule 11.

16  Plaintiff's contention that sanctions are inappropriate where a plaintiff may

17  be granted leave to amend also lacks merit. No amendment can change the fact that

18  Plaintiff publicly posted on his website a substantial amount of the *Bucky* material

19  that he now contends is a trade secret and that *Bucky* material he deposited with the

20  Copyright Office has been publicly available since before development of *Moana*

21  began. In addition, there can be no dispute that Plaintiff did not make any effort to

22  ensure that any third parties who received his *Bucky* material from Marchick sign a

23  confidentiality agreement. Thus, any amendment would be futile.

24  **D.  Plaintiff's Allegations of an "Improper Purpose" Lack Merit**

25  The Rule 11 motion was made for a completely proper purpose. The original

26  Complaint, which was filed *pro* se, asserted two causes of action (copyright and

27  accounting) against six defendants. After retaining counsel, Plaintiff added ten

28  additional defendants and six additional causes of action, including the trade secret

1  misappropriation claims. The FAC, however, did not identify a *single fact*

2  supporting any of the causes of action against any of the new defendants, opting

3  instead to rely on conclusory allegations of a spurious "conspiracy."[5]

4  **III.    PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE DENIED**

5          For the reasons set forth in the Disney Defendants' Rule 11 Motion and

6  herein, sanctions should be imposed against Plaintiff and his counsel. For the same

7  reasons, Plaintiff's request for sanctions against the Disney Defendants lacks merit.

8  Plaintiff's contention that the Rule 11 Motion constitutes an indirect attempt to

9  obtain dismissal of the trade secrets causes of action is false. Defendants' Motion

10  to Dismiss sets forth the grounds for dismissing the trade secrets causes of action

11  without referencing the Rule 11 Motion.[6]

12  **IV.    CONCLUSION**

13          The Disney Defendants respectfully request that the motion for sanctions

14  against Plaintiff and his counsel be granted.

15                                              Respectfully submitted,

16  Dated:  October 13, 2020              WILLENKEN LLP

17

18                                        By: */s/ Peter Shimamoto*
                                                Peter Shimamoto
19                                              Attorneys for Disney Defendants

20

21

22

23

24
[5] As demonstrated in Defendants' motion to dismiss, Plaintiff's "conspiracy" claims fail to
25  satisfy the particularity requirements of Rule 9(b). (Dkt. 68 at 33-34)

26  [6] The letter that Plaintiff's counsel sent to the Disney Defendants' counsel after receiving the
Rule 11 motion does not support Plaintiff's request for sanctions, as it simply contains the same
27  inapplicable arguments set forth in Plaintiff's Opposition. There was no need for Defendants to
respond to Plaintiff's letter. The Disney Defendants had served their motion on Plaintiff.  It was
28  up to Plaintiff to decide whether to withdraw his defective trade secrets causes of action.

DISNEY DEFENDANTS' REPLY ISO MOTION FOR RULE 11 SANCTIONS

1

## <u>CERTIFICATE OF SERVICE</u>

2

3
I hereby certify that I electronically filed the foregoing with the Clerk of the

4
Court using the CM/ECF system which will send notification of such filing to the

5
Electronic Service List for this Case.

6

Dated:  October 13, 2020               WILLENKEN LLP

7

8

                                                By: */s/ Peter Shimamoto*

9
                                                        Peter Shimamoto

10
                                                        Attorneys for Disney Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28