1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11

Buck G. Woodall, a.k.a. Buck
Woodall, an individual,

12

Plaintiff,

13

v.

14

The Walt Disney Company *et al.*,

15

Defendants.

16

Case No.:  CV 20-3772-CBM-(Ex)

**ORDER RE: DEFENDANTS'
MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED
COMPLAINT AND DEFENDANTS'
MOTION FOR RULE 11
SANCTIONS**

17

The matters before the Court are:  (1) Defendants'[1] Motion To Dismiss

18

Plaintiffs' First Amended Complaint ("FAC") (Dkt. No. 68); and (2) Defendants'

19

Motion for Rule 11 Sanctions (Dkt. No. 71.)  The matters are fully briefed.

20

**I.    BACKGROUND**

21

This is a copyright infringement and trade secrets action arising from

22

Defendants' alleged infringement of Plaintiff Buck Woodall's (hereinafter,

23

"Plaintiff's" or "Woodall's") "Bucky" and "Bucky the Wave Warrior" animated

24

25

26

27

28

---

[1] Defendants are The Walt Disney Company, Walt Disney Pictures, Walt Disney
Animation Studios, Disney Enterprises, Inc., Disney Consumer Products, Inc.,
Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-to-
Consumer & International, Disney Book Group, LLC, Disney Interactive Studios,
Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home
Entertainment, Inc., Buena Vista Books, Inc., Mandeville Films, Inc.
("Mandeville"), Jenny Marchick, and Pamela Ribon (collectively, "Defendants").

1

1  film projects" through Defendants' production and release of the Disney animated

2  film *Moana*.  The FAC, filed as a matter of right, asserts eight causes of action:

3  (1) copyright infringement; (2) violations of Defend Trade Secrets Act of 2016, 18

4  U.S.C. § 1836; (3) violations of the California Uniform Trade Secrets Act, Cal.

5  Civ. Code §§ 3426 *et seq.*; (4) fraud; (5) fraudulent concealment; (6) false

6  promises; (7) tortious interference with contractual relations; and (8) accounting.

## II.   STATEMENT OF THE LAW

### A.   Fed. R. Civ. Proc. 12(b)(6)

9      Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a

10  complaint for "failure to state a claim upon which relief can be granted."  On a

11  motion to dismiss for failure to state a claim, courts accept as true all well-pleaded

12  allegations of material fact and construes them in a light most favorable to the

13  non-moving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

14  1031-32 (9th Cir. 2008).  To survive a motion to dismiss, the complaint "must

15  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

16  plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009) (quoting *Bell

17  Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A formulaic recitation of

18  the elements of a cause of action will not suffice.  *Twombly*, 550 U.S. at 555.

19  Labels and conclusions are insufficient to meet the Plaintiff's obligation to

20  provide the grounds of his or her entitlement to relief.  *Id.*  "Factual allegations

21  must be enough to raise a right to relief above the speculative level."  *Id.*  A court

22  may consider the allegations contained in the pleadings, exhibits attached to or

23  referenced in the complaint, and matters properly subject to judicial notice in

24  ruling on a motion to dismiss.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

25  U.S. 308, 322 (2007).  Materials whose contents are alleged in the complaint may

26  also be considered by the Court for purposes of a motion to dismiss.  *See Thomas

27  v. Walt Disney Co.*, 337 Fed. App'x. 694, 694-95 (9th Cir. 2009); *U.S. v. Ritchie*,

28  342 F.3d 903, 908 (9th Cir. 2003).

**B.      Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) governs all claims sounding in fraud, and requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), Plaintiff must plead facts regarding the "who, what, when, where, and how" of the alleged misconduct.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).

## III.    DISCUSSION

**A.      Requests for Judicial Notice**

Defendants request that the Court take judicial notice of the following:

a.    DVDs of (1) Defendants' allegedly infringing work, *Moana* and (2) the movie trailer for *Moana* (Exs. A and B);

b.    A true and correct copy of the May 2, 2006 archived version of the website http://www.buckcreations.com/main.html, archived at INTERNET ARCHIVE:WAYBACK MACHINE (http://archive.org/web), *accessible at* http://web.archive.org/web/20060502093100/http://www.buck creations.com/main.html (last accessed Sept. 21, 2020), which includes webpages that were accessible through active links contained on that webpage (Ex. C);

c.    A true and correct copy of the April 28, 2009 archived version of the website http://www.buckcreations.com, archived at INTERNET ARCHIVE:WAYBACK MACHINE (http://archive.org/web), *accessible at* http://web.archive.org/web/20090428172941/http://www.buck creations.com (last accessed Sept. 21, 2020), which includes webpages that were accessible through active links contained on that webpage (Ex. D);

d.    A true and correct copy of the definition of the term "moana," defined as "ocean, open sea" from Bruce Biggs, ENGLISHMAORI, MAORI-ENGLISH DICTIONARY (2013), available for purchase at https://www.amazon.com/English-Maori-Maori-English-Dictionary-Bruce-Biggs-ebook-dp-B00GL9O97Y/dp/B00GL9O97Y/ref=mt_other?_encoding=U TF8&me=&qid=1600452400) (last visited Sept. 21, 2020) (Ex. E); and

e.  The following "common or generic cultural or literary elements" (Exs. F-1 to Ex. F-4):

a)  "Kamapua'a is a figure from Polynesian folklore";
b)  "Maui is a character from Polynesian folklore";
c)  "Pele is a figure in Polynesian folklore";
d)  "Menehune is based in Polynesian folklore"; and
e)  "Kakamora is based in Polynesian folklore."[2]

