UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Buck G. Woodall, a.k.a. Buck Woodall, an individual,<br><br>   Plaintiff,<br><br>v.<br><br>The Walt Disney Company *et al.*,<br><br>   Defendants. | Case No.:  CV 20-3772-CBM-(Ex)<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S SECOND AMENDED COMPLAINT [95]** |

The matter before the Court is Defendants'[1] Motion to Dismiss Second, Third and Fourth Causes of Action in Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6). (Dkt. No. 95 (the "Motion").)  The matter is fully briefed.  (Dkt. Nos. 96, 97.)

## I. BACKGROUND

This action arises from Defendants' alleged unauthorized use of Plaintiff

---

[1] Defendants are The Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios, Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-to-Consumer & International, Disney Book Group, LLC, Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc., Buena Vista Books, Inc., Mandeville Films, Inc., Jenny Marchick, and Pamela Ribon (collectively, "Defendants").

1

Buck Woodall's (hereinafter, "Plaintiff's" or "Woodall's") "Bucky" and "Bucky the Wave Warrior" animated film projects in connection with the Disney animated film *Moana*. The First Amended Complaint ("FAC"), filed as a matter of right, alleged eight causes of action: (1) copyright infringement, 17 U.S.C. § 501 *et seq*.; (2) violations of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836; (3) violations of the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq*.; (4) fraud; (5) fraudulent concealment; (6) false promises; (7) tortious interference with contractual relations; and (8) accounting. (Dkt. No. 18.) On April 14, 2021, the Court granted in part and denied in part Defendants' Motion to Dismiss the FAC as follows: 1) Defendants' Motion to Dismiss Plaintiff's copyright infringement claim (First Cause of Action) was denied; 2) Defendants' Motion to Dismiss Plaintiff's federal and state trade secrets claim (Second and Third Causes of Action) was granted with leave to amend; 3) Defendants' Motion to Dismiss Plaintiff's fraud, fraudulent concealment and false promise claims (Fourth, Fifth and Sixth Causes of Action) for failure to plead with sufficient particularity under Rule 9(b) was granted with leave to amend; 4) Defendants' Motion to Dismiss Plaintiff's tortious interference with contractual relations claim (Seventh Cause of Action) was granted with leave to amend; and 5) Defendants' Motion to Dismiss Plaintiff's accounting claim (Eighth "Cause of Action") was granted because it is not a cause of action. (Dkt. No. 91 (the "Order").)

On May 28, 2021, Plaintiff filed a Second Amended Complaint ("SAC") asserting the following causes of action: (1) copyright infringement, 17 U.S.C. § 501 *et seq*.; (2) violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836; (3) violations of the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq*.; (4) fraud; and (5) false promises. (Dkt. No. 94.) Defendants now move to dismiss Plaintiff's federal and state trade secrets and fraud claims (second, third, and fourth causes of action, respectively).

## II. STATEMENT OF THE LAW

### A. Fed. R. Civ. Proc. 8 and 12(b)(6)

Federal Rule of Civil Procedure 8 requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a). Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal of a complaint may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). On a motion to dismiss for failure to state a claim, courts accept as true all well-pleaded allegations of material fact and construes them in a light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555. Labels and conclusions are insufficient to meet the Plaintiff's obligation to provide the grounds of his or her entitlement to relief. *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

A court may consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice in ruling on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Materials whose contents are alleged in the complaint may also be considered by the Court for purposes of a motion to dismiss. *See Thomas v. Walt Disney Co.*, 337 Fed. App'x. 694, 694-95 (9th Cir. 2009); *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

B. **Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) governs all claims sounding in fraud, and requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), Plaintiff must plead facts regarding the "who, what, when, where, and how" of the alleged misconduct. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).

### III. DISCUSSION

A. **Trade Secrets**

Plaintiff's second and third causes of action assert violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, and California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 *et seq*.

    1. **Publicly Available Information**

The DTSA defines a "trade secret" as information that "the owner thereof has taken reasonable measures to keep ... secret" and that "derives independent economic value, actual or potential, from not being generally known to ... another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). Similarly, to qualify as a trade secret under the CUTSA, the information "must be secret, and must not be of public knowledge or of a general knowledge in the trade or business." *DVD Copy Control Ass'n, Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (Cal. Ct. App. 2004) (internal quotation marks omitted).

