GERARD P. FOX (SBN 151649)
GERARD FOX LAW, P.C.
1880 Century Park E, Suite 1410
GERARD FOX LAW P.C.
Los Angeles, CA 90067
Tel: (310) 441-0500
Fax:(310) 441-4447
gfox@gerardfoxlaw.com

JAMES WES CHRISTIAN
(Admitted *Pro Hac Vice*)
CHRISTIAN ATTAR, LLC
2302 Fannin, Suite 500
Houston, Texas 77002
Tel.: (877) 710-5170
Fax: (713) 659-7641
jchristian@christianlevinelaw.com

GUSTAVO D. LAGE
EL'AD D. BOTWIN
(Admitted *Pro Hac Vice*)
SANCHEZ-MEDINA, GONZALEZ,
QUESADA, LAGE, GOMEZ &
MACHADO, LLP
1200 Brickell Avenue, Ste 950
Miami, Florida 33131
Tel.: (305) 377-1000
Fax: (786) 304-2214
glage@smgqlaw.com
ebotwin@smgqlaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCK G. WOODALL,<br><br>Plaintiff,<br><br>vs.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>Defendants. | **Case No.: 2:20-cv-03772-CBM-E**<br><br>**DECLARATION OF BUCK G. WOODALL IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: July 30, 2024<br>Time: 10:00 a.m.<br>Courtroom: 8D<br><br>Discovery Cutoff: October 23, 2023<br>Pre-Trial Conference: August 6, 2024<br>Trial Date: October 8, 2024<br><br>Assigned to Hon. Consuelo B. Marshall<br>Magistrate: Judge Charles F. Eick |

# DECLARATION OF BUCK WOODALL

I, Buck Woodall, declare:

1. I have personal knowledge of the following facts and, if called to testify, I could and would competently testify thereto based on my personal knowledge.

2. I respectfully make this declaration in support of Plaintiff's Cross-Motion for Partial Summary Judgment.

3. I hereby wish to further explain matters that I was not specifically asked about by opposing counsel during my deposition and/or such matters that call for further elaboration.

4. First, opposing counsel did not inquire, during my deposition, the extent to which I understood or spoke Spanish in late 2016 and early 2017. The answer is that, in 2016 and 2017, my ability to understand and speak Spanish was extremely limited. My best estimate would be that I would understand no more than 10-20% of the Spanish language in that time frame. Though I lived in Mexico at the time, I dealt almost exclusively with persons who were fluent in English. My girlfriend, who is now my wife, spoke and speaks fluent English and we communicated exclusively in English. My customers comprised exclusively Americans and Canadians, with whom I communicated in English. Our residence was/is very remote, and I basically was never required to speak Spanish.

5. I am informed and believe that *Moana* was released in Mexico, dubbed in Spanish, in December of 2016—more than two weeks after *Moana* was released in the United States.

6. I was excited to watch *Moana*, so I went to a theater in Mexico in December of 2016, though I lived very remotely with few theaters nearby, to watch the film. However, it quickly became apparent to me that I could not understand the Spanish dubbing and, consequently, was unable to follow the storyline of the film. Even if I had watched *Moana* with the Spanish dubbing numerous times, I would not have been able to understand it.

7. Once I was able to obtain a copy of the DVD of *Moana* in English in mid-March of 2017, I still needed considerable time to perform the diligence due to assuring I had viable claims against Defendants, as I did explain at my deposition. To further clarify the circumstances, I should note that I had amassed a wealth of varying *Bucky* works starting back in 1998 and over the course of well over a decade, which I had not reviewed in many years and not all of which I immediately had access to. Moreover, I find the similarities at issue to be complex, nuanced, and they appear, in part, to be concealed.

8. I recall that the second meeting on Disney's lot in Burbank that Jenny Marchick admits she arranged between 2003 and 2005 was with representatives of the Disney studio that produced animated feature films, which is consistent with Jenny Marchick's reference to the location of the meeting as "the studio" and the people she connected me with as a representative of "Disney TV." I note that "Walt Disney Studios and Television," now apparently known as Walt Disney Pictures, was the division that created animated films for the big screen and television at that time.

9. I also respectfully wish to address opposing counsel's remark during my deposition that Disney's Old Animation Building, at which my meetings took place to pitch *Bucky* first to Jenny Marchick, then to Disney representatives, "actually does not house Walt Disney Animation Studios." (Woodall Tr., at 126:2-4.) I am informed and believe that Walt Disney Animation Studios, then called Walt Disney Feature Animation, was, at the time, (and still is) housed right across from the Old Animation Building, and that both buildings are located on the lot of Walt Disney Studios in Burbank, California. I am, further, informed and believe that the Old Animation Building housed Mandeville Films at the time, as well as producers and departments both for feature film and television productions. This appears to be confirmed by several publicly available sources, e.g.: [Walt Disney Studios (Burbank) - Wikipedia](#) (noting that the Old Animation Building "house[s] offices

| | |
|---|---|
| 1 | for various film and television producers"); The Filming Locations of Disney's |
| 2 | Saving Mr. Banks ~ An East Wind Trip to the West ~ \| BEYOND THE MARQUEE |
| 3 | (noting that the Old Animation Building also houses "studio departments") (last |
| 4 | accessed on May 7, 2024). In other words, the fact that Walt Disney Feature |
| 5 | Animation (now Walt Disney Animation Studios) was/is located across from the Old |
| 6 | Animation Building does not rule out that I met with representatives of Walt Disney |
| 7 | Pictures or that representatives of the studio had opportunities to access *Bucky* |
| 8 | works. |
| 9 | 10. Moreover, in case I did not clarify this in my prior testimony, I left *Bucky* |
| 10 | works with the Disney representatives after my meeting with them on Disney's lot, |
| 11 | and these materials were never returned to me. Thus, even if Jenny Marchick |
| 12 | eventually returned to me certain *Bucky* materials from 2004 or 2005, I also provided |
| 13 | *Bucky* materials to Disney representatives that were never returned to me. |
| 14 | 11. I should also note that Jenny Marchick did not return to me other materials I |
| 15 | provided her with, including the 2011 *Bucky* script, two versions of which I provided |
| 16 | to her, and at least one of which was transmitted electronically, and other *Bucky* |
| 17 | materials I made available to her. One of the 2011 *Bucky* scripts, *Bucky and The Hui*, |
| 18 | contains slight variations that were not registered with the Copyright Office and |
| 19 | which variations are part and parcel of my trade secrets. |
| 20 | 12. With respect to my former girlfriend and business partner, Katie Speirs ("Ms. |
| 21 | Speirs"), I understand that she testified that she did not recall some of the details |
| 22 | about what occurred between 2002 and 2004, including having written down Disney |
| 23 | and Pixar's contact and FedEx information, during the time Craig T. Nelson's voice |
| 24 | was recorded for *The Incredibles* at Peter Heckmann's studio in Kauai. I should note |
| 25 | that our subsequent break-up was not an amicable one, and we have not spoken |
| 26 | since, save for my reaching out to her to inquire about documents in connection with |
| 27 | this litigation, which communication did not go well. I simply wish to explain that I |
| 28 | |

1  can understand that Ms. Speirs has had no desire to even think about these events or
2  recall much of them, which events occurred two decades ago.

3      13. Attached hereto as Composite Exhibit 1 is a true and correct copy of the
4  copyright registrations for *Bucky* works for Registration Number VAu000624809,
5  (Date: 2004-05-25, Title: Bucky: an animated feature project), and Registration
6  Number: PAu003749546 (Date: 2014-12-05, Title: Bucky, The Surfer Boy).

7      14. The *Bucky* works I provided to Jenny Marchick and Disney representatives
8  in around 2004 included all of the *Bucky* materials I registered with the US Copyright
9  Office in 2004. Similarly, the *Bucky* materials Ms. Speirs mailed to Doc Kane at
10 Disney included but are not limited to all of the *Bucky* materials I registered with the
11 U.S. Copyright Office in 2004.

12     15. The *Bucky* materials provided to Jenny Marchick thereafter included the
13 materials I later registered with the U.S. Copyright Office in 2014, and additional
14 materials, including but not limited to the *Bucky* trailer, which I completed in 2008,
15 another version of the *Bucky* script under the title *Bucky and the Hui*, and additional
16 artwork, such as renderings of *Bucky's* Pele and shapeshifting insects.

17     16. In case it was not clear during my deposition, Jenny Marchick told me that,
18 after showing *Bucky* materials to her bosses and contacts at Disney, a Disney director
19 wanted me to produce a trailer for *Bucky* because they wanted to see *Bucky* come to
20 life. I note that, when I confronted Jenny Marchick about this by email in 2016, she
21 did not dispute that this happened in response thereto. I also note that this 2016
22 exchange with Ms. Marchick marked the first time she took a different position as
23 to whether she could help me with the *Bucky* project.

24     17. Attached hereto as Exhibit 2 is a true and correct copy of an email exchange
25 I had with Jenny Marchick when I saw press releases about *Moana*.

26     18. Attached hereto as Exhibit 3 is a true and correct copy of a cover letter I sent
27 to Jenny Marchick in 2004, dated September 22, 2004, which letter Ms. Marchick
28 did not dispute having received during her deposition.

19. Attached hereto as Exhibit 4 is a true and correct copy of emails between myself and Jenny Marchick from February of 2005, which Ms. Marchick did not dispute constitute true and correct copies of our email exchange.

20. Attached hereto as Exhibit 5 is a true and correct copy of emails between myself and Jenny Marchick from July of 2005, which Ms. Marchick did not dispute constitute true and correct copies of our email exchange.

21. Attached hereto as Exhibit 6 is a true and correct copy of an email exchange with my brother, Benjamin Woodall, dated July 14, 2011.

22. Attached hereto as Exhibit 7 is a true and correct copy of email exchanges with my brother, Benjamin Woodall, dated December 17-19, 2011.

23. Attached hereto as Exhibit 8 is a true and correct copy of a Sony Pictures Animation release that Jenny Marchick asked me to sign in connection with my updated *Bucky* works, dated December 18, 2011.

24. Attached hereto as Exhibit 9 is a true and correct copy of the *Bucky* materials registered with the U.S. Copyright Office in 2004.

25. Attached hereto as Exhibit 10 is a true and correct copy of the *Bucky* materials registered with the U.S. Copyright Office in 2014.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: May 7, 2024

                                                 *s/Buck Woodall*
                                                 Buck Woodall

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 7th date of May, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated: May 7, 2024                    Respectfully Submitted,

*s/Gustavo D. Lage*
Gustavo D. Lage, Esq.