Michael D. Roth (Bar. No. 217464)
mroth@kslaw.com
Arwen R. Johnson (Bar No. 247583)
arwen.johnson@kslaw.com
KING & SPALDING LLP
633 W. 5th Street, Suite 1600
Los Angeles, California 90071
Telephone:  (213) 443-4355

Robert N. Klieger (Bar No. 192962)
rklieger@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, California 90014
Telephone:  (213) 788-4310
Facsimile:   (888) 775-0898

Attorneys for Defendants

Peter Shimamoto (Bar No. 123422)
pshimamoto@willenken.com
Kenneth M. Trujillo-Jamison
   (Bar No. 280212)
ktrujillo-jamison@willenken.com
Michelle K. Millard (Bar No. 298245)
mmillard@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:   (213) 955-9250

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCK G. WOODALL, a.k.a. Buck Woodall, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE WALT DISNEY COMPANY, a Delaware Corporation; et al.,<br><br>Defendants. | Case No.: 2:20-cv-03772-CBM-E<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    July 30, 2024<br>Time:    10:00 a.m.<br>Place:   Courtroom 8D<br><br>Disc. Cutoff:    October 23, 2023<br>Pre-Trial Conf.:    August 6, 2024<br>Trial Date:    October 8, 2024<br><br>Assigned to Hon. Consuelo B. Marshall<br>Magistrate Judge: Charles F. Eick |

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................... 1

II.    ARGUMENT ..................................................................................... 2

    A.    Plaintiff Has Not Shown Triable Issues As To His Trade Secret And Fraud Claims ......................................................................... 2

        1.    The Trade Secret And Fraud Claims Are Time-Barred ............ 2

        2.    Plaintiff's Purported Trade Secrets Were Not Secret ................ 5

        3.    Plaintiff Has Not Presented Any Evidence Of A Conspiracy To Defraud Plaintiff ...................................... 6

    B.    Plaintiff Has Not Shown Triable Issues As To His Copyright Claim .......................................................................... 6

        1.    Plaintiff's Copyright Claim Is Time-Barred As To All Defendants Other Than BVHE .......................................... 6

        2.    Plaintiff's Access Theories Are Unsubstantiated And Foreclosed By Uncontroverted Evidence ................................... 8

        3.    Moana Is Not Substantially Similar To The "Bucky" Copyrighted Works ........................................................ 11

        4.    Defendants' Overwhelming Evidence Of Independent Creation Is Uncontroverted ...................................... 14

III.    CONCLUSION ................................................................................ 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*8th Wonder Entm't, LLC v. Viacom Int'l, Inc.*,
    2016 WL 6882832 (C.D. Cal. Nov. 22, 2016) ..................................................... 13

6

7
*Bernal v. Paradigm Talent & Literary Agency*,
    788 F. Supp. 2d 1043 (C.D. Cal. 2010) .................................................. 9, 12, 14

8

9
*Bethea v. Burnett*,
    2005 WL 1720631 (C.D. Cal. June 28, 2005) .................................................... 15

10

11
*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,
    974 F.2d 1358 (3d Cir. 1992) ................................................................................ 9

12

13
*Burns v. Imagine Films Entm't, Inc.*,
    2001 WL 34059379 (W.D.N.Y. Aug. 23, 2001). Dkt. 474 ................................... 8

14

15
*Camhe v. Dreamworks, LLC*,
    2009 WL 10668462 (C.D. Cal. May 14, 2009) ................................................... 12

16
*Chung v. Intellect Soft Grp. Corp.*,
    2022 WL 20184655 (N.D. Cal. July 13, 2022) ..................................................... 4

17

18
*Counts v. Meriwether*,
    2015 WL 9594469 (C.D. Cal. Dec. 30, 2015) .............................................. 13, 14

19

20
*Doe v. Roman Catholic Bishop of Sacramento*,
    189 Cal. App. 4th 1423 (2010) .............................................................................. 2

21

22
*DuMond v. Reilly*,
    2021 WL 733311 (C.D. Cal. Jan. 14, 2021) ................................................. 13, 14

23

24
*Esplanade Prods., Inc. v. Walt Disney Co.*,
    93 Cal. App. 5th 793 (2023) ................................................................................ 11

25

26
*Evans v. NBCUniversal Media, LLC*,
    2021 WL 4513624 (C.D. Cal. July 23, 2021) ....................................................... 8

27
*Frybarger v. Int'l Bus. Machs. Corp.*,
    812 F.2d 525 (9th Cir. 1987) .............................................................................. 15

28

*Gable v. Nat. Broad. Co.*,
   727 F. Supp. 2d 815 (C.D. Cal. 2010)................................................................. 13

*Gilbert v. New Line Prods., Inc.*,
   2010 WL 5790628 (C.D. Cal. Aug. 13, 2010) ..................................................... 12

*Gilbert-Daniels v. Lions Gate Entm't Corp.*,
   2023 WL 8948288 (C.D. Cal. Dec. 7, 2023) ....................................................... 13

*Goldberg v. Cameron*,
   2009 WL 2051370 (N.D. Cal. July 10, 2009)....................................................... 8

*Goldberg v. Cameron*,
   482 F. Supp. 2d 1136 (N.D. Cal. 2007) ......................................................... 4, 7

*Goodness Films, LLC v. TV One, LLC*,
   2012 WL 12896899 (C.D. Cal. Dec. 27, 2012) ................................................. 13

*Intermedics, Inc. v. Ventritex, Inc.*,
   822 F. Supp. 634 (N.D. Cal. 1993)....................................................................... 3

*Long v. Walt Disney Co.*,
   116 Cal. App. 4th 868 (2004)................................................................................ 4

*Masimo Corp. v. Apple Inc.*,
   2022 WL 2177451 (C.D. Cal. Feb. 17, 2022) ..................................................... 3

*Metcalf v. Bochco*,
   294 F.3d 1069 (9th Cir. 2002)................................................................. 12, 13, 14

*NBCUniversal Media, LLC v. Superior Court*,
   225 Cal. App. 4th 1222 (2014).............................................................................. 4

*Quirk v. Sony Pictures Entm't Inc.*,
   2013 WL 1345075 (N.D. Cal. Apr. 2, 2013) ..................................................... 15

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018), *overruled in part by Skidmore v.*
   *Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)................................................ 11, 14

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003)............................................................................. 13

*Ricketts v. CBS Corp.*,
   439 F. Supp. 3d 1199 (C.D. Cal. 2020)............................................................. 13

REPLY ISO MOTION FOR SUMMARY JUDGMENT

*Roley v. New World Pictures, Ltd.*,
   19 F.3d 479 (9th Cir. 1994) ................................................................. 7

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984) .......................................................................... 5

*Shame on You Prods., Inc. v. Banks*,
   120 F. Supp. 3d 1123 (C.D. Cal. 2015) ........................................ 13, 14

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
   853 F.3d 980 (9th Cir. 2017) ............................................................ 12

*Vera v. REL-BC, LLC*,
   66 Cal. App. 5th 57 (2021) ................................................................ 2

*Vint v. Universal Studios Co. LLC*,
   2021 WL 6618535 (C.D. Cal. Apr. 29, 2021) .................................... 6

*Warner Chappell Music, Inc. v. Nealy*,
   144 S. Ct. 1135 (2024) ...................................................................... 7

*Whitehead v. Netflix, Inc.*,
   2022 WL 17342602 (N.D. Cal. Nov. 30, 2022) ................................ 13

*Williams v. Curington*,
   662 F. Supp. 2d 33 (D.D.C. 2009) .................................................... 6

*Zucchella v. Olympusat, Inc.*,
   2023 WL 9379175 (C.D. Cal. Dec. 19, 2023) .................................. 4

**Statutes**

17 U.S.C. § 507(b) ................................................................................ 6

18 U.S.C. § 1836(d) .............................................................................. 2

Cal. Civ. Code § 3426.6 ........................................................................ 2

REPLY ISO MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiff's opposition is long on rhetoric, short on evidence, and fails to raise triable issues as to any of his claims.  First and foremost, his opposition confirms that (i) his claims as to all Defendants but one, Buena Vista Home Entertainment, Inc. ("BVHE"), are entirely time-barred, and (ii), as to BVHE, only a portion of Plaintiff's copyright infringement claim is not time-barred.  While Plaintiff contends that Defendants' statute of limitations arguments require the Court to find he "should have discovered his claims before *Moana* even existed as a final film" (Dkt. 474 at 1), that is simply not true as a matter of fact or law.  Despite having falsely alleged in his complaints that he had not seen *Moana* until June or July 2017, Plaintiff now admits that he watched *Moana* on DVD no later than March 15, 2017.  Dkt. 405-8 (Resp. to RFA No. 119).  That is the *latest* date his claims may have accrued.  Plaintiff, however, did not file suit until *more than three years later*.  That is fatal to almost all of his case.

Plaintiff also entirely fails to overcome the additional grounds for summary judgment.  For example, Plaintiff concedes that the 2008 trailer and 2011 script that comprise his purported trade secrets were public, meaning they cannot be trade secrets.  As to his copyright claim, Plaintiff (a) failed to present any admissible evidence that *Moana*'s filmmakers had access to his copyrighted "Bucky" works, and (b) has not shown *Moana* is substantially similar to any of those works, even on a "combination of unprotectable elements" theory.  In any event, Plaintiff has proffered no evidence whatsoever to controvert Defendants' overwhelming evidence of independent creation, which is a complete defense to the claim.

This case has been pending for more than four years and has consumed thousands of hours and millions of dollars in resources, based on far-fetched allegations and fabricated evidence.  After years of discovery, Plaintiff has not presented admissible evidence sufficient to create a triable issue with respect to any of his claims.  The Court should grant Defendants summary judgment.

## II.   ARGUMENT

### A.   Plaintiff Has Not Shown Triable Issues As To His Trade Secret And Fraud Claims

#### 1.   The Trade Secret And Fraud Claims Are Time-Barred

Plaintiff's trade secret and fraud claims fail in their entirety as to all Defendants based on just two undisputed facts: (1) Plaintiff watched *Moana* on DVD, in English, by no later than March 15, 2017 (months earlier than he falsely alleged in each of his Complaints (Dkt. 1 ¶ 5; Dkt. 18 ¶ 36, Dkt. 94 ¶ 36)); and (2) Plaintiff did not file suit until more than three years later, on April 24, 2020. Dkt. 1; Dkt. 405-8 (Resp. to RFA No. 119).  Because Plaintiff did not file suit until more than three years after the absolute *latest* his trade secret and fraud claims may have accrued, the claims are time-barred as a matter of law.

In truth, Plaintiff's trade secret and fraud claims accrued before Plaintiff watched *Moana* on DVD, and were therefore time-barred by an even earlier date. The three-year statute of limitations under the Defend Trade Secrets Act and California Uniform Trade Secrets Act begins to run when a plaintiff discovers or is on inquiry notice regarding the alleged misappropriation.  18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6.  Similarly, a plaintiff must bring a fraud claim within three years after "discovery … of the fraud *or* facts that would lead a reasonably prudent person to *suspect* fraud." *Doe v. Roman Catholic Bishop of Sacramento*, 189 Cal. App. 4th 1423, 1430 (2010) (emphasis in original); *see Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 69 (2021) (fraud claim accrues "if a plaintiff knows facts that should raise suspicion and trigger a further investigation").

Here, Plaintiff's suspicion of misappropriation and fraud arose long before *Moana*'s actual release on November 23, 2016.  When *Moana* was announced in October 2014, Plaintiff "became concerned … that Disney had stolen my Bucky project" and "immediately began contacting counsel to advise about what should be done."  Dkt. 405-10 (draft Woodall Decl.) ¶ 3; Dkt. 405-7 at 8 (Pltf.'s Resp. to

1   RFA No. 34).  The more Plaintiff learned about *Moana* the more convinced he

2   became that "Bucky" had been stolen.  Plaintiff wrote on October 26, 2015 to his

3   brother, "It's so obvious bro!  I'm going after them man!!!!  For sure!!!"

4   Dkt. 406-1 (BENPRIV0017).  Four days later, Plaintiff wrote to an attorney

5   regarding a "Potential BIG case" based on Disney purportedly having "ripped off"

6   his ideas, characters, and setting.  Dkt. 405-6 (BENPRIV0019).  Plaintiff

7   confronted Marchick in early April 2016, still more than four years before he filed

8   suit, telling her that "it is very, very obvious that [*Moana*] is an adaptation of my

9   film" and that WDAS was "ripping off my material."  Dkt. 412-4

10  (MARCHICK0001-0002).  Tellingly, Plaintiff asserted, and the Magistrate Judge

11  upheld, claims of work product protection in various other communications from

12  November 2014 forward, which constitute an admission that Plaintiff anticipated

13  litigation well before *Moana*'s release.  *See* Dkt. 204, 406.

14      Because the misappropriation and fraud claims are based on (a) alleged

15  misrepresentations and omissions by which he was induced to disclose his

16  "Bucky" materials and (b) Defendants' purported use of those materials in

17  developing *Moana,* the claims are not dependent on the movie's eventual release.

18  Rather, the claims accrued, and Plaintiff could have filed suit for injunctive or

19  other relief, in advance of the release.  *Intermedics, Inc. v. Ventritex, Inc.*, 822 F.

20  Supp. 634, 642 (N.D. Cal. 1993).[1]  In any event, even if Plaintiff were correct that

---

22  [1] Plaintiff relies on *Masimo Corp. v. Apple Inc.*, 2022 WL 2177451 (C.D. Cal. Feb.

23  17, 2022), for the proposition that a suspicion of misappropriation does not trigger
    the statute of limitations.  That was not the court's holding.  The plaintiff in

24  *Masimo* suspected that its former employees, who left to join Apple, *might* share
    the plaintiff's trade secret information with their new employer.  *Id.* at *1.  The

25  court held the plaintiff's concern that trade secrets *might* be shared did not start the

26  statute: "[A] suspicion that such information theoretically *could* be shared provides
    an insufficient basis for filing a trade secret misappropriation claim."  *Id.* at *5.

27  *Masimo* thus does not excuse a plaintiff from timely filing suit after he suspects

28  misappropriation has *actually* occurred—as Plaintiff plainly did here.

his trade secret and fraud claims did not accrue until *Moana*'s public release, that release occurred on November 23, 2016.  Dkt. 410 (Julius Decl.) ¶ 23.[2]  Thus, regardless of when Plaintiff himself watched *Moana*, the statute of limitations accrued on November 23, 2016 and expired on November 23, 2019—*i.e.*, three years after the movie was widely available to the public.  *See NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1234 (2014) (limitations period began to run upon broadcast of television program, even if plaintiff did not watch program until months later); *Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 875 (2004) (same).  Under well-settled law, Plaintiff's claims were, at minimum, five months too late.

Plaintiff attempts to save his claims by claiming the similarities between *Moana* and "Bucky" are so "complex" and "nuanced" that it took him until June or July 2017—half a year after *Moana*'s release, and several months after he watched it on DVD—to complete "due diligence" with respect to his long-gestating claims. Dkt. 434 (Woodall Decl.) ¶ 7.[3]  Plaintiff, however, contacted attorneys within two weeks of watching the DVD in March 2017.  Dkt. 407-4 at 6.  In any event, the statute of limitations began to run once Plaintiff was on inquiry notice, not when he completed his pre-filing investigation.  *See Zucchella v. Olympusat, Inc.*, 2023 WL 9379175, at *1-2 (C.D. Cal. Dec. 19, 2023) (fraud); *Chung v. Intellect Soft Grp. Corp.*, 2022 WL 20184655, at *4, 6, 13 (N.D. Cal. July 13, 2022) (trade secret misappropriation).  That is the very purpose of a limitations period: to ensure a plaintiff has reasonable time to investigate potential claims while also protecting a

---

[2] Plaintiff concedes he saw *Moana* in a theater in December 2016, which confirmed his "suspicions that they … stole my film."  Dkt. 441-6 (Woodall Tr.) at 247:17-20.

[3] This contention cannot be reconciled with Plaintiff's position that *Moana* and "Bucky" are so overwhelmingly identical as to preclude independent creation (*see* Dkt. 432 at 25), meaning "practically any exposure would have reasonably resulted in actual knowledge of infringement."  *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1148-49 (N.D. Cal. 2007).

1   defendant's right to due process.  Here, Plaintiff had a full three years to

2   investigate and file suit after he watched *Moana*.  He missed that deadline by any

3   measure, and thus his trade secret and fraud claims are time-barred.

4              **2.    Plaintiff's Purported Trade Secrets Were Not Secret**

5         Plaintiff's trade secret claims also fail for the independent reason that his

6   purported trade secrets were not secret.  Plaintiff identifies just two purported trade

7   secrets in his opposition—a 2008 trailer and a 2011 script.  Dkt. 474 at 12-13.  As

8   to the 2008 trailer, Plaintiff argues that the trailer's availability on his website

9   should not count because (a) the website "prompted visitors to enter into a

10  confidentiality agreement"; and (b) his website "did not garner a significant

11  amount of views."  Dkt. 476 at 10-11.  This Court has already rejected Plaintiff's

12  argument with respect to the availability of a confidentiality agreement on his

13  website.  Dkt. 91 at 19-20.  And it makes no difference how many people actually

14  watched the trailer online; Plaintiff's decision to make it available for public

15  viewing extinguished any claim of trade secret protection.  *See Ruckelshaus v.*

16  *Monsanto Co.*, 467 U.S. 986, 1002 (1984).[4]

17        Nor does Plaintiff dispute that his second purported trade secret, the 2011

18  script, is virtually identical to the script he registered with the Copyright Office in

19  2014, thus depriving it of any trade secret protection.  *See* Dkt. 91 at 20 (citing

20  cases); Dkt. 101 at 5-6 (citing cases).  While he asserts the alleged acquisition and

21  use of the script before 2014 could still have constituted misappropriation under

22  "the head-start doctrine" (Dkt. 474 at 12-13), he opted not to seek injunctive relief

23  and has ascribed no damages to any purported "head-start."

24

25

26  [4] Equally fatal to Plaintiff's claim of trade secret protection in the trailer is the

27  broadcast of nearly two-thirds of the trailer—and not "seconds of fragments," as
    Plaintiff misleadingly asserts (Dkt. 474 at 2)—on public television in Hawaii.

28  Dkt. 405-5 (BUCK4846).

### 3.      Plaintiff Has Not Presented Any Evidence Of A Conspiracy To Defraud Plaintiff

Plaintiff's fraud claim also independently fails as to all of the non-Marchick Defendants, none of whom is alleged to have made misrepresentations or omissions to Plaintiff.  He nonetheless argues that this claim survives as to them because, "in analogous conspiracy cases," it is enough that one of the alleged co-conspirators committed an overt act to further the conspiracy.  Dkt. 474 at 14-15. While that is a correct statement of conspiracy law, it completely misses the point. At the summary judgment stage, it is not enough for Plaintiff to *allege* the existence of a conspiracy; he must provide *evidence* to establish a triable issue of fact as to each of its elements.  Plaintiff fails to identify any evidence that the non-Marchick Defendants were even aware of Marchick's alleged misrepresentations and omissions, much less that they acted as part of a common plan.  That complete absence of evidence of a conspiracy to commit fraud is also fatal to the claim.

### B.      Plaintiff Has Not Shown Triable Issues As To His Copyright Claim

### 1.      Plaintiff's Copyright Claim Is Time-Barred As To All Defendants Other Than BVHE

Plaintiff's copyright infringement claim, like his trade secret and fraud claims, is governed by a three-year statute of limitations.  17 U.S.C. § 507(b).  An infringement claim generally accrues when the infringement occurs—which, in the case of an allegedly infringing movie, television program, or song, is the date of public release.  *See, e.g.*, *Vint v. Universal Studios Co. LLC*, 2021 WL 6618535, at *3 (C.D. Cal. Apr. 29, 2021) ("The statute of limitations period for Plaintiff's claim began to run when *Back to the Future* was publicly released."); *Williams v. Curington*, 662 F. Supp. 2d 33, 38 (D.D.C. 2009) (statute began to run on release date of allegedly infringing song).  *Moana* was publicly released on November 23, 2016.  Dkt. 410 (Julius Decl.) ¶ 23.  Plaintiff did not file suit until April 24, 2020, which falls outside the statute of limitations.  Dkt. 1.

1    Plaintiff argues that, "as a matter of common sense," the statute of

2    limitations must have been tolled through March 15, 2017, given that Plaintiff

3    "lived in Mexico at the time," "did not understand the Spanish-dubbed version of

4    *Moana*," and "thus had no choice but to wait for the English version of *Moana* to

5    become accessible to him in Mexico."  Dkt. 474 at 7.  But as explained above,

6    Plaintiff's "common sense" understanding does not comport with law.[5]

7    Regardless, Plaintiff filed suit more than three years after *both Moana*'s public

8    release (November 23, 2016) *and* the date on which he watched the movie in

9    English on DVD (March 15, 2017).  The discovery rule is therefore of no

10    assistance to him.  Under either accrual date, all alleged infringements occurring

11    more than three years before Plaintiff filed suit are time-barred.  *See Roley v. New*

12    *World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994).

13    The Supreme Court's recent decision in *Warner Chappell Music, Inc. v.*

14    *Nealy,* 144 S. Ct. 1135 (2024), does not change this result.  The plaintiff in *Warner*

15    *Chappell* invoked the discovery rule in connection with his infringement claim,

16    arguing that, due to his prison sentence, he could not reasonably have discovered

17    the alleged infringement more than three years before filing suit.  *Id.* at 1137-38.

18    The Supreme Court granted certiorari on the limited question of whether, *assuming*

19    *the plaintiff's claim was timely under the discovery rule*, the Copyright Act

20    nevertheless barred him from recovering damages from more than three years

21    before he filed suit.  *Id.* at 1138.  The Supreme Court held that it did not.  *Id.* at

22    1139-40.  *Warner Chappell* does not authorize the recovery of damages with

23    respect to alleged infringements occurring more than three years before suit where,

24    as here, the plaintiff *cannot* invoke the discovery rule.

25    _____

26    [5] *See, e.g.*, *Goldberg*, 482 F. Supp. 2d at 1143, 1148-49 (statute of limitations on
     copyright infringement claim began to run upon release of *Terminator* movies,
27    notwithstanding that plaintiff "had embarked upon a spiritual Yoga path" and was
28    cut off from "all forms of electronic media").

Plaintiff's copyright claim is therefore timely *only* with respect to alleged infringements occurring after April 24, 2017 (*i.e.*, within three years of filing suit). Importantly, this means that the *only* Defendant against which Plaintiff has a timely claim is BVHE, whose home video distribution of *Moana* continued beyond April 24, 2017. There is no evidence that any other Defendant engaged in any distribution of *Moana* or other potentially infringing conduct after April 24, 2017.[6] Infringement claims related to the development or production of *Moana* or to its initial theatrical release accrued before April 24, 2017, and are therefore time-barred. *See Evans v. NBCUniversal Media, LLC,* 2021 WL 4513624, at *4 (C.D. Cal. July 23, 2021) (dismissing claims against defendants who did not reproduce or distribute movie within three years before filing). Because BVHE is the only Defendant that has continued to distribute *Moana* after April 24, 2017, Plaintiff's copyright claim is time-barred in its entirety as to all other named Defendants.[7]

### 2. Plaintiff's Access Theories Are Unsubstantiated And Foreclosed By Uncontroverted Evidence

Plaintiff's copyright claim independently fails, as to all Defendants, based on Plaintiff's inability to establish access. Plaintiff does not contend that he

---

[6] Even setting aside the statute of limitations, Plaintiff failed to adduce any evidence that Marchick, Mandeville, or Ribon directly, contributorily, or vicariously infringed the copyright in any "Bucky" works. Plaintiff also admits that the consumer products defendants (DCP, DCPIM, Disney Store, Disney Shopping, and BVB) did not engage in any actionable infringement, but argues they may nonetheless be held liable on a "non-infringing enterprise" theory under *Burns v. Imagine Films Entm't, Inc.*, 2001 WL 34059379 (W.D.N.Y. Aug. 23, 2001). Dkt. 474 at 17. That argument also fails. *See* Dkt. 467 at 19-21.

[7] Plaintiff's claims against the non-BVHE Defendants are all time-barred whether framed as direct, contributory, or vicarious infringement. This is because the statute of limitations for contributory or vicarious infringement claims accrues upon the *first* alleged direct infringement—here, upon *Moana*'s theatrical release—and is not revived by subsequent alleged infringements. *Goldberg v. Cameron*, 2009 WL 2051370, at *6-7 (N.D. Cal. July 10, 2009).

1   submitted his "Bucky" materials directly to *Moana*'s filmmakers.  To avoid

2   summary judgment, Plaintiff must therefore show that he submitted his work to an

3   intermediary "who (1) has supervisory responsibility for the allegedly infringing

4   [work], (2) contributed ideas and materials to it, or (3) worked in the same unit as

5   the creators." *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d

6   1043, 1056 (C.D. Cal. 2010).  Plaintiff has not made that evidentiary showing as to

7   *anyone* through whom he speculates the filmmakers acquired his materials.

8       ***Jenny Marchick.***  Plaintiff first identifies Jenny Marchick, his brother's

9   wife's step-sister, to whom he delivered "Bucky" materials in late 2004 or 2005

10   and again in January 2012.  Marchick, however, had no involvement whatsoever

11   with *Moana*.  Dkt. 412 (Marchick Decl.) ¶ 17.  She did not have supervisory (or

12   any) responsibility for the movie, and did not contribute any ideas or materials to

13   it.  *Id.*  She also never worked at WDAS, which was the business unit that created

14   and developed *Moana*.  *Id.* ¶¶ 2, 10-11.  As a matter of law, Plaintiff's provision of

15   "Bucky" materials to Marchick cannot suffice to establish access.

16       ***Maggie Malone.***  Plaintiff next identifies Maggie Malone.  Because Malone

17   was a creative executive at WDAS and worked alongside *Moana*'s filmmakers, she

18   would be a viable path of access ***if*** Plaintiff had evidence that Malone ever

19   received any "Bucky" materials.  Plaintiff, however, has no such evidence.

20   Marchick testified that she never provided any "Bucky" materials to Malone, and

21   Malone affirmed that she never received any "Bucky" materials, whether from

22   Marchick or anyone else.  *Id.* ¶ 5; Dkt. 472 (Malone Decl.) ¶¶ 5-7.  While Plaintiff

23   attacks Marchick's and Malone's credibility, that alone is not sufficient to create a

24   triable issue.  *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358,

25   1363 (3d Cir. 1992).  Without evidence to contradict their testimony—and Plaintiff

26   has none—Plaintiff cannot establish access through Malone.

27       ***John Lasseter.***  Plaintiff next identifies John Lasseter, who served as

28   WDAS' Chief Creative Officer from 2006 through 2017.  Lasseter, like Malone,

9

1  would be a viable path of access *if* Plaintiff had evidence that Lasseter received

2  any "Bucky" materials.  But Plaintiff does not even allege, much less substantiate

3  by evidence, any receipt by Lasseter, so this is another dead end for Plaintiff.

4    **Brad Bird.**  Plaintiff next identifies Brad Bird, who directed the 2004 Pixar

5  movie *The Incredibles*.  Peter Heckmann claims he pitched "Bucky" to Bird during

6  a 2003 recording session in Kauai.  Dkt. 439 (Heckmann Decl.) ¶ 14.  Plaintiff,

7  however, has presented no evidence that Bird was involved in the creation or

8  development of *Moana*, making Heckmann's supposed pitch to him irrelevant.

9    **Osnat Shurer.**  Plaintiff next identifies Osnat Shurer, a WDAS executive

10  who was a producer on *Moana*.  As with Malone and Lasseter, Shurer would be a

11  viable path of access *if* Plaintiff had evidence that Shurer received any "Bucky"

12  materials.  But Plaintiff does not.  He originally alleged that Heckmann had pitched

13  "Bucky" to Shurer in 2003, when she was working for Pixar in connection with

14  *The Incredibles*.  Shurer, however, testified that she had never heard of Plaintiff or

15  "Bucky" before this lawsuit was filed.  Dkt. 473 (Shurer Decl.) ¶ 3.  Plaintiff has

16  no evidence to contradict that testimony, as Heckmann cannot recall whether he

17  ever even met Shurer, let alone pitched "Bucky" to her.  Dkt. 440 (Heckmann

18  Supp. Decl.) ¶ 9; Dkt. 470-5 (Heckmann Tr.) at 188:24-189:17, 192:8-11.

19    **Doc Kane.**  Plaintiff next identifies Doc Kane, a sound engineer to whom

20  Heckmann claims he and Plaintiff's then-girlfriend, Katie Speirs, pitched "Bucky"

21  during a 2003 recording session for *The Incredibles*.  But Kane testified that he had

22  never heard of Plaintiff or "Bucky," much less received any "Bucky" materials,

23  prior to this lawsuit.  Dkt. 471 (Kane Decl.) ¶ 6.  Plaintiff has not proffered any

24  admissible evidence to contradict Kane's testimony.  Indeed, Heckmann testified

25  that he mentioned to Kane only that he had "a cool Hawaiian story," and that he

26  neither provided Kane any materials regarding "Bucky" nor saw Speirs provide

27  him any such materials.  Dkt. 470-5 (Heckmann Tr.) at 74:1-9, 78:11-19.  Speirs,

28  for her part, testified that she does not know who Kane is and has no recollection

1   of sending him anything.  Dkt. 470-6 (Speirs Tr.) at 45:8-46:24, 48:16-17, 49:4-19.

2   In any event, Kane had neither supervisory responsibility for nor any involvement

3   in the creation or development of *Moana*.  Dkt. 471 (Kane Decl.) ¶¶ 7-8.  Instead,

4   his only involvement with the movie consisted of three days of recording dialogue

5   from a final or near-final script *in 2016*, shortly before the movie's release.  *Id.*

6       ***Unknown Disney TV Animation person.***  Finally, Plaintiff identifies as a

7   potential intermediary an unknown person at Disney TV Animation to whom he

8   and/or Marchick provided "Bucky" materials in late 2004 or 2005.  Here, too,

9   Plaintiff comes up short.  Disney TV Animation, whatever its corporate form,

10  operated independently from feature animation, with no shared facilities,

11  executives, or staff, and had no involvement whatsoever with *Moana*.  Dkt. 472

12  (Malone Decl.) ¶ 3.  The receipt of "Bucky" materials by someone at Disney TV

13  Animation is the type of "bare corporate receipt" that cannot establish access.

14  *Esplanade Prods., Inc. v. Walt Disney Co.*, 93 Cal. App. 5th 793, 807 (2023).

15      Importantly, and regardless of whatever other "intermediaries" Plaintiff may

16  dream up, John Musker and Ron Clements—the acclaimed filmmakers who

17  actually created and directed *Moana*—both testified unequivocally that they had

18  never heard of Plaintiff or "Bucky," much less received any "Bucky" materials,

19  before this lawsuit was filed.  Dkt. 404 (Musker Decl.) ¶ 3; Dkt. 409 (Clements

20  Decl.) ¶ 3.  On that critical point, Plaintiff has proffered no controverting evidence

21  at all.  Plaintiff's access theories are all nothing more than mere speculation and

22  conjecture, which cannot defeat summary judgment.

23          **3.    *Moana* Is Not Substantially Similar To The "Bucky"**

24                 **Copyrighted Works**

25      Plaintiff's copyright claim also independently fails as to all Defendants

26  because *Moana* is not substantially similar to the "Bucky" copyrighted works

27  under the extrinsic test.  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir.

28  2018), *overruled in part by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir.

1  2020). ("The extrinsic test assesses the objective similarities of the two works,

2  focusing only on the protectable elements of the plaintiff's expression.").

3      As an initial matter, the opinions of Plaintiff's substantial similarity expert,

4  David Roman, must be disregarded.  By his own admission, Roman aggregated

5  various *different* versions of "Bucky" created over a 13-year period for purposes of

6  performing the extrinsic test.  Dkt. 407 (Roman Tr.) at 62:19-68:22.  This analytic

7  sleight-of-hand is decidedly improper.  *See Camhe v. Dreamworks, LLC*, 2009 WL

8  10668462, at *5 (C.D. Cal. May 14, 2009) (plaintiff "cannot amalgamate multiple

9  works to determine whether or not infringement has occurred").  Roman was not

10 permitted to mix-and-match between versions of "Bucky," but was instead

11 required to separately compare each version of "Bucky" to *Moana*.  *Id.* at *5-6; *see*

12 *also Gilbert v. New Line Prods., Inc.*, 2010 WL 5790628, at *3 (C.D. Cal. Aug. 13,

13 2010).  This fatal flaw in Roman's approach is exacerbated by the fact that only a

14 subset of the "Bucky" materials was registered for copyright, meaning that

15 Roman's opinions are based, at least in part, on non-actionable materials.  *See*

16 *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017).

17     In any event, Plaintiff fails to identify specific protectable elements in the

18 plot, themes, dialogue, mood, setting, pace, characters, or sequence of events in

19 *Moana* that he contends are substantially similar to "Bucky."  He instead relies on

20 *Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002), for the proposition that the

21 combination of unprotectable elements in "Bucky" creates a triable issue.  Plaintiff

22 is wrong.  The similarities in *Metcalf*, as set forth at pages 34-35 of Defendants'

23 motion (Dkt. 403), "were voluminous, nearly identical, and occurred in the same

24 pattern." *Bernal*, 788 F. Supp. 2d at 1068.  Important to the Ninth Circuit's ruling

25 in *Metcalf* was the defendants' "concession of access to [the plaintiffs'] works,"

26 which, under the inverse ratio rule then in effect (which is no longer good law),

27 made substantial similarity easier to establish.  *Metcalf*, 294 F.3d at 1075.

28

Courts in the Ninth Circuit have since "repeatedly question[ed] the vitality, utility and nature of *Metcalf's* approach." *DuMond v. Reilly*, 2021 WL 733311, at *9 (C.D. Cal. Jan. 14, 2021).  Less than a year after *Metcalf*, in *Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003), the Ninth Circuit emphasized the importance of the inverse ratio rule to its ruling in *Metcalf*:

> [O]ur decision in *Metcalf* was based on a form of inverse ratio rule analysis: the plaintiff's case was "strengthened considerably by [defendants'] concession of access to their works."  . . . Here, there is no such concession of access as most of [plaintiff's] claims are based purely on speculation and inference.

*Rice*, 330 F.3d at 1179.  *Metcalf* was even more "strikingly limited" by the Ninth Circuit's overruling of the inverse ratio rule in *Skidmore*, *supra*.  *See DuMond*, 2021 WL 733311, at *9.

Under *Skidmore*, the standard of proof to demonstrate substantial similarity is the same regardless of how compelling the showing of access may be. *Skidmore*, 952 F.3d at 1056.  Both before and after *Skidmore*, "courts within this circuit have been reluctant to expand the concept of finding copyright protection for a pattern of unprotected elements in literary works beyond the clear-cut case in *Metcalf*."  *Counts v. Meriwether*, 2015 WL 9594469, at *11 (C.D. Cal. Dec. 30, 2015).  *Metcalf* has thus been limited to cases where the works are "nearly identical," and its application has been routinely rejected where, as here, the expression of unprotectable elements differs considerably between the works at issue.[8]  And no case has allowed what Plaintiff is trying to do here: aggregate

---

[8] *See, e.g.*, *Gilbert-Daniels v. Lions Gate Entm't Corp.*, 2023 WL 8948288, at *23 (C.D. Cal. Dec. 7, 2023); *Whitehead v. Netflix, Inc.*, 2022 WL 17342602, at *23 (N.D. Cal. Nov. 30, 2022); *Ricketts v. CBS Corp.*, 439 F. Supp. 3d 1199, 1221 (C.D. Cal. 2020); *8th Wonder Entm't, LLC v. Viacom Int'l, Inc.*, 2016 WL 6882832 (C.D. Cal. Nov. 22, 2016); *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1170-71 (C.D. Cal. 2015); *Goodness Films, LLC v. TV One, LLC*, 2012 WL 12896899, at *13 (C.D. Cal. Dec. 27, 2012); *Gable v. Nat. Broad. Co.*, 727 F. Supp. 2d 815, 844 (C.D. Cal. 2010).

1  registered and unregistered works (including their unprotectable elements) to
2  concoct a copyright claim under *Metcalf*.

3      Here, "Bucky" and *Moana* "tell decidedly different stories," and their
4  differences "are vastly more substantial than the similarities." *Banks*, 120 F. Supp.
5  3d at 1169; *Bernal*, 788 F. Supp. 2d at 1068. "Bucky" is the story of contemporary
6  Caucasian teenage boy from New Mexico on summer vacation in Kauai who
7  travels back in time with his friends to block development of their favorite surfing
8  beach. Dkt. 405-9 (BUCK5301-87). *Moana* is a musical set 2,000 years in the
9  past that tells the story of the indigenous daughter of an island chief who sets out
10 on an epic journey across the Pacific to find the demigod Maui and persuade him
11 to return the heart of the land spirit Te Fiti and save the world from destruction.
12 Dkt. 407-5 (*Moana* DVD). The generic, unprotectable similarities between the
13 works "hardly rise to the degree of striking similarity found in *Metcalf*" and, if
14 credited in the substantial similarity analysis, "would clearly amount to
15 copyrighting ideas, concepts, and commonplace elements." *Counts*, 2015 WL
16 9594469, at *11; *DuMond*, 2021 WL 733311, at *23.

17          **4.      Defendants' Overwhelming Evidence Of Independent**
18                    **Creation Is Uncontroverted**

19     Finally, Plaintiff's copyright claim independently fails as to all Defendants,
20 based on uncontroverted evidence of independent creation, which "is a complete
21 defense to copyright infringement." *Skidmore*, 952 F.3d at 1064; *Rentmeester*, 883
22 F.3d at 1117 ("No matter how similar the plaintiff's and the defendant's works are,
23 if the defendant created his independently, without knowledge of or exposure to
24 the plaintiff's work, the defendant is not liable for infringement."). Defendants do
25 not rely solely on "'self-interested' declarations," as Plaintiff suggests (Dkt. 474 at
26 3), but have instead submitted selections of the thousands of documents from
27 *Moana*'s development files reflecting the origin and evolution of most every
28 element of the movie. Dkt. 410 (Julius Decl.) ¶¶ 12-21; *see* Dkt. 404-1 to 404-73

(Musker Decl. Exs. A-UUU).  Regardless of how similar two works may appear, where the plaintiff offers no evidence to refute the defendant's evidence of independent creation, summary judgment is proper.  *See Bethea v. Burnett*, 2005 WL 1720631, at \*16 (C.D. Cal. June 28, 2005).

Plaintiff concedes, as he must, that WDAS spent "enormous time and resources" developing *Moana* over a five-year period, including "extensive research" and close collaboration with an Oceanic Story Trust comprised of experts in Oceanic culture, history, and folklore.  Dkt. 474 at 23-25.  Plaintiff asserts, however, that this evidence does not negate the possibility that the filmmakers "copie[d] ideas" from "Bucky," or that "Bucky" somehow "kick-started" *Moana*.  *Id.* at 24, 29.  The problem with this argument, of course, is that drawing ideas or inspiration from a preexisting work—and, for clarity, there is no evidence that occurred here—is *not* copyright infringement.  *See Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525, 529 (9th Cir. 1987) ("ideas … are not protected by copyright and cannot, therefore, be infringed"); *Quirk v. Sony Pictures Entm't Inc.*, 2013 WL 1345075, at \*5 (N.D. Cal. Apr. 2, 2013) (fact that movie is inspired by or adapted from novel does not amount to infringement).[9]

### III.   CONCLUSION

Defendants respectfully request the Court grant their motion (Dkt. 403) and enter summary judgment in their favor on all of Plaintiff's claims for relief.

---

[9] Plaintiff's attack on independent creation relies almost entirely on supposed similarities between "Bucky" and a one-page "Fish Out of Ocean" pitch, about a modern island teenager who travels back in time, meets one of his ancestors, battles a sorcerer, and ultimately saves Oceania. Dkt. 474 at 3, 29.  That pitch, however, was not an early version of *Moana*, but an entirely different pitch that was rejected in favor of *Moana*.  Dkt. 404 (Musker Decl.) ¶ 66.

1    Dated:  June 4, 2024                KING & SPALDING LLP
2                                        HUESTON HENNIGAN LLP
                                         WILLENKEN LLP
3

4                                        By: */s/ Peter Shimamoto*
5                                            Peter Shimamoto
                                             Attorneys for Defendants
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOTION FOR SUMMARY JUDGMENT