Michael D. Roth (Bar. No. 217464)
mroth@kslaw.com
Arwen R. Johnson (Bar No. 247583)
arwen.johnson@kslaw.com
KING & SPALDING LLP
633 W. 5th Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443-4355

Robert N. Klieger (Bar No. 192962)
rklieger@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4310
Facsimile: (888) 775-0898

Peter Shimamoto (Bar No. 123422)
pshimamoto@willenken.com
Kenneth M. Trujillo-Jamison
   (Bar No. 280212)
ktrujillo-jamison@willenken.com
Michelle K. Millard (Bar No. 298245)
mmillard@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCK G. WOODALL, a.k.a. Buck Woodall, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE WALT DISNEY COMPANY, a Delaware Corporation; et al.,<br><br>Defendants. | Case No.: 2:20-cv-03772-CBM-E<br><br>**DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF PLAINTIFF'S RETAINED EXPERT DAVID ROMÁN UNDER *DAUBERT* AND FRE 702**<br><br>Date: August 6, 2024<br>Time: 10:00 a.m.<br>Place: 8D<br><br>Disc. Cutoff: October 23, 2023<br>Pre-Trial Conf.: August 6, 2024<br>Trial Date: October 8, 2024<br><br>Assigned: Hon. Consuelo B. Marshall<br>Magistrate Judge: Charles F. Eick |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on August 6, 2024 at 10:00 a.m. or as soon as the matter may be heard, in Courtroom 8D of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendants The Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios, Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-to-Consumer & International, Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc., Buena Vista Books, Inc., Mandeville Films, Inc., Jenny Marchick, and Pamela Ribon (collectively, "Defendants") will, and hereby do, move to exclude the opinions and testimony of Plaintiff's retained expert David Román under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) and its progeny and Rule 702 of the Federal Rules of Evidence.

   This motion is brought on the grounds that: (1) Román's methodology for analyzing substantial similarity between Plaintiff's "Bucky" materials and *Moana* violates the Copyright Act and the Ninth Circuit's well-established "extrinsic" test in multiple independent ways, thus rendering his opinions unhelpful, unreliable, and unsound; and (2) Román is not qualified to offer an opinion with respect to Defendants' access to Plaintiff's "Bucky" materials.

   This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Arwen R. Johnson ("Johnson Decl.") filed concurrently herewith, all pleadings, records, and papers on file in this action, such matters of which this Court may take judicial notice, and such other evidence and argument as may be considered by the Court in connection with this motion.

1        This motion is made following the conference of counsel pursuant to L.R.

2  7-3, which began on June 21, 2024 and concluded on June 27, 2024.  Johnson

3  Decl. ¶¶ 9-10.

4

5  Dated:  July 9, 2024                KING & SPALDING LLP

6                                        HUESTON HENNIGAN LLP

7                                        WILLENKEN LLP

8

9                          By: */s/ Arwen R. Johnson*

10                              Arwen R. Johnson

                             Attorneys for Defendants

DEFENDANTS' MOTION TO EXCLUDE DAVID ROMÁN

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................ 1

II.     LEGAL STANDARD UNDER *DAUBERT* AND RULE 702 ...................... 5

III.    THE COURT SHOULD EXCLUDE ROMÁN'S OPINIONS AND
        TESTIMONY ................................................................................................. 6

        A.      Fundamental Principles of Copyright Law ........................................ 6

        B.      Román's Substantial Similarity Testimony and Opinions Should
                Be Excluded Because He Failed to Use and Apply the Proper
                Methodology ....................................................................................... 7

                1.      Roman Improperly Aggregated 13 Years of Materials,
                        Including Unregistered Materials, to Come Up with
                        "Bucky" .................................................................................... 8

                        a.      Román Improperly Aggregated 13 Years' Worth of
                                "Bucky" Materials ......................................................... 8

                        b.      Román Impermissibly Included Unregistered
                                Materials in His Analysis ............................................ 13

                2.      Román Improperly Considered Alleged Similarities
                        Outside of the Final Film ........................................................ 15

                3.      Román Failed to Filter Out and Disregard the Works'
                        Unprotectable Elements ........................................................... 17

        C.      Román's Testimony and Opinions with Respect to Access
                Should Also Be Excluded ................................................................. 20

IV.     CONCLUSION ............................................................................................. 21

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*,
   738 F.3d 960 (9th Cir. 2013) ...................................................................... 6

*Alivecor, Inc. v. Apple, Inc.*,
   2024 WL 591864 (N.D. Cal. Feb. 13, 2024) ............................................. 5

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) .............................................................. 17, 18

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ......................................................... 3, 6, 7

*Bernal v. Paradigm Talent & Literary Agency*,
   788 F. Supp. 2d 1043 (C.D. Cal. 2010) ............................................ 7, 10

*Bldg. Indus. Ass'n of Washington v. Washington State Bldg. Code
   Council*,
   683 F.3d 1144 (9th Cir. 2012) .................................................................. 5

*Briggs v. Blomkamp*,
   70 F. Supp. 3d 1155 (N.D. Cal. 2014), *aff'd sub nom. Briggs v.
   Sony Pictures Entm't, Inc.*, 714 F. App'x 712 (9th Cir. 2018) ............ 3

*Camhe v. Dreamworks, LLC*,
   2009 WL 10668462 (C.D. Cal. May 14, 2009)..............................*passim*

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ....................................................... 3, 8, 20

*Counts v. Meriwether*,
   2015 WL 9594469 (C.D. Cal. Dec. 30, 2015) ....................................... 21

*Data E. USA, Inc. v. Epyx, Inc.*,
   862 F.2d 204 (9th Cir. 1988) .................................................................. 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) .......................................................................... 1, 5

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Daubert v. Merrell Dow Pharms. Inc.*,
    43 F.3d 1311 (9th Cir. 1995)............................................................................. 5

*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015)........................................................................ 10

*Desny v. Wilder*,
    46 Cal. 2d 715 (1956)...................................................................................... 20

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    586 U.S. 296 (2019) ................................................................................... 2, 13

*Funky Films, Inc. v. Time Warner Ent. Co.*,
    462 F.3d 1072 (9th Cir. 2006)........................................................................... 6

*Gilbert v. New Line Prods., Inc.*,
    2010 WL 5790628 (C.D. Cal. Aug. 13, 2010)...........................................*passim*

*Gilbert-Daniels v. Lions Gate Ent. Corp.*,
    2023 WL 8948288 (C.D. Cal. Dec. 7, 2023) .................................................. 11

*Johannsongs-Publ'g Ltd. v. Lovland*,
    2020 WL 2315805 (C.D. Cal. Apr. 3, 2020), *aff'd*, *Johannsongs-
    Publ'g, Ltd. v. Lovland*, 2021 WL 5564626 (9th Cir. Nov. 29, 2021)............. 4, 8

*Knowles v. Spin Master, Inc.*,
    2019 WL 4565102 (C.D. Cal. Sept. 17, 2019)...........................................*passim*

*Kodadek v. MTV Networks*, *Inc.*,
    152 F.3d 1209 (9th Cir. 1988)......................................................................... 13

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
    676 F.3d 841 (9th Cir. 2012) .......................................................................... 19

*Mattel, Inc. v. MGA Ent., Inc.*,
    616 F.3d 904 (9th Cir. 2010)............................................................................. 8

*McCormick v. Sony Pictures Ent.*,
    2009 WL 10672263 (C.D. Cal. July 20, 2009), *aff'd*, 411 F. App'x
    122 (9th Cir. 2011) ......................................................................................... 13

*Metcalf v. Bochco*,
    294 F.3d 1069 (9th Cir. 2002)............................................................... 7, 11, 12

DEFENDANTS' MOTION TO EXCLUDE DAVID ROMÁN

*Obrey v. Johnson,*
   400 F.3d 691 (9th Cir. 2005) .................................................................. 5

*Olson v. Nat'l Broad. Co., Inc.,*
   855 F.2d 1446 (9th Cir. 1988) ......................................................... 7, 10

*Quirk v. Sony Pictures Ent. Inc.,*
   2013 WL 1345075 (N.D. Cal. Apr. 2, 2013) ..............................*passim*

*Reed Elsevier, Inc. v. Muchnick,*
   559 U.S. 154 (2010) ...................................................................... 8, 15

*Sid and Marty Krofft Television Prods., Inc. v. McDonald's Corp.,*
   562 F.2d 1157 (9th Cir. 1977) ............................................................ 20

*Smith v. Weeknd,*
   2020 WL 4932074 (C.D. Cal. July 22, 2020), *aff'd sub nom, Clover
   v. Tesfaye,* 2021 WL 4705512 (9th Cir. Oct. 8, 2021) ...................... 18

*Stilwell v. Smith & Nephew, Inc.,*
   482 F.3d 1187 (9th Cir. 2007) .............................................................. 5

*Three Boys Music Corp. v. Bolton,*
   212 F.3d 477 (9th Cir. 2000) .............................................................. 20

*Unicolors, Inc. v. Urb. Outfitters, Inc.,*
   853 F.3d 980 (9th Cir. 2017) .............................................................. 14

*Yonay v. Paramount Pict. Corp.,*
   2024 WL 2107721 (C.D. Cal. Apr. 5, 2024) .................................. 4, 18

**Statutes**

17 U.S.C. § 102 ........................................................................................ 3, 6

17 U.S.C. § 106 ............................................................................................. 6

17 U.S.C. § 411 .................................................................................... 2, 7, 13

**Other Authorities**

Fed. R. Evid. 104(a)...................................................................................6

Fed. R. Evid. 702 ...........................................................................*passim*

Fed. R. Evid. 702 Advisory Committee's Note to 2023 Amendment………………6

Ninth Circuit Model Jury Instruction 17.19………………………………………3

DEFENDANTS' MOTION TO EXCLUDE DAVID ROMÁN

## I.    INTRODUCTION

Plaintiff proffers David Román to opine on purported similarities between Plaintiff's 13-year amalgamation of registered and unregistered "Bucky" materials and Walt Disney Animation Studios' animated motion picture musical *Moana*. The problem for Plaintiff is that Román's methodology turns basic principles of copyright law on their head, making his opinions entirely unhelpful, unreliable, and unsound.  The Court should exercise its gatekeeping role under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) ("*Daubert I*"), and its progeny to exclude his testimony.  *See* Fed. R. Evid. 702.

By this motion, Defendants are not addressing the weight of Román's testimony.  Nor is this a motion about a battle of dueling experts.  Rather, Román's *methodology* violates the Copyright Act and the Ninth Circuit's well-established "extrinsic" test for evaluating the substantial similarity aspect of a copyright infringement claim.  Simply put, Román performed the wrong analysis. He deviated from the approved methodology in at least *four* independent ways:

**1.      Improperly Aggregating Plaintiff's Works.**  As a threshold issue, Román admitted that he aggregated multiple different versions of "Bucky," created over a 13-year period, to conduct his analysis.  Johnson Decl., Ex. 1 (Report) at 5 ("the *Bucky* materials encompass a wide range of writings" because "there is no sole *Bucky* script or screenplay to base a comparison"); Ex. 3 (Roman Vol. 1. Tr.) at 22:10-23:1; *id*. at 68:18-22 ("Let me answer it a different way. After screening the movie, I didn't go back and look at every particular iteration of the Bucky thing to see if [] there was an alignment, you know, in terms of similarities.").  Indeed, during his deposition, Román followed his counsel's instruction and *refused* to answer any questions asking him to compare *Moana* with discrete "Bucky" materials.  Roman Vol. 1 Tr. at 49:16-55:11.

The law is clear, however, that a substantial similarity expert cannot "mix[] and match[]" different versions of a plaintiff's works to "manipulat[e]" the

process and "imagine a new work," but instead must separately compare each of the plaintiff's registered works to the defendant's allegedly infringing work. *See, e.g.*, *Gilbert v. New Line Prods., Inc*., 2010 WL 5790628, at \*3 (C.D. Cal. Aug. 13, 2010); *aff'd*, 490 F. App'x 34 (9th Cir. 2012); *Camhe v. Dreamworks, LLC*, 2009 WL 10668462, at \*5 (C.D. Cal. May 14, 2009). By combining 13 years of "Bucky" materials and cherry-picking individual elements from those materials to "mix[] and match[]" different elements, "without attention to their origin or context," Román violated the extrinsic test. *Gilbert*, 2010 WL 5790628, at \*3-4 (finding this tactic "wholly flawed").

  **2.** **Improperly Relying on Unregistered Materials**. Compounding this fundamental error, Román also based his opinions on non-actionable materials. It is undisputed that much of the "Bucky" materials on which Román relied were never registered with the Copyright Office, and thus, as a matter of law, they cannot form the basis of his infringement claim. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) (copyright owner must register work before suing upon it); 17 U.S.C. § 411(a) (setting forth the registration requirement). Román nonetheless combined both registered and unregistered materials into what he called the "original concept" of "Bucky." *See, e.g*., Report at 5. Because he improperly aggregated *unregistered* works into his improper hodge-podge amalgamation and refused to distinguish individual Bucky materials during his deposition, his opinions are impermissibly based on non-actionable materials, which means they are *legally* flawed.

  **3.** **Improperly Comparing "Bucky" to Materials Other than *Moana***. Román's failure to base his substantial similarity analysis only on non-aggregated registered "Bucky" works was exacerbated by the fact that he did not limit his comparison of those materials to *Moana*, the finished film that Plaintiff contends infringed his copyrights. Instead, Plaintiff included in the comparison various pitch materials, draft scripts, and artwork that were selected by Plaintiff's

DEFENDANTS' MOTION TO EXCLUDE DAVID ROMÁN

attorneys from thousands of *Moana* development documents, as well as magazine articles and other publications from after *Moana*'s release.  As a result, Román identified alleged similarities that are not even in the allegedly infringing film itself.  *See, e.g.*, Report at 35-37.  The proper comparison under the extrinsic test, however, is between the plaintiff's copyrighted work and the final version of the allegedly infringing film—*not* discarded drafts that were never released.  *See Quirk v. Sony Pictures Ent. Inc.*, 2013 WL 1345075, at *6 (N.D. Cal. Apr. 2, 2013); *see also Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1168 n.1 (N.D. Cal. 2014), *aff'd sub nom. Briggs v. Sony Pictures Entm't, Inc.*, 714 F. App'x 712 (9th Cir. 2018).  By failing to compare the individually registered "Bucky" works to *Moana* only, Román botched the analysis even further.

    **4.    Failing to Perform the Necessary Filtering.**  Not only did Román fail to compare the relevant works, but he also failed to filter out their unprotected elements, as Ninth Circuit law requires.  Because the Copyright Act does not protect ideas, only expression, *see* 17 U.S.C. § 102(b), the extrinsic test for substantial similarity demands "an objective comparison of specific *expressive elements*" in the works.  Ninth Circuit Model Jury Instruction 17.19 (emphasis added).  Therefore, in conducting the extrinsic test, an expert must "filter out and disregard the non-protectible elements" before comparing the works' alleged similarities.  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002); *see also, e.g.*, *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).

    Román made no effort at all to conduct a granular, analytical dissection of the relevant works' protected elements.  Rather, he focused on the "overall concept" of "Bucky" derived from his improper amalgamation, and identified "ideas" from that overall concept that he believed also appear in *Moana*.  *See, e.g.*, Johnson Decl., Ex. 2, Rebuttal Report at 15-17 (listing nine such ideas).  When asked how these ideas are actually *expressed* in the works, however, Román admitted—as he must—that they are expressed very differently.  Johnson Decl.,

Ex. 4 (Román Vol. 2 Tr.) at 265:25-300:21.  Where, as here, an expert *completely fails* to filter out non-protected elements, as the extrinsic test requires, his opinion is unhelpful, unreliable, and should be excluded.  *See, e.g.*, *Yonay v. Paramount Pict. Corp.*, 2024 WL 2107721, at *3 (C.D. Cal. Apr. 5, 2024) (expert report that did not filter out unprotected elements was inadmissible under Rule 702); *Johannsongs-Publ'g Ltd. v. Lovland*, 2020 WL 2315805, at *5 (C.D. Cal. Apr. 3, 2020) (same), *aff'd*, *Johannsongs-Publ'g, Ltd. v. Lovland*, 2021 WL 5564626, at *1 (9th Cir. Nov. 29, 2021); *Knowles v. Spin Master, Inc.*, 2019 WL 4565102, at *4 (C.D. Cal. Sept. 17, 2019) (same).

Any of these four methodological errors, on its own, would mean that Román's substantial similarity opinions are unsound and inadmissible.  When combined, they result in expert testimony that is irreparably flawed and has no basis in copyright law.  Defendants are aware of no case that would allow an expert to do *any* of the following, much less all of them:  (i) aggregate a plaintiff's different works that span over 13 years; (ii) rely on unregistered and therefore non-actionable works; (iii) compare the aggregated works to something besides the defendant's final film; and (iv) fail to filter out the aggregated works' unprotectable elements when making that comparison.  Plaintiff is seeking billions of dollars for his claim that *Moana* infringed his copyrights.  His substantial similarity expert must, at a minimum, abide by the appropriate methodology.  Román entirely failed to do so, going so far as refusing to answer questions about how he would apply the extrinsic test properly if directed.

Román also purports to offer an "opinion on the question of Disney's access to the *Bucky* materials."  Report at 4.  Whether a defendant had access to a copyrighted work, however, is a quintessential factual question, ordinarily proven through percipient witness testimony and documentary evidence.  It is not a matter on which experts generally may opine, and Román—a comparative literature professor—has no expertise that could assist the trier of fact in determining

DEFENDANTS' MOTION TO EXCLUDE DAVID ROMÁN

whether the creators of *Moana* had access to any "Bucky" materials. Accordingly, Román's opinion and testimony with respect to access, like his opinions and testimony regarding substantial similarity, should be excluded.

## II.    LEGAL STANDARD UNDER *DAUBERT* AND RULE 702

As the party offering Román's expert testimony, Plaintiff bears the burden of establishing its admissibility. *Bldg. Indus. Ass'n of Washington v. Washington State Bldg. Code Council,* 683 F.3d 1144, 1154 (9th Cir. 2012).

Experts may testify about their opinions only where "the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Testimony that does not satisfy these criteria must be excluded.  *See, e.g.*, *Daubert v. Merrell Dow Pharms. Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*") (expert testimony must meet the "fit" requirement of relevancy, meaning that "it logically advances a material aspect of the proposing party's case"); *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) ("Rule 702 embodies the twin concerns of reliability . . . and helpfulness," and exclusion is warranted where expert testimony "falls short of achieving either end") (cleaned up); *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005) (evidence should be excluded as unreliable when it "suffer[s] from serious methodological flaws").

District courts play a critical gatekeeping role under *Daubert* and Federal Rule of Evidence 702.  Indeed, Rule 702 was recently amended, effective as of December 1, 2023, to "emphasize that the Court must do a preliminary analysis of the basis of the expert's opinions *before* deciding that challenges to the basis go to weight and not admissibility." *Alivecor, Inc. v. Apple, Inc.*, 2024 WL 591864, at

1    *3 n.2 (N.D. Cal. Feb. 13, 2024) (emphasis added).  As reiterated by the Advisory

2    Committee when making the recent amendments to Rule 702, the focus of the

3    gatekeeping function has at times incorrectly treated questions of admissibility as

4    ones of weight.  *See* Fed. R. Evid. 702 Advisory Committee's Note to 2023

5    Amendment (in support of its recent amendments to Rule 702, the Committee

6    made a point of noting that "many courts have held that the critical questions of

7    the sufficiency of an expert's basis, and the application of the expert's

8    methodology, are questions of weight and not admissibility.  These rulings are an

9    incorrect application of Rules 702 and 104(a)").  Thus, while courts should not

10    exclude opinions merely because they are impeachable, courts are obligated "to

11    screen the jury from unreliable nonsense opinions."  *Alaska Rent–A–Car, Inc. v.*

12    *Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

13    **III.    THE COURT SHOULD EXCLUDE ROMÁN'S OPINIONS AND**

14            **TESTIMONY**

15        **A.    Fundamental Principles of Copyright Law**

16        The Copyright Act gives owners of a copyright "exclusive rights," 17

17    U.S.C. § 106, to protect "original works of authorship," *id.* § 102(a).  It protects

18    the expression of ideas, but not ideas themselves.  *Id.* § 102(b).  "General plot

19    ideas are not protected by copyright law; they remain forever the common

20    property of artistic mankind."  *Berkic*, 761 F.2d at 1293.

21        To succeed on a copyright infringement claim, a plaintiff "must

22    demonstrate (1) ownership of a valid copyright, and (2) copying of constituent

23    elements of the work that are original."  *Funky Films, Inc. v. Time Warner Ent.*

24    *Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (cleaned up).  In the absence of direct

25    evidence of copying, the plaintiff may satisfy the "copying" element with "fact-

26    based showings that the defendant had 'access' to the plaintiff's work and that the

27    two works are 'substantially similar.'"  *Id.*

28

The substantial similarity analysis involves two tests: (1) an extrinsic test, which rests on "an objective comparison of the two works" that requires the court to consider "whether the works share a similarity of ideas and expression as measured by external, objective criteria"; and (2) an intrinsic test, which "requires a subjective inquiry into whether a reasonable audience would recognize the allegedly infringing work as a dramatization of the plaintiff's creation." *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1059 (C.D. Cal. 2010).

An expert may opine on the extrinsic test, but not the intrinsic test. *Olson v. Nat'l Broad. Co., Inc.*, 855 F.2d 1446, 1449 (9th Cir. 1988) ("Although analytic dissection and expert testimony are appropriate under the extrinsic test, they are not appropriate under the intrinsic test.").  The extrinsic test compares the individual features of the works; it looks to find specific, articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events. *Berkic*, 761 F.2d at 1292.  In applying the extrinsic test, the comparison is "not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Id.* at 1293.

**B.    Román's Substantial Similarity Testimony and Opinions Should Be Excluded Because He Failed to Use and Apply the Proper Methodology**

Some basic rules govern the application of the extrinsic test:

*First*, Plaintiff "cannot amalgamate multiple works to determine whether or not infringement has occurred." *Camhe*, 2009 WL 10668462, at *5 (rejecting plaintiff's attempt to rely on *Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002), to aggregate unprotected elements across multiple works).

*Second*, because only registered works may form the basis of a claim for copyright infringement, unregistered works cannot be part of the analysis. *See* 17 U.S.C. § 411(a) (no infringement action "shall be instituted until preregistration or

DEFENDANTS' MOTION TO EXCLUDE DAVID ROMÁN

registration of the copyright claim has been made in accordance with this title"); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) (explaining section 411(a)'s registration requirement "is a *precondition* to filing a claim" for copyright infringement) (emphasis added).

*Third*, the comparison must be between the plaintiff's registered work and the defendant's allegedly infringing work.  In the context of a motion picture, this means the final film.  *Quirk*, 2013 WL 1345075, at *6.

*Fourth*, because the "key question" is whether the works are "substantially similar beyond the fact that they depict the same idea," *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 917 (9th Cir. 2010), the Court must first "differentiate between protectable and unprotectable elements of the works."  *Knowles*, 2019 WL 4565102, at *4.  This "filtering" ensures that "the *protectible elements, standing alone*, are substantially similar."  *Cavalier*, 297 F.3d at 822-23 (emphasis in original) (cleaned up).  Indeed, "to the extent the similarities between plaintiff's and defendant's works are confined to ideas and general concepts, these similarities are noninfringing."  *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988).

As set forth below, Román violated all of these rules.  Together, they result in an irreparably flawed and irrelevant opinion that is not grounded in copyright law, triggering the Court's gatekeeping duty under Rule 702.

        **1.**     ***Roman Improperly Aggregated 13 Years of Materials, Including Unregistered Materials, to Come Up with "Bucky"***

        **a.**     **Román Improperly Aggregated 13 Years' Worth of "Bucky" Materials**

To start, when performing the extrinsic test, an expert "cannot amalgamate multiple works to determine whether an infringement has occurred."  *Camhe*, 2009 WL 10668462, at *5.  Rather, "[t]he works must be assessed individually and not manipulated for any parties' own benefit."  *Gilbert*, 2010 WL 5790628, at

*3. It is improper to "comb through an author's multiple works, imagine a new work amalgamated from those works, and then assess whether a defendant's work is substantially similar to, and therefore infringes, the amalgamated works of the plaintiff." *Camhe*, 2009 WL 10668462, at *6.

That, however, is exactly what Román did. He compared *Moana* to an amalgam of various synopses, story outlines, treatments, character descriptions, and scripts that Plaintiff created or commissioned over a more than 13-year period. *See, e.g.*, Report at 3 ("I was asked to review several drafts of screenplays and treatments . . ."); Román Vol. 1 Tr. at 18:19-22, 25:11-27:3, 66:7-10, 68:18-22 & Ex. 2 to Román Vol. 1 Tr.; Román Vol. 2 Tr. at 223:23-25 ("Bucky is [] a compilation of various treatments and stories . . . ."); Report at 5 (admitting his analysis was based on "a wide range of writings," covering "an extended creative timeline beginning with Woodall's initial concept for an animated film and up through the various screenplays based on Woodall's story"). When asked at deposition, Román confirmed that he "didn't go back and look at every particular iteration of the Bucky thing to see if there was an alignment, you know, in terms of similarities." Román Vol. 1 Tr. at 68:18-22. By his own admission, "that's not the way that I did my extrinsic test for the Bucky material and the Moana." *Id*. at 66:7-10.

The result is that Román "manufacture[d] substantial similarities between the parties' works by mixing and matching various elements that exist in different screenplays without attention to their origin or context." *Gilbert*, 2010 WL 5790628, at *3. For obvious reasons, "this tactic is wholly flawed." *Id*.

Román's conclusion, for example, that Bucky's parents and Moana's parents are similar illustrates why this methodology is impermissible. Román opines that the "parents in Bucky and the Disney Film share similar characteristics. They are risk adverse and monitor the whereabouts of their children . . . . Bucky and Moana begin their stories with their parents and end with

familial reconciliations." Report at 15. Setting aside that such characterizations cannot constitute protectible expression,[1] Bucky's parents do not even appear in all of the "Bucky" materials.

Specifically, Román admitted that in one of the treatments he reviewed, Bucky's mother does not appear, and that Bucky's father is not depicted as overprotective and, in fact, dies. Román Vol. 1 Tr. at 55:12-62:16; *see also* Román Vol. 1 Tr., Ex. 2. Román's insistence nevertheless that Bucky's parents are "risk adverse" and part of a "family reconciliation" necessarily depends on cherry-picking among Plaintiff's works to imagine a singular version where Bucky's parents are part of the story, risk adverse, and alive. Of course, this is just one example of many. *See, e.g.*, Román Vol. 2 Tr. at 224:15-225:3 (Román admitting that versions of "Bucky" "start[] off differently" and selecting what he perceives as "the most consistent one"). By failing to assess the works individually, Román selectively ignored their differences, mixed and matched different works, and manipulated the process to benefit Plaintiff. *See Gilbert*, 2010 WL 5790628, at *4; *see also Olson,* 855 F.2d at 1450 (district court properly discounted testimony of proffered expert who "deemphasized any dissimilarities between plaintiff's and defendants' works"). As a consequence, Román's testimony fails Rule 702.

Plaintiff cannot dispute that Román failed to compare each of Plaintiff's individual works to *Moana*. *See, e.g.*, Román Report at 3 & 5. He admittedly did not and, at his deposition, *was instructed by counsel not to engage in that type of analysis*. *See, e.g.*, Román Vol. 1 Tr. at 54:2-15 ("I'm going to instruct him not to

---

[1] *See, e.g.*, *DC Comics v. Towle*, 802 F.3d 1012, 1019 (9th Cir. 2015) (explaining that to be entitled to copyright protection, a character must be "especially distinctive"); *Bernal*, 788 F. Supp. 2d at 1069 ("Generalized character types are not protected by copyright law"); *Olson*, 855 F.3d at 1453 (no substantial similarity where characters were "thinly" drawn and "differed in significant ways").

1  answer. . . [H]e said he took a collection of materials, which arrived as the full
2  Bucky story.  For you to break down one of those materials, which he wasn't
3  asked to do, and ask him to look at it, now you're asking him to speculate.").  It
4  would be manifestly improper, and highly prejudicial to Defendants, to allow
5  Román to testify for the first time at trial as to opinions that he did not express in
6  his expert reports, that he did not express in his deposition, and as to which
7  Defendants have had no opportunity to examine him.

8      Plaintiff has argued that the decision in *Gilbert* allows Román to aggregate
9  the "Bucky" materials into a single "original concept that merits copyright
10  protection."  *See*, *e.g.*, ECF No. 474 at 30; Román Report at 5 (same).  But that is
11  the opposite of what *Gilbert* held.  In *Gilbert*, the plaintiff had written four
12  screenplays and attempted to mix and match their different elements, "without
13  attention to their origin or context."  2010 WL 5790628, at *3.  The *Gilbert* court
14  explained this tactic was "wholly flawed" and the "works must be assessed
15  individually."  *Id*.  It then individually analyzed each of the four screenplays to
16  determine there was no substantial similarity as to any of them.  *Id*. at *4-11.
17  *Gilbert* thus provides no support for Román's approach.

18      Plaintiff also cannot justify Román's aggregation methodology under the
19  Ninth Circuit's decision in *Metcalf*.  Not only was *Metcalf* limited to the "clear-
20  cut" facts of that case, *see, e.g.*, *Gilbert-Daniels v. Lions Gate Ent. Corp*., 2023
21  WL 8948288, at *23 (C.D. Cal. Dec. 7, 2023), but this same misguided *Metcalf*
22  "aggregation" argument was made and thoroughly rejected in *Camhe*.

23      In *Camhe*, the plaintiffs attempted to aggregate purported similarities from
24  two different works, a film screenplay and a television series treatment, to show
25  substantial similarity between the defendant's show and the plaintiffs' works as a
26  group.  2009 WL 10668462, at *5.  The plaintiffs argued that "the *Metcalf* court
27  held that the treatment for the television series and the film script *in combination*

28

1   were sufficiently similar to withstand summary judgment." *Id*.  But the *Camhe*
2   court thoroughly (and correctly) disagreed:

3            *Metcalf* contains no such holding and the court nowhere
4            stated that it considered the works in combination.  Indeed,
             the court's own summary of the case indicates that the
5            court was comparing one screenplay with another.  It is
6            true that the Ninth Circuit discussed the concept of
             aggregation, but only for the purpose of explaining that
7            *unprotected elements could be selected and sequenced in*
8            *a single work* in such a way that the aggregation reflected
             sufficient originality to justify protection under the
9            Copyright Act. . . . Thus, *Metcalf* holds that an *author's*
10           selection and sequencing of elements may be protectable,
11           but not that the Court should comb through an author's
             multiple works, imagine a new work amalgamated from
12           those works, and then assess whether a defendant's work
             is substantial similar to, and therefore infringes, the
13           amalgamated works of the plaintiff.

14  *Id.* at *5-6 (first emphasis added).  The court thus analyzed the plaintiff's
15  screenplay and the plaintiff's treatment individually under the extrinsic test,
16  finding no substantial similarity as a matter of law between either of plaintiff's
17  works and the defendant's show.  *Id.* at *6-15.

18          As the court made clear in *Camhe*, nothing in *Metcalf* would allow a
19  plaintiff's expert to aggregate multiple works to conduct the extrinsic test.  Indeed,
20  to the extent *Metcalf* depends on the *author's* sequence and combination of
21  unprotectable elements, having an *expert* pull unprotectable elements from 13
22  years of works to make up their combination and sequence is inherently *not* within
23  the ambit of *Metcalf*.  In summary, there is *no* support for Román's methodology
24  of aggregating 13 years of Plaintiff's works into a single, imagined concept of
25  "Bucky."  His failure to assess the works individually is "wholly flawed," *Gilbert*,
26  2010 WL 5790628, at *3, which means his opinions are inadmissible.

27
28

**b.      Román Impermissibly Included Unregistered Materials in His Analysis**

Not only did Román improperly aggregate a variety of Plaintiff's works to conduct his analysis, but he also ignored whether all the various works he was combining were even actionable in the first instance.  They are not.  As a result of his flawed approach, Román based his opinion on works that cannot be the basis of Plaintiff's copyright infringement claim.

As the Supreme Court has made clear, before pursuing a copyright infringement claim, a plaintiff "must comply with [17 U.S.C.] § 411(a)'s requirement that 'registration of the copyright has been made.'"  *Fourth Est.*, 586 U.S. at 301 (quoting 17 U.S.C. § 411(a)).  "Copyright registration . . . is a prerequisite to a suit based on copyright."  *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1988).  A plaintiff cannot pursue a claim based on an unregistered work.  *See Knowles*, 2019 WL 456102, at *4 ("Plaintiff has only registered with the United States Copyright Office Issues 1 and 2 of the Comic Book; Issue 3 was never registered.  Because Plaintiff did not comply with the Copyright Act's registration requirement for Issue 3, he is unable to pursue infringement claims arising out of Issue 3."); *McCormick v. Sony Pictures Ent.*, 2009 WL 10672263, at *9 (C.D. Cal. July 20, 2009) (declining to consider merits of copyright claim based on works not validly registered with the Copyright Office), *aff'd*, 411 F. App'x 122 (9th Cir. 2011).

The 259 pages of "Bucky" materials that Román amalgamated into a single allegedly infringed work were a hodgepodge of materials that Plaintiff created or commissioned over a period of 13 years, comprised of multiple treatments, synopses, character descriptions, and selected artwork, as well as his completed 2008 trailer that is the subject of his trade secret claim.  Román Vol. 1 Tr. 16:25-17:6, 18:19-22, & Ex. 2; ECF No. 405-2.  Only a small subset of those materials—the 2003 Treatment, 2011 Script, and about half of the selected

artwork—was included in either of Plaintiff's two copyright registrations.  All of the other "Bucky" materials that Román used in performing his substantial similarity analysis were never registered with the Copyright Office and therefore could not properly be considered:



\* 2011 Script, although unregistered, is virtually identical to registered 2014 Script



Román nevertheless, admittedly, pulled freely from among those unregistered works to concoct an aggregated collection of "Bucky" materials that he then used as his point of comparison for *Moana*.  But this is not a case where the various works were registered as a part of an actionable collection of works. *Cf. Unicolors, Inc. v. Urb. Outfitters, Inc*., 853 F.3d 980, 988 (9th Cir. 2017).  The only "Bucky" works that should have been included in Román's analysis were the

1  registered works—and, as explained above, *see* Section III.B.1.a, *supra*, he should

2  have analyzed each of them individually.

3        This means, for example, that the various visual comparisons that Román

4  cited from the 2008 trailer as evidence of allegedly "uncanny" similarities

5  between "Bucky" and *Moana* are not actionable.  *See, e.g.*, Report at 37; ECF No.

6  405-2.  This includes the trailer's depiction of the volcano goddess Pele, and its

7  depiction of the flight into Hawaii, both of which Román claimed "are uncanny in

8  their resemblance [to Moana], further strengthening the case against Disney." *Id.*

9  at 37.  Even assuming these purported resemblances to *Moana* existed (they do

10  not) and were actionable (they are not), the 2008 trailer, ECF No. 405-2, like

11  Plaintiff's other unregistered "Bucky" materials, cannot legally be the basis of

12  Plaintiff's copyright infringement claim.  *See, e.g.*, *Reed Elsevier*, 559 U.S. at 157

13  (registration "is a precondition to filing a claim" for copyright infringement).[2]

14        **2.**    ***Román Improperly Considered Alleged Similarities Outside***

15            ***of the Final Film***

16        Not only did Román fail to examine the relevant allegedly *infringed* works,

17  but he also analyzed the wrong allegedly *infringing* work.

18        To determine whether a defendant's film infringed the plaintiff's copyright,

19  the "only relevant question . . . is whether the final movie as filmed, edited, and

20  released contains matter substantially similar to protectable elements" of

21  Plaintiff's work." *Quirk*, 2013 WL 1345075, at *6 (rejecting plaintiff's attempt to

22  analyze defendant's draft scripts of *Premium Rush*, rather than the film itself, as

23  part of the substantial similarity analysis).  As the court explained in *Quirk*, even

24

25  _____

26  [2] Román's consideration of various unregistered "Bucky" materials is further
flawed given that Plaintiff has not articulated an access theory for much of those

27  materials.  However, the fact that the materials were never registered with the
Copyright Office, standing alone, is enough to preclude their consideration and

28  render Román's opinions unreliable as a matter of law.

if defendants had borrowed from plaintiff's work and then made changes to conceal that borrowing, "there is no liability in copyright unless defendants failed to make enough changes to conceal the borrowing." *Id*. (citing *See v. Durang*, 711 F.2d 141 (9th Cir. 1983)).  That is because "copying deleted or so disguised as to be unrecognizable is not copying."  *See* 711 F.2d at 142.  The only proper comparison under the extrinsic test is between the plaintiff's individual copyrighted work(s) and the final version of *Moana*.

Román, however, did not limit himself to the final *Moana* film.  Instead he also improperly included as points of comparison a "Fish Out of Water" pitch that was rejected in favor of the story that became *Moana*, scrapped development materials for *Moana* (including excerpts from draft scripts, development sketches, and scrapped storyboard images), press articles following *Moana*'s release in 2016, and a 2019 children's book based on the film:



DEFENDANTS' MOTION TO EXCLUDE DAVID ROMÁN

1    For example, Román opined, in apparent reference to a 2016 *Entertainment*
2    *Weekly* article, that "the Disney Film that became Moana initially was constructed
3    around a young teenage boy who time-travels . . . to ancient Polynesia to save
4    Oceania from destruction."  Report at 35-36.  Román further opined, in apparent
5    reference to early development art, that "[t]here's also a whirlpool in an early
6    version of Moana that serves as a magic portal."  *Id.* at 36.  And Román opined,
7    apparently based on an excerpt from a draft script, that "Moana, like Bucky,
8    surfs."  *Id.*

9    Even assuming that the record supported these claims (it does not), it is
10   undisputed that *none* of this is actually in *Moana*.  *See* ECF No. 20 (Moana DVD,
11   which the Court has ordered is incorporated by reference into the pleadings, *see*
12   ECF No. 90, at 3-4); *see also* ECF No. 407-5.  Román admitted as much at his
13   deposition.  Román Vol. 1 Tr. at 81:2-3; 84:15-20; 86:23-25.  None of these
14   materials are valid points of comparison for the substantial similarity analysis.

15   In sum, Román considered the wrong works on *both* sides of his substantial
16   similarity analysis.  He should have compared the 2003 "Bucky" Treatment and
17   2011 "Bucky" Script to the final *Moana* film, and disclosed his opinions about
18   those individual comparisons.  Instead, he compared a 13-year amalgamation of
19   registered and unregistered "Bucky" works to not just the *Moana* film but also
20   *Moana* development materials, third-party articles, and a children's book released
21   three years after the film.  Those were the wrong points of comparison, and they
22   render Román's substantial similarity opinion worthless as a matter of law.

23   **3.    *Román Failed to Filter Out and Disregard the Works'***
24   ***Unprotectable Elements***

25   In addition to comparing the wrong things, Román also failed to filter out
26   and disregard the works' unprotectable elements before analyzing their purported
27   similarities.  *See, e.g.*, *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435,
28   1443 (9th Cir. 1994) ("Using analytic dissection, and, if necessary, expert

testimony, the court must determine whether any of the allegedly similar features are protected by copyright."). Because filtering is the "foundation of the extrinsic test," Román's failure to filter is fatal. *Johannsongs-Publ'g Ltd.*, 2020 WL 2315805, at *5 (expert's failure to filter out unprotected elements rendered reports unhelpful and inadmissible) (citing *Apple Computer, Inc.*, 35 F.3d at 1446); *see also, e.g.*, *Yonay*, 2024 WL 2107721, at *3 (same); *Knowles*, 2019 WL 4565102, at *4 (same); *Smith v. Weeknd*, 2020 WL 4932074, at *6 (C.D. Cal. July 22, 2020) (excluding expert report that did "not attempt[] to filter out the unprotectable elements"), *aff'd sub nom*, *Clover v. Tesfaye*, 2021 WL 4705512 (9th Cir. Oct. 8, 2021).

Tellingly, Román admitted that he first identified purportedly similar *ideas*, rather than protected elements. Rebuttal Report at 14 (criticizing defendant's expert for refusing "to first identify similar ideas between Bucky and Moana, irrespective of whether or not they are protectible under copyright law"). Román demonstrated that he did not understand how to filter, and did not filter, ideas from expression by basing his substantial similarity findings largely on the following nine "original ideas" he claimed "merit protectible status":

- "[t]he *idea* of an island (or a beach) in peril";
- "[t]he *idea* of attempting to save an island (or a beach) from imminent destruction";
- "[t]he *idea* of a stubborn and determined young protagonist defying parental warnings and concerns by venturing out on a treacherous sea";
- "[t]he *idea* of protagonist receiving a symbolic necklace as a gift for the adventure journey";
- "[t]he *idea* of a young protagonist adventurer learning about Polynesian folklore and mythology, indigenous culture and history on their journey";

- "[t]he *idea* that the young protagonist, or anyone, for that matter, experiencing visions of ancient Polynesia along their journey and thereby learning about ancient indigenous cultures";
- "[t]he *idea* of interacting with Polynesian mythological figures during their journey";
- "[t]he *idea* of encountering an oceanic whirlpool portal"; and
- "[t]he *idea* of antagonists shape-shifting into tiny insects as part of the plot."

*Id*. at 15-17 (emphasis added).  These are, by Román's own admission, "ideas."  Copyright law, however, does not protect ideas; rather, it protects expression.  *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012).

Insofar as the foregoing ideas are common between "Bucky" and *Moana* (and most are not), those ideas are expressed very differently between the two works.  Indeed, Román conceded as much in the second day of his deposition.  Over 35 consecutive pages of deposition testimony, Román admitted that the actual expression of these "ideas" differs markedly between "Bucky" and *Moana*, yet he failed to filter out those ideas in conducting his analysis.  *See* Román Vol. 2 Tr. at 265:25-300:21.  Had he done so, it would have been evident that "Bucky" and *Moana* are not substantially similar in protected expression.

By aggregating Plaintiff's registered and unregistered works into a single imagined work, and failing to filter out and disregard the ideas from their expression, Román failed entirely to "differentiate between protectable and unprotectable elements."  *Knowles*, 2019 WL 4565102, at *4.  This issue is not about the weight of Román's opinion, or a disagreement between experts about whether something is protectable.  Román *did not filter* unprotectable elements.

1  That failure renders his opinions not just unreliable, but also contrary to copyright

2  law.  His opinions and testimony should be excluded under Rule 702.[3]

3       C.    **Román's Testimony and Opinions with Respect to Access Should**

4             **Also Be Excluded**

5       In addition to his opinions on substantial similarity, Román purports to

6  opine "on the question of Disney's access to the *Bucky* materials."  Román Report

7  at 4.  Access, however, is a quintessentially factual question that is proven through

8  percipient witness testimony and documentary evidence.  It is not a matter on

9  which experts generally may opine, and Román has no expertise that could assist

10 the trier of fact in determining whether the creators of *Moana* had access to any

11 "Bucky" materials.

12      The Ninth Circuit has explained that "[p]roof of access requires 'an

13 opportunity to view or to copy plaintiff's work.'"  *Three Boys Music Corp. v.*

14 *Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) (quoting *Sid and Marty Krofft*

15 *Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir.

16 1977)).  Moreover, "[c]ircumstantial evidence" of access may be proven "in one

17 of two ways," where: "(1) a particular chain of events is established between the

18 plaintiff's work and the defendant's access to that work (such as through dealings

19 with a publisher or record company), or (2) the plaintiff's work has been widely

20 disseminated."  *Id*.  Both of those issues are *factual* questions for percipient

21 witnesses, not ones that require an expert.

22      Román has no expertise that can assist the trier of fact in determining

23 whether the creators of *Moana* had access to any "Bucky" materials.  *See* Fed. R.

24

25 ─────────────────────

26 [3] Román's comparative-literature approach to assessing the works' ideas could
   potentially have been appropriate if Plaintiff had filed this as an idea submission

27 case.  *See Desny v. Wilder*, 46 Cal. 2d 715 (1956); *Quirk*, 2013 WL 1345075, at
   *10-12.  But in a copyright infringement case like this one, an expert *must* filter out

28 the unprotected elements.  *See Cavalier*, 297 F.3d at 822-23.

Evid. 702.  Román is a comparative literature professor.  *See* Román Vol. 2 Tr. at 308:15-20 ("[T]he reason I'm selected to be an expert witness is because I have a Ph.D. in comparative literature and I know how to compare and contrast different sets of texts up and against each other.").  He does not purport to have any expertise in studio practice, filmmaking, submitting pitch materials, or any other issue relevant to access.  *See Counts v. Meriwether*, 2015 WL 9594469, at *5 (C.D. Cal. Dec. 30, 2015) (excluding expert opinion on issue of access based on expert's "lack of experience" on how materials are accessed within an agency).  Thus, Román has nothing useful to offer the factfinder in performing a fact-based inquiry into access.

**IV.   CONCLUSION**

For all the foregoing reasons, Román failed to apply the proper methodology in evaluating substantial similarity and is not qualified to offer an opinion on the entirely fact-based question of access.  His opinions are unhelpful, unreliable, and irrelevant under copyright law.  Plaintiff cannot meet his burden to establish the admissibility of Román's opinions, and Román's testimony should therefore be excluded in its entirety.

Dated:  July 9, 2024

KING & SPALDING LLP
HUESTON HENNIGAN LLP
WILLENKEN LLP


By: */s/ Arwen R. Johnson*
    Arwen R. Johnson
    Attorneys for Defendants

DEFENDANTS' MOTION TO EXCLUDE DAVID ROMÁN