# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Buck G. Woodall, a.k.a. Buck Woodall, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>The Walt Disney Company *et al.*,<br><br>    Defendants. | Case No.:  CV 20-3772-CBM(Ex)<br><br>**ORDER RE: EVIDENTIARY OBJECTIONS RE CROSS-SUMMARY JUDGMENT MOTIONS [475][476][528]** |

The Court rules on the parties' evidentiary objections filed in connection with the cross-summary judgment motions as follows.

**A.    Plaintiff's Evidentiary Objections re: Defendants' Evidence in Support of Defendants' Motion for Summary Judgment (Dkt. No. 476)**

The Court rules on Plaintiff's evidentiary objections set forth in Plaintiff's Statement of Genuine Disputes in response to Defendants' Statement of Undisputed Facts (Dkt. No. 476 ("Plaintiff's SGD")) as follows:

1.    **Plaintiff's SGD No. 1:**

   Defendants' evidence:  Shimamoto Decl. Ex. 10 at ¶¶ 3-4 (draft Woodall declaration).

   Plaintiff's objections:  Plaintiff objects to the admissibility of unsigned declarations.

Defendants' response: Plaintiff's objection to Shimamoto Ex. 10 [Plaintiff's unsigned declaration] [Dkt. 405-10] on the ground that unsigned declarations are inadmissible lacks merit. Plaintiff admitted in response to Defendants' Requests for Admission that the statements contained in those paragraphs of the declaration are true. (*See* Dkt. 405-7, Shimamoto Ex. 7, Plaintiff's Responses to RFA Nos. 34 & 36 (admitting the statements contained in paragraphs 3 and 4 of the draft declaration of Plaintiff Woodall are correct).)

**Ruling**: OVERRULED.

2. **Plaintiff's SGD No. 8:**

Defendants' evidence: Shimamoto Decl., Ex. 2 (BUCK0004824); *id*., Ex. 5 (BUCK0004846 at 4:28-4:44); *id*., Ex. 3 (BUCK0007976); *id*., Ex. 4 (BUCK0008145); *id*., Ex. 6 (BENPRIV0000019).

Plaintiff's objections: Plaintiff objects to the admissibility of improperly authenticated records and hearsay contained within PDF documents and alleged inactive links, as to which Plaintiff testified that he does not recall the circumstances of creating and saving these files. *See*, Woodall Decl. IOM, at ¶¶ 13-17; Ex. 6, Botwin Decl. IOM, DE441-6 (Woodall Tr.), at 257:20-265:10. Plaintiff objects to the admissibility of hearsay contained within an email, to the extent Defendants seek to prove the truth of what any inactive links allegedly contained.

Defendants' response: Plaintiff's evidentiary objections to the evidence Defendants cited lack merit, as Defendants cited documents that Plaintiff produced, and Defendants authenticated them as such. Similarly, Plaintiff's hearsay objections lack merit because the statements at issue were made by the Plaintiff, and are therefore admissions by a party opponent. Fed. R. Evid. 801(d)(2)(A); *U.S. Securities Holdings, Inc. v. Andrews*, 2021 WL 6882436, at *5 (C.D. Cal. Decl. 24, 2021) ("emails written by a party are admissions of a party opponent and admissible as non-hearsay").

**Ruling**: OVERRULED as to authentication objection. (*See* Shimamoto Decl. ¶¶ 3-7 (declaring Exhibits 2-6 attached to Shimamoto's declaration were produced by Plaintiff in this action).) *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 777 (9th Cir. 2002) (noting the 9th Circuit has held "documents produced by a party in discovery were deemed authentic when offered by the party-

2

opponent" and noting "[a]uthentication can also be accomplished through judicial admissions such as ... production of items in response to ... [a] discovery request," and finding document attached to declaration was not authenticated by having been produced in discovery where the party offering the document did not identify who produced it and the party opponent did not admit to having produced it) (citations omitted); *Grossman v. City of Palm Springs*, 2017 WL 11635996, at *5 (C.D. Cal. Aug. 28, 2017) (overruling in connection with summary judgment motion defendants' objection to documents produced by defendants during discovery based on lack of foundation and no authentication); *DCD Partners, LLC v. Transamerica Life Ins. Co.*, 2017 WL 3443210, at *6 n.10 (C.D. Cal. Aug. 9, 2017) (overruling in connection with summary judgment motion objection to exhibits as inadequately authenticated where declarant declared exhibits attached to his declaration were produced during discovery by defendant and defendant "[did] not appear to dispute that it produced these exhibits during discovery").[1]  OVERRULED as to hearsay objection.  (*See* Shimamoto Decl. Ex. 6 (email from Plaintiff to Jon Pfieffer dated October 30, 2015 wherein Plaintiff wrote "please have a look at my trailer on You-Tube")._)  *See* Fed. R. Evid. 801(d)(2)(A) (statement made by opposing party offered against the opposing party are not hearsay); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (Wilson, J.) (emails sent from defendant's corporate email address were "admissible non-hearsay as admission by the party opponent under Rule 801(d)(2)"); *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769, 781 (C.D. Cal. 2004) ("emails written by a party are admissions of a party opponent and admissible as non-hearsay under Fed.R.Evid. 801(d)(2)").

**B.     Defendants' Evidentiary Objections re: Plaintiff's Evidence in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 528)**

The Court rules on Defendants' evidentiary objections set forth in their Response to Plaintiff's Statement of Genuine Disputes in connection with Defendants' Motion for Summary Judgment (Dkt. No. 528 ("Defendants'

---

[1] Here, Plaintiff does not dispute he produced Exhibits 2-6 attached to Shimamoto's declaration in discovery.

Response to Plaintiff's SGD")), as follows:

1. **Defendants' Response to Plaintiff's SGD No. 1:**

   <u>Plaintiff's evidence</u>:  Botwin Declaration in Opposition to Defendants' MSJ ("Botwin IOM Declaration") Exs. 1 (news article), 2 (magazine article), 3 (magazine article), 4 (news article), and 9 (news article) (Dkt. Nos. 479-1, 479-2, 479-3, 479-4, and 479-9); Botwin Declaration in Support of Plaintiff's Motion for Partial Summary Judgment ("Botwin ISM Declaration") Ex. 49 (Dkt. No. 441-49) (information re Moana from blu-ray.com).

   <u>Defendants' objection</u>:  Defendants object to Botwin IOM Declaration Exs. 1-4 and 9 pursuant to FRE 401, 402, 801, and 802 on the grounds that they are irrelevant and constitute inadmissible hearsay.  Defendants object to Botwin ISM Declaration Ex. 49 pursuant to FRE 801, 802 on the ground that it is irrelevant and constitutes inadmissible hearsay.

   <u>**Ruling**</u>:  SUSTAINED as hearsay as to all exhibits.

2. **Defendants' Response to Plaintiff's SGD No. 5:**

   <u>Plaintiff's evidence</u>:  Botwin ISM Declaration Exhibit 49 (Dkt. No. 441-49) (information re Moana from blu-ray.com)

   <u>Defendants' objection</u>:  Defendants object to Botwin ISM Declaration Ex. 49 pursuant to FRE 801, 802 on the ground that it is irrelevant and constitutes inadmissible hearsay.

   <u>**Ruling**</u>:  SUSTAINED as hearsay.

3. **Defendants' Response to Plaintiff's SGD No. 9:**

   <u>Plaintiff's evidence</u>:  Botwin IOM Declaration Ex. 11 (Dkt. No. 479-11) (IMdb Pro profile for Hawaii's Reel Stories); Botwin ISM Declaration Ex. 49 (Dkt. No. 441-49) (information re Moana from blu-ray.com)

   <u>Defendants' objection</u>:  Defendants object to Botwin IOM Declaration Exhibit 11 pursuant to FRE 801, and 802 on the grounds that it is inadmissible hearsay.  Defendants object to Botwin ISM Declaration Ex. 49 pursuant to FRE 801, 802 on the grounds that it is irrelevant and constitutes inadmissible hearsay.

**Ruling:** SUSTAINED as hearsay as to Botwin IOM Declaration Ex. 11 and Botwin ISM Declaration Ex. 49.

4. **Defendants' Response to Plaintiff's SGD No. 10:**

Plaintiff's evidence: Woodall Declaration ¶ 8 (Dkt. No. 434): "I recall that the second meeting on Disney's lot in Burbank that Jenny Marchick admits she arranged between 2003 and 2005 was with representatives of the Disney studio that produced animated feature films, which is consistent with Jenny Marchick's reference to the location of the meeting as 'the studio' and the people she connected me with as a representative of "Disney TV." I note that "Walt Disney Studios and Television," now apparently known as Walt Disney Pictures, was the division that created animated films for the big screen and television at that time."

Defendants' objection: Defendants object to paragraph 8 of the Woodall Declaration pursuant to FRE 602, 801 and 802 on the grounds that the statements contained therein are not based on personal knowledge and are based, at least in part, on inadmissible hearsay.

**Ruling:** SUSTAINED as to "which is consistent with Jenny Marchick's reference to the location of the meeting as 'the studio'" and "I note that "Walt Disney Studios and Television," now apparently known as Walt Disney Pictures, was the division that created animated films for the big screen and television at that time" for lack of personal knowledge. OVERRULED as to the remainder of Plaintiff's Declaration ¶ 8.

5. **Defendants' Response to Plaintiff's SGD No. 24:**

Plaintiff's evidence: Botwin Declaration ISM Ex. 18 (Dkt. No. 441-18): statements from article *Not Just for Kids* by Doug Daniels, Connecticut College Magazine (Fall 2019 Edition), "Marchick's talent and ambition were immediately apparent, and she was promoted to Creative Executive at Mandeville Films, then ultimately named Director of Development at the company before moving on to 20th Century Fox in 2007, where she worked on live-action films. But she was interested in animation and the direction the medium was headed. Not only were animated movies attracting A-list writers and actors, but the technology was also advancing in exciting ways. When the opportunity to join Sony Pictures Animation arose,

5

Marchick jumped at it."

Defendants' objection:  Defendants object to Botwin Declaration ISM Ex. 18 pursuant to FRE 401, 402, 801, and 802 on the grounds that it is irrelevant and constitutes inadmissible hearsay.

**Ruling**:  SUSTAINED as hearsay.

6. **Defendants' Response to Plaintiff's SGD No. 64:**

Plaintiff's evidence:  Botwin ISM Declaration Exs. 38 and 42 (Dkt. No. 441-38, 441-42) (news articles); Botwin IOM Declaration Exs. 15 (news article), 17 (news article), 18 (magazine article), 20 (Los Angeles Times article), 21 (newspaper article), 22 (news article), and 23 (book excerpts) (Dkt. Nos. 479-15, 479-17, 479-18, 479-20, 479-21, 479-22, and 479-23).

Defendants' objection:  Defendants object to Botwin ISM Declaration Exs. 38 and 42 pursuant to FRE 401, 402, 801, and 802] on the grounds that they are irrelevant and constitute inadmissible hearsay.  Defendants object to Botwin IOM Declaration Exs. 15, 17, 18, 20, 21, 22, and 23 pursuant to FRE 401, 402, 801, and 802 on the grounds that they are irrelevant and constitute inadmissible hearsay.

**Ruling**:  SUSTAINED as hearsay as to Botwin ISM Declaration Exs. 38 and 42.  SUSTAINED as hearsay as to Botwin IOM Declaration Exs. 15, 17, 18, 20, 21, 22, and 23.

C. **Defendants' Evidentiary Objections re: Plaintiff's Evidence in Support of Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 475)**

The Court rules on Defendants' Evidentiary Objections re Plaintiff's Evidence in Support of Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 475), as follows:

1. Plaintiff's evidence:  Botwin Decl. (Dkt. No. 441) Ex. 6, Plaintiff's Depo. 89:19-90:2:

> 19 But they were doing recordings of him and I 12:04:23
> 20 think at least one other character there in Kauai. 12:04:25
> 21 And while those guys were in the studio, Doc Kane had
> 12:04:28

> 22 connected with Peter and Katie both and they pitched 12:04:39
> 23 Bucky to him as well and shared images that they had 12:04:41
> 24 in the studio and in writing. 12:04:45
> 25 And I think they even followed up and mailed 12:04:48
> 1 them the pitch package later so that occurred for 12:04:51
> 2 sure.

Defendants' objections: Testimony is not based on personal knowledge and constitutes inadmissible hearsay

**Ruling:** SUSTAINED for lack of personal knowledge and hearsay.

**2.** Plaintiff's evidence: Botwin Decl. (Dkt. No. 441) Ex. 6, Plaintiff's Depo. 90:6-12:

> 6 Q. And then a short time after that mailed the 12:05:11
> 7 pitch package? 12:05:13
> 8 A. Yes. 12:05:17
> 9 Q. And they mailed it to him at Disney? 12:05:18
> 10 A. Yes, well there was an address at the Disney 12:05:25
> 11 Animation Studio written down by Katie so that's what 12:05:27
> 12 I'm assuming. 12:05:30

Defendants' objections: Testimony is speculation and is not based on personal knowledge.

**Ruling:** SUSTAINED as speculative and lack of personal knowledge.

**3.** Plaintiff's evidence: Botwin Decl. (Dkt. No. 441) Ex. 6, Plaintiff's Depo. 96:11-20:

> 11 A. I don't know. Executives is what I would 12:13:26
> 12 assume, because they're, you know, executive 12:13:29
> 13 directors and people in the film development of 12:13:32
> 14 Disney Animation. 12:13:37
> 15 Q. Did he specifically tell you or to your 12:13:39
> 16 knowledge Ms. Speirs or Mr. Heckmann that he had 12:13:43
> 17 shared the materials with somebody? 12:13:45
> 18 A. Like I said, I recall Katie being excited 12:13:54

> 19 that he received it and he had confirmed that he 12:13:56
> 20 received it and would try to help us. 12:13:59

<u>Defendants' objections</u>: Testimony is speculation, is not based on personal knowledge, and constitutes inadmissible hearsay.

<u>**Ruling**</u>: SUSTAINED as to 96:11-14 as speculative and for lack of personal knowledge. SUSTAINED as to "and he had confirmed that he 12:13:56 20 received it and would try to help us" in 96:18-20 as hearsay. OVERRULED as to remainder at 96:18-19 ("Like I said, I recall Katie being excited 12:13:54 19 that he received it").

4. <u>Plaintiff's evidence</u>: Botwin Decl. (Dkt. No. 441) Ex. 6, Plaintiff's Depo. 98:20-99:3:

> 20 Q. What brought about the decision to send the 12:16:50
> 21 materials to Pixar? 12:16:52
> 22 A. I don't know if at the time Pixar had 12:17:05
> 23 already joined up with Disney. But it may have. 12:17:06
> 24 And she may have just written to Disney at 12:17:11
> 25 Pixar and that they shared the same address. But I 12:17:13
> 1 just remember in my mind that they were both written 12:17:17
> 2 on that note by Katie Speirs and that they were 12:17:19
> 3 mailed to the two companies. 12:17:23

<u>Defendants' objections</u>: Testimony is speculation, is not based on personal knowledge, and constitutes inadmissible hearsay.

<u>**Ruling**</u>: SUSTAINED as to 98:22-25 for speculation and lack of personal knowledge. OVERRULED as to remainder.

5. <u>Plaintiff's evidence</u>: Botwin Decl. (Dkt. No. 441) Ex. 6, Plaintiff's Depo. 113:21-24:

> 21 A. If I had any knowledge of, you know, of 13:33:38
> 22 anyone sending anything, which I remember Katie 13:33:41
> 23 telling me, yes, we would have gotten a 13:33:44
> 24 confidentiality form signed prior to -- 13:33:47

<u>Defendants' objections</u>: Testimony constitutes inadmissible hearsay.

<u>**Ruling**</u>: SUSTAINED as to "Katie telling me, yes" as hearsay.

OVERRULED as to remainder.

6. Plaintiff's evidence: Botwin Decl. (Dkt. No. 441), Ex. 18 (statements from article *Not Just for Kids* by Doug Daniels, Connecticut College Magazine (Fall 2019 Edition), "Marchick's talent and ambition were immediately apparent, and she was promoted to Creative Executive at Mandeville Films, then ultimately named Director of Development at the company before moving on to 20th Century Fox in 2007, where she worked on live-action films. But she was interested in animation and the direction the medium was headed. Not only were animated movies attracting A-list writers and actors, but the technology was also advancing in exciting ways. When the opportunity to join Sony Pictures Animation arose, Marchick jumped at it.")

   Defendants' objections: Fed. R. Evid. 401, 402, 801, 802. The statements in the article identified as Ex. 18 are irrelevant and constitute inadmissible hearsay.

   **Ruling**: SUSTAINED as hearsay.

7. Plaintiff's evidence: Botwin Decl., Ex. 19 (LinkedIn profile of Doug Short)

   Defendants' objections: Fed. R. Evid. 401, 402, 801, 802. The statements in the LinkedIn profile identified as Exhibit 19 are irrelevant and constitute inadmissible hearsay.

   **Ruling**: SUSTAINED as hearsay.

8. Plaintiff's evidence: Botwin Decl., Ex. 20 (interview with Doug Short, published on March 17, 2018, at Animated Views, by Jérémie Noyer)

   Defendants' objections: Fed. R. Evid. 401, 402, 801, 802. The statements in the article identified as Exhibit 20 are irrelevant and constitute inadmissible hearsay.

   **Ruling**: SUSTAINED as hearsay.

9. Plaintiff's evidence: Botwin Decl., Ex. 24 (Defendant Jenny Marchick's public LinkedIn profile stating Marchick worked for Sony Pictures Animation from 2011 to 2020)

   Defendants' objections: Fed. R. Evid. 801, 802. The statements in

the LinkedIn profile identified as Exhibit 24 constitute inadmissible hearsay.

**Ruling:** OVERRULED, not hearsay because it is a statement of a party opponent.

10. Plaintiff's evidence: Botwin Decl., Ex. 31, Peter Heckmann Depo. 166:20-167:3:

> 20 Q. Is that your handwriting?
> 21 A. No. That's Katie's.
> 22 Q. And how can you say that's Katie's? Because
> 23 you saw it? How can you say that?
> 24 A. That's the way she always wrote, and on the
> 25 yellow legal paper, because she always ran around with
> 1 it.
> 2 Q. So you are certain that's her handwriting?
> 3 A. Yes.

Defendants' objections: Testimony is speculation and an improper expert opinion.

**Ruling:** OVERRULED because based on personal knowledge and lay opinion, and familiarity with handwriting was not obtained for purposes of this litigation. *See United States v. Cervantes*, 2021 WL 2666684, at *2 (9th Cir. June 29, 2021) (noting testimony identifying handwriting of various persons "are proper subjects for lay opinion testimony" and holding "the district court did not abuse its discretion in concluding that Feeney's familiarity with the relevant . . . handwriting, even if limited, was sufficient to provide a foundation for his identifications") (citing Fed. R. Evid. 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. **. . .** The following are examples only--not a complete list--of evidence that satisfies the requirement: . . . A nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation.")); *United States v. Santillan*, 1999 WL 1201765, at *5 (N.D. Cal. Dec. 3, 1999) (Jensen, J.) ("Lay opinion on the question of identification of the author of handwriting is permitted under Rule 701 of the Federal Rules of Evidence."); *cf. People v. Cepeda*, 851 F.2d 1564, 1566–67 (9th Cir. 1988) ("We agree that the trial court erred in interpreting Rule 901(b)(2) by admitting Rojas' nonexpert

testimony notwithstanding the manner in which he received the handwriting exemplars that formed the basis of his opinion" where Rojas "obtained familiarity with Cepeda's handwriting for purposes of testifying at trial").

11. <u>Plaintiff's evidence</u>:  Botwin Decl., Ex. 31, Heckmann Depo. 168:15-19:

> 15 Q. Do you recall why -- do you have any
> 16 understanding as to why her phone number is put down
> 17 here?
> 18 A. She must've given it to Katie; otherwise it
> 19 wouldn't be there.

<u>Defendants' objections</u>:  Testimony is speculation and not based on personal knowledge.

**<u>Ruling</u>:**  SUSTAINED as speculative and not based on personal knowledge.

12. <u>Plaintiff's evidence</u>:  Botwin Decl., Ex. 31, Heckmann Depo. 169:10-13:

> 10 Do you know why that address was written down
> 11 there?
> 12 A. Again, that's -- Katie did write that, and I
> 13 don't know who gave her that address of Pixar business.

<u>Defendants' objections</u>:  Testimony is speculation and not based on personal knowledge.

**<u>Ruling</u>:**  SUSTAINED as speculative and not based on personal knowledge.  This testimony is different from permissible lay testimony regarding handwriting based on familiarity not obtained for purposes of litigation permitted under Fed. R. Evid. 901.

13. <u>Plaintiff's evidence</u>:  Botwin Decl., Ex. 31, Heckmann Depo. 170:17-19:

> 17 A. Doc and Debbie?· That looks like Katie again,
> 18 and the other one is a little different, from the
> 19 writing --

<u>Defendants' objections</u>:  Testimony is speculation and not based on personal knowledge.

11

**Ruling:** OVERRULED because based on personal knowledge and lay opinion, and familiarity with handwriting was not obtained for purposes of this litigation. *See United States v. Cervantes*, 2021 WL 2666684, at *2 (9th Cir. June 29, 2021) (noting testimony identifying handwriting of various persons "are proper subjects for lay opinion testimony" and holding "the district court did not abuse its discretion in concluding that Feeney's familiarity with the relevant . . . handwriting, even if limited, was sufficient to provide a foundation for his identifications") (citing Fed. R. Evid. 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. . . . The following are examples only--not a complete list--of evidence that satisfies the requirement: . . . A nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation.")); *United States v. Santillan*, 1999 WL 1201765, at *5 (N.D. Cal. Dec. 3, 1999) ("Lay opinion on the question of identification of the author of handwriting is permitted under Rule 701 of the Federal Rules of Evidence."); *cf. People v. Cepeda*, 851 F.2d 1564, 1566–67 (9th Cir. 1988) ("We agree that the trial court erred in interpreting Rule 901(b)(2) by admitting Rojas' nonexpert testimony notwithstanding the manner in which he received the handwriting exemplars that formed the basis of his opinion" where Rojas "obtained familiarity with Cepeda's handwriting for purposes of testifying at trial").

14. **Plaintiff's evidence:** Botwin Decl., Ex. 31, Heckmann Depo. 176:7-11:

> 7 THE WITNESS:· At this time, no, I cannot say
> 8 that for sure that I was present at this moment when he
> 9 said, "Okay. Send me the information."
> 10 All I heard is from Katie, "Hey, we have to
> 11 send this out. Put a package together. Do it."

**Defendants' objections:** Testimony is comprised of inadmissible hearsay.

**Ruling:** SUSTAINED as hearsay.

15. **Plaintiff's evidence:** Botwin Decl., Ex. 31, Heckmann Depo. 176:12-15:

|  |  |  |
|---|---|---|
|  |  | 12 Q. BY MR. FOX: Who would put that package<br>13 together?<br>14 A. In this case, she shipped everything around her<br>15 desk. |
|  |  | <u>Defendants' objections</u>:  Testimony is not based on personal knowledge. |
|  |  | **<u>Ruling</u>**:  SUSTAINED based on lack of personal knowledge. |
|  | **16.** | <u>Plaintiff's evidence</u>:  Botwin Decl., Ex. 38 (article titled *Feuds, firings, and the most radical Disney princess yet: the making of Moana*, by Robbie Collin, December 25, 2019) |
|  |  | <u>Defendants' objections</u>:  Fed. R. Evid. 401, 402, 801, 802.  The statements in the article identified as Exhibit 38 are irrelevant and constitute inadmissible hearsay. |
|  |  | **<u>Ruling</u>**:  SUSTAINED as hearsay. |
|  | **17.** | <u>Plaintiff's evidence</u>:  Botwin Decl., Ex. 39 (article titled *Review: 'Moana' Is Disney's Best Movie In Decades*, by Jon Negroni, November 21, 2016)) |
|  |  | <u>Defendants' objections</u>:  Fed. R. Evid. 401, 402, 801, 802.  The statements in the article identified as Exhibit 39 are irrelevant and constitute inadmissible hearsay. |
|  |  | **<u>Ruling</u>**:  SUSTAINED as hearsay. |
|  | **18.** | <u>Plaintiff's evidence</u>:  Botwin Decl., Ex. 40 (article titled *'Moana' directors won't cry over losing to 'Frozen' at the box office* (November 27, 2016), by Bryan Alexander, USA Today) |
|  |  | <u>Defendants' objections</u>:  Fed. R. Evid. 401, 402, 801, 802.  The statements in the article identified as Exhibit 40 are irrelevant and constitute inadmissible hearsay. |
|  |  | **<u>Ruling</u>**:  SUSTAINED as hearsay. |
|  | **19.** | <u>Plaintiff's evidence</u>:  Botwin Decl., Ex. 41 (article titled *Bringing Moana to Life*, by Drew Turney, Video and Filmmaker Magazine, May 3, 2017) |
|  |  | <u>Defendants' objections</u>:  Fed. R. Evid. 401, 402, 801, 802.  The statements in the article identified as Exhibit 41 are irrelevant and constitute inadmissible hearsay. |
|  |  | **<u>Ruling</u>**:  SUSTAINED as hearsay. |

20. Plaintiff's evidence: Botwin Decl., Ex. 42 (article titled *Ten Fun Facts about Moana that will make you say 'Wow, what a fun Moana fact,'* Entertainment Weekly, by Marc Snetiker, updated June 15, 2022)

    Defendants' objections: Fed. R. Evid. 401, 402, 801, 802. The statements in the article identified as Exhibit 42 are irrelevant and constitute inadmissible hearsay.

    **Ruling**: SUSTAINED as hearsay.

21. Plaintiff's evidence: Botwin Decl., Ex. 49 (data published regarding the release of Moana on DVD, obtained at Moana DVD (blu-ray.com) and excerpts from the theatrical release dates for Moana obtained from IMDB)

    Defendants' objections: Fed. R. Evid. 801, 802. The statements in the IMDb profile identified as Exhibit 49 are irrelevant and constitute inadmissible hearsay.

    **Ruling**: SUSTAINED as hearsay.

22. Plaintiff's evidence: Heckman Decl. (Dkt. No. 439) ¶ 13 ("When someone showed an interest in the Bucky project, Ms. Speirs would take down the mailing address of that individual and subsequently mailed Bucky pitch materials to the individual.")

    Defendants' objections: Fed. R. Evid. 602. Heckmann lacks personal knowledge regarding Speirs' practices.

    **Ruling**: OVERRULED. Heckmann declares he hired Spiers to be an assistant producer at his sound studio (Heckmann Decl. ¶ 9) and is attesting based on his recollection (*see* Heckmann Decl. ¶ 13 ("my recollection" is "that Ms. Speirs would mail [sic] comprehensive *Bucky* package to those individuals who expressed interest in the Bucky project")).

23. Plaintiff's evidence: Heckmann Decl. ¶ 13 ("The handwritten notes that are attached hereto as Exhibit A, which I am informed and believe were taken by Ms. Speirs, are consistent with my recollection that Ms. Speirs would mail comprehensive Bucky package to those individuals who expressed an interest in the Bucky project, such as Doc Kane and his wife Debbie Pluimer, who was also present.")

14

|  |  |
|---|---|
| 1 | Defendants' objections: Fed. R. Evid. 602, 801, 802, 901. Heckmann lacks personal knowledge regarding Speirs' practices, lacks personal knowledge regarding and is unable to authenticate Exhibit A, and appears to be basing his testimony on inadmissible hearsay. |

Defendants' objections: Fed. R. Evid. 602, 801, 802, 901. Heckmann lacks personal knowledge regarding Speirs' practices, lacks personal knowledge regarding and is unable to authenticate Exhibit A, and appears to be basing his testimony on inadmissible hearsay.

**Ruling:** SUSTAINED as lacks personal knowledge as to "The handwritten notes that are attached hereto as Exhibit A, which I am informed and believe were taken by Ms. Speirs, are consistent with," OVERRULED as to remainder.

24. Plaintiff's evidence: Heckmann Decl. ¶ 13 ("Ms. Speirs' notes reflect that she later indeed mailed Bucky materials to Doc Kane at Stage B at Disney, and she wrote down the FedEx tracking number on the same sheet she had used to make notes during the meeting for Doc Kane.")

Defendants' objections: Fed. R. Evid. 602, 801, 802, 901. Heckmann lacks personal knowledge regarding and is unable to authenticate Exhibit A, and the statements in Exhibit A are inadmissible hearsay.

**Ruling:** SUSTAINED for lack of personal knowledge and hearsay.

25. Plaintiff's evidence: Heckmann Decl., Ex. A (handwritten notes)

Defendants' objections: Fed. R. Evid. 801, 802, 901. Exhibit A has not been authenticated, and the statements therein are inadmissible hearsay.

**Ruling:** SUSTAINED for lack of authentication.

26. Plaintiff's evidence: Heckmann Decl., Ex. C (magazine article)

Defendants' objections: Fed. R. Evid. 401, 402, 801, 802. Exhibit C is a magazine article, and the statements therein are irrelevant and inadmissible hearsay.

**Ruling:** SUSTAINED as hearsay.

27. Plaintiff's evidence: Supp. Heckmann Declaration (Dkt. No. 540) ¶ 3 ("As to Katie Speirs' ("Ms. Speirs") handwritten notes containing, inter alia, mailing addresses for Disney and Pixar (hereinafter, sometimes, "the film studios") respectively, a true and correct copy

of which is again attached hereto as Exhibit 1, I would like to clarify that the "FedEx" numbers that appear thereon would likely be Disney and Pixar's respective FedEx account numbers (hereinafter, sometimes, "FedEx account numbers"), rather than FedEx tracking numbers.")

Defendants' objections: Fed. R. Evid. 602, 801, 802, 901. Heckmann lacks personal knowledge regarding and is unable to authenticate Exhibit A, and the statements in Exhibit A are inadmissible hearsay.

Ruling: SUSTAINED for lack of authentication and lack of personal knowledge.

28. Plaintiff's evidence: Supp. Heckmann Decl. ¶ 5 ("Ms. Speirs could have only come into possession of these FedEx account numbers if they had been given to her by representatives of Disney and Pixar, given that this account information is not publicly available.")

Defendants' objections: Fed. R. Evid. 602. Heckmann lacks personal knowledge regarding how, if at all, Speirs came into possession of the identified information.

Ruling: SUSTAINED for lack of personal knowledge.

29. Plaintiff's evidence: Supp. Heckmann Decl. ¶ 6 ("I am informed and believe that Doc Kane ("Mr. Kane") implied that the FedEx account numbers would have been provided to my staff so that the audio recordings that were made for *The Incredibles* at my studio could be "ship[ped]" to Disney and Pixar respectively upon completion. Though Mr. Kane did not clearly testify that this is what actually occurred or seems to dispute that the FedEx account numbers were/are those of Disney and Pixar and were given to Ms. Speirs at the time, the theory that Ms. Speirs wrote down these account numbers to mail the *Incredibles* recordings to Disney and Pixar is implausible and does not reflect what actually occurred or could have occurred.")

Defendants' objections: Fed. R. Evid. 401, 402, 602. Heckmann's statements are argumentative, irrelevant, and are not based on personal knowledge.

Ruling: SUSTAINED as argumentative and not based on personal knowledge.

16

**30.** Plaintiff's evidence: Supp. Heckmann Decl. ¶ 7 ("First, what Mr. Kane suggested is not consistent with industry practice. Rather, Mr. Kane and his team would have taken the recordings with them, likely on a hard drive, DAT file, and/or DVDs, just like the equipment that Mr. Kane explained he brought and took with him. The audio recordings for The Incredibles were/are the property of Disney and Pixar, and such property would have ordinarily never been entrusted to the care of someone who does not work for these film studios, let alone to be mailed to the film studios some time later.")

Defendants' objections: Fed. R. Evid. 602, 701, 702. Heckmann's statements are not based on personal knowledge and constitute improper expert testimony.

**Ruling:** SUSTAINED for lack of personal knowledge.

**31.** Plaintiff's evidence: Supp. Heckmann Decl. ¶ 8 ("Second, I can say with confidence that neither I nor my staff was ever asked to mail recordings for *The Incredibles* to Disney and/or Pixar. Instead, the addresses, phone numbers, and FedEx account numbers depicted on Exhibit 1 hereto were provided to Ms. Speirs so that Bucky material could be mailed to Disney and Pixar.")

Defendants' objections: Fed. R. Evid. 602, 801, 802. Heckmann's lacks personal knowledge as to what his staff was asked to do and whether or why information was provided to Spears, and his statements appear to be based at least in part on inadmissible hearsay.

**Ruling:** SUSTAINED as to "Instead, the addresses, phone numbers, and FedEx account numbers depicted on Exhibit 1 hereto were provided to Ms. Speirs so that Bucky material could be mailed to Disney and Pixar" for lack of personal knowledge. OVERRULED as to remainder.

**32.** Plaintiff's evidence: Supp. Heckmann Decl., Ex. A (handwritten notes)

Defendants' objections: Fed. R. Evid. 801, 802, 901. Exhibit A has not been authenticated, and the statements therein are inadmissible hearsay.

**Ruling:** SUSTAINED for lack of authentication.

**33.** Plaintiff's evidence: Stewart Decl. (Dkt. No. 438), Ex. 1 (Expert

17

|     |     |     |
| --- | --- | --- |
| 1   |     | Report by Stewart). |
| 2   |     | Defendants' objections: Fed. R. Civ. P. 26. Stewart was not properly disclosed as an expert and Exhibit 1, which constitutes his expert report, was not produced in discovery. (*See* Dkt. No. 492-4, Shimamoto Decl. Ex. 42 (Plaintiff's initial disclosures which did not list Stewart as an expert).) |
|     |     | **Ruling:** Sustained. *See People v. Cepeda*, 851 F.2d 1564, 1566–67 (9th Cir. 1988) ("We agree that the trial court erred in interpreting Rule 901(b)(2) by admitting Rojas' nonexpert testimony notwithstanding the manner in which he received the handwriting exemplars that formed the basis of his opinion" where Rojas "obtained familiarity with Cepeda's handwriting for purposes of testifying at trial") (citing Fed. R. Evid. 901(b)); Fed. R. Civ. P. 37 ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Plaintiff does not demonstrate his failure to disclose Stewart as an expert was substantially justified or harmless. |
| 15  | **34.** | Plaintiff's evidence: Plaintiff Decl. (Dkt. No. 434) ¶ 8 ("I recall that the second meeting on Disney's lot in Burbank that Jenny Marchick admits she arranged between 2003 and 2005 was with representatives of the Disney studio that produced animated feature films, which is consistent with Jenny Marchick's reference to the location of the meeting as 'the studio' and the people she connected me with as a representative of "Disney TV." I note that "Walt Disney Studios and Television," now apparently known as Walt Disney Pictures, was the division that created animated films for the big screen and television at that time."). |
|     |     | Defendants' objections: Fed. R. Evid. 602, 801, 802. Plaintiff's statements are not based on personal knowledge and are based, at least in part, on inadmissible hearsay. |
|     |     | **Ruling:** SUSTAINED as to "which is consistent with Jenny Marchick's reference to the location of the meeting as 'the studio'" and "I note that "Walt Disney Studios and Television," now apparently known as Walt Disney Pictures, was the division that created animated films for the big screen and television at that time" for lack of personal knowledge. OVERRULED as to the remainder |

of Plaintiff's Declaration ¶ 8.

35. Plaintiff's evidence: Plaintiff Decl. (Dkt. No. 434) ¶ 9 ("I also respectfully wish to address opposing counsel's remark during my deposition that Disney's Old Animation Building, at which my meetings took place to pitch Bucky first to Jenny Marchick, then to Disney representatives, "actually does not house Walt Disney Animation Studios." (Woodall Tr., at 126:2-4.) I am informed and believe that Walt Disney Animation Studios, then called Walt Disney Feature Animation, was, at the time, (and still is) housed right across from the Old Animation Building, and that both buildings are located on the lot of Walt Disney Studios in Burbank, California. I am, further, informed and believe that the Old Animation Building housed Mandeville Films at the time, as well as producers and departments both for feature film and television productions. This appears to be confirmed by several publicly available sources, e.g.: Walt Disney Studios (Burbank) - Wikipedia (noting that the Old Animation Building "house[s] offices for various film and television producers"); The Filming Locations of Disney's Saving Mr. Banks ~ An East Wind Trip to the West ~ | BEYOND THE MARQUEE (noting that the Old Animation Building also houses "studio departments") (last accessed on May 7, 2024). In other words, the fact that Walt Disney Feature Animation (now Walt Disney Animation Studios) was/is located across from the Old Animation Building does not rule out that I met with representatives of Walt Disney Pictures or that representatives of the studio had opportunities to access Bucky works.")

Defendants' objections: Fed. R. Evid. 602, 801, 802. Plaintiff's statements are not based on personal knowledge and are based, at least in part, on inadmissible hearsay.

**Ruling:** SUSTAINED for lack of personal knowledge and hearsay.

**IT IS SO ORDERED.**

DATED: November 1, 2024.

HON. CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

19