1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14

15

16

Buck G. Woodall, a.k.a. Buck
Woodall, an individual,

     Plaintiff,

v.

The Walt Disney Company *et al.*,

     Defendants.

Case No.:  CV 20-3772-CBM(Ex)

**ORDER RE: CROSS-SUMMARY JUDGMENT MOTIONS  [403]  [432]**

17

18

19

    The matters before the Court are:  (1) Defendants' Motion for Summary Judgment (Dkt. No. 403); and (2) Plaintiff's Motion for Partial Summary Judgment Against Defendants (Dkt. No. 432).[1]

20

### I.    BACKGROUND

21

22

23

24

25

26

    On April 24, 2020, Plaintiff filed this copyright infringement and trade secrets action arising from Defendants' alleged infringement and misappropriation of Plaintiff Buck Woodall's (hereinafter, "Plaintiff's" or "Woodall's") "Bucky" and "Bucky the Wave Warrior" animated film projects" through Defendants' production and release of the Disney animated film *Moana.*  The Second

27

28

[1] The Court denies Defendants' request to deny Plaintiff's Motion for Partial Summary Judgment for failure to meet and confer as required under Local Rule 7-3 because Defendants fail to demonstrate they were prejudiced by any failure by Plaintiff to thoroughly meet and confer.

Amended Complaint ("SAC"), which is the operative complaint, asserts the following five causes of action:  (1) copyright infringement, 17 U.S.C. § 501 *et seq*., against all Defendants;[2] (2) violations of Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, against all Defendants; (3) violations of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 *et seq*., against all Defendants; (4) fraud against all Defendants; and (5) false promises against Marchick.  (Dkt. No. 94.)  Defendants move for summary judgment on all of Plaintiff's claims.  Plaintiff moves for partial summary judgment on certain issues and affirmative defenses.

## II.    STATEMENT OF THE LAW

On a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact.  *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56.  Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A factual dispute is "material" only if it might affect the outcome of the suit under governing law.  *Id*.  The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  In judging evidence at

---

[2] The SAC names the following Defendants:  Defendants The Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios, Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-To-Consumer & International, Disney Book Group, LLC, Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc., Buena Vista Books, Inc., Mandeville Films, Inc., Jenny Marchick, Pamela Ribon (collectively, "Defendants").

the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson*, 477 U.S. at 255. But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Id.* at 252. "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citations omitted).[3]

## III.   DISCUSSION

### A.   Trade Secrets Misappropriation

Plaintiff asserts two causes of action for trade secrets misappropriation under federal and California law for violation of the DTSA, 18 U.S.C. § 1836 (second cause of action), and CUTSA, Cal. Civ. Code §§ 3426 *et seq.* (third cause of action). Defendants moves for summary judgment on Plaintiff's trade secrets misappropriation claims on the ground they are time barred. Plaintiff moves for partial summary judgment on the basis Defendants cannot meet their burden of proof on their statute of limitations defense.

The applicable statute of limitations for Plaintiff's trade secrets claims under DTSA and CUTSA is three years from the date the misappropriation is discovered or should have been discovered. *See* 18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6. "[A] continuing misappropriation constitutes a single claim" under both the DTSA and CUTSA. *See* 18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6. "[T]he limitations period begins once the plaintiff has notice or

---

[3] The Court's rulings on the parties' evidentiary objections and requests for judicial notice filed in connection with the cross-summary judgment motions are set forth in separate orders.

1  information of circumstances to put a reasonable person *on inquiry*....  A plaintiff
2  need not be aware of the specific facts necessary to establish the claim; that is a
3  process contemplated by pretrial discovery. Once the plaintiff has a suspicion of
4  wrongdoing, and therefore an incentive to sue, she must decide whether to file suit
5  or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must
6  go find the facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly &
7  Co.*, 44 Cal. 3d 1103, 1110-11 (Cal. 1988) (internal quotations and citations
8  omitted); *see also Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98 (Cal. 1999) (the
9  statute of limitations begins to run when the plaintiff "at least suspects a factual
10  basis, as opposed to a legal theory, for its elements, even if he lacks knowledge
11  thereof — when, simply put, he at least suspects [ ] that someone has done
12  something wrong to him, wrong being used, not in any technical sense, but rather
13  in accordance with its lay understanding").

14      Here, the statute of limitations for Plaintiff's trade secret misappropriation
15  claims began to run when Plaintiff suspected misappropriation, not when Plaintiff
16  completed his "full analysis" comparing *Moana* to Plaintiff's "Bucky" materials.
17  *See MGA Ent., Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 562–64 (Cal. Ct. App.
18  2019); *Cypress Semiconductor Corp. v. Super. Ct.*, 163 Cal. App. 4th 575, 587
19  (Cal. Ct. App. 2008); *Chung v. Intellect Soft Grp. Corp.*, 2022 WL 20184655, at
20  *13 (N.D. Cal. July 13, 2022) (citing *MGA Ent., Inc.*, 41 Cal. App. 5th at 562-
21  64)); *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1102 (C.D. Cal. 2016); *Moddha
22  Interactive, Inc. v. Philips Elec. N. Am. Corp.*, 92 F. Supp. 3d 982, 993-94 (D.
23  Haw. 2015), *aff'd sub nom. Moddha Interactive, Inc. v. Philips Elecs. N. Am.
24  Corp.*, 654 F. App'x 484 (Fed. Cir. 2016) (citing *Fox v. Ethicon Endo-Surgery,
25  Inc.,* 110 P.3d 914, 920 (Cal. 2005)).  Plaintiff testified at his deposition that when
26  he watched the *Moana* film in Spanish in December 2016, "I felt like, you know, I
27  had my suspicions that they were -- stole my film, copied my film, and I thought
28  what a job they did botching my film and turning it into a musical.  I knew at that

point I could not, you know, sit here and really absorb and analyze this film and I needed to get it later on DVD and watch it in English so to really figure out what had happened to me in terms of this theft." (Plaintiff Depo. 247:17-25.) Plaintiff does not submit any evidence contradicting his own deposition testimony that he had suspicions in December 2016 when he watched *Moana* in the theater. Therefore, it is undisputed Plaintiff had suspicions that *Moana* misappropriated his trade secrets no later than in December 2016 when he watched *Moana* in a theater. Accordingly, the statute of limitations on Plaintiff's trade secrets misappropriation claims began to run in December 2016 but Plaintiff did not file this lawsuit until April 24, 2020. Plaintiff's trade secrets misappropriation claims are therefore time-barred under the applicable three-year statute of limitations. *See Jolly*, 44 Cal. 3d at 1112; *B. Braun Med., Inc. v. Rogers*, 163 F. App'x 500, 504 (9th Cir. 2006) (citing *Jolly,* 44 Cal. 3d at 1112)).

Even assuming the statute of limitations did not begin to run on Plaintiff's trade secrets claims in December 2016 when Plaintiff watched *Moana* in the theater, it is further undisputed Plaintiff made screenshot comparisons from the DVD of *Moana* with Plaintiff's trade secrets on March 15, 2017, Plaintiff and his brother Benjamin Woodall emailed each other on March 23, 2017 "strategizing about the *Moana* case," and Plaintiff contacted an attorney on March 27, 2017. *See Gabriel Techs. Corp. v. Qualcomm Inc.,* 857 F. Supp. 2d 997, 1003-07 (S.D. Cal. 2012). Therefore, it is undisputed Plaintiff had further suspicions that *Moana* used Plaintiff's purported trade secrets in March 2017, but Plaintiff did not file this lawsuit until April 24, 2020. Plaintiff's trade secret claims are thus untimely. *See* 18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6; *Jolly*, 44 Cal. 3d at 1110-11; *Norgart*, 21 Cal. 4th at 397–98; *B. Braun Med., Inc.*, 163 F. App'x at 504.

Accordingly, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's trade secrets claims as time-barred, and denies Plaintiff's Motion for Partial Summary Judgment on the ground Defendants cannot meet their burden of

1   proof on their statute of limitations defense as to Plaintiff's trade secrets claim.[4]

2   **B.    Fraud and False Promises**

3       Plaintiff's fifth cause of action is for fraud against all Defendants.

4   Plaintiff's sixth cause of action is for false promises against Defendant Marchick

5   only.  Defendants move for summary judgment on Plaintiff's fraud and false

6   promises claims on the ground they are time-barred because the alleged

7   misrepresentations and false promises occurred more than three years before

8   Plaintiff filed this lawsuit.  Plaintiff moves for partial summary judgment on the

9   basis Defendants cannot meet their burden of proof on their statute of limitations

10  defense.

11      A three-year statute of limitations applies to Plaintiff's fraud and false

12  promises claims.  *See* Cal. Civ. Proc. Code § 338(d) (three year statute of

13  limitations for "[a]n action for relief on the ground of fraud or mistake"); *see also*

14  *Ward v. Chanana*, 2008 WL 5383582, at *5 (N.D. Cal. Dec. 23, 2008).  Cal. Civ.

15  Proc. Code § 338(d) provides "[t]he cause of action" for fraud or mistake "is not

16  deemed to have accrued until the discovery, by the aggrieved party, of the facts

17  constituting the fraud or mistake."  Therefore, a plaintiff must bring a fraud claim

18  within three years after "discovery . . . of the fraud *or* facts that would lead a

19  reasonably prudent person to suspect fraud."  *Doe v. Roman Catholic Bishop of*

20  *Sacramento*, 189 Cal. App. 4th 1423, 1430 (Cal. Ct. App. 2010) (emphasis in

21  original); *Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 69 (Cal. Ct. App. 2021);

22  *Kline v. Turner*, 87 Cal. App. 4th 1369, 1373-74 (Cal. Ct. App. 2001) (citing Cal.

23  Civ. Proc. Code § 338(d)); *Jolly*, 44 Cal. 3d at 1110-11; *Moqaddem v. Pinto*,

24  2023 WL 2628686, at *3 (C.D. Cal. Jan. 13, 2023) (citing *Kline*, 87 Cal. App. 4th

25  at 1373-74).

26      Here, Plaintiff's fraud claim is based on Defendant Marchick's alleged

27  _____

28  [4] Because Plaintiff's trade secrets claims are time-barred, the Court does not rule
    on the other issues raised by the parties as to Plaintiff's trade secrets claims.

6

fraudulent representations to Plaintiff "[b]eginning on October 22, 2003 and continuing repeatedly until Disney's release of *Moana* in November of 2016" while Marchick was "operating in conjunction and with express ratification and approval of all other Defendants." (SAC ¶¶ 89-90.) The SAC alleges Marchick represented to Plaintiff "orally and in writing that the confidentiality of all materials provided her by Woodall relative to *Bucky* would be honorably maintained and not violated by her in any manner" and "represented to Woodall that his accelerated delivery of materials to the Defendants relative to the film project *Bucky*, including for example the trailer and the 2011 script prepared by Woodall, were being delivered so that the Defendants could evaluate and then assist Woodall in commercializing *Bucky* in a successful manner for the benefit of *both* the Defendants *and* Woodall." (*Id*.) The SAC alleges "[t]hese representations by Marchick (and by all Defendants named in this Complaint through their express ratification and approval) were made to induce action by [Plaintiff] and they did induce the action of [Plaintiff] repeatedly and continuously delivering all of his ideas related to *Bucky* to the Defendants." (*Id*. ¶ 90.)

Moreover, Plaintiff's false promises claim against Marchick is based on Marchick's alleged execution of the Confidentiality Agreement on October 22, 2003, which the SAC alleges is attached thereto as Exhibit C. (*Id*. ¶ 101.) The SAC alleges by executing the Confidentiality Agreement, Marchick "stipulate[ed] in connection therewith that all materials provided to her by Woodall are confidential and that any disclosure or use of these materials could cause serious harm or damage to [Plaintiff]," and at the time she executed the Confidentiality Agreement, "Marchick orally made promises to Woodall related to that agreement including most importantly that she would abide by and honor the strict confidentiality of all materials submitted to her appertaining or relating in any manner to *Bucky*." (*Id*. ¶¶ 101-02.) The SAC further alleges Marchick "at the express direction of the Defendants, and each of them -- made the other promises

and representations, and engaged in the surrounding misconduct, as set forth in paragraphs 89 through 99 of this Complaint." (*Id.* ¶ 103.)

Because it is undisputed Plaintiff suspected *Moana* used Plaintiff's allegedly confidential *Bucky* materials when he watched *Moana* in December 2016, the statute of limitations for Plaintiff's fraud and false promises claims began to run in December 2016. *See Norgart*, 21 Cal. 4th at 397-98; *Critchlow v. Critchlow*, 617 F. App'x 664, 666 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (July 16, 2015); *Kline*, 87 Cal. App. 4th at 1374-75.[5]  Since Plaintiff did not file this lawsuit until April 2020, Plaintiff's fraud and false promises claims are time-barred under the applicable three-year statute of limitations. *See* Cal. Civ. Proc. Code § 338(d).

Moreover, Plaintiff's fraud conspiracy claim is based on alleged fraud that occurred between 2005 and 2008 "in order to ultimately make and release the movie *Moana*" (SAC ¶ 91.)  However, because it is undisputed Plaintiff suspected *Moana* used Plaintiff's Bucky materials when he watched *Moana* in the theater in December 2016 and when he watched *Moana* on DVD in March 2017 (*see supra*), the three-year statute of limitations on Plaintiff's fraud conspiracy claim began to run in December 2016 or at the latest March 2017.  Because Plaintiff did not file his Complaint until April 2020, Plaintiff's fraud conspiracy claim is also time-barred under the applicable three-year statute of limitations. *See* Cal. Civ. Proc. Code § 338(d); *Aaroe v. First American Title Ins. Co.,* 222 Cal. App. 3d 124, 128 (Cal. Ct. App. 1990); *River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1220 (S.D. Cal. 2003).

Accordingly, the Court grants Defendants' Motion for Summary Judgment on the fraud, false promises, and conspiracy to commit fraud claims as time-barred.  The Court denies Plaintiff's Motion for Partial Summary Judgment on the

---

[5] *See also Fox, Inc.*, 35 Cal. 4th at 807; *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 932 (1994).

ground Defendants cannot meet their burden of proof on their statute of limitations defense as to Plaintiff's fraud, false promises, and conspiracy to commit fraud claims.  Moreover, the Court denies Plaintiff's Motion for Partial Summary Judgment as to the issue of falsity for his fraud and false promises claims because those claims are time-barred.[6]

## C.    Copyright Infringement

The parties each move for summary judgment on Plaintiff's copyright infringement claim.  To prevail on his copyright infringement claim, Plaintiff must prove he (1) "owns a valid copyright in [the work]" and (2) Defendants "copied protected aspects of [Plaintiff's work]."  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018) (citations omitted).  The second element has two distinct components: "copying" and "unlawful appropriation." *Id.*  "When the plaintiff lacks direct evidence of copying, he can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying."  *Id.* at 1117.  "Such proof creates a presumption of copying, which the defendant can then attempt to rebut by proving independent creation."  *Id.*  "To prove unlawful appropriation, . . . the similarities between the two works must be substantial and they must involve protected elements of the plaintiff's work."  *Id.*  "[W]hether works are substantially similar involves a two-part analysis consisting of the extrinsic test and the intrinsic test."  *Id.* at 1118 (internal quotations and citations omitted).  A plaintiff must satisfy both components, and therefore a lack of extrinsic similarity is fatal to a plaintiff's copyright case as a matter of law.  *White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 476-77 (9th Cir. 2014) (citing *Funky Films, Inc.,* 462 F.3d at 1081).  The extrinsic test is "is objective in nature.  [I]t depends not on the responses of

---

[6] Because Plaintiff's fraud, false promises, and conspiracy to commit fraud claims are time-barred, the Court does not rule on the other issues raised by the parties as to these claims.

the trier of fact, but on specific criteria which can be listed and analyzed. The extrinsic test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works. In applying the extrinsic test, this court compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Funky Films,* 462 F.3d at 1081 (internal quotations and citations omitted). "Familiar stock scenes and themes that are staples of literature are not protected." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002). In addition, "[s]cenes-à-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement." *Id.* "Therefore, when applying the extrinsic test, a court must filter out and disregard the non-protectable elements in making its substantial similarity determination." *Id.* at 822-23; *see also Shaw v. Lindheim,* 919 F.2d 1353, 1361 (9th Cir. 1990); *Berkic,* 761 F.2d at 1293-94**.** The Court need not explain in its analysis every alleged similarity in a copyright infringement case and may properly disregard alleged similarities that are not protectable. *White*, 572 F. App'x at 477 (citing *Funky Films*, 462 F.3d at 1077).[7]

### (1)    Time-Barred

Defendants move for summary judgment on Plaintiff's copyright infringement claim on the grounds it is time-barred as to "many" of the defendants. Plaintiff moves for partial summary judgment on the ground Defendants cannot meet their burden of proof on their statute of limitations

---

[7] The intrinsic test, on the other hand, is a subjective comparison that focuses on "whether the ordinary, reasonable audience would find the works substantially similar in the "total concept and feel of the works." *Cavalier*, 297 F.3d at 822 (internal quotations and citations omitted). "[T]he intrinsic test for expression is uniquely suited for determination by the trier of fact." *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1166 (9th Cir. 1977). Accordingly, where the plaintiff satisfies the extrinsic test, "the intrinsic test's subjective inquiry must be left to the jury and [any dispositive motion] must be denied." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).

defense as to all of Plaintiff's claims.

17 U.S.C. § 507(b) provides:  "No civil action shall be maintained under [the Copyright Act] unless it is commenced within three years after the claim accrued."  *See also Warner Chappell Music, Inc. v. Nealy*, 144 S. Ct. 1135, 1137 (2024) ("The Copyright Act's statute of limitations provides that a copyright owner must bring an infringement claim within three years of its accrual.") (citing 17 U.S.C. § 507(b)).  Accrual for purposes of 17 U.S.C. § 507 occurs "the moment when the copyright holder 'has knowledge of a violation or is chargeable with such knowledge.'"  *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004) (quoting *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)); *see also Starz Ent., LLC v. MGM Domestic4 Television Distr., LLC*, 39 F.4th 1236, 1240–41 (9th Cir. 2022).  The Supreme Court recently held:

> In this case, we assume without deciding that a claim is timely under [17 U.S.C. § 507(b) of the Copyright Act] if brought within three years of when the plaintiff discovered an infringement, no matter when the infringement happened. We then consider whether a claim satisfying that rule is subject to another time-based limit—this one, preventing the recovery of damages for any infringement that occurred more than three years before a lawsuit's filing. We hold that no such limit on damages exists. The Copyright Act entitles a copyright owner to recover damages for any timely claim.

*Warner Chappell Music, Inc.*, 144 S. Ct. at 1137.

### a.    Defendants Marchick, Ribon, and Mandeville

Assuming (as the Supreme Court assumed in *Warner Chappell Music, Inc.*) that Plaintiff's copyright infringement claim accrued when Plaintiff discovered the infringement, it is undisputed Plaintiff suspected *Moana* used Plaintiff's allegedly confidential *Bucky* materials when he watched *Moana* in the theater in December 2016.  (*See* supra.)  It is also undisputed Plaintiff had further suspicions that *Moana* used Plaintiff's *Bucky* materials in March 2017 when he watched *Moana* on DVD.  (*See* supra.)  Therefore, the statute of limitations for Plaintiff's copyright infringement claim began to run in December 2016 or at the latest

1  March 2017.  *See Polar Bear Prods.*, 384 F.3d at 706; *Oracle Am., Inc. v. Hewlett*

2  *Packard Enter. Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020).  Because Plaintiff did

3  not file this lawsuit until April 2020, Plaintiff's copyright infringement claim

4  against Defendants Marchick, Ribon, and Mandeville is time-barred under the

5  applicable three-year statute of limitations.  *See In re Napster, Inc. Copyright*

6  *Litig.*, 2005 WL 289977, at *4 (N.D. Cal. Feb. 3, 2005).

7         *Warner Chappell Music, Inc. v. Nealy*, relied on by Plaintiff, does not

8  support Plaintiff's contention that his copyright claim is not time-barred because

9  the Supreme Court assumed in that case that the copyright claim was timely

10  brought within three years of the Plaintiff's discovery of the infringement in

11  holding that there was no three year limitation on damages that were recoverable

12  under the Copyright Act.  *See Warner*, 144 S. Ct. at 1137.  However, here

13  Plaintiff's copyright infringement claim against Defendants Marchick, Mandeville

14  and Ribbon is time-barred because it is undisputed Plaintiff suspected the *Moana*

15  film infringed his copyrights more than three years before he filed this lawsuit.

16  Therefore, Plaintiff cannot recover damages for his untimely copyright

17  infringement claim against Defendants Marchick, Mandeville, and Ribbon.  *See*

18  *Polar Bear Prods.*, 384 F.3d at 706 ("§ 507(b) permits damages occurring outside

19  of the three—year window, so long as the copyright owner did not discover—and

20  reasonably could not have discovered—the infringement before the

21  commencement of the three-year limitation period."), *as amended on denial of*

22  *reh'g and reh'g en banc* (Oct. 25, 2004), *opinion amended on denial of reh'g*,

23  2004 WL 2376507 (9th Cir. Oct. 25, 2004).

24         **b.    Copyright Claims Based on *Moana* Film and *Moana* Home**

25                **Videos Distributed Prior to April 24, 2017**

26         As to Defendants The Walt Disney Company, Walt Disney Pictures, Walt

27  Disney Animation Studios, Disney Enterprises, Inc., and Walt Disney Direct-To-

28  Consumer & International, Plaintiff does not identify any evidence that any of

these defendants distributed *Moana* within the three years prior to Plaintiff filing this lawsuit.  Therefore, Plaintiff's copyright infringement claim against Defendants The Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios, Disney Enterprises, Inc., and Walt Disney Direct-To-Consumer & International is time-barred under the applicable three-year statute of limitations.

### c. Defendant Buena Vista Home Entertainment, Inc.

Defendants acknowledge Plaintiff has a "timely claim" for copyright infringement as to Defendant Buena Vista Home Entertainment, Inc. ("BVHE"), "whose home video distribution of Moana continued beyond April 24, 2017." (Dkt. No. 491, Defendants' Reply at 8.)  Therefore, Plaintiff's copyright infringement claim is not time-barred as to Defendant BVHE.  *See Kourtis v. Cameron*, 419 F.3d 989, 999-1000 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008).[8]

### d. Contributory and Vicarious Infringement

As to Defendants Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Disney Interactive Studios, Inc., LLC, Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Books, Inc., Disney Book Group, Plaintiff contends these defendants (who produce(d) or distribute(d) *Moana*-related consumer products but did not distribute the *Moana* film) are liable as contributory, vicarious, and/or indirect infringers.  Defendants contends Plaintiff's indirect, contributory and vicarious infringement claims against these defendants are time-barred.

Contributory copyright infringement occurs when a party "(1) has

---

[8] *See also Botts v. Kompany.com*, 2013 WL 12137690, at *2 (C.D. Cal. Apr. 10, 2013); *Hunter Killer Prods., Inc. v. AKA Wireless, Inc.*, 2020 WL 4043317, at *5 (D. Haw. July 17, 2020); *Liberty Media Holdings, LLC v. Vinigay.com*, 2011 WL 7430062, at *11 (D. Ariz. Dec. 28, 2011), *report and recommendation adopted*, 2012 WL 641579 (D. Ariz. Feb. 28, 2012).

knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10 v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 795 (9th Cir. 2007); *see also Desire.*, 986 F.3d at 1264 n.8. "'Material contribution' may involve, for example, providing materials or services that help another infringe." *Mahon v. Mainsail LLC*, 2020 WL 6750150, at *3 (N.D. Cal. Nov. 17, 2020) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.4d 259, 264 (9th Cir. 1996)). "Inducement may involve actively encouraging others to infringe, such as by providing instructions." *Id.* (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-67 (2005)). "The contributory infringement occurs, and the [three-year] statute of limitations period begins to run, when there has been: (1) an act inducing or materially contributing to (2) an act of direct infringement." *Goldberg v. Cameron,* 2009 WL 2051370, at *8 (N.D. Cal. July 10, 2009). For vicarious infringement, Plaintiff must prove "defendant has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001). The three-year statute of limitations for vicarious infringement claims "begins when a party discovers, or reasonably could have discovered, the infringement." *Rearden LLC v. Crystal Dynamics, Inc.*, 2020 WL 13890300, at *4 (N.D. Cal. Oct. 8, 2020). Subsequent acts of direct infringement do not restart the statute of limitations for contributory and vicarious infringement claims. *See Goldberg v. Cameron,* 2009 WL 2051370, at *8; *Arc Music, Inc. v. Henderson*, 2010 WL 11597304, at *3 (C.D. Cal. Mar. 22, 2010)).

Here, because it is undisputed Plaintiff suspected *Moana* used Plaintiff's allegedly confidential *Bucky* materials when he watched *Moana* in the theater in December 2016, and Plaintiff had further suspicions that *Moana* used Plaintiff's *Bucky* materials in March 2017 when he watched *Moana* on DVD (*see* supra), Plaintiff's contributory and vicarious copyright infringement claims began to accrue no later than March 2017. Because Plaintiff did not file this lawsuit until

April 24, 2020, Plaintiff's contributory and vicarious infringement claims against Defendants Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Disney Interactive Studios, Inc., LLC, Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Books, Inc., and Disney Book Group are time-barred under the applicable three-year statute of limitations.

*     *     *

Accordingly, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's copyright infringement claim as time-barred as to all defendants except Defendant BVHE, and denies Plaintiff's Motion for Partial Summary Judgment on the ground Defendants cannot meet their burden of proof on their statute of limitations defense as to Plaintiff's copyright infringement claim.

### (2)    Joint and Several Liability

Plaintiff seeks partial summary judgment on the issue "the Defendants who participated in distribution of *Moana* and *Moana*-related products and attractions would be liable." Plaintiff argues Defendants Walt Disney Company, Walt Disney Animation Studios, Walt Disney Pictures, Walt Disney Studios, Disney Enterprises, Inc., Buena Vista Home Entertainment, Inc., and Walt Disney Direct-To-Consumer and International "are or were part of the distribution chain" for the *Moana* film, and therefore these defendants are jointly and severally liable for copyright infringement in this case. However, Plaintiff does not distinguish between upstream and downstream infringers nor address whether each defendant is the "but for" cause of any purported infringement, and instead seeks a finding that all Defendants are jointly and severally liable for any infringement in this action—a position rejected by the Ninth Circuit in *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1263-64 (9th Cir. 2021). Moreover, Plaintiff does not submit evidence "proving the value received from an infringing product used to enhance

commercial reputation" as required,[9] nor "offered any reasonably accurate method of calculating profits" from *Moana* products and attractions "that are attributable to infringements in the film."[10]  Instead, Plaintiff speculates "any profits from *Moana*-based products and attractions can only be attributed to the fact that . . . Disney has made the perfect Disney movie with *Moana*."  Plaintiff therefore fails to demonstrate he is entitled to profits for all *Moana*-based products and attractions as a matter of law.  *See Bus. Trends Analysts*, 887 F.2d at 404; *Burns*, 2001 WL 34059379, at *4.  Accordingly, the Court denies Plaintiff's motion for summary judgment on the issue "the Defendants who participated in distribution of *Moana* and *Moana*-related products and attractions would be liable."

**(3)    Ownership**

Plaintiff moves for summary judgment on the issue of Plaintiff's ownership of the copyrights regarding the *Bucky* works that were registered with the U.S. Copyright Office.  Defendants state they "have offered to stipulate that Plaintiff owns a copyright in the materials he registered with the Copyright Office." (Defendants' Opp. at 14 (citing Suppl. Shimamoto Decl. Ex. 31).)  Therefore, there is no genuine issue of material fact that Plaintiff owns the copyright in the *Bucky* materials he registered with the U.S. Copyright Office.  Accordingly, the Court grants Plaintiff's Motion for Summary Judgment on the issue of ownership of his copyrights.

**(4)    Exclusive Rights**

17 U.S.C. § 106 provides that "the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:"

**(1)** to reproduce the copyrighted work in copies or phonorecords;
**(2)** to prepare derivative works based upon the copyrighted work;

---

[9] *See Bus. Trends Analysts, Inc. v. Freedonia Grp., Inc.*, 887 F.2d 399, 404, 407 (2d Cir. 1989).

[10] *See Burns v. Imagine Films Entm't, Inc*., 2001 WL 34059379, at *4 (W.D.N.Y. Aug. 23, 2001).

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

Defendants argue Defendants The Walt Disney Company, Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Disney Interactive Studios, Inc., Buena Vista Books, Inc., Mandeville and Marchick did not violate Plaintiff's exclusive rights under the Copyright Act because they were not involved in the development or production of *Moana*, and there is no evidence they distributed or publicly performed or displayed *Moana*. However, because Plaintiff's copyright infringement claims are time-barred as to these defendants for the reasons set forth above, the Court does not rule on the issue of whether these defendants violated Plaintiff's exclusive rights under the Copyright Act.

**(5)    Access**

Defendants move for summary judgment on Plaintiff's copyright claim on the ground it fails as a matter of law because Plaintiff's access theory is based on bare corporate receipt. Defendants argue Plaintiff did not move for summary judgment on the issue of access because Plaintiff's notice of motion does not state Plaintiff moves for summary judgment on the issue of access (*see* Dkt. No. 432 at p.i). However, Plaintiff argues he does move on the issue of access and a significant portion of his summary judgment motion addresses the issue of access (*see* Plaintiff's Motion at pp. 7-16). Therefore, the Court finds both parties move for summary judgment on the issue of access.

"When the plaintiff lacks direct evidence of copying, he can attempt to

prove it circumstantially by showing that the defendant had access to the
plaintiff's work and that the two works share similarities probative of copying."
*Rentmeester*, 883 F.3d at 1117.  "To prove access, a plaintiff must show a
reasonable possibility, not merely a bare possibility, that an alleged infringer had
the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Ent. Inc.*,
581 F.3d 1138, 1143 (9th Cir. 2009).  Access does not require proof Defendants
actually viewed Plaintiff's work; rather, "[p]roof of access requires 'an
***opportunity*** to view or to copy plaintiff's work.'"  *Loomis v. Cornish*, 836 F.3d
991, 995 (9th Cir. 2016) (emphasis added).  "Where there is no direct evidence of
access, circumstantial evidence can be used to prove access either by (1)
establishing a chain of events linking the plaintiff's work and the defendant's
access, or (2) showing that the plaintiff's work has been widely disseminated." *Id.*
"[E]vidence that a third party with whom both the plaintiff and defendant were
dealing had possession of plaintiff's work is sufficient to establish access by the
defendant."  *Loomis*, 836 F.3d at 995.  "[T]he dealings between the plaintiff and
the intermediary and between the intermediary and the alleged copier must
involve some overlap in subject matter to permit an inference of access."  *Id.*
Thus, access can be established "where the intermediary either was a supervisor
with responsibility for the defendant's project, was part of the same work unit as
the copier, or contributed creative ideas or material to the defendant's work."  *Id.*
(internal quotations and citation omitted).  In contrast, "a plaintiff cannot create a
triable issue of access merely by showing bare corporate receipt of her work by an
individual who shares a common employer with the alleged copier.  Rather, it
must be reasonably possible that the paths of the infringer and the infringed work
crossed."  *Id.* at 995-96.

Contrary to those cases where the courts have found no nexus between the
intermediary who received the work and the alleged infringers, here Plaintiff
submits the following interrogatory response from Defendant Marchick:

**INTERROGATORY NO. 8:** Identify any and all documents regarding or relating to Bucky that you provided to any Defendant from 2001 to 2016. and. [sic]

**RESPONSE TO INTERROGATORY NO. 8:**

. . The only Bucky documents that Marchick may have provided to any Defendant was the Bucky material she provided to the individual at Disney TV Animation referenced in her response to Interrogatory No. 3.[11]

(Dkt. No. 441-9.)  A reasonable jury could find Defendants had an opportunity to view Plaintiff's work and therefore had access to it based on Marchick's interrogatory response that she "may" have provided Plaintiff's Bucky material to a "defendant" by providing materials to an individual at Disney Animation TV. *See Loomis*, 836 F.3d at 995.

Furthermore, Defendants do not dispute "Mandeville Films' offices were located inside the Old Animation Building on the Walt Disney Studio lot in

---

[11] Defendant Marchick' response to Interrogatory No. 3 stated:

**INTERROGATORY NO. 3:** Please describe in detail your involvement in Bucky. If You were not involved in Bucky, please say so.

**RESPONSE TO INTERROGATORY NO. 3:**

. . . Marchick's stepsister Lindsay is married to Plaintiff's brother, Benjamin Woodall. This is how Plaintiff connected with Marchick. Somewhere around 2003-2005, when Marchick was working at Mandeville Films, Plaintiff provided Marchick with certain materials regarding Bucky, including some drawings and a story description. Marchick told Plaintiff that Mandeville Films didn't do animation. Marchick contacted Maggie Malone at Walt Disney Animation Studios ("WDAS") and asked if WDAS took pitches. Marchick did not mention Plaintiff's name or Bucky to Ms. Malone, and did not provide or describe any of Plaintiff's Bucky material to Ms. Malone, or to anyone at WDAS. Ms. Malone stated that WDAS would not accept or review any of Plaintiff's material because WDAS created all of its own content.

Since Plaintiff was family, Marchick contacted someone at Disney TV, and arranged for Plaintiff to meet with that person. Marchick does not recall the person's name, but that person subsequently told Marchick that he or she was not interested in Plaintiff's material. Plaintiff subsequently asked Marchick if he could send her more material if he had any. Marchick agreed.

Plaintiff subsequently sent Marchick additional material at various times, primarily after Marchick left Mandeville Films in October 2007. The last date Marchick received any Bucky material from Plaintiff was in January 2012, when Marchick was working for Sony Pictures Animation.

(Dkt. No. 441-9.)

19

1   Burbank, California," nor dispute that "Mandeville Films was a 'Disney-based'

2   company" during "the relevant time period," nor dispute "Mandeville Films

3   representatives were on Disney's payroll" during "the relevant time period." (*See*

4   Dkt. No. 527, Defendants' response to Plaintiff's Statement of Fact Nos. 18, 22,

5   23.) Moreover, Plaintiff submits a copy of Mandeville's first look agreement with

6   Walt Disney Pictures (Dkt. No. 542-4), and Defendants do not dispute Walt

7   Disney Pictures produced the *Moana* film (*see* Defendants' response to Plaintiff's

8   Statement of Fact No. 316). David Hoberman, the founder of Mandeville Films,

9   also testified during his deposition that Mandeville had offices on the Disney lot,

10  Mandeville had "a first-look deal with Disney" from its inception where they gave

11  "money and overhead" and in exchange if something came to Mandeville it liked

12  then it would have to present it to Disney, Mandeville employees were not

13  allowed to go do deals on their own while working for Mandeville based on the

14  first-look deal with Disney, Mandeville's employees were paid by Disney, payroll

15  records for Mandeville employees "would be in the Disney company," Hoberman

16  got advice from Disney's HR, (Dkt. No. 530-2, Hoberman Depo. 21:1-8, 21:16-

17  22:5, 23:7-11, 23:25-24:4, 27:1-28:16, 31:19-25, 58:1-7.) Marchick testified at

18  her deposition that she worked at Walt Disney Pictures in 2001, Mandeville's

19  office was located in a building on the Walt Disney lot, two HR people worked for

20  Disney down the hall from her at Mandeville, she interacted with people who

21  worked for Disney on the Disney lot, she interacted with the vice president

22  (Kristin Burr) in the live-action division of Disney on the Disney lot who became

23  Marchick's mentor and with whom Marchick spoke to about scripts she had read

24  when she became an executive at Mandeville (Dkt. No. 541-1, Marchick Depo.

25  37:8-40:22, 63:15-21, 70:20-71:12, 97:17-98:14, 98:16-100:20.) Moreover,

26  Plaintiff testified at his deposition: "I recall her taking the folder [with Plaintiff's

27  works], setting it aside and saying I'll get this to my bosses and the higher ups at

28

Disney . . ..” (Dkt. No. 441-6, Plaintiff Depo. 128:23-25.)[12]  Plaintiff also declares "Marchick told me that, after showing Bucky materials to her bosses and contacts at Disney, a Disney director wanted me to produce a trailer for Bucky because they wanted to see Bucky come to life." (Dkt. No. 434, Plaintiff Decl. ¶ 16.)[13]

On the other hand, Defendants submit declarations from Marchick wherein she declares she never sent any of Plaintiff's "Bucky" materials to anyone at WDAS (Dkt. No. 412, Marchick Decl. ¶¶ 5, 14), she never promised Plaintiff that she would show Plaintiff's Bucky works to directors at Walt Disney Animation Studios (Marchick Suppl. Decl. ¶ 3), she never promised Plaintiff that she would show his Bucky works to "higher ups" at any Disney entity (Marchick Suppl. Decl. ¶ 3), she never told Plaintiff that anyone wanted to see an animated trailer for "Bucky" including "her bosses" or "higher-ups at Disney" (Marchick Supp. Decl. ¶ 4), Marchick contacted Maggie Malone (WDAS's "Creative Director" and Head of Creative Affairs) sometime in 2003-2005 and asked if WDAS accepted outside submissions and was told WDAS did not that was the end of the conversation and Marchick did not mention Plaintiff or his "Bucky" Project to Malone (Marchick Decl. ¶ 5).  Defendants also submit declarations from Mandeville's founder David Hoberman and Mandeville's Vice President Todd Lieberman who declared they never received Plaintiff's "Bucky" project. (Lieberman Decl. ¶ 3; Hoberman Decl. ¶ 3.)  Defendants also submit a declaration

---

[12] *See also* Benjamin Woodall Depo. 31:12-19 (testifying that during Plaintiff's meeting with Marchick on the Disney lot when Plaintiff gave her his Bucky materials, Marchick said she would "[s]how it to her boss" and said, "'I will get this in front of the right people,'" or something, or 'show it to the next level'").

[13] *See also* Plaintiff Depo. 122:12-18 (testifying "I believe I was following up with [Marchick] to see if her bosses had had a chance to look at my material. And she told me that they looked at it and she asked me if I had a trailer. And I said no and she said do you think you could produce one because if you can produce one they would take a look at that"); *id.* at 141:7-15 (testifying during a "followup call to see if [Marchick] had received a response to my material and my pitch package from her bosses" that "she said can you produce an animated trailer -- that her bosses and the Disney directors would like to see an animated trailer and if I could produce that, they would take a look at it.").

from Defendant Ribon who declares she worked as a writer on *Moana* from late
April 2013 through February 2015; during the time she worked on *Moana* she was
the only writer working on the project; she never met, spoke to, corresponded
with, or communicated with Plaintiff in any manner and never heard of Plaintiff or
his "Bucky" project until learning of this lawsuit; she did not meet Defendant
Marchick until after she had finished writing for *Moana*; she never discussed
Plaintiff or his "Bucky" project with Marchick or anyone else prior to learning of
this lawsuit; and she had never seen, received, viewed, read, referenced, copied, or
used any scripts, character descriptions, artwork, treatments, synopses, trailers, or
any other materials or ideas by Plaintiff or relating to his "Bucky" project prior to
this lawsuit.  (Ribon Decl. ¶¶ 3, 5, 6, 7.)

Therefore, the record before the Court demonstrates a reasonable trier of
fact could find "a reasonable possibility, not merely a bare possibility" that one of
the defendants "had the chance to view the protected work." *Art Attacks Ink*, 581
F.3d at 1143; *see also Loomis*, 836 F.3d at 995-96; *Bouchat v. Baltimore Ravens,
Inc.*, 241 F.3d 350, 354-55 (4th Cir. 2001).  Thus, a triable issue of material fact
exists as to whether Defendants, or any of them, had access to Plaintiff's work.[14]
Accordingly, the Court denies Defendants' and Plaintiff's motions for summary
judgment on the issue of access.[15]

_____

[14] Because the Court finds a triable issue of fact exists as to access based on the
evidence discussed above, the Court does not address whether Defendants also
had access to Plaintiff's *Bucky* work through non-parties Malone, Shurer,
Lasseter, Bird, and/or Kane.

[15] Plaintiff also argues a showing of bare corporate receipt alone is sufficient
where the works are strikingly similar.  "[S]triking similarity is obviously a much
higher bar than substantial similarity." *Klauber Bros., Inc. v. City Chic Collective
Ltd.*, 2022 WL 18278400, at *5 (C.D. Cal. Dec. 6, 2022); *see also Frisby v. Sony
Music Ent.*, 2021 WL 2325646, at *18 (C.D. Cal. Mar. 11, 2021), *aff'd in part,
dismissed in part*, 2022 WL 2045340 (9th Cir. June 7, 2022); *Kevin Barry Fine
Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959, 968 (N.D. Cal.
2019).  Accordingly, because there is a disputed issue of fact regarding whether
the works are substantially similar based on the parties' dueling expert opinions
(*see infra*)—and substantial similarity is lower standard than striking similarity—
there is a triable issue of disputed fact regarding whether the works are strikingly
similar.

22

### (6) Substantial Similarity

Defendants contend Plaintiff's copyright infringement claim also fails as a matter of law because "Moana is not substantially similar to Plaintiff's copyrighted 'Bucky' materials under the extrinsic test."[16]  Defendants offer a report and rebuttal report from Defendants' expert Jeff Rovin who opines the parties' works are not substantially similar.  (Dkt. No. 417-1, Rovin Decl. Ex. A, Expert Report of Jeff Rovin at 85-155; Dkt. No. 417-2, Rovin Decl. Ex. B, Rebuttal Expert Report of Jeff Rovin at 5-29, 46.)[17]  Plaintiff submits reports from Plaintiff's expert David Roman who opines the parties' works are substantially similar.  (Dkt. No. 435-1, Roman Expert Report at 3-38); Dkt. No. 435-2, Roman Rebuttal Report at 13-18.)  Plaintiff also submits a report from Terry Hunt, Plaintiff's expert on Polynesian and Oceanic mythology and folklore, who opines *Moana* "heavily copies from *Bucky*" and that "both works adopt far more than one identical creative departure from traditional elements of Polynesian mythology" such that he "believe[s] that the overlap in both works is more than mere coincidence." (Dkt. No. 436, Hunt Report.).

Defendants argue Plaintiff's expert Roman "performed the wrong analysis" because he "compared Moana to an amalgam of various synopses, story outlines, treatments, character descriptions, and scripts that Plaintiff created or commissioned over a more than 13-year period,"[18] and therefore contend Roman's opinions should be "disregarded on summary judgment."[19]  However, Defendants' argument goes to the weight of Plaintiff's expert Roman's reports rather than

---

[16] Plaintiff does not move for summary judgment on the issue of substantial similarity.

[17] Plaintiff did not file evidentiary objections to Rovin's reports in connection with the parties' cross summary judgment motions.

[18] Defendants rely on *Gilbert v. New Line Prods., Inc*, 2010 WL 5790628 at *3 (C.D. Cal. Aug. 13, 2010) ("[t]he works must be assessed individually and not manipulated for any parties' own benefit").

[19] Defendants did not file evidentiary objections to Roman or Hunt's reports in connection with the parties' cross summary judgment motions.

admissibility, and the Court cannot weigh evidence on summary judgment.[20]  *See Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1056 (C.D. Cal. 2018); *Iguaçu, Inc. v. Cabrera*, 2013 WL 12173236, at *5 (N.D. Cal. Feb. 21, 2013), *aff'd sub nom. Iguaçu, Inc. v. Filho*, 637 F. App'x 407 (9th Cir. 2016) (citing *U.S. v. Union Pacific R. Co.*, 565 F. Supp. 2d 1136, 1150 n.22 (E.D. Cal. 2008)).  Defendants argue even if the Court considers Roman's opinions, the existence of dueling expert reports does not preclude summary judgment on the issue of substantial similarity.  However, the Court cannot weigh or disregard the parties' expert reports (for which neither party has filed evidentiary objections).  *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

Therefore, there is a genuine issue of triable fact precluding summary judgment on the issue of substantial similarity based on the dueling expert opinions submitted by the parties.  *See Hall v. Swift*, 2021 WL 6104160, at *5 (C.D. Cal. Dec. 9, 2021); *Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 937 (C.D. Cal. 2016), *aff'd*, 742 F. App'x 282 (9th Cir. 2018).[21]  Accordingly, the Court denies Defendants' Motion for Summary Judgment on the issue of substantial similarity.

### (7)    Independent Creation

Defendants also contend Plaintiff's copyright infringement claim fails as a matter of law because "the overwhelming uncontroverted evidence of independent creation, supported by the testimony of the filmmakers and the complete development files for Moana, is fatal to Plaintiff's infringement claim even if he

---

[20] Defendants did not file evidentiary objections to or a motion to strike Plaintiffs' expert's report, nor argue Plaintiffs' expert fails to meet the *Daubert* standards for expert testimony.

[21] *See also Optivus Tech., Inc. v. Ion Beam Applications S.A.,* 2005 WL 6070811, at *31 (C.D. Cal. Mar. 14, 2005), *aff'd*, 469 F.3d 978 (Fed. Cir. 2006); *Avery Dennison Corp. v. Acco Brands, Inc.,* 2000 WL 986995, at *12 (C.D. Cal. 2000); *Hansen Beverage Co. v. Vital Pharm., Inc.,* 2010 WL 1734960, at *8 (S.D. Cal. Apr. 27, 2010); *CytoSport, Inc. v. Vital Pharm., Inc.,* 894 F. Supp. 2d 1285, 1300 (E.D. Cal. 2012).

1  could create a triable issue as to access."  Plaintiff moves for partial summary

2  judgment on the ground Defendants have not proven their independent creation

3  defense, arguing Plaintiff has demonstrated "striking similarity on several levels"

4  and "'particularly suspicious' changes made to the final work," and "deliberate

5  concealment" sufficient to preclude a finding of independent creation.

6  "[I]ndependent creation is a complete defense to copyright infringement."

7  *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064

8  (9th Cir. 2020).  However, "a grant of summary judgment for [the] plaintiff is

9  proper where works are so overwhelmingly identical that the possibility of

10  independent creation is precluded."  *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853

11  F.3d 980, 985 (9th Cir. 2017) (internal quotations and citations omitted).

12  Here, Defendants rely on declarations from *Moana*'s filmmakers to support

13  their contention regarding independent creation.  (*See* Dkt. No. 522, Musker Decl.

14  ¶¶ 8-70; Dkt. No. 526, Clements Decl. ¶¶ 9-30.)  Musker declares "I directed

15  *Moana* along with my longtime collaborator, Ron Clements," "I first conceived of

16  the idea of a film set in Polynesia in 2011," and "told Mr. Clements about my

17  idea, and we then worked closely together on the development and production of

18  *Moana* for more than five years, through its theatrical release in November 2016."

19  (Musker Decl. ¶ 2.)  Clements declares "Musker had the initial idea for an

20  animated film set in Polynesia," "[s]tarting in 2011, he and I worked closely

21  together for more than five years researching, developing, and producing the film

22  that ultimately became *Moana*."  (Clements Decl. ¶ 2.)  Musker and Clements

23  both declare they do not know Plaintiff, never met, spoke to, corresponded with or

24  communicated in any manner with Plaintiff, and never heard of Plaintiff or his

25  "Bucky" project prior to learning about this lawsuit.  (Musker Decl. ¶ 3; Clements

26  Decl. ¶ 3.)  They each also declare that they never received, saw or read any

27  scripts, character descriptions, artwork, treatments, synopses, trailers, or any other

28  materials or ideas by Plaintiff or relating to Plaintiff's 'Bucky' project."  (Musker

Decl. ¶ 3; Clements Decl. ¶ 3.)  They each further declares *Moana* was not inspired by or based in any way on Plaintiff or Plaintiff's "Bucky" project, and no one involved in the creation, development or production of *Moana* ever mentioned Plaintiff or his "Bucky" project to them, including Maggie Malone, Osnat Shurer, and Pamela Ribon."  (Musker Decl. ¶ 3; Clements Decl. ¶ 3.)  Musker also discusses their work researching, creating and developing *Moana* (*see* Musker Decl. ¶¶ 4-69), and concludes his declaration by attesting "[t]here are thousands of documents that demonstrate the origin and development of every element of the movie," "[t]the final movie is a product of the contributions of hundreds of individuals who are acknowledged in the credits," and "[n]othing in *Moana* derived from or was based in any way on [Plaintiff] or his 'Bucky' project." (Musker Decl. ¶ 70.)  After discussing the research, creation and development of Moana (*see* Clements Dec. ¶¶ 4-30), Clements concludes his declaration by attesting "*Moana* was not inspired by or based in any way on [Plaintiff] or his 'Bucky' project, which I learned of for the first time after this lawsuit was filed." (Clements Decl. ¶ 31.)  To support independent creation, Defendants also submit evidence regarding WDAS's development files regarding the origin and development of the *Moana* film, including story ideas, pitch materials, written research, travel journals, scripts, and script revisions, which Defendants contend make no reference to Plaintiff's *Bucky* materials.[22]

Plaintiff submits a report from Terry Hunt, Plaintiff's expert on Polynesian and Oceanic mythology and folklore, who opines *Moana* "heavily copies from *Bucky*" and opines "both works adopt far more than one identical creative departure from traditional elements of Polynesian mythology" such that he "believe[s] that the overlap in both works is more than mere coincidence." (Dkt. No. 436, Hunt Report.).  Plaintiff also cites to the report of his substantial

---

[22]  *See* Dkt. No. 404-1 to 404-73, Musker Decl. Exs. A-UUU; *see also* Dkt. No. 410, Jessica Julius Decl. ¶¶ 12-21; Dkt. No. 411, James McDonald Decl. ¶¶ 5-7.

similarity expert who opines there is significant "overlap" between Bucky and earlier versions of Moana and "plagiarism," and "[e]arlier scripts and treatments of the Disney Film heavily borrow from the original *Bucky* materials" which "are extraordinary coincidences that defy any other argument than that they were based on *Bucky*." (Dkt. No. 435-1, Roman Expert Report at 35-37.)[23]

The issue of independent creation is necessarily tied to the parties' evidence regarding access and evidence regarding substantial similarity (an issue for which there are dueling expert opinions from the parties) such that the issue of independent creation should be left to the trier of fact. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); *Macnab v. Gahderi*, 2009 WL 10671026, at *4 (C.D. Cal. July 28, 2009); *Fun With Phonics, LLC v. LeapFrog Enters., Inc.*, 2010 WL 11404474, at *9 (C.D. Cal. Sept. 10, 2010); *Skidmore*, 952 F.3d at 1064. Moreover, Plaintiff submits deposition testimony from Clements who testified regarding an original pitch he and Musker made about a Western teenage boy who needed to time-travel to the past to save his Polynesian island and a modern island boy thrown back in time, and that a news article misquoted him in reporting in an interview that time travel was an element to the Moana story. (Dkt. No. 542-6, Clements Depo. 104:21-105:24, 120:6-122:18.) Plaintiff also submits deposition testimony from Musker, wherein Musker testified regarding a pitch about a young boy in the contemporary world who went back into the world of ancient voyage to learn about ancient Polynesia. (Dkt. No. 542-12, Musker Depo. 99:16-101:21.)

---

[23] Defendants argue in response to Plaintiff's statement of disputed facts that Hunt and Roman's expert reports are "improper and immaterial" because neither was disclosed as an expert on independent creation and is not qualified to render an opinion on that subject. (*See* Defendants' Response to Plaintiff's Statement of Genuine Issues No. 64.) However, Defendants did not file evidentiary objections to Hunt and Roman's reports in connection with the parties' cross-motions for summary judgment.

1  Therefore, evidence before the Court raises a triable issue of fact regarding the

2  issue of independent creation.  *See, e.g., McIntosh v. N. Cal. Universal Enters.*

3  *Co.*, 670 F. Supp. 2d 1069, 1095 (E.D. Cal. 2009).  Furthermore, a finding on the

4  issue of independent creation on summary judgment would be improper here

5  because it would require the Court to weigh evidence and make credibility

6  determinations.  *See Kaseberg v. Conaco, LLC*, 260 F. Supp. 3d 1229, 1247 (S.D.

7  Cal. 2017); *Miller v. Miramax Film Corp.*, 2001 U.S. Dist. LEXIS 25967, at *31-

8  *32 (C.D. Cal. 2001).  Nor is summary judgment in favor of Plaintiff on the issue

9  of the independent creation case proper here since there is a disputed issue of

10 genuine fact regarding substantial similarity and striking similarity between the

11 parties' works.  *See Twentieth Century-Fox Film Corp. v. MCA, Inc.,* 715 F.2d

12 1327, 1330 (9th Cir. 1983).[24]  Accordingly, the Court denies both Defendants' and

13 Plaintiff's motions for summary judgment on the issue of independent creation.

14        **(8)    Affirmative Defenses**

15        Plaintiff moves for summary judgment on Defendants' affirmative defenses

16 as to copying and willfulness for Plaintiff's copyright infringement claim.

17            **a.    Merger and Scènes-à-Faire**

18        Plaintiff argues Defendants cannot meet their burden of proof on their

19 "Merger Defense" and "Scènes-à-Faire Defense." (Plaintiff's Motion at 17, 20.)[25]

20 "Under the merger doctrine, courts will not protect a copyrighted work from

21 infringement if the idea underlying the copyrighted work can be expressed in only

22 one way, lest there be a monopoly on the underlying idea" because "[i]n such an

23 instance, it is said that the work's idea and expression merge."  *Ets-Hokin v. Skyy*

24 *Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000) (internal quotations and citations

25

26 ───────────

[24] *Cf. Walker v. Viacom Int'l, Inc.*, 2008 WL 2050964, at *9 (N.D. Cal. May 13,
27 2008), *aff'd*, 362 Fed. App'x. 858 (9th Cir. 2010).

28 [25] Plaintiff also argues Defendants have not proven their independent creation
defense.  The issue of independent creation is discussed *supra*.

omitted).[26]  "Under the related doctrine of scènes à faire, courts will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea; like merger, the rationale is that there should be no monopoly on the underlying unprotectable idea."  *Id*. (citations omitted).[27]

As to the scènes à faire defense, Defendants submit a report and rebuttal report from their expert Jeff Rovin, wherein he opines regarding unprotectable scènes à faire in Plaintiff's *Bucky*.  (*See* Dkt. No. 417-1, Rovin Report at 133, 141; Dkt. No. 417-2, Rovin Rebuttal Report at 7, 29.)  Plaintiff argues Rovin's opinions in his reports regarding scènes à faire "is refuted by the much more detailed and reasoned opinions of Terry Hunt," Plaintiff's expert.  (Dkt. No. 436-1, Hunt Expert Report.)  However, Plaintiff's arguments in favor of his expert's opinions regarding the protectable scenes in Plaintiff's work go to the weight of the evidence rather than showing there are no triable issues as to Defendants' scènes à faire defense.  Since there are dueling expert opinions on the issue, summary judgment on the issue is improper.  *See Hall*, 2021 WL 6104160, at *5; *Lewert*, 212 F. Supp. 3d at 937; *Optivus Tech.*, 2005 WL 6070811, at *31; *Avery Dennison Corp.*, 2000 WL 986995, at *12; *CytoSport*, 894 F. Supp. 2d at 1300.  Therefore, the Court denies Plaintiff's motion for summary judgment on the scènes à faire defense.

Defendants also argue they have submitted evidence raising triable issues

---

[26] "Ideas, like facts, are not entitled to copyright."  *CDN Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir. 1999).  Moreover, "when expression is essential to conveying the idea, expression will also be unprotected."  *Id*.

[27] Defendants argue Plaintiff's Motion for Summary Judgment on Defendants' purported affirmative defenses of merger and scènes-à-faire fails because the merger doctrine and scènes-à-faire doctrine are not affirmative defenses. However, the Ninth Circuit has recognized "[a]lthough there is some disagreement among courts as to whether these two doctrines [merger and scènes-à-faire] figure into the issue of copyrightability or are more properly defenses to infringement, we hold that they are defenses to infringement."  *Ets-Hokin*, 225 F.3d at 1082 (internal citations omitted); *see also Satava v. Lowry*, 323 F.3d 805, 810 n.3 (9th Cir. 2003).

with respect to the doctrine of merger, relying on the same portions of Rovin's
Expert Report and Rebuttal Report cited in connection with the scènes à faire
defense discussed above.  However, those portions of Rovin's reports relied on by
Defendants do not opine on the issue of merger, but rather refer to "stock
elements" related to Defendants' scènes à faire defense.  (*See* Dkt. No. 417-1,
Rovin Report at 133 (opining "themes of a dangerous ocean, the calls of nature
toward man, and animals guiding humans are stock elements in thousands of years
of Polynesian storytelling"); *id*. at 141 (idea of "a protagonist battling a storm" at
sea is a stock element in seagoing stories); Dkt. No. 417-2, Rovin Rebuttal Report
at 7 (characterization of teenage protagonists as "free spirits," "impatient and
impulsive," and "rebellious," and of parents as overprotective, are stereotypical
representations in coming-of-age stories); *id*. at 29 (theme that young protagonist
"must be true to herself to find her destiny" is common to "most every one of the
Disney 'princess' films that came before and after MOANA, and of countless
movies involving a hero's journey")).)  *See Rentmeester v. Nike, Inc.*, 883 F.3d
1111, 1118 (9th Cir. 2018) ("Before that comparison can be made, the court must
'filter out' the unprotectable elements of the plaintiff's work—primarily ideas and
concepts, material in the public domain, and ***scènes à faire* (stock or standard
features** that are commonly associated with the treatment of a given subject")
(emphasis added), *overruled on other grounds by Skidmore as Tr. for Randy Craig
Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

Defendants also cite to the entirety of the expert report from Dr. Marie
Alohalani in disputing Plaintiff's Statement of Fact No. 1 that "Defendants cannot
meet their burden of proof on their affirmative defense of merger," but do not
identify any portion of her report addressing the merger doctrine.  (*See*
Defendants' Response to Plaintiff's Statement of Facts No. 3 (citing "Botwin
Decl. Ex. 57 (Dkt. 441-57) (Expert report of Dr. Marie Alohalani Brown)").)
However, "[a] party asserting that a fact cannot be or is genuinely disputed must

1    support the assertion by . . . citing to ***particular parts of materials*** in the record."

2    Fed. R. Civ. P. 56(c) (emphasis added); *see also Zackaria*, 2014 WL 11398759, at

3    *2.  Moreover, the Court reviewed Dr. Alohalani's report which addresses

4    common Polynesian motifs, Polynesian mythology, customs, traditions, and

5    culture, and does not address the merger of ideas and expression.

6        Accordingly, Defendants do not identify any evidence demonstrating "the

7    idea" in the work "can be expressed in only one way" or "an idea and its

8    expression" that are "indistinguishable" in support of their merger defense.  *Ets-*

9    *Hokin*, 225 F.3d at 1082; *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435,

10   1444 (9th Cir. 1994).  Therefore, the Court grants Plaintiff's Motion for Summary

11   Judgment on the affirmative defense of merger, and Defendants cannot pursue the

12   merger doctrine defense at trial.

13                    **b.    Willful Infringement**

14       Plaintiff moves for partial summary judgment on the issue of willfulness.

15   "To prove willfulness under the Copyright Act, the plaintiff must show (1) that the

16   defendant was actually aware of the infringing activity, or (2) that the defendant's

17   actions were the result of reckless disregard for, or willful blindness to, the

18   copyright holder's rights."  *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.,* 658

19   F.3d 936, 944 (9th Cir. 2011) (internal quotations and citations omitted).[28]

20       Here, Plaintiff argues willfulness can be found as a matter of law where, as

21   here, the evidence shows the defendant had undisputed notice of the infringement

22   but continued to infringe.  However, because Plaintiff does not cite to any specific

23   evidence, and instead vaguely references "the evidence," Plaintiff fails to comply

24   with Fed. R. Civ. P. 56(c), which provides "[a] party asserting that a fact cannot be

25   or is genuinely disputed must support the assertion by . . . ***citing to particular***

26

27   [28] The Copyright Act provides "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of
28   not more than $150,000."  17 U.S.C. § 504.

***parts*** of materials in the record."  (Emphasis added.)  *See also Zackaria v. Wal-Mart Stores, Inc.*, 2014 WL 11398759, at *2 (C.D. Cal. Feb. 21, 2014); *Cortes v. Mkt. Connect Grp., Inc.,* 2015 WL 5772857, at *4 (S.D. Cal. Sept. 30, 2015); *Equal Emp. Opportunity Comm'n v. Telecare Mental Health Servs. of Washington, Inc.*, 2023 WL 5348880, at *4 (W.D. Wash. Aug. 21, 2023) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).  Moreover, Plaintiff's argument regarding willfulness assumes Defendants have infringed.  However, Plaintiff has not moved for summary judgment on the issue of infringement, and therefore a finding on the issue of willfulness is premature.  Furthermore, "[g]enerally, a determination as to willfulness requires an assessment of a party's state of mind, a factual issue that is not usually susceptible to summary judgment" and "is ordinarily a question of fact for the jury."  *L.A. Printex Indus., Inc.,* 2009 WL 789877, at *7; *see also N. Face Apparel Corp. v. Dahan*, 2014 WL 12558010, at *18 (C.D. Cal. Oct. 6, 2014) (collecting cases); *United Fabrics Int'l, Inc. v. G-III Apparel Grp., Ltd.*, 2013 WL 7853485, at *6 (C.D. Cal. Dec. 27, 2013).  Accordingly, the Court denies Plaintiff's Motion for Summary Judgment on the issue of willfulness.

**D.**    **Plaintiff's Request for Stay Pursuant to Fed. R. Civ. P.**

In Plaintiff counsel Botwin's declaration filed in support of Plaintiff's Motion for Partial Summary Judgment, Plaintiff's counsel declared:

> Plaintiff seeks to file a motion for leave to file a motion to compel responses to . . . Requests for Admission [regarding a FedEx account number on a handwritten note produced by Plaintiff during discovery] out of time, based on the fact that the evidence is newly discovered and Disney Defendants' admission would serve the interests of justice and further permit the case to be resolved on the merits. Thus, to the extent the Court does not find that Defendants' admission in their attempt to explain why Plaintiff is in possession of their confidential information, see Plaintiff's Response to Defendants' Statement of Genuine Disputes, filed herewith, at ¶¶ 251, 252, does not already amount to an admission that the FedEx account number is that of Disney Defendants, Plaintiff respectfully

requests a brief stay, pursuant to Rule 56(d), Fed.R.Civ.P.,[29] pending resolution of this narrow dispute.

(Dkt. No. 547, Botwin Decl. ¶ 6.)

On June 11, 2024, Plaintiff filed a "Motion to Reopen Discovery for the Limited Purpose of Compelling Responses from Certain Defendants to Requests for Admission."  (Dkt. No. 502.)  Fact discovery closed on October 23, 2023.  (Dkt. No. 293.)  Six months after fact discovery had closed, Plaintiffs served Requests for Admission ("RFAs") on Disney Defendants to "[a]dmit of deny that '_____ 828-0' is a FedEx account number that was associated with Disney in or around 2003 and 2004."  Defendants objected to the Requests for Admission regarding the FedEx number on the basis that the fact discovery cutoff was October 23, 2023, and therefore Plaintiff's Requests for Admission were untimely.  Plaintiff's Motion to Reopen Discovery thus sought to reopen discovery "for the limited purpose of permitting Plaintiff to file a motion to compel certain Defendants to respond to" the Requests for Admission regarding the FedEx account number.  On July 5, 2024, the Court denied Plaintiff's Motion to Reopen Discovery upon finding no good cause to reopen discovery because Plaintiff failed to demonstrate he was diligent in obtaining discovery regarding the FedEx numbers prior to the close of discovery.  (Dkt. No. 508.)  Therefore, Plaintiff's request to stay pursuant to Fed. R. Civ. P. 56(d) is denied.

## IV.    CONCLUSION

Accordingly, the Court rules on Defendants' Motion for Summary Judgment as follows:

1.    Defendants' Motion for Summary Judgment on Plaintiff's trade secrets misappropriation claims under the DTSA and CUTSA on the ground they are time-barred is **<u>GRANTED</u>**;

---

[29] Fed. R. Civ. P. 56(d) provides:  "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  **(1)** defer considering the motion or deny it; **(2)** allow time to obtain affidavits or declarations or to take discovery; or **(3)** issue any other appropriate order."

2.      Defendants' Motion for Summary Judgment on Plaintiff's fraud, false promises, and conspiracy to commit fraud claims on the ground they are time-barred is **GRANTED**;

3.      Defendants' Motion for Summary Judgment on Plaintiff's copyright claim on the ground it is time-barred against all Defendants except Defendant Buena Vista Home Entertainment is **GRANTED**;

4.      Defendants' Motion for Summary Judgment on Plaintiff's copyright infringement claim as to the issue of access is **DENIED**;

5.      Defendants' Motion for Summary Judgment on Plaintiff's copyright claim as to the issue of substantial similarity is **DENIED**; and

6.      Defendants' Motion for Summary Judgment on the issue of independent creation is **DENIED**.

The Court rules on Plaintiff's Motion for Partial Summary Judgment as follows:

1.      Plaintiff's Motion for Partial Summary Judgment on the ground Defendants cannot meet their burden of proof on their statute of limitations defense is **DENIED**;

2.      Plaintiff's Motion for Partial Summary Judgment as to the issue of falsity for his fraud and false promises claims is **DENIED** because those claims are time-barred;

3.      Plaintiff's Motion for Partial Summary Judgment on the issue of ownership of the copyrighted Bucky works is **GRANTED**;

4.      Plaintiff's Motion for Partial Summary Judgment on the issue of access for Plaintiff's copyright infringement claim is **DENIED**;

5.      Plaintiff's Motion for Partial Summary Judgment on the issue of independent creation for Plaintiff's copyright infringement claim is **DENIED**;

6.      Plaintiff's Motion for Partial Summary Judgment on the issue of Defendants' joint and several liability for copyright infringement is **DENIED**;

7.      Plaintiff's Motion for Partial Summary Judgment on the scènes à faire defense for Plaintiff's copyright infringement claim is **DENIED**;

8.      Plaintiff's Motion for Partial Summary Judgment on the merger doctrine defense for Plaintiff's copyright infringement claim is **GRANTED**, and Defendants cannot pursue the merger doctrine defense at trial; and

9.    Plaintiff's Motion for Partial Summary Judgment on the issue of willfulness for Plaintiff's copyright infringement claim is **<u>DENIED</u>**.

The Court **<u>DENIES</u>** Plaintiff's request to stay pursuant to Fed. R. Civ. P. 56(d).

Based on the Court's rulings in this Order, the remaining claim for trial is Plaintiff's copyright infringement claim based on distribution of *Moana* by Defendant Buena Vista Home Entertainment after April 24, 2017.

**IT IS SO ORDERED.**

DATED:  November 1, 2024.

_____
HON. CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE