MICHAEL D. ROTH (SBN 217464)
*mroth@kslaw.com*
ARWEN R. JOHNSON (SBN 247583)
*arwen.johnson@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

PETER SHIMAMOTO (SBN 123422)
*pshimamoto@willenken.com*
KENNETH M. TRUJILLO-JAMISON
(SBN 208212)
*ktrujillo-jamison@willenken.com*
MICHELLE K. MILLARD
(SBN 298245)
*mmillard@willenken.com*
**WILLENKEN LLP**
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240

ROBERT N. KLIEGER (SBN 192962)
*rklieger@hueston.com*
MOEZ M. KABA (SBN 257456)
*mkaba@hueston.com*
**HUESTON HENNIGAN LLP**
523 W. 6TH Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

Attorneys for Defendant BUENA
VISTA HOME ENTERTAINMENT,
INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCK G. WOODALL, a.k.a. Buck Woodall, an individual, <br><br>     Plaintiff, <br><br>   v. <br><br> THE WALT DISNEY COMPANY, a Delaware Corporation; et al., <br><br>     Defendants. | Case No. 2:20-cv-03772-CBM-E <br><br> *Hon. Consuelo B. Marshall, Courtroom 8D* <br><br> **DEFENDANT BUENA VISTA HOME ENTERTAINMENT, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> Action Filed:      April 24, 2020 <br> Final Pretrial Conference Jan. 14, 2025 <br> Trial Date:      Feb. 25, 2025 |

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. CLAIMS AND DEFENSES ................................................................................1

   A. *Elements of Plaintiff's Claim for Copyright Infringement Against Buena Vista and the Key Evidence in Opposition* ....................2

      1. Element 1: Ownership of a Valid Copyright ..............................2

         a. Two Copyrighted Works are at Issue ................................2

         b. Other Unregistered Works Cannot Form the Basis of Plaintiff's Claim ................................................................3

      2. Element 2: Copying Original Expression from the Registered Copyrighted Works ...........................................3

         a. There Is No Direct Evidence of Copying Here ................4

         b. Plaintiff Cannot Prove Copying Through Circumstantial Evidence ....................................................4

           i. Access ......................................................................4

           ii. Substantial Similarity ............................................8

   B. *Buena Vista's Defense of Independent Creation and the Key Evidence in Support* ......................................................................12

   C. *Damages* ...............................................................................................13

      1. Plaintiff's Election of Damages Must Occur Before Final Judgment is Entered ......................................................13

      2. Actual Damages .......................................................................13

      3. Disgorgement of Profits ..........................................................15

      4. Statutory Damages ...................................................................16

   D. *Anticipated Evidentiary Issues* .........................................................17

III. OTHER ISSUES FROM LOCAL RULE 16-4 ...............................................19

   A. *No Bifurcation is Warranted* ............................................................19

   B. *Jury Trial* ...........................................................................................20

   C. *Attorneys' Fees* ..................................................................................20

   D. *Abandonment of Issues* ......................................................................20

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ................................................................. 10

5

6

*Bernal v. Paradigm Talent & Literary Agency*,
   788 F. Supp. 2d 1043 (C.D. Cal. 2010) .................................................. 5

7

8

*Camhe v. Dreamworks, LLC*,
   2009 WL 10668462 (C.D. Cal. May 14, 2009) ...................................... 10

9

*Corbello v. Valli*,
   974 F.3d 965 (9th Cir. 2020) ................................................................. 10

10

11

*Data E. USA, Inc. v. Epyx, Inc.*,
   862 F.2d 204 (9th Cir. 1988) .............................................................. 4, 7

12

13

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
   528 F.3d 696 (9th Cir. 2008) ............................................................ 13, 17

14

15

*Edwards v. Cinelou Films, LLC*,
   Case No. 2:16–cv–01014–ODW, 2016 WL 9686986 (C.D. Cal.
   June 22, 2016) ......................................................................................... 4

16

17

*Esplanade Prods., Inc. v. Walt Disney Co.*,
   93 Cal. App. 5th 793 (2023) .............................................................. 7, 12

18

19

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   586 U.S. 296 (2019) ............................................................................... 3

20

21

*Freeman v. Deebs-Elkenaney*,
   2023 WL 159740 (S.D.N.Y. Jan. 11, 2023) ......................................... 10

22

23

*Fryberg v. Int'l Bus. Machines Corp.*,
   812 F.2d 525 (9th Cir. 1987) ................................................................. 11

24

25

*Gilbert v. New Line Prods., Inc.*,
   2010 WL 5790628 (C.D. Cal. Aug. 13, 2010) ...................................... 10

26

27

*GoPets Ltd. v. Hise*,
   657 F.3d 1024 (9th Cir. 2011) ................................................................ 1

28

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

*Gray v. Hudson*,
   28 F.4th 87 (9th Cir. 2022)...................................................................... 10

*Harper House, Inc. v. Thomas Nelson, Inc.*,
   889 F.2d 197 (9th Cir. 1989)................................................................... 10

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
   790 F.3d 532 (4th Cir. 2015).................................................................... 4

*Knowles v. Spin Master, Inc.*,
   No. CV 18-5827 PA (JCX), 2019 WL 4565102 (C.D. Cal. Sept. 17,
   2019)........................................................................................................ 3

*Kodadek v. MTV Networks, Inc.*,
   152 F.3d 1209 (9th Cir. 1998).................................................................. 3

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984).................................................................. 1

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016)................................................................. 4, 7

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
   586 F. Supp. 1346 (C.D. Cal. 1984)....................................................... 5, 7

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004)...................................................13, 14, 15, 18

*Quirk v. Sony Pictures Ent. Inc.*,
   2013 WL 1345075 (N.D. Cal. Apr. 2, 2013)............................................ 6

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012).................................................................. 4

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018).............................................................. 2, 12

*Seals–McClellan v. Dreamworks, Inc.*,
   120 Fed. Appx. 3 (9th Cir. 2004) ............................................................ 8

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) (en banc)...........................................*passim*

*Stewart v. Wachowski*,
   574 F. Supp. 2d 1074 (C.D. Cal. 2005)................................................... 8

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DEFENDANT BUENA VISTA'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

*Taylor v. Meirick*,
    712 F.2d 1112 (7th Cir. 1983) ................................................................ 18

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) .................................................................... 3

*Walker v. Univ. Books, Inc.*,
    602 F.2d 859 (9th Cir. 1979) .................................................................... 8

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018) .................................................................. 3

**Statutes**

17 U.S.C. § 411 ............................................................................................ 3

17 U.S.C. § 504 .......................................................................................... 15

17 U.S.C. § 504(b) ..................................................................................... 13

17 U.S.C. § 504(c)(1) ................................................................................. 13

17 U.S.C. § 504(c)(2) ................................................................................. 17

17 U.S.C. § 505 .......................................................................................... 20

18 U.S.C. § 1836(b)(3)(D) ......................................................................... 20

Cal. Civ. Code § 3426.4 ............................................................................. 20

**Other Authorities**

L.R. 16-1 .................................................................................................... 19

L.R. 16-4 .................................................................................................... 19

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT BUENA VISTA'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## I.    INTRODUCTION

After this Court issued its November 1, 2024 Order granting summary judgment (Dkt. 558), which dismissed fourteen defendants and four causes of action, the only remaining claim being tried to the jury concerns allegations of copyright infringement by Defendant Buena Vista Home Entertainment, Inc. ("Buena Vista") through its distribution of *Moana* on DVD and Blu-Ray after April 24, 2017.

There is no evidence of direct copying in this case, so Plaintiff Buck Woodall must prove the copying element of his infringement claim circumstantially through evidence of both (1) access and (2) substantial similarity.  Plaintiff will not be able to do so.  The evidence at trial will overwhelmingly demonstrate that:

- Nobody involved in *Moana's* creation had the opportunity to view either of Plaintiff's two registered works upon which his claim can be based.
- "Bucky" and *Moana* are vastly different works that are not substantially similar under the extrinsic or intrinsic tests.  A simple comparison of "Bucky" to *Moana* confirms as much.
- *Moana* was independently created, with no knowledge of or exposure to "Bucky," thus negating Plaintiff's claim entirely.

In short, Buena Vista is confident that the jury will conclude that Plaintiff's infringement claim is based on nothing more than "that obsessive conviction, so common among other authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism." *Litchfield v. Spielberg*, 736 F.2d 1352, 1358 (9th Cir. 1984) (citation omitted). Plaintiff's sole remaining claim will fail, and judgment will be entered for the defense.

## II.    CLAIMS AND DEFENSES

Plaintiff's sole remaining copyright infringement claim against Buena Vista alleging that *Moana* was copied from his work "Bucky" will be tried to a jury.  *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011) (issues of liability and

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

damages in copyright action are tried to a jury).

### A.    Elements of Plaintiff's Claim for Copyright Infringement Against Buena Vista and the Key Evidence in Opposition

Plaintiff has the burden of proving two elements by a preponderance of the evidence: (1) "the plaintiff is the **owner** of a valid copyright;" and (2) "the defendant **copied** original expression from the copyrighted work."  Model Jury Instr. 17.5 (emphases added).  "The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'"  *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc) (citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)).  Factual **copying** is the fact of copying as the source for a defendant's work (as opposed to independent creation); **unlawful appropriation** is the copying of elements that are protected.  *Id.*

### 1.    Element 1:  Ownership of a Valid Copyright

Plaintiff is the owner of a valid copyright in "Bucky" if he proves by a preponderance of the evidence that: (1) his work is original; and (2) he is the author or creator of the work.  *See* Model Jury Instr. 17.6.

### a.    Two Copyrighted Works are at Issue

Buena Vista did not contest, and thus the Court granted summary judgment on, "the issue of Plaintiff's ownership of the copyrights regarding the *Bucky* works that were registered with the U.S. Copyright Office."  Dkt. 558 at 16.

As set forth in Plaintiff's Statement of Uncontroverted Facts in support of his cross-motion for partial summary judgment, that uncontested ruling concerned two copyright registrations: (1) Registration Number VAu000624809, Date: 2004-05-25, Title:  Bucky an animated feature project; and (2) Registration Number Pau003749546, Date 2014-12-05, Title: Bucky, The Surfer Boy.  Dkt. 538, SUF 1.

**b.**    **Other Unregistered Works Cannot Form the Basis of Plaintiff's Claim**

"No civil action for infringement of the copyright in any United States work shall be instated until preregistration or registration of the copyright claim has been made" with the U.S. Copyright Office.  17 U.S.C. § 411; *see also Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) ("registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights"); *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998) ("registration . . . is a prerequisite to a suit based on a copyright").  Section 411 "bars a copyright owner from suing for infringement until 'registration has been made.'"  *Id.* at 302   (quoting 17 U.S.C. § 411); *see also Knowles v. Spin Master, Inc*., No. CV 18-5827 PA (JCX), 2019 WL 4565102, at *4 (C.D. Cal. Sept. 17, 2019) (excluding consideration of one of three issues of a comic book as basis for copyright claim because the plaintiff's "failure to register the copyright for Issue 3 prior to commencing this action forecloses any claim for infringement related to elements appearing only in Issue 3").

The two aforementioned registrations—VAu000624809 and Pau003749546—are the only registrations made before suit was filed.  As a matter of law, they are the only copyrights that can form the basis of Plaintiff's sole remaining claim.

**2.**    **Element 2: Copying Original Expression from the Registered Copyrighted Works**

"A copyright plaintiff may prove copying with" direct or circumstantial evidence.  *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018).  "Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'"  *Id.* (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000)).

1   The plaintiff can prove that the defendant copied from the
2   work by proving by a preponderance of the evidence that
3   the defendant had *access* to the plaintiff's copyrighted
4   work and that there are ***substantial similarities*** between the
5   defendant's work and ***original elements*** of the plaintiff's
6   work.

7   Model Jury Instr. 17.17 (emphases added).

### a.    There Is No Direct Evidence of Copying Here

"'Direct evidence of copying . . . includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants.'" *Edwards v. Cinelou Films, LLC*, Case No. 2:16–cv–01014–ODW (AGRx), 2016 WL 9686986, at *3 (C.D. Cal. June 22, 2016) (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015)); *see also Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012) ("Direct proof [of copying] can consist of . . . testimony of direct observation of the infringing act." (quotation and citation omitted)).

There is no direct evidence of copying in this case, so Plaintiff must attempt to prove circumstantially that copying occurred by proving both access ***and*** substantial similarity. *See Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 206 (9th Cir. 1988) (agreeing with contention that where there is not access to a version of a work, that version "is irrelevant for proof of substantial similarity").

### b.    Plaintiff Cannot Prove Copying Through Circumstantial Evidence

### i.    Access

"As part of [his] burden . . . the plaintiff must prove by a preponderance of the evidence that the defendant . . . had access to the plaintiff's work." Model Jury Instr. 17.18.  Access may be found only if the creators of *Moana* "had a reasonable opportunity to view" "Bucky" prior to *Moana*'s creation. *Id.*; *see Loomis v. Cornish*,

836 F.3d 991, 995-96 (9th Cir. 2016) ("bare corporate receipt" is insufficient; rather "the dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access") (quoting *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1358 (C.D. Cal. 1984)); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1056 (C.D. Cal. 2010) ("a plaintiff must show that he submitted his work to an intermediary who is in a position to transmit the plaintiff's work to the creators of the infringing work"); *Meta-Film Assocs., Inc.*, 586 F. Supp. at 1357 ("it is clearly unreasonable to attribute the knowledge of any one individual—especially a non-employee—to every other individual just because they occupy offices on the same studio lot"); *id.* (requiring "nexus between the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work").

As is relevant to Plaintiff's theories, access may only be shown by:

1. A chain of events connecting the plaintiff's work and the defendant's opportunity to view that work, such as dealings through a third party (such as a publisher or record company) that had access to the plaintiff's work and with whom both the plaintiff and the defendant were dealing; or

2. "a similarity between the plaintiff's work and the defendant's work that is so 'striking' that it is highly likely the works were not created independent of one another."

Model Jury Instr. 17.18.

Although Plaintiff has proffered many theories of access, the evidence will show that none of those theories creates an unbroken chain of events leading to the

creators of *Moana* having actually had an opportunity to view "Bucky" materials prior to *Moana*'s creation:[1]

- **Jenny Marchick.**    Plaintiff's primary theory of access concerns his brother's wife's stepsister, Jenny Marchick, to whom he delivered a binder of "Bucky" materials to in late 2004 and a 2011 script in January 2012, which is virtually identical to the script registered in 2014.  Marchick, however, will testify that these materials were never given, shown, or otherwise presented to anyone involved with the creation of *Moana*. Significantly, Marchick is the only source for any of Plaintiff's theories that Disney had access to the 2011 script that he later registered in 2014. Marchick, however, did *not* work for Disney (or on the Disney studio lot) at the time Plaintiff claims to have provided her with the 2011 script.  If the jury rejects that theory of access, that script *cannot* form the basis of the substantial similarity inquiry.

- **Maggie Malone**.  Plaintiff has also relied on Malone, a creative executive at Walt Disney Animation Studios ("WDAS"), as a bridge to his other access theories.  But neither Plaintiff nor Marchick provided Malone any "Bucky" materials, at any time.

- **John Lasseter**.  Lasseter served as WDAS' Chief Creative Officer from 2006 through 2017.  But like Malone, Plaintiff has no evidence that Lasseter received any "Bucky" materials, at any time.

- **Brad Bird**.  Bird directed the 2004 Pixar movie *The Incredibles*.  Plaintiff claims Bird was pitched "Bucky" during a 2003 recording session for *The*

---

[1] While the Court previously ruled that Plaintiff's retained expert David Roman may consider early drafts of *Moana* and "materials other than the final *Moana* film" as relevant to access (Dkt. 559, at 9-10), Buena Vista respectfully requests that the Court give a limiting instruction that those materials may **not** be considered as part of the separate substantial similarity analysis.  *See See v. Durang*, 711 F.2d 142 (9th Cir. 1983("copying deleted or so disguised as to be unrecognizable is not copying"); *Quirk v. Sony Pictures Ent. Inc.*, 2013 WL 1345075, at *6 (N.D. Cal. Apr. 2, 2013).

*Incredibles* in Kauai.  But there is no evidence that Bird was involved with the creation of *Moana* or provided any "Bucky" materials to anyone.

- **Osnat Shurer.**  Shurer was a producer on *Moana*.  Plaintiff originally alleged Shurer was pitched "Bucky," also in connection with *The Incredibles*.  But Shurer's uncontradicted testimony via her videotaped deposition is that she never heard of Plaintiff or "Bucky" before this lawsuit was filed.  And Plaintiff's witness, Peter Heckmann, already declared that he cannot recall whether he gave "Bucky" materials to Shurer.

- **Doc Kane.**  Kane is the sound engineer who Plaintiff claims was pitched "Bucky" materials during the 2003 recording session for *The Incredibles*.  But Kane will testify that he had also never heard of Plaintiff or "Bucky," much less received any "Bucky" materials, prior to this lawsuit.

- **Unknown Disney TV Animation Person.**  Plaintiff has also identified as a potential source of access an unknown person at Disney TV Animation to whom he and/or Marchick provided "Bucky" materials in late 2004 or 2005.  But as a matter of law, the receipt of "Bucky" materials by some unknown person at Disney TV Animation is the type of "bare corporate receipt" that cannot establish access.  *Loomis*, 836 F.3d at 996.

In short, none of the witnesses Plaintiff has identified will testify to providing anyone involved with the creation of Moana "a reasonable opportunity to view" any "Bucky" materials prior to *Moana*'s creation, and certainly no opportunity to view the materials registered in 2004 *and* 2014.[2]  *See, e.g.*, *id.*; *Meta-Film Assocs., Inc.*, 586 F. Supp. at 1357 (requiring "nexus between the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work"); *see also Esplanade Prods., Inc. v. Walt Disney Co.*, 93 Cal. App. 5th 793, 807 (2023)

---

[2]  Without proof of access to a work registered with the U.S. Copyright Office, the work "is irrelevant for proof of substantial similarity."  *Data E. USA, Inc.*, 862 F.2d at 206.

("A reasonable possibility of access requires a sufficiently strong nexus between the intermediary to whom the plaintiffs submitted their work and the creator of the allegedly offending work.") (citation and quotation marks omitted).

Moreover, while Plaintiff and his experts have tossed around the concept of "striking similarity," Plaintiff will not be able to establish even "substantial similarity," let alone "striking similarity," for the reasons set forth below.[3]  "Bucky" and *Moana* are vastly different works.

## ii.    Substantial Similarity

A two-part test is used to "determine[] whether one work is substantially similar to another:"

> [A plaintiff] must prove both substantial similarity under the "extrinsic test" and substantial similarity under the "intrinsic test." The "extrinsic test" is an objective comparison of specific expressive elements.  The "intrinsic test" is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works.

Model Jury Instr. 17.10.  This inquiry looks to whether "similarities between the two works are due to 'copying rather than . . . coincidence, independent creation, or prior common source." *Skidmore*, 952 F.3d at 1064

---

[3] "To show a striking similarity between works, a plaintiff must produce evidence that the accused work could not possibly have been the result of independent creation." *Seals–McClellan v. Dreamworks, Inc.*, 120 Fed. Appx. 3, 4 (9th Cir. 2004) (citing *Walker v. Univ. Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979)) (emphasis in original); *see also Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1103 (C.D. Cal. 2005) ("At base, 'striking similarity' simply means that in human experience it is virtually impossible that the two works could have been independently created.") (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.02[B] (2005)) (internal quotation marks omitted).

- **Substantial Similarity – Extrinsic Test**

    The jury will need to take three steps to apply the extrinsic test:

(1)    The jury will first need to identify similarities between each disputed copyrighted work (*i.e.*, a registered version of "Bucky") and the accused work (*i.e.*, the final version of the film *Moana*).

(2)    The jury must then filter out similarities identified in Step (1) that are based on elements of "Bucky" not protected under copyright law. Unprotected elements include ideas (rather than the expression of the ideas) and stock or standard concepts, characters, plot, themes, dialogue, mood, setting, pace, colors, animation style, sequence of events, music, and any other features that are commonly used or firmly rooted in the tradition of the genre to which the works belong, as well as other material that is part of the public domain or not original to the Plaintiff. Here, that includes material from Polynesian mythology or folklore. A combination of elements that are individually unprotected can collectively be protected expression only if those elements are numerous enough, and the plaintiff's selection and arrangement original enough, that the combination constitutes an original work of authorship.[4]

(3)    Finally, after filtering out similarities from elements of "Bucky" that are not protected in Step (2), the jury must then determine whether the protected elements are substantially similar.

---

[4] In *Skidmore*, the Ninth Circuit discussed the parameters of a "selection and arrangement" theory and explained "[a] plaintiff . . . cannot establish substantial similarity by reconstituting the copyrighted work as a combination of unprotectable elements and then claiming that those same elements also appear in the defendant's work." 952 F.3d at 1075. Instead, a plaintiff must explain how "these elements are particularly selected and arranged." *Id.* (cautioning of the risk of a different approach because "many works of art can be recast as compilations of individually unprotectable elements"). Inherent in the *Skidmore* analysis is identifying the unprotectable elements, how the *author* selected them, and how the *author* arranged them. Buena Vista will request that the Court give a specific instruction on this issue should Plaintiff pursue a "selection and arrangement" theory.

*See* Model Jury Instr. 17.19; *Gray v. Hudson*, 28 F.4th 87, 97 (9th Cir. 2022) ("threshold issue is what—if anything—about the Joyful Noise ostinato qualifies as original expression that can serve as the basis for a copyright infringement claim"); *Skidmore*, 952 F.3d at 1077 (upholding jury instruction regarding extrinsic similarity that included that jury needed to determine whether "any . . . musical elements that are original to *Taurus* . . . also appear in *Stairway to Heaven*"); *Corbello v. Valli*, 974 F.3d 965, 974 (9th Cir. 2020) (extrinsic test requires three step analysis); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("the unprotectable elements have to be identified, or filtered, before the works can be considered as a whole"); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207-08 (9th Cir. 1989) (holding district court erred by failing to give jury instructions that "adequately distinguish[ed] between protectable and unprotectable material").

The evidence under the extrinsic test will consist primarily of expert testimony and the registered "Bucky" materials and the final version of *Moana*.[5]  Excerpts from the Disney films *Aladdin*, *Beauty & The Beast*, *Frozen*, *Lilo & Stitch*, *Lilo & Stitch 2*, *Mulan*, *Pocahontas*, *Rip Girls*, and *The Little Mermaid* may also be introduced. Buena Vista's retained experts who will opine about the extrinsic test are as follows:

- ***Jeff Rovin.***  Rovin is a professional writer who has authored more than a hundred books, both fiction and non-fiction, including several books analyzing films and television series, and many histories of heroic and

---

[5] Although this Court previously declined to exclude the opinions of Plaintiff's expert David Roman under *Daubert* based on defendants' argument that "Roman's consideration of multiple works by Plaintiff renders Roman's entire opinion nonsensical and therefore unreliable," Dkt. 559 at 8, Plaintiff's claim cannot be based on an aggregation of works, especially an aggregation that includes unregistered works.  *See Freeman v. Deebs-Elkenaney*, 2023 WL 159740, at *2 (S.D.N.Y. Jan. 11, 2023) (plaintiff "cannot rely on an amalgam of bits and pieces of her work in progress" to establish infringement); *Gilbert v. New Line Prods., Inc.*, 2010 WL 5790628, at *3 (C.D. Cal. Aug. 13, 2010) (describing plaintiff's attempt at aggregation as "wholly flawed"); *Camhe v. Dreamworks, LLC*, 2009 WL 10668462, at *5-6 (C.D. Cal. May 14, 2009) (holding multiple works could not be amalgamated to determine whether infringement has occurred).

fantasy films.  Rovin will perform a comparative analysis of "Bucky" and *Moana* under the extrinsic test and will analyze prior art regarding certain elements in dispute.  *See Skidmore*, 952 F.3d at 1064 (substantial similarity analysis includes looking to whether similarities are the result of "copying rather than . . . prior common source").

- ***Marie Alohalani Brown.***  Brown is a Professor of Hawaiian and other Polynesian Religions for the Department of Religions and Ancient Civilizations at the University of Hawaii at Minoa.  Brown will provide rebuttal testimony to that of Plaintiff's retained expert Terry Hunt.  In particular, Brown will explain the many ways in which Hunt either overlooked, failed to consider, or misinterpreted important details and mythological elements and thereby overstated the extent of the deviations from Polynesian mythologies and folklore and the supposed similarities between "Bucky" and *Moana*.

Rovin and Brown will also provide testimony relevant to what is protectable or not under copyright law, for example, where "the expression [of an idea] is as a practical matter indispensable, or at least standard in the treatment of a given idea," i.e., the scenes a faire doctrine.  *Fryberg v. Int'l Bus. Machines Corp.*, 812 F.2d 525, 530 (9th Cir. 1987).  Moreover, because independent creation is an absolute defense to copying, the witnesses identified below regarding independent creation, *see* Section II.B, *infra*, will also provide testimony relevant to the substantial similarity analysis to show there was no copying.

- **Substantial Similarity – Intrinsic Test**

The intrinsic test asks whether an ordinary, reasonable observer would find the "total concept and feel" of the works to be substantially similar.  Here, the jury cannot take into account the testimony of the expert witnesses.  Model Jury Instr. 17.19.  Evidence to be considered under the intrinsic test will include the DVD of *Moana*, which the jury should watch at the start of the case, and the two "Bucky" works

registered with the Copyright Office.  To find that there was copying, the jury must find that as to one of these two registered works that: (1) *Disney* had access to that work; and (2) that work is substantially similar to *Moana* under both the extrinsic and intrinsic tests.  Buena Vista is confident the jury will find that neither of Plaintiff's two registered "Bucky" works has a "total concept and feel" that is substantially similar to *Moana*.

### B.    Buena Vista's Defense of Independent Creation and the Key Evidence in Support

"[I]ndependent creation is a complete defense to copyright infringement." *Skidmore*, 952 F.3d at 1064. "No matter how similar the plaintiff's and the defendant's works are, if the defendant created his independently, without knowledge of or exposure to the plaintiff's work, the defendant is not liable for infringement." *Rentmeester*, 883 F.3d at 1117, *overruled on other grounds by Skidmore*, 952 F.3d 1051 (9th Cir. 2020).

Buena Vista will put on overwhelming evidence that *Moana* was created independently, without knowledge of or exposure to any "Bucky" materials, and this showing will defeat any high-level, unprotected ideas that Plaintiff might argue are common between "Bucky" and *Moana*.  Buena Vista's witnesses will include:

- ***John Musker*** and ***Ron Clements***.  Musker and Clements were the team that created and directed *Moana*, and will testify about the independent origins of the film and its development.

- ***Osnat Shurer***.  Shurer was the producer of *Moana*.  Her testimony will be presented through her videotaped deposition, and she will testify about the development of *Moana*.

- ***Jessica Julius***.  Throughout the development of *Moana*, Julius was a Vice President, Development & Creative Affairs at Walt Disney Animation Studios.  Julius will testify about the development of *Moana* and its extensive development files.

In total, the jury will hear that *Moana* was created independently of "Bucky," and that regardless of any perceived similarities between the works, there was no copying.

### C.   Damages

As described above, Plaintiff will not be able to prove liability at trial. Moreover, the potential damages he could theoretically recover for Buena Vista's alleged infringement are relatively minimal.

#### 1.   Plaintiff's Election of Damages Must Occur Before Final Judgment is Entered

Section 504(c)(1) provides that Plaintiff may "elect, at any time before final judgment is rendered," whether to seek actual or statutory damages.  *See Derek Andrew, Inc. v. Poof Apparel Corp*., 528 F.3d 696, 699 (9th Cir. 2008).  If Plaintiff elects to recover statutory damages, he cannot also recover actual damages.  17 U.S.C. § 504(c)(1); Model Jury Instr. 17.35.

#### 2.   Actual Damages

Under 17 U.S.C. § 504(b), a copyright owner is entitled to recover the actual damages suffered as a result of the infringement, as well as any profits of the infringer that are attributable to the infringement and that are not taken into account in computing the actual damages.  Model Jury Instr. 17.32; *see Polar Bear Prods., Inc. v. Timex Corp*., 384 F.3d 700, 708 (9th Cir. 2004) (noting additionally that "actual damages must be suffered 'as a result of the infringement,' and recoverable profits must be 'attributable to the infringement'").

Actual damages means the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement.  Model Jury Instr. 17.33.  In determining actual damages, a jury considers:

1. The amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defend of the plaintiff's work; and

2. The profits the plaintiff should have received for any sales lost because of the infringement.  Profits are the gross revenue the plaintiff would have made on sales that did not occur because of the infringement minus additional expenses the plaintiff would have occurred in making those sales.

*Id.*

Here, the jury will hear testimony from the parties' retained economic experts on the issue of Plaintiff's actual damages.  Only one of Plaintiff's two economists, Ceder Boschan, opined on this topic for Plaintiff.  Boschan's actual damages opinion has two components—a flat fee component, which Boschan calculated in reference to the Writers' Guild of America's industry-wide agreements that were effective in 2013, and a net profit component, for which Boschan drew upon a series of confidential agreements that she has reviewed over the course of her career but has steadfastly refused to disclose.  The flat fee component, which Boschan opines would have been $33,089, is based on disclosed data and Buena Vista does not object to its admission.  Because the net profits portion of Boschan's actual damages opinion, however, is based on confidential agreements she refuses to disclose, that component of her actual damages opinion should be excluded.  *See* Dkt. 569 (Buena Vista's Motion to Exclude or Limit Opinions of Cedar Boschan).

Buena Vista will put on Robert Wunderlich as its rebuttal expert on the topic of actual damages. Wunderlich will testify that Plaintiff's actual damages attributable to Buena Vista's alleged infringement of "Bucky" from the distribution of *Moana* on DVD and Blu-Ray after April 24, 2017 range from $13,090 to $50,000, based on Buena Vista's fee that would have been paid to acquire the rights to any copyrights related to "Bucky."  In short, Plaintiff's actual damages, excluding potential

disgorgement of profits, range from to $13,090 to $50,000, with Boschan's estimate of $33,089 falling in the middle of that range.

### 3.    Disgorgement of Profits

A profits claim does not include all gross revenue from the allegedly infringing work, but instead only those revenues that the defendant earned from its alleged infringement.  17 U.S.C. § 504.  The Model Jury Instructions provide that, "[i]n addition to actual damages, the plaintiff is entitled to any profits of the ***defendant*** attributable to the infringement." Model Jury Instr. 17.34 (emphasis added).

As the Ninth Circuit has recognized, the Copyright Act "creates a two-step framework for recovery of indirect profits: (1) the copyright claimant must first show a causal nexus between the infringement and the [infringer's] gross revenue; and (2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." *Polar Bear*, 384 7 F.3d at 711.  In other words, the evidence of gross revenue must be "duly apportioned to relate to the infringement." *Id*. (quotation omitted)  Thus, the starting place here is Buena Vista's own gross revenue, and then a causal link between Buena Vista's infringement and the monetary remedy sought is a predicate to any disgorgement of profits. *See id*. at 708.

Buena Vista's profits will be the subject of expert testimony at trial.  After the Court's November 1, 2024 ruling on the parties' cross-motions for summary judgment, Buena Vista provided additional financials so that the parties' experts could update their disgorgement calculations to limit them to Buena Vista, as the sole remaining defendant, and to periods after April 24, 2017.  Their opinions are as follows:

**Stan Smith**.  Plaintiff's expert Smith provided his updated report on December 11, 2024.  Smith opined that Buena Vista's profits from its distribution of *Moana* on DVD and Blu-Ray after April 24, 2017 are approximately $10 million.  Smith did not, however, make any attempt to apportion those profits to Buena Vista's alleged

infringement of "Bucky." Indeed, Smith admitted at deposition that he did not intend to offer any opinion on apportionment in this case and should thus be precluded from doing so at trial.

**Cedar Boschan**. Plaintiff's other economist, Boschan, did not update her report until December 20, 2024, *i.e.*, several days after the deadline to file *Daubert* motions had passed. Buena Vista reserves all rights with respect to those opinions that she failed to timely disclose. Based on her late report, it appears she intends to opine that Buena Vista's profits from its distribution of *Moana* on DVD and Blu-Ray after April 24, 2017 are approximately $16 million, and that 22% of those profits are attributable to Buena Vista's alleged infringement of "Bucky," meaning that ~$3.5 million of Buena Vista's profits would be potentially subject to disgorgement.[6]

**Robert Wunderlich**. Buena Vista's economist Robert Wunderlich also submitted an updated report. Based on his analysis of the financials, Wunderlich concludes that Buena Vista's profits from its distribution of *Moana* on DVD and Blu-Ray after April 24, 2017 are approximately $11 million. After conducting an apportionment analysis that accounts for what would have been Buena Vista's investment to acquire Plaintiff's copyrights in "Bucky" relative to various measures of the investment to produce, market, and distribute *Moana*, Wunderlich concludes that the portion of *Moana* profit attributable to the alleged infringement is between $19,539 and $74,633.

### 4.    Statutory Damages

If Plaintiff elects statutory damages over actual damages, he is only entitled to statutory damages for each work infringed.[7]  Model Jury Instr. 17.35.  Statutory damages are precluded when the copyright holder does not register the copyright

---

[6] At her deposition, Boschan conceded that her actual damages analysis seeks amounts that would also be encompassed by her profit analysis (i.e., Defendants' profits include amounts that it didn't pay to Plaintiff).  In other words, awarding damages and profits would be double-dipping and is inappropriate in this case.

[7] Plaintiff's expert Boschan indicated that Plaintiff has already made an election to pursue actual damages, but Plaintiff moved for summary judgment on the issue of willful infringement.  It is thus unclear on whether Plaintiff has made his election.

1   before commencement of the infringement.  *Derek Andrew, Inc*., 528 F.3d at 699.

2   Because there are only two registered works that may form the basis of Plaintiff's

3   copyright infringement claim, *see* Section II.A.1, *supra*, he may only recover

4   statutory damages for each work.

5   The minimum for statutory damages is $750 per work infringed and the

6   maximum is $30,000.  17 U.S.C. § 504(c)(2).  In the case of willful infringement, of

7   which there is no evidence, the statutory maximum is $150,000.  Model Jury Instr.

8   17.37.  Thus, assuming Plaintiff elects statutory damages before judgment, because

9   there was no willful infringement, his total potential recovery is $60,000, *i.e*.,

10  $30,000 x 2.

11  ### D.    *Anticipated Evidentiary Issues*

12  To date, Plaintiff has not filed any *in limine* or *Daubert* motions (beyond the

13  *Daubert* motion concerning Rovin's testimony, on which the Court has previously

14  ruled), even though the deadline to do so was December 17, 2024.  Nor has Plaintiff's

15  counsel provided defense counsel with deposition designations, a witness list, or an

16  exhibit list that comply with the applicable rules.  Buena Vista reserves all rights with

17  respect to any late pretrial submissions by Plaintiff.

18  Buena Vista filed three *Daubert* motions and six motions *in limine* to resolve

19  several important issues pretrial.

20  **Buena Vista's three *Daubert* motions, Dkts. 564, 569, 572**.  Buena Vista

21  seeks to exclude the inadmissible testimony of Plaintiff's experts Terry Hunt, Cedar

22  Boschan, and Stan Smith on the following grounds:

23  **1.    Terry Hunt (Dkt. 564)**, Plaintiff's Polynesian culture expert, is not

24  qualified to opine on substantial similarity and admittedly is not offering an

25  opinion on access.  Indeed, at Hunt's deposition, Plaintiff's counsel even

26  explained that Hunt was not offering an opinion about "copying and copyright

27  liability."  Hunt should therefore be precluded from opining about substantial

28  similarity or ultimately that *Moana* was "copied" from "Bucky."

**2.    Cedar Boschan (Dkt. 569),** one of Plaintiff's two economists, offers opinions with respect to both actual damages and disgorgement of profits that are based on insufficient—or in the case of actual damages, undisclosed and therefore untestable—facts and data and constitute little more than guesswork. Boschan should also be precluded from relying on any opinions she failed to disclose prior to the deadline for filing Daubert motions.

**3.    Stan Smith (Dkt. 572),** is Plaintiff's other economist, but ***all*** his opinions with respect to revenues earned by the Disney+ streaming service— which is not operated by any named current or former defendant—are irrelevant for multiple reasons, prejudicial, inherently unreliable, and impermissibly speculative. Indeed, Buena Vista did not and does not have any involvement whatsoever with the distribution or exploitation of *Moana* on Disney+, nor has it derived any revenue from either Disney+ or the streaming version of *Moana* on Disney+. Plaintiff cannot throw out an undifferentiated gross revenue number (here, ***$37 billion***) of Disney+ that is thousands of times more than Buena Vista's profits and present it to the jury. *See, e.g.*, *Polar Bear*, 384 F.3d at 711; *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983).

**Buena Vista's six motions *in limine*, Dkts. 565, 566, 567, 568, 570, 577.** Buena Vista also seeks ***in limine*** rulings to exclude or preclude the following at trial:

**MIL 1 (Dkt. 565):** Any evidence or argument regarding matters that have been rendered irrelevant or inadmissible by the Court's ruling on the parties' cross motions for summary judgment, including (a) evidence and argument regarding Plaintiff's previous claims for fraud and misappropriation of trade secrets; (b) references to "fraud," "theft," "stealing," or "derivatives thereof; (c) evidence and argument regarding the revenues and profits of the former defendants and other non-parties; (d) evidence and argument regarding *Moana* consumer products; and (e) out-of-court statements by the former defendants

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

as admissions of party-opponents, as that hearsay exception has no application to former defendants.

**MIL 2 (Dkt. 566):**  Any evidence or argument regarding alleged discovery violations or failures to produce documents in discovery.

**MIL 3 (Dkt. 567):**  Any evidence or argument regarding third-party claims or allegations of copyright infringement in connection with works other than *Moana*, as well as disputes regarding the level of credit afforded to certain writers on *Moana*.

**MIL 4 (Dkt. 568):**  Any evidence or argument regarding *Moana 2* or other derivative works, none of which are at issue in this action.

**MIL 5 (Dkt. 570):**  Any evidence or argument about the unregistered 2016 treatment for "Bucky the Surfer Boy," written by Melissa Pilgram, as well as any other unregistered works created ***after*** any theory of access Plaintiff has proffered.

**MIL 6 (Dkt. 577):**  Any attempt by Plaintiff to offer ***both*** of his retained economists on the topic of profits attributable to Buena Vista's alleged copyright infringement, as allowing Plaintiff to put on two economists on this straightforward topic would be needlessly duplicative, a waste of time, and unfairly prejudicial.  Moreover, as noted above, because Boschan failed to timely disclose her updated opinions on this topic, she should be precluded from offering them at trial.

## III.   OTHER ISSUES FROM LOCAL RULE 16-4

### A.    *No Bifurcation is Warranted*

Buena Vista does not request any bifurcation at this time, reserving its rights to the extent Plaintiff proposes bifurcation.  Specifically, at the December 13, 2024 pretrial conference of counsel under Rule 16-1, Plaintiff's counsel argued Plaintiff has a live claim for "civil conspiracy" that survives the Court's summary judgment Order and allows him to pursue a theory of "enterprise liability" in this case, which

should be bifurcated.  There is no merit to Plaintiff's transparent attempt to relitigate the Court's summary judgment ruling, and Buena Vista will address this argument if Plaintiff indeed attempts to raise it.

### B.    Jury Trial

Plaintiff's sole remaining claim for copyright infringement is triable to a jury. Any post-trial issues regarding attorneys' fees should be resolved by the Court.

### C.    Attorneys' Fees

The Court has discretion under 17 U.S.C. § 505 to award reasonable attorneys' fees to the party that prevails on a copyright infringement claim.  Here, the fourteen former defendants prevailed as a matter of law at summary judgment on Plaintiff's copyright infringement claim, *see* Dkt. 558, and they reserve the right to seek the fees they incurred defending against that claim at the appropriate time.  Buena Vista likewise reserves the right to seek its fees as to copyright infringement following a verdict in its favor.

Buena Vista and the former defendants also prevailed as a matter of law at summary judgment on all of Plaintiff's other claims, including Plaintiff's claims for trade secret misappropriation under the federal Defend Trade Secrets Act and California's Uniform Trade Secrets Act.  *See id.*  Whether Plaintiff's trade secret claims—which Buena Vista contends were based in part on a confidentiality agreement that Plaintiff forged, as the testimony of Pearl Young confirms—were brought in bad faith should be resolved by the Court, and all defendants reserve their rights to seek the fees they incurred defending against those claims and to present evidence in support of their fee request to the Court.  *See* 18 U.S.C. § 1836(b)(3)(D); Cal. Civ. Code § 3426.4.

### D.    Abandonment of Issues

Because Plaintiff did not file ***any*** motions *in limine* or *Daubert* motions (other than the *Daubert* motion concerning Rovin's testimony, on which the Court has previously ruled), much less by the December 17, 2024 deadline, he has forfeited his

right to do so. *See* Dkt. 6 (Court's Standing Order, stating that motions *in limine* shall be noticed for hearing no later than the final pretrial conference date); Dkt. 559 at 4 (recognizing that a *Daubert* motion is a motion *in limine*); Dkt. 561 (setting final pretrial conference for January 14, 2025).

DATED: December 24, 2024

**KING & SPALDING LLP**
**HUESTON HENNIGAN LLP**
**WILLENKEN LLP**

By: */s/ Arwen R. Johnson*
        ARWEN R. JOHNSON

Attorneys for Defendant
BUENA VISTA HOME
ENTERTAINMENT, INC.