UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. | 2:20-cv-03772-CBM-E |
| Date | February 5, 2025 |
| Title | *Woodall v. The Walt Disney Co. et al.* |

Present: The Honorable **CONSUELO B. MARSHALL, UNITED STATES DISTRICT JUDGE**

| V.R. VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiff:  
NONE PRESENT

Attorneys Present for Defendants:  
NONE PRESENT

**Proceedings:    IN CHAMBERS- ORDER RE: DEFENDANT'S MOTION TO PRECLUDE PLAINTIFF'S RETAINED EXPERT STAN SMITH FROM OPINING AT TRIAL ABOUT DISNEY+ [576]**

The matter before the Court is Defendant Buena Vista Home Entertainment, Inc.'s ("BVHE's") Motion to Preclude Plaintiff's Retained Expert Stan Smith From Opining at Trial About Disney+. (Dkt. No. 576.)   Plaintiff's opposition was due on December 24, 2024, but Plaintiff filed an untimely opposition on January 13, 2024. (Dkt. No. 625.)[1]

Defendant BVHE contends Plaintiff's expert Stan Smith intends to testify that the Disney+ streaming service grossed more than $37 billion in revenue from 2020 through 2024.   Defendant BVHE moves to preclude Plaintiff's expert Smith from offering opinions or testimony at trial regarding the Disney+ streaming service pursuant to *Daubert* and Federal Rules of Evidence 402, 403 and 702 on the grounds that based on the Court's summary judgment ruling the only remaining defendant in this case is BVHE which has nothing to do with Disney+, Disney+ is not operated by any named defendant, and allowing the jury to consider anything regarding Disney+ at trial would be grossly and unfairly prejudicial and risk a runaway verdict.   Defendant also argues to the extent Smith seeks to opine regarding Disney+'s overall revenue and what portion of Disney+'s revenues Smith believes are

---

[1] Plaintiff argues Defendant BVHE "failed to timely challenge Stan Smith's testimony" and engaged in undue delay to exclude Smith's testimony which demonstrates Defendant's bad faith tactics.   However, Defendant BVHE's instant Motion was timely filed on December 17, 2024. (*See* Dkt. No. 6 (Court's Standing Order providing "Motions in limine shall be noticed for hearing no later than the final pretrial conference date"); L.R. 6-1 (28-day notice requirement).)

attributable to streaming *Moana*, Smith's testimony is irrelevant, prejudicial, inherently unreliable, and impermissibly speculative.

Plaintiff contends Disney+ has a "pivotal role in the conspiracy" among Defendants asserted in the Second Amended Complaint ("SAC"), *Moana* "serv[es] as a significant revenue driver thereof," and Defendants "never even tr[ied] to get the claims surrounding the [Disney+] platform to be dismissed on summary judgment." Plaintiff argues witnesses will be compelled to take the stand at trial with documents subject to pre-trial subpoenas and that Plaintiff will show "the gross revenues of Disney+ are virtually synonymous with *Moana*." Plaintiff contends Defendants have suppressed documents during discovery regarding Disney+ and Defendants have not submitted "***competent*** evidence showing that the *Moana* franchise and Disney+ are not synonymous or substantially related."

Here, the Second Amended Complaint (which is the operative complaint) does not assert a conspiracy claim against Defendants. Moreover, the sole remaining claim to be tried is Plaintiff's copyright claim against Defendant Buena Vista Home Entertainment based on its distribution of *Moana* after April 24, 2017. (Dkt. No. 558.) Therefore, to the extent Plaintiff contends Smith's testimony regarding Disney+ is relevant for purposes of trial because of an alleged conspiracy among Defendants and because Plaintiff's copyright claim against the non-BVHE defendants remains to be tried, Plaintiff's argument fails.

17 U.S.C. § 504(b) provides: "The copyright owner is entitled to recover ... any profits of the infringer that are attributable to the infringement. . . . In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Profits recoverable under § 504(b) include direct profits "that are generated by selling an infringing product" and "indirect profits" which relate to "revenue that has a more attenuated nexus to the infringement." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir. 2004). Here, the Disney+ streaming revenues would constitute indirect profits. "Section 504(b) creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." *Id*. at 711. As to Plaintiff's burden to show a causal nexus to recover indirect profits, Plaintiff "must proffer some evidence ... [that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement." *Id.* (rejecting interpretation of § 504(b) as requiring that "a copyright plaintiff need only provide the company's overall gross revenue, without regard to the infringement") (citation omitted). "[A] plaintiff seeking to recover indirect profits must "formulate the initial evidence of gross revenue duly apportioned to relate to the infringement," and "a copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement. . . . Otherwise, the plaintiff in a copyright action against a multidivision, multi-product company such as General Mills, would need to do nothing more than offer an overall gross revenue number—like $11.5 billion—and sit back." *Id*. (citations omitted). Therefore, balancing pursuant to Fed. R. Evid. 402 and 403, testimony at trial by Smith that the gross revenue of Disney+ from 2020 through 2024 is more than $37 billion is irrelevant, and any probative value of such evidence is substantially outweighed by danger of unfair prejudice, confusing the issues, and misleading the jury.

As to testimony from Smith that more than $2 billion of Disney+'s revenue is attributable to streaming *Moana*, Plaintiff contends "[a]t the time of trial, Plaintiff will satisfy his burden of showing 'a

causal nexus' between the infringement and Disney+'s gross revenue in displaying *Moana* as its core product," and that "[t]his will shift the burden to the Defendants to demonstrate or apportion 'the profits that were not the result of the infringement.'" However, profits recoverable under 17 U.S.C. § 504(b) are limited to "any profits of ***the infringer*** that are attributable to the infringement" and "the copyright owner is required to present proof only of ***the infringer's*** gross revenue." (Emphasis added.) Here, the sole remaining claim to be tried is Plaintiff's copyright claim against Defendant BVHE based on its distribution of *Moana* after April 24, 2017. (Dkt. No. 558.) Defendant BVHE's Vice President Jennifer Lourie declares, "BVHE engaged in the distribution of the motion picture *Moana* on DVD and Blu-ray," "BVHE has not engaged in any exploitation of *Moana* apart from its distribution of the film on DVD and Blu-ray," "BVHE did not and does not have any involvement whatsoever with the distribution or exploitation of *Moana* on Disney+ or any other streaming service," and "BVHE has not derived any revenue from either Disney+ or streaming versions of *Moana* on Disney+." (Dkt. No. 576-1, Lourie Decl. ¶¶ 1-4.) Here, Smith relies on Disney+'s overall gross revenue. Moreover, Smith testified at his deposition that his opinion did not include calculations of gross revenue received by BVHE from *Moana* (Smith Depo. 36:7-37:18, 38:19-23, 40:8-43:2, 114:11-115:5), and he did "not know about distributions" of revenue received by Disney+ "to any of the defendants" (*id*. at 94:10-95:19).

Furthermore, Smith's opinion regarding proportionally allocating Disney+'s revenues to *Moana* based on a revenue-per-minute analysis fails to satisfy Fed. R. Evid. 702's reliability requirement. Smith opines "Disney+'s revenues can be proportionally allocated to Moana based on an analysis of revenue-per-minute of home viewing, which I then applied to the number of minutes of Moana streamed on Disney+ to conservatively calculate the Moana streaming revenue for Disney+." (Dkt. No. 576-3 at 9.) Defendant contends Smith's calculations are unreliable because: (1) they are based on his analysis of SEC and Nielsen data for Disney+ for 2020-2023 from which he made projections based on that data for 2024-2034 despite acknowledging Disney+ did not launch until 2019 and did not make any profit during that period; (2) Smith did not rely on Disney+'s financial data to perform his analysis; (3) Smith's revenue per minute methodology is "entirely made up" and not approved by any court or expert; (4) shows or films on a streaming service vary in runtime and a streaming service's subscription revenue has no correlation to the number of minutes any of its shows or films are viewed; and (5) Smith's methodology is based on unsupported and unfounded assumptions such as the assumption *Moana* streaming will remain constant through 2034 despite the availability of other newer content on Disney+, and the assumption that estimated minutes of viewing *Moana* per subscriber outside the United States would be the same as in the United States.

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if four conditions are met: (a) the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert has reliably applied the principles and methods to the facts of the case." Fed. Rev. Evid. 702(a)-(d). The trial court is accorded wide discretion to act as gatekeepers for the admissibility of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151–52 (1999). In determining reliability, the Court may consider whether the methodology is generally accepted within the relevant community, can be and has been tested, has been subjected to peer review and publication, and has a known or potential rate of error. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592–94 (1993). Here, Plaintiff fails to demonstrate Smith's revenue-per-minute analysis is generally accepted within the relevant community, can be and has been tested, has been subjected to peer review and publication, and the known or potential rate of error of the method. Moreover, Plaintiff fails to demonstrate Smith's revenue-per-minute analysis is based on sufficient facts or data. Therefore, Smith's revenue-per-minute analysis

fails to satisfy Fed. R. Evid. 702's reliability requirement.

Accordingly, Defendant BVHE's Motion to Preclude Plaintiff's Retained Expert Stan Smith From Opining at Trial About Disney+ is **GRANTED**. Smith, however, is not precluded from testifying at trial regarding Defendant BVHE's profits from its distribution of *Moana* on DVD and Blue-Ray after April 24, 2017 as set forth in his December 11, 2024 report.

**IT IS SO ORDERED.**