The Court (1) denies Defendants' Request for Judicial Notice as to Defendants' Exhibits A, C, and D as moot because they are already incorporated by reference into the FAC;[3] (2) denies Defendants' Request for Judicial Notice Exhibit B (Moana trailer) because it is not referenced in the FAC and does not form the basis of any of Plaintiffs' claims; (3) grants Defendants' Request for Judicial Notice as to Defendants' Exhibit E (dictionary definition) because a dictionary is a source whose accuracy cannot reasonably be questioned;[4] and (4) denies Defendants' Request for Judicial Notice as to Defendants' Ex. F (common or generic cultural or literary elements).[5]

Plaintiff requests that the Court take judicial notice of the following:

1.  Plaintiff's Ex. A:  two articles published on the internet, reporting that Jenny Marchick was hired by DreamWorks as head of feature development in January 2020 and worked on films for Disney and Mandeville;

2.  Plaintiff's Ex. B:  Public IMDb profile of Defendant Jenny Marchick, available at https://www.imdb.com/name/nm1735962/;

3.  Plaintiff's Ex. C:  July 12, 2012 Youtube video of Frankfurter Buchmesse (i.e., the Frankfurt Book Fair) under the headline

---

[2] Plaintiff did not file an objection to Defendants' request for judicial notice.

[3] *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Thomas*, 337 F. App'x at 695.

[4] *See Commercial Copy Innovations, Inc. v. Ricoh Elecs., Inc.*, 2017 WL 7838719, at *3 (C.D. Cal. Oct. 16, 2017); *CI Games S.A. v. Destination Films*, 2016 WL 9185391, at *7 n.16 (C.D. Cal. Oct. 25, 2016); *Sexy Hair Concepts, LLC v. Conair Corp.*, 2013 WL 12119721, at *3 (C.D. Cal. Feb. 25, 2013).

[5] Taking judicial notice of Ex. F was unnecessary because the Court finds additional evidence such as expert testimony may help inform the question of substantial similarity in this case, *see* infra, and the Court did not rely on the common or generic cultural or literary elements in Defendants' Ex. F in ruling on Defendants' Motion to Dismiss. *See Griffin v. Peele*, 2017 WL 8231241, at *5 (C.D. Cal. Oct. 18, 2017).

1    *Sparks 2012 Jenny Marchick – Story!*, which includes video of
2    Defendant Jenny Marchick explaining her job, available at
     https://www.youtube.com/channel/UCzOzewk_c1VGUsLF_z
     Ra3cg;

3        4.   Plaintiff's Ex. D:  Google Maps image of Hanalei Bay, Kauai,
4             available at https://www.google.com/maps/@22.2092143,-
              159.5120639,15z?hl=en;

5        5.   Plaintiff's Ex. E:  Confidentiality Agreement Plaintiff posted
6             on his websites, available at
              http://web.archive.org/web/20050216124124fw/http://buckcrea
7             tions.com/confid.html; and

8        6.   Plaintiff's Ex. F:  January 11, 2017 Entertainment Weekly
              article by Marc Snetlker titled "10 fun facts about *Moana* that
9             will make you say 'Wow, what a fun *Moana* fact" available at
              https://ew.com/movies/2017/01/11/moana-10-fun-facts/.

10   (Dkt. Nos. 72-3 to 72-8, 74.)[6]  The Court (1) denies Plaintiff's Request for Judicial

11   Notice as to Exhibits A, B, C, and F because the Court cannot take judicial notice

12   of the truth of the contents of articles, third party websites, and an online YouTube

13   video;[7] (2) grants Plaintiff's Request for Judicial Notice as to Exhibit D (map)

14   because the map is a source whose accuracy cannot be reasonably questioned;[8]

15   and (3) denies Plaintiff's Request for Judicial Notice as to Exhibit E as moot

16   because it is incorporated by reference in the FAC.

17   **B.    Defendants' Objections to Plaintiff's "Addenda"**

18        Plaintiff attached two addendums to his opposition to the Motion,

19   comprised of two tables listing purported similarities of the works.  (*See* Dkt. No.

20   72-1, 72-2.)  Defendant filed objections to Plaintiff's addenda on the ground

21   oppositions to motions cannot exceed 25 pages absent leave of court based on this

22   district's local rules on the Court's standing order.  Because Plaintiff filed a 25-

23   page opposition to the Motion, the Court **SUSTAINS** Defendants' objections to

24   Plaintiff's Addenda, and **STRIKES** Plaintiff's Addendum 1 and 2.  (*See* L.R. 11-

25

26   [6] Defendants filed objections to Exhibit B and F to Plaintiff's request for judicial
     notice.  (Dkt. No. 76-2.)

27   [7] *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); *Griffin v.
     Peele*, 2018 WL 5117555, at *3 (C.D. Cal. Jan 18, 2018).

28   [8] *See United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012).

6; Dkt. No. 76-1.)

**C.      Copyright Infringement Claim (First Cause of Action)**

Plaintiff's first cause of action alleges Defendants' animated film *Moana* infringed Plaintiff's copyrighted works.  "To state a claim for copyright infringement, [Plaintiff] must plausibly allege two things: (1) that [he] owns a valid copyright in [the works], and (2) that [Defendants] copied protected aspects of [Plaintiff's works]."  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116-17 (9th Cir. 2018) (citations omitted), overruled on other grounds in *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).  The second prong has two distinct components: "copying" and "unlawful appropriation."  *Skidmore*, 952 F.3d at 1064.  "In the absence of direct evidence of copying, . . . the plaintiff can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying."  *Id.* (internal quotations and citation omitted). Here, Defendants move to dismiss Plaintiff's copyright infringement claim on the grounds:  (1) Plaintiff fails to adequately allege ownership; (2) Plaintiff does not adequately allege access; and (3) the works are not substantially similar.

**(1)      Ownership**

"A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership."  *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 822 (9th Cir. 2017).  Here, the FAC alleges "portions of the Presentation Package" developed by Plaintiff, which included "major and unique themes, a complete screenplay and trailer, distinctive character development and illustrations, as well as comprehensive budgets for an animated film that was extraordinarily singular in plot, sequence of events, themes, dialogue, mood and pace, settings and characters," was "granted Federal Copyright protection by the United States Patent and Trademark Office in 2004 and updated in 2014, containing approximately 203 pages of materials."  (FAC ¶

28.)  The FAC also attached as Exhibit B copies of a federal copyright registration dated May 25, 2004 for "visual material" created in 2003 titled "Bucky: an animated feature project," and a federal copyright registration dated December 5, 2014 for "revisions/additions to text" created in 2014 titled "Bucky The Surfer Boy."[9]  (*Id*. Ex. B.)

Notwithstanding the copyright registrations, Defendants argue Plaintiff has not adequately alleged ownership of the allegedly infringed works because the FAC alleges Plaintiff provided Defendant Marchick with a 321 page "Presentation Package" for the *Bucky* Works which includes some items dated after 2014 (*see id*. Ex. A), but the FAC alleges the material Plaintiff registered with the copyright office was only "approximately 203 pages of materials" and the registration was dated 2014 (*id*. ¶ 28).  However, the FAC alleges "portions of the Presentation Package" were registered with the copyright office, not all 321 pages of the Presentation Package.  (*See id*. ¶ 28.)

Defendants also contend Plaintiff "has failed to demonstrate what content those registrations [alleged in and attached to the FAC] cover, as he did not file the deposit materials."  Defendants cite no authority requiring a plaintiff to attach all deposit materials registered with the federal Copyright Office in order to adequately allege ownership for a copyright claim.  The issue of whether the deposited works are identical to Plaintiff's works he alleges have been infringed by Defendants is a factual issue not appropriate for resolution on the pleadings, and is not a basis for finding a failure to adequately allege ownership for purposes of a Rule 12(b)(6) motion to dismiss.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's copyright claim for failure to adequately allege ownership.

**(2)   Access**

---

[9] Plaintiff's copyrighted works are hereinafter referred to as the "*Bucky* Works."

Defendants also contend the FAC does not adequately allege any of the named defendants other than Defendants Marchick and Mandeville Films, Inc. had access to the *Bucky* Works.  "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009); *see also Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) ("Proof of access requires 'an opportunity to view or to copy plaintiff's work.'").  "Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." *Id.*

Here, the FAC alleges the following as to access:

1.  After Defendant Marchick executed a confidentiality agreement on October 22, 2003, Plaintiff "provided in confidence to Marchick extremely large quantities of intellectual property and trade secrets associated with *Bucky*" (FAC ¶ 29);

2.  "In or about January of 2005," Plaintiff "completed the Presentation Package (Exhibit "A" hereto) and delivered it to Marchick during an in-person meeting at Mandeville's offices located within the Disney studio facilities in Burbank, California" (*id*. ¶ 30);

3.  "Marchick was employed at the time by Mandeville, which had a 'first look' deal with Disney, which is a favored and highly sought-after relationship from the standpoint of an independent producer for the possible production and distribution of a theatrical feature product by a major studio" (*id*.);

4.  "At the [January 2005] meeting, Marchick told [Plaintiff] in words or substance that she would get the Presentation Package 'to the right people'" (*id*.);

5.  Plaintiff "provided the trailer [for the *Bucky* film] to Marchick and Mandeville in or about the middle of 2008" and "[l]ater during this period, . . . also provided Mandeville and Marchick, in addition to an updated fully animated concept trailer, with storyboards on a DVD, which at the time contained background image references, story development, character illustrations, executive summary, and other constituents to develop the film" (*id*. ¶¶ 31-32); and

6. "Because of the intimate association with Disney regarding the development of the project," Plaintiff "was assisted by Kurt Weldon, a writer affiliated with Disney, in completing the animated trailer," and after Plaintiff and Weldon "completed the final draft script for the trailer in July 2011, [Plaintiff] sent Marchick a copy of it while she was then working as a 'Consultant, Original Movies' at Disney" (*id.* ¶ 33); and

7. "Beginning in at least 2011 and continuing to the date of this Complaint, Defendants knowingly conspired with each other to develop, produce, distribute, sell and license products associated with both Disney and *Moana* that both infringe upon the copyrights of Plaintiff and otherwise violate Plaintiff's rights as alleged here" (*id.* ¶ 38).

The Ninth Circuit has recognized that "evidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access by the defendant." *Loomis*, 836 F.3d at 995. "[T]he dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access." *Id.* In contrast, "[b]are corporate receipt . . ., without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access." *Id.* at 995-96.

Here, Plaintiff has alleged more than "bare corporate receipt." Viewing the allegations in the FAC in the light most favorable of Plaintiff, the Court finds Plaintiff sufficiently alleges facts giving rise to a plausible inference that Defendants had access to Plaintiff's *Bucky* Works by alleging he met with Marchick and Mandeville on multiple occasions regarding his works, Marchick was employed by Mandeville who had a "first-look" deal with Disney to produce and distribute films and worked as a "Consultant, Original Movies" at Disney, Plaintiff worked with a writer affiliated with Disney to complete the animated trailer for the *Bucky* Works, Plaintiff sent Marchick the *Bucky* Works, and Marchick told Plaintiff she would get the Bucky Works "to the right people."[10]

---

[10] Defendants also argue neither Marchick nor her employer Mandeville Films, had any role in connection with *Moana* as reflected by the fact that neither of them received a credit in the *Moana* film. However, the fact that Marchick and Mandeville Films are not listed in the film credits does not demonstrate a failure to

*See, e.g., Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1149 (C.D. Cal. 2015), *aff'd sub nom. Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017).[11]

**(3)   Substantial Similarity**

Defendants also contend the Court should dismiss Plaintiff's copyright infringement claim because the works are not substantially similar as a matter of law.  In *Alfred v. Walt Disney Co.*, the Ninth Circuit held the district court erred in finding the parties' works were not substantially similar as a matter of law under the extrinsic test in granting the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), reasoning "[a]dditional evidence would help inform the question of substantial similarity" and "expert testimony would aid in determining whether the similarities Plaintiffs identify are qualitatively significant."  821 F. App'x at 729.  Therefore, consistent with the Ninth Circuit's opinion in *Alfred v. Walt Disney Co.*, the Court finds additional evidence such as expert testimony may help inform the question of substantial similarity in this case.  *Id.*  Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's copyright infringement claim (First Cause of Action) at this stage.[12]

_____

plead access.

[11] *See also Jordan-Benel v. Universal City Studios, Inc.*, 2015 WL 3888149, at *2 (C.D. Cal. June 24, 2015), *aff'd*, 859 F.3d 1184 (9th Cir. 2017).

[12] Defendants also argue the FAC does not allege "a viable claim" of direct copyright infringement against Defendants Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-to-Consumer & International, Disney Book Group, LLC, Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc. and Buena Vista Books, Inc. (collectively, the "Commercialization Entity Defendants") because the FAC does not identify any substantial similarities between the *Bucky* Works and any product produced or sold by any of these entities.  However, because the Court finds additional evidence such as expert testimony may help inform the question of substantial similarity in this case, *see* supra, the Court denies Defendants' motion to dismiss the copyright infringement claims against the Commercialization Entity Defendants.

1

### (4)   Contributory and Vicarious Copyright Infringement

Defendants argue the FAC does not allege any non-conclusory facts in support of Plaintiff's contributory or vicarious infringement claims.  Plaintiff contends because Defendants are "members of the distribution chain," Plaintiff may choose to sue them for direct infringement, vicarious infringement or contributory infringement based on the theory that they are jointly and severally liable along with the other defendants.

The Copyright Act provides "two or more infringers are liable jointly and severally" for statutory damages.  17 U.S.C. § 504(c).  Court have held members of the distribution chain of allegedly infringing products can be jointly and severally liable for the infringing conduct.  *See Costello Pub. Co. v. Rotelle*, 670 F.2d 1035, 1043 (D.C. Cir. 1981) ("Courts have long held in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tort-feasor.").[13]  Here, the FAC alleges Defendants The Walt Disney Company, Walt Disney Pictures and Walt Disney Animation Studios (collectively, the "Conglomerate Entity Defendants") "assur[ed] the exploitation, development and release of the [infringing *Moana*] movie into theatrical and secondary markets," and the Commercialization Entity Defendants "assur[ed] and implement[ed] the production and distribution of products derived from the [infringing *Moana*] motion picture on a national and worldwide basis," and the wrongful conduct resulted in "stolen assets . . . in the sum of nearly $1 billion" at the time the complaint was filed.  (FAC ¶ 38d.) Therefore, the Court denies Defendants' motion to dismiss the direct, contributory/vicarious copyright infringement claims against the Commercialization Entity Defendants.

---

[13] *See also Atari Interactive, Inc. v. Redbubble, Inc.*, 2021 WL 706790, at *5 (N.D. Cal. Jan. 28, 2021); *Gray v. Perry*, 2020 WL 1275221, at *15 (C.D. Cal. Mar. 16, 2020); *Rsch. In Motion, Ltd. v. LG Elecs. Mobilecomm U.S.A., Inc.*, 2008 WL 11336161, at *4 (C.D. Cal. Mar. 25, 2008).

**D.     Fraud Claims (Fourth, Fifth and Sixth Cause of Action)**

Defendants move to dismiss Plaintiff's fourth, fifth and sixth causes of action assert fraud, fraudulent concealment, and false promises, respectively, on the ground the FAC fails to plead fraud with sufficient particularity.[14]

As to fraud, the FAC alleges:

1.   "The fraud included the execution of agreements induced by classic fraud and deceit, as well as repeated follow-up inducements designed to extract from Woodall as much of his intellectual property and other trade secrets as was necessary for the Defendants to succeed in their desire to secretly make *Moana* through the illegal stratagem of literally poaching from Woodall every material idea ultimately associated with the film. In perfecting their scheme, the Defendants were even able to delay and stall Woodall's discovery of the fraud by writing him misleading emails and otherwise duping him with communications containing even more false representations, such as their deception in feigning ignorance about whether the extensive trade secret information delivered to them by Woodall from and after 2003, used by the Defendants to make *Moana*, ever "went beyond [the] desk" of Marchick."  (FAC ¶ 26);

2.   "On October 22, 2003, Marchick executed a document entitled Confidentiality Agreement whereby Marchick confirmed that all information provided to her by Woodall -- operating at the time through a *dba* entity known as Buck Creations Multimedia -- is and shall remain confidential. . . . It was only after Marchick executed the Confidentiality Agreement that Woodall provided in confidence to Marchick extremely large quantities of intellectual property and trade secrets associated with *Bucky*. At all times thereafter, and totally ignorant of Marchick's and the Defendants' fraudulent scheme set forth in this Complaint, Woodall reasonably believed Marchick to be honoring the Confidentiality Agreement and respecting the ownership by Woodall of his intellectual property and trade secrets associated with *Bucky*."  (*Id.* ¶ 29);

3.   "Beginning on October 22, 2003 and continuing repeatedly until Disney's release of *Moana* in November of 2016, Defendant Marchick, operating in conjunction and with the express ratification and approval of all other Defendants named in this Complaint, represented to Woodall orally and in writing

---

[14] Defendants also argue Plaintiff's fraud claims fail because no materials from Plaintiff's *Bucky* Works were used in *Moana*, relying on their arguments that the works are not substantially similar.  Because the Court finds additional evidence such as expert testimony may help inform the question of substantial similarity in this case, *see* supra, the Court denies Defendants' motion to Plaintiff's fraud claims on this ground.

that the confidentiality of all materials provided her by Woodall relative to *Bucky* would be honorably maintained and not violated by her in any manner." (*Id*. ¶ 83);

4.   "Beginning on October 22, 2003 and continuing repeatedly until the Defendants' release of *Moana*, Marchick, operating in conjunction and with the express ratification and approval of all other Defendants named in this Complaint, represented to Woodall that his accelerated delivery of materials to the Defendants relative to the film project *Bucky*, including for example the final script prepared by Woodall, were being delivered so that the Defendants could evaluate and then assist Woodall in commercializing *Bucky* in a successful manner." (*Id*. ¶ 84);

5.   In or about January of 2005, following Marchick's prodding of Woodall to deliver more material regarding *Bucky* and her repeated assurances that she could and would assist in commercializing the film, Woodall completed the Presentation Package (Exhibit "A" hereto) and delivered it to Marchick during an in-person meeting at Mandeville's offices located within the Disney studio facilities in Burbank, California. . . . At the meeting, Marchick told Woodall in words or substance that she would get the Presentation Package 'to the right people.'" (*Id*. ¶ 30);

6.   "After Marchick's review of the Presentation Package shortly following the January 2005 meeting, Marchick prodded Woodall to produce and provide to Mandeville an animated trailer of the Presentation Package by continuing to assure Woodall that Marchick could and would obtain successful commercialization of Woodall's ideas. During the two years that followed this inducement, Woodall worked on and completed a comprehensive animated trailer at his own cost and expense and Woodall then provided the trailer to Marchick and Mandeville in or about the middle of 2008." (*Id*. ¶ 31);

7.   "Later during this period, at Marchick's prodding and inducement, Woodall also provided Mandeville and Marchick, in addition to an updated fully animated concept trailer, with storyboards on a DVD, which at the time contained background image references, story development, character illustrations, executive summary, and other constituents to develop the film." (*Id*. ¶ 32);

8.   "Based upon Marchick's continuing fraud, deceit and prodding him to deliver script materials, Woodall then worked on completing his script for submission to Marchick. . . . After Woodall and Weldon completed the final draft script for the trailer in July 2011, Woodall sent Marchick a copy of it while she was then working as a 'Consultant, Original Movies' at Disney. Unbeknownst to Woodall at the time, the script Marchick prodded Woodall to complete was virtually the final cog in the Defendants' conspiratorial machinery of stealing *Bucky* and developing *Moana*." (*Id*. ¶ 33);

9.   "In order to assure that Woodall continued to deliver all of his *Bucky*-related ideas to and into the Defendant's fraudulent scheme, Marchick repeatedly and systematically concealed the scheme and lied to Woodall in order to both induce him to transfer his intellectual property and trade secrets to her as well as to assure that Woodall wouldn't find out the truth until after *Moana* was released and the fraudulent object of the conspiracy, i.e., the development and realization of more than a billion dollars in profit, was realized." (*Id*. ¶ 38b); and

10.  "In these ways, Woodall relied on the statements and inducements of Marchick and the Defendants and his reliance was reasonable under all circumstances existing during the time he was delivering valuable intellectual property to the defendants and at all times up to the production and release of *Moana*." (*Id*. ¶ 88.)

Defendants argue the FAC's fraud allegations fail to "meaningfully differentiate among all the Defendants" and instead lump multiple defendants together.  However, the FAC alleges Marchick was "operating in conjunction and with the express ratification and approval of all other Defendants named in this Complaint" when she made her allegedly fraudulent statements and allegedly concealed/misrepresented facts to Plaintiff.  (*See* FAC ¶¶ 83, 84.)  Moreover, Plaintiff would not have knowledge of each defendant's specific role in producing, the Moana film at this stage without additional discovery.  *See, e.g., Heller v. NBCUniversal, Inc.*, 2016 WL 6573985, at *3 (C.D. Cal. Mar. 30, 2016) (rejecting defendants' motion to dismiss insofar as it sought dismissal of plaintiff's claims on the ground of improper "group pleading," reasoning "it is simply not possible for Plaintiff to be more specific about the role each Defendant played in producing the Film without discovery").[15]  Therefore, the Court does not dismiss Plaintiff's fraud claims at this stage based on the FAC's purported improper "group pleading."

However, Defendants also contend Plaintiff fails to allege the who, what when, where and how of the alleged fraud.  The FAC refers to misleading emails

---

[15] *See also Tivoli LLC v. Sankey*, 2015 WL 12683801, at *4 (C.D. Cal. Feb. 3, 2015); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2016 WL 6601662, at *10 (C.D. Cal. Feb. 3, 2016).

and other "communications containing even more false representations" (FAC ¶ 26), but does not allege facts about who sent the emails/communications, what was stated or when.  Moreover, instead of alleging particular facts and circumstances about the alleged fraud, the FAC repeatedly alleges in general terms that Marchick "prodded," "concealed," "lied," engaged in "fraud," "deceit," "inducement" and "duping" but fails to plead with particularity the what, when, where and how of these allegedly fraudulent acts by Marchick.[16]  Accordingly, the Court dismisses Plaintiff's fraud claims for failure to satisfy Rule 9(b)'s particularity pleading requirements, with leave to amend.  *See* Fed. R. Civ. P. 9(b); *Kearn*, 567 F.3d at 1124.

## E.    Tortious Interference with Contractual Relations (Seventh Cause of Action)

Plaintiff's seventh cause of action for tortious interference with contractual relations is based on Defendant Marchick's alleged "oral representations . . ., both upon signing the confidentiality agreement on October 22, 2003 and on innumerable occasions thereafter, . . . that she intended to and was in fact honoring the confidentiality of [Plaintiff's] proprietary materials related to *Bucky* as it was initially envisioned by [Plaintiff] and later including the Presentation Package, the final draft script and the trailer delivered to Marchick afterwards."  (FAC ¶ 108.) The FAC alleges "[t]he confidentiality agreement coupled with Marchick's surrounding oral representations constituted a valid contract with [Plaintiff]" (*id*. ¶ 109), and Defendants The Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios, Disney Enterprises, Inc., and Mandeville "intentionally used their monetary power over Marchick to induce her to totally disrupt her contractual obligations to [Plaintiff]" by "push[ing] Marchick to assist

---

[16] The only specific statement alleged in the FAC made by Marchick is that she would get the Presentation Package "to the right people" during an in person meeting at Mandeville's offices "in or about January of 2005." (FAC ¶ 30.)

them in extracting an ever-increasing number of film-related materials for *Moana* from [Plaintiff] with the intention of profiting therefrom in the ultimate form of billions of dollars and with the intention of totally excluding [Plaintiff]" (*id*. ¶ 111), which resulted in a "breach of the Confidentiality Agreement Marchick signed" (*id*. ¶ 112).

Defendants argue Plaintiff's tortious interference with contractual relations claim is barred by applicable two year statute of limitations set forth in Cal. Code Civ. Proc. § 339 because the *Moana* film was released in theaters in November 2016, and the FAC was filed almost 4 years later on July 22, 2020.[17]  Although the FAC alleges a breach of the written confidentiality agreement signed by Marchick, the FAC also alleges "[t]he confidentiality agreement coupled with Marchick's surrounding oral representations constituted a valid contract" for purposes of Plaintiff's interference with contractual relations claim.  (FAC ¶ 109.)  Therefore, the two-year statute of limitations for oral contracts under California law applies to Plaintiff's interference with contractual relations claim.  *See* Cal. Code Civ. Proc. §339 ("An action upon a contract, obligation or liability not founded upon an instrument of writing" must be brought within two years.).

Plaintiff argues his tortious interference with contractual relations claim is not time-barred because the FAC does not allege there is a single incident that caused Plaintiff's harm and "there is a continuing or recurring obligation by Defendants," and therefore the two-year statute of limitations is tolled under the continuing-violation and continuous accrual doctrines.  However, the continuing violation doctrine does not apply here because Plaintiff alleges he was aware of Defendants' alleged wrongful conduct in June 2017.[18]  *See Aryeh v. Canon Bus.*

---

[17] The original complaint, filed in April 2020, did not assert a claim for interference with contractual relations.

[18] *See* FAC ¶ 36 (alleging "through the late June 2017 viewing of *Moana* on DVD and examining the subsequent explanation by the Defendants of how they made *Moana* as well as studying public record information disseminated by persons associated with *Moana's* production and release, was [Plaintiff] able to discover

*Sols., Inc.*, 55 Cal. 4th 1185, 1198 (Cal. 2013) (finding continuing violation doctrine did not apply where the plaintiff "concedes he was aware of, recognized as wrongful, and was recording as early as 2002, Canon's allegedly fraudulent and unfair acts," reasoning "this [is not] a case in which a wrongful course of conduct became apparent only through the accumulation of a series of harms").

As to the "continuous accrual" theory, Marchick's obligation to keep Plaintiff's *Bucky* Works confidential pursuant to the confidentiality agreement was a continuing obligation, susceptible to recurring breaches. *See Aryeh*, 55 Cal. 4th at 1198; *IOSM, Inc. v. Martinez*, 2020 WL 1666567, at *3 (S.D. Cal. Apr. 3, 2020). However, the continuous accrual theory would only permit Plaintiff to sue for "discrete acts occurring within" the two-year statute of limitations period prior to filing his interference with contractual relations claim on July 22, 2020 (i.e., conduct occurring from July 22, 2018 through July 22, 2020). Here, the FAC fails to allege any breach of the confidentiality agreement occurred during the two years preceding the filing of the FAC, and thus Plaintiff's interference with contractual relations claim is barred by the statute of limitations.[19] *Cf. Aryeh*, 55 Cal. 4th at 1201 (finding the continuous accrual doctrine applied to the plaintiff's UCL claim because the defendants had a continuing obligation not to impose unfair charges in monthly bills, and that each alleged unfair charge in each monthly bill triggered a new four-year statute of limitations, and concluding "[b]ecause the complaint alleges excess charges within the four year[] [applicable limitations period for the plaintiff's UCL claim] preceding suit, it is not

---

the actual violations of law complained of herein through comparing these materials of the Defendants, on the one hand, with the Presentation Package and other materials he had provided to the Defendants since 2003, on the other hand.").

[19] The FAC alleges *Moana* was released into theatrical distribution in November 2016 and released on DVD and Blue Ray worldwide in March 2017. (FAC ¶¶ 26, 34, 36.) Therefore, any damages from breach of the confidentiality agreement based on the release of the *Moana* film in 2016 and 2017 would not be recoverable under the continuous accrual theory.

1  completely barred by the statute of limitations").

2      Accordingly, the Court dismisses Plaintiff's tortious interference with

3  contractual relations claim with leave to amend to allege a breach, if any, that

4  occurred within the two years before the FAC was filed.

5  **F.    Accounting**

6      Plaintiff asserts a claim for accounting of "expenses, monies, profits, and

7  other things of value arising on account of the misconduct of the Defendants"

8  (FAC ¶ 116) as his eighth "cause of action."  The Court dismisses Plaintiff's

9  accounting claim because a demand for accounting is a remedy, not an

10 independent cause of action.  *See Depot, Inc. v. Caring for Montanans, Inc.*, 915

11 F.3d 643, 663 (9th Cir. 2019).[20]

12 **G.    Trade Secrets Claims (Second and Third Causes of Action)**

13     Plaintiff's second and third causes of action assert violation of the Defend

14 Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, and California Uniform

15 Trae Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 *et seq*.  The FAC alleges

16 "all materials delivered regarding *Bucky* as well as the Presentation Package" were

17 Plaintiff's trade secrets, which Defendants used "for profit in their motion picture

18 businesses."  (FAC ¶ 56.)[21]  Defendants argue the alleged information upon which

19 Plaintiff's trade secrets claims are based do not quality as trade secrets under

20 either the DTSA or the CUTSA "because plaintiff did not keep such information

21 secret."

22     The DTSA defines a "trade secret" as information that "the owner thereof

23

24 _____

[20] *See also Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940824, at *9 (C.D. Cal. Mar. 8, 2018); *Arango v. Recontrust Co.*, 2010 WL 2404652, at *3 (S.D. Cal. June 14, 2010).

26 [21] Defendants' contention that they did not use any of Plaintiff's alleged trade secrets because no *Bucky* material was used in *Moana* turns on whether the works are substantially similar.  Because the Court finds additional evidence such as expert testimony may help inform the question of substantial similarity in this case, *see supra*, the Court denies Defendants' motion to Plaintiff's trade secret claims on this ground.

1   has taken reasonable measures to keep ... secret" and that "derives independent

2   economic value, actual or potential, from not being generally known to ... another

3   person who can obtain economic value from the disclosure or use of the

4   information." 18 U.S.C. § 1839(3).  Similarly, to qualify as a trade secret under

5   the CUTSA, the information "must be secret, and must not be of public

6   knowledge or of a general knowledge in the trade or business."  *DVD Copy*

7   *Control Ass'n, Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (Cal. Ct. App. 2004)

8   (internal quotation marks omitted).

9        Plaintiff's original complaint alleged that in 2008, he "provided to

10   Mandeville a fully animated concept trailer and storyboards on a DVD along with

11   his website address, which at the time contained background image references,

12   story development, character illustrations, executive summary, and more, all

13   comprising the Presentation Package." (Compl. ¶ 3.)  Defendants submitted

14   copies of printouts from Plaintiff's website from 2006 and 2009 which include

15   material from Plaintiff's Bucky Works that were posted on Plaintiff's website.

16   (Defendants' Request for Judicial Notice Exs. C, D.)  Defendants therefore argue

17   Plaintiff's trade secrets claims fail because Plaintiff conceded in his original

18   complaint that "much of the information that he now alleges is a 'trade secret' was

19   publicly available on his website."  Plaintiff argues the fact that Plaintiff placed

20   some of the alleged trade secrets information on his website "will not suffice to

21   warrant dismissal" because Plaintiff "prominently posted a confidentiality

22   agreement to restrict use of information posted on his websites."  However, the

23   Confidentiality Agreement on the website is not signed, the agreement does not

24   provide that any visitors viewing Plaintiff's website are bound by the agreement,

25   and Plaintiff does not argue nor demonstrate that third parties viewing Plaintiff's

26   website actually executed the Confidentiality Agreement.[22]  *See KEMA, Inc. v.*

27   _____

28   [22] The Confidentiality Agreement which was available on Plaintiff's website
     states:  "The undersigned acknowledges that any information provided by Buck
     Creations Multimedia is confidential.  It is acknowledged by the signer that any

1   *Koperwhats*, 2010 WL 3464708, at *4 (N.D. Cal. Sept. 1, 2010) ("the failure to

2   secure non-disclosure agreements from others in possession of any remaining

3   portions [not deposited with the Copyright Office] is fatal to a trade secret claim").

4   Therefore, the fact that Plaintiff's Confidentiality Agreement was posted on his

5   website does not demonstrate Plaintiff kept information secret that was publicly

6   available on his website.  Accordingly, the information regarding the *Bucky*

7   Works publicly available on Plaintiff's website are not trade secrets.

8          Defendants also argue since the FAC alleges at least 203 pages of the

9   Presentation Package Plaintiff alleges he provided to Marchick was deposited with

10  the Copyright Office in connection with Plaintiff's copyright registrations (FAC ¶

11  28), such information cannot be a trade secret.  "Courts have consistently denied

12  the existence of a trade secret where, . . . the claimed trade secret is submitted

13  without redaction for registration with the United States Copyright Office."

14  *Manchester v. Sivantos GmbH*, 2019 WL 3531419, at *4 (C.D. Cal. Aug. 2,

15  2019).[23]  Plaintiff argues publication of only a portion of his trade secrets with the

16  Copyright Office does not relieve Defendants of liability for trade secrets

17  violations.  However, the FAC does not specifically allege what information was

18  made publicly available by Plaintiff in connection with Plaintiff's deposit of

19  materials with the Copyright Office for his copyright registrations, nor specify

20  what information was made publicly available by Plaintiff on his website.

21  Therefore, neither the Court nor Defendants can determine what trade secrets are

22  alleged to have been misappropriated by Defendants based on the allegations in

23  the FAC.  Accordingly, the Court finds Plaintiff fails to allege sufficient facts that

24

25  _____

25  information furnished is in all respects confidential in nature, other than
    information which is in the public domain through other means, and that any
26  disclosure or use of same by signer may cause serious harm or damage to Buck
    Creations Multimedia."  (Plaintiff's Request for Judicial Notice Ex. E.)

27  [23] *See also Siegler v. Sorrento Therapeutics, Inc.*, 2019 WL 581719, at *11 (S.D.
    Cal. Feb. 13, 2019); *Mobile Active Defense, Inc. v. Los Angeles Unified Sch. Dist.*,
28  2015 WL 12860491, at *5 (C.D. Cal. 2015).

he had any protectable trade secrets to state a claim under the DTSA and CUTSA, and dismisses Plaintiff's trade secrets claims with leave to amend.[24]  *See Siegler v. Sorrento Therapeutics, Inc.*, 2019 WL 581719, at *11 (S.D. Cal. Feb. 13, 2019) (granting motion to dismiss trade secrets claim, finding "[b]y registering both of her articles with the Copyright Office, and by neglecting to specify the particular trade secrets alleged to have been misappropriated, Plaintiff has failed to allege that she possessed any trade secrets.").[25]

## H.    Defendants' Motion for Rule 11 Sanctions

Defendants move for Rule 11 sanctions against Plaintiff for asserting trade secrets claims on the ground those claims "are neither warranted under existing law nor supported by the relevant facts" because the material was "publicly available."  Defendants argue "the Complaint and the FAC state that plaintiff deposited a ***substantial portion*** of the material with the Copyright Office in connection with his 2004 and 2014 copyright registrations," and "plaintiff posted a ***substantial amount*** of that material on his website."  (Defendants' Sanctions Motion at 1 (emphasis added).)  Defendants also submit evidence demonstrating Plaintiff entered materials from his *Bucky* Works in a public pitch contest in 2006 run by Animation Magazine.  (Trujillo-Jamison Decl. Ex. 3.)[26]  Defendants therefore contend "Plaintiff and his counsel knew that the allegation that plaintiff kept his *Bucky* project secret was false when they filed the Complaint and the FAC."  Plaintiff argues "the *Bucky* materials attached to the FAC comprises

---

[24] To the extent Plaintiff seeks to amend the complaint to assert trade secret claims, Plaintiff must allege what information Plaintiff contends is a trade secret, consistent with this Court's ruling that information deposited with the Copyright Office, made publicly available on Plaintiff's website, or otherwise made publicly available cannot constitute a trade secret.

[25] *See also Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018); *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013).

[26] Defendants provide no information regarding what materials Plaintiff actually entered into the pitch contest.

1    numerous scripts, treatments and other materials alleged to have been purloined by

2    Defendants over the course of several years and ***far exceed*** the contents of the

3    '2004 and 2014 copyright registrations' and website content."  (Emphasis added.)

4         As noted by Defendants, only a "portion" of Plaintiff's alleged trade secrets

5    was deposited with the Copyright Office in connection with Plaintiff's copyright

6    registrations and posted on Plaintiff's website.  While materials publicly deposited

7    with the Copyright Office and made available on Plaintiff's website cannot

8    constitute a trade secret, this Order grants Plaintiff leave to amend to allege facts

9    regarding information that was not made publicly available by Plaintiff which may

10    form the basis for Plaintiff's trade secrets claim.  (*See* supra.)  Therefore,

11    Plaintiff's trade secrets claims are not "clearly frivolous, legally unreasonable or

12    without legal foundation" so as to warrant Rule 11 sanctions.  *Operating*

13    *Engineers Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).

## IV.   CONCLUSION

15        Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART**

16    Defendants' Motion to Dismiss Plaintiff's First Amended Complaint as follows:

       **1.**    Defendants' Motion to Dismiss Plaintiff's copyright infringement claim (First Cause of Action) is **DENIED**;

       **2.**    Defendants' Motion to Dismiss Plaintiff's federal and state trade secrets claim (Second and Third Causes of Action) is **GRANTED** with leave to amend;

       **3.**    Defendants' Motion to Dismiss Plaintiff's fraud, fraudulent concealment and false promise claims (Fourth, Fifth and Sixth Causes of Action) for failure to plead with sufficient particularity under Rule 9(b) is **GRANTED** with leave to amend;

       **4.**    Defendants' Motion to Dismiss Plaintiff's tortious interference with contractual relations claim (Seventh Cause of Action) is **GRANTED** with leave to amend; and

       **5.**    Defendants' Motion to Dismiss Plaintiff's accounting claim (Eighth "Cause of Action") is **GRANTED** because it is not a cause of action.

27    Defendants' Motion for Rule 11 Sanctions is **DENIED**.

28    Plaintiff's request for sanctions set forth in his opposition to Defendants'

Motion for Rule 11 Sanctions is denied without prejudice.[27]

      **IT IS SO ORDERED.**

DATED:  April 14, 2021.

                              HON. CONSUELO B. MARSHALL
                              UNITED STATES DISTRICT JUDGE

---

[27] *See* Fed. R. Civ. Proc. 11(c) ("A motion for sanctions must be made separately from any other motion" and requires notice be given).