The Court previously found information regarding Plaintiff's Bucky works which were publicly available on Plaintiff's website or deposited with the Copyright Office were not trade secrets. (Order at 18-21.) Because the FAC did not specify what information was made publicly available by Plaintiff in

connection with Plaintiff's deposit of materials with the Copyright Office or on Plaintiff's website, the Court could not determine what trade secrets were alleged to have been misappropriate by Defendants based on the allegations in the FAC. (*Id*. at 20.) Accordingly, the Court held Plaintiff failed to allege sufficient facts that he had any protectable trade secrets to state a claim under the DTSA and CUTSA, and dismissed Plaintiff's federal and state trade secret claims with leave to amend. (*Id*. at 21.)

Defendants now move to dismiss Plaintiff's federal and trade secret claims asserted in the SAC on the ground the "trade secrets" as defined in the SAC still includes material Plaintiff has claimed is copyrighted or material that was publicly available on Plaintiff's websites. Defendants thus contend Plaintiff fails to state a claim for violation of the DTSA and CUTSA because like the FAC, "neither the Court nor Defendants can determine what trade secrets are alleged to have been misappropriated by Defendants based on the allegations in the [SAC]."

Here, the SAC alleges "The project known as Bucky, including but not limited to the trailer and 2011 script, when considered alongside and in combination with the copyrighted materials and all other materials and ideas of Woodall referenced throughout this Complaint, including those at Exhibit 'A' hereto, are legally classified as trade Secrets" and "[a]ll materials delivered by Woodall to the Defendants from and after 2003 are therefore trade secrets as a matter of law and are referred to in this Complaint as 'Woodall Trade Secrets' inasmuch as they are of extraordinary combinational value regardless of the extent to which some of them were copyrighted in order to protect the overall film project known as *Bucky*." (SAC ¶ 65 (emphasis added).)

Based on the SAC's allegations, Plaintiff's alleged trade secrets include copyrighted materials submitted to the U.S. Copyright Office which courts have found cannot constitute trade secrets. *See Manchester v. Sivantos GmbH*, 2019 WL 3531419, at *4 (C.D. Cal. Aug. 2, 2019); *Siegler v. Sorrento Therapeutics,*

*Inc.*, 2019 WL 581719, at *11 (S.D. Cal. Feb. 13, 2019); *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018); *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013).[2] However, Plaintiff argues for the first time that because the SAC alleges the trailer is part of his trade secrets and the trailer was never submitted to the Copyright Office, Plaintiff has pled sufficient facts to state a claim for trade secrets,[3] relying on *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020).

In *InteliClear*, the district court held InteliClear "failed to sufficiently identify which elements of [the plaintiff's securities tracking database] were allegedly trade secrets" and thus granted summary judgment in favor of the defendant on the plaintiff's federal and state trade secrets claims before discovery had proceeded on the basis that the plaintiff failed "to state the alleged trade secrets with sufficient particularity." 978 F.3d at 657. The plaintiff appealed. On appeal, the Ninth Circuit noted: "The plaintiff 'should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.'" *Id*. at 658. "Plaintiffs must 'clearly refer to tangible trade secret material,'" "Plaintiffs may not simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial," and "[i]t is inadequate for plaintiffs to 'cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information.'" *Id*. (citations omitted). The Ninth Circuit, however, reversed the district court's grant of summary judgment in favor of the defendant, holding "there is a genuine issue of material fact as to whether InteliClear identified its trade secrets with sufficiently particularity" because "[a] reasonable jury could conclude that the uniquely

---

[2] *See also Mobile Active Defense, Inc. v. Los Angeles Unified Sch. Dist.*, 2015 WL 12860491, at *5 (C.D. Cal. 2015).

[3] Plaintiff did not raise this argument in response to Defendants' motion to dismiss Plaintiff's trade secrets claims asserted in the FAC.

designed tables, columns, account number structures, methods of populating table data, and combination or interrelation thereof, are protectable trade secrets." *Id*. at 659. The Ninth Circuit noted the plaintiff had "identified aspects of its database logic and architecture with enough specificity to create a triable issue of fact," "[r]ather than using 'catchall' phrases or merely identifying categories of information" because the plaintiff had submitted a declaration under seal which "specified the program processes, tables, columns, and account identifiers from its SQL database that it considered trade secrets." *Id*. Accordingly, the Ninth Circuit concluded "[a]t this stage, particularly where no discovery whatsoever had occurred, . . . [the plaintiff's] burden is only to identify at least one trade secret with sufficient particularity to create a triable issue." *Id*.

Defendants do not address the Ninth Circuit's *InteliClear* decision in their reply, and instead argue Plaintiff fails to identify what information was registered with the U.S. Copyright Office or maintained confidential, including what information was registered or otherwise made publicly available from the *Bucky* trailer. Defendants also argue the SAC does not correct the deficiency identified in the Court's Order by specifying what information was made publicly available on Plaintiff's website.

Defendants request that the Court take judicial notice of images from the archives of one of Plaintiff's websites which includes images from Plaintiff's trailer. (Defendants' Request for Judicial Notice, Ex. A.) Plaintiff does not object to the Court taking judicial notice "solely of the fact that certain images existed on a website at one point." (Dkt. No. 98.)[4] Accordingly, the Court grants Defendants' request to take judicial notice of the still images from the archives of Plaintiff's website. However, even after taking judicial notice of the still images from the trailer which were at some point in time available on Plaintiff's website,

---

[4] Defendants filed a response to Plaintiff's response to Defendants' request for judicial notice. (Dkt. No. 99.)

7

there is nothing before the Court demonstrating Plaintiff's entire trailer was publicly available.

Therefore, applying the *InteliClear* decision's holding in this case, Plaintiff's burden "is only to identify at least one trade secret with sufficient particularity." 978 F.3d at 659. Here, the SAC alleges "[t]he project known as *Bucky*, including but not limited to the trailer and 2011 script, when considered alongside and in combination with the copyrighted materials and all other materials and ideas of Woodall referenced throughout this Complaint, including those at Exhibit 'A' hereto, are legally classified as trade Secrets" and "[a]ll materials delivered by Woodall to the Defendants from and after 2003" are trade secrets (SAC ¶ 65). Accordingly, the Court finds, consistent with the Ninth Circuit's *InteliClear* decision, that at this stage, particularly where no discovery has occurred, Plaintiff has alleged the trailer and the 2011 script were not copyrighted, and thus satisfied his burden "to identify at least one trade secret with sufficient particularity." *InteliClear*, 978 F.3d at 659.

### 2. Combinational Works

The SAC also alleges various Bucky materials combined constitute a trade secret (*see* SAC ¶¶ 59, 63, 65). Plaintiff thus argues he pleads sufficient facts to state a claim under the federal and state trade secrets law based on a "combination" theory.[5] The Ninth Circuit has recognized "a trade secret may consist of a compilation of data, public sources or a combination of proprietary and public sources." *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016). Defendants argue Plaintiff's "combination" theory for a trade secret fails because it consists of everything Plaintiff ever provided to Defendant Marchick regarding *Bucky*, in addition to including "material registered for the copyright and otherwise disclosed to the public."

---

[5] Plaintiff did not raise this argument in response to Defendants' motion to dismiss Plaintiff's trade secrets claims asserted in the FAC.

As discussed above, however, as the Ninth Circuit held in *InteliClear*, Plaintiff's burden at this stage, where no discovery has taken place, "is only to identify at least one trade secret with sufficient particularity." 978 F.3d at 659. Therefore, irrespective of whether Plaintiff had a "combination" of proprietary and public information which may constitute a trade secret, Plaintiff has alleged the trailer and the 2011 script are trade secrets which were not copyrighted, and thus satisfies his burden "to identify at least one trade secret with sufficient particularity." *InteliClear*, 978 F.3d at 659.

### 3. Reasonable Measures to Keep Information Secret

Defendants also argue Plaintiff's trade secrets claims fail because Plaintiff did not take reasonable efforts to keep the information secret. Defendants contend although Plaintiff alleges he believed Defendant Marchick was going to show his *Bucky* material to third parties (*see* SAC ¶ 30 (alleging Plaintiff delivered material regarding *Bucky* in or about January 2005 to Defendant Marchick who told Plaintiff she would get the materials "to the right people")), Plaintiff never contacted those third parties to have them sign a confidentiality agreement.

18 U.S.C. §1839(3)(a) requires that a trade secret owner take "reasonable measures to keep such information secret." Moreover, Cal. Civ. Code §3426.1(d)(2) provides that the trade secret owner must make "efforts that are reasonable under the circumstances to maintain its secrecy." Courts have found trade secret claims fail as a matter of law where the trade secret owner fails to obtain a non-disclosure agreement from persons receiving the purported trade secret information. *See, e.g., KEMA, Inc. v. Koperwhats*, 2010 WL 3464708, at *4 (N.D. Cal. Sept. 1, 2010).

Defendants argue Plaintiff does not and cannot dispute that he never asked any Disney entity to execute a confidentiality agreement. However, here, the SAC alleges Plaintiff "has taken reasonable measures to keep secret including, without limitation, assuring that all persons gaining access to the trade secrets identified in

9

paragraphs 56 through 59 of this Complaint, and the Woodall Trade Secrets, execute confidentiality agreements or otherwise clearly articulate their covenant not to disclose any of the Woodall Trade Secrets to the general public, directly or indirectly" (*id.* ¶ 66), and "***Defendants all*** acknowledged that they were bound by the Confidentiality Agreement executed in favor of Woodall, which forbade any such use of these trade secrets that the Defendants had access to from and after 2003 (*id.* ¶ 67 (emphasis added)).[6] Because the Court must accept as true factual allegations in the complaint for purposes of a motion to dismiss, the Court must accept as true the SAC's allegation that "Defendants all acknowledged that they were bound by the Confidentiality Agreement." (*Id.* ¶ 67.) *See InteliClear*, 978 F.3d at 661 (noting "oral and written understandings of confidentiality" can qualify as "reasonable measures" to keep information confidential for purposes of trade secrets) (citation omitted). Accordingly, Defendants' contention that Plaintiff failed to take reasonable measures to keep the information secret and obtain confidentiality agreements is not a basis for dismissing Plaintiff's trade secret claims at the pleading stage.[7]

**B.     Fraud**

Plaintiff's fourth causes of action is for fraud. Defendants move to dismiss Plaintiff's fraud claim asserted in the SAC on the ground Plaintiff fails to plead the fraud claim with particularity as to Defendants Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-to-Consumer & International, Disney Book Group, LLC,

---

[6] Defendants argue there is no authority for the proposition that a 2003 confidentiality agreement that Marchick purportedly signed on behalf of herself while working at Mandeville is binding on Disney eight years later, and there is no allegation that Marchick was ever employed by Walt Disney Animation Studios (the studio that produced *Moana*). However, at the pleading stage, the Court must accept as true the SAC's allegation that "Defendants all acknowledged that they were bound by the Confidentiality Agreement." (SAC ¶ 67.)

[7] Defendants may file an appropriate motion on this issue later in the litigation to the extent there is evidence to the contrary.

Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc., and Buena Vista Books, Inc. (hereinafter, "Non-WDAS Entities"). Specifically, Defendants argue because the SAC expressly acknowledges the non-WDAS Entities were not involved in the production or release of *Moana* (*see* SAC ¶ 38(d) (alleging The Walt Disney Company, Walt Disney Pictures and Walt Disney Animation Studios developed and released the *Moana* film, and alleging the non-WDAS Entities produced and distributed products "derived from the motion picture"), and because Plaintiff's fraud claim arises from the alleged conspiracy among Defendants to fraudulently use Plaintiff's Bucky materials to produce *Moana*, the SAC fails to plead facts with the requisite particularity to state a viable claim against the non-WDAS Entities for fraud. Defendants also argue the SAC fails to allege any facts indicating the non-WDAS Entities were ever aware of Plaintiff or *Bucky*.

Here, the SAC alleges Defendant Marchick was "operating in conjunction and with the express ratification and approval of ***all other Defendants named in this Complaint***" when she made her allegedly fraudulent statements and allegedly concealed/misrepresented facts to Plaintiff. (SAC ¶¶ 89, 90.) Therefore, taking these allegations as true, the SAC pleads sufficient facts to state a claim for fraud against the Non-WDAS Entities.[8]

---

[8] The Court denied Defendants' motion to dismiss Plaintiff's fraud claim in the FAC on the ground that Plaintiff does not differentiate between the roles of the various Defendants, reasoning "Plaintiff would not have knowledge of each defendant's specific role in producing, the Moana film at this stage without additional discovery. *See, e.g., Heller v. NBCUniversal, Inc.*, 2016 WL 6573985, at *3 (C.D. Cal. Mar. 30, 2016) (rejecting defendants' motion to dismiss insofar as it sought dismissal of plaintiff's claims on the ground of improper "group pleading," reasoning "it is simply not possible for Plaintiff to be more specific about the role each Defendant played in producing the Film without discovery")." (Order at 14.) To the extent Defendants are reasserting this argument raised in their prior motion to dismiss the FAC that Plaintiffs' fraud claim fails because Plaintiff does not differentiate between the roles of the various Defendants, the Court denies Defendants' Motion to Dismiss on this basis. *See Heller*, 2016 WL 6573985, at *3.

## IV.   CONCLUSION

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss the Second, Third and Fourth Causes of Action in Plaintiff's Second Amended Complaint.

**IT IS SO ORDERED.**

DATED: August 5, 2021.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE