ELIZABETH YANG (SBN 249713)
YANG LAW OFFICES
199 W. Garvey Ave., Suite 201
Monterey, CA 91754
Tel: (877) 492-6452
Fax:(626) 988-8827
elizabeth@yanglawoffices.com

DOUGLAS E. EDE
(Pro Hac Vice To Be Submitted)
RUMBERGER, KIRK, &
CALDWELL
80 Southwest 8th Street, Suite 3000
Miami, Florida 33130
Tel.: (305) 358-5577
Fax: (305) 371-7580
dede@rumberger.com

GUSTAVO D. LAGE
EL'AD D. BOTWIN
(Admitted *Pro Hac Vice*)
SANCHEZ-MEDINA, GONZALEZ,
QUESADA, LAGE, GOMEZ &
MACHADO, LLP
1200 Brickell Avenue, Ste 950
Miami, Florida 33131
Tel.: (305) 377-1000
Fax: (786) 304-2214
glage@smgqlaw.com
ebotwin@smgqlaw.com

JAMES WES CHRISTIAN
(Admitted Pro Hac Vice)
CHRISTIAN ATTAR
1177 W Loop South, Suite 1700
Houston, Texas 77027
Tel.: (877) 710-5170
Fax: (713) 659-7641
jchristian@christianattarlaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCK G. WOODALL,<br><br>        Plaintiff,<br><br>vs.<br><br>THE WALT DISNEY COMPANY, *et al.*<br>        Defendants. | **Case No.: 2:20-cv-03772-CBM-E**<br><br>**PLAINTIFF'S AMENDED SUMMARY OF WITNESS TESTIMONY**<br><br>Trial Date: February 25, 2025<br><br>Assigned to the Hon. Consuelo B. Marshall |

In accordance with the Court's Orders dated January 14, 2025, Dkt. No. 633, and L.R. 16-2.4, Plaintiff, Buck Woodall, hereby submits his Amended Summary of Witness Testimonies:[1]

## 1. Buck G. Woodall

Buck G. Woodall ("Mr. Woodall") is expected to testify about:

- his background, education, and work history;
- moving to Hawaii, learning about Polynesian lore, culture, and history, befriending locals, exploring Polynesian islands, teaching wind-surfing, and sailing on a catamaran canoe across the Oceanic waters;
- beginning to draft *Bucky* in about 1998 and continuing to work on the *Bucky* project throughout the years;
- connecting with Jenny Marchick ("Ms. Marchick"), his step-sister-in-law, to discuss the *Bucky* project;
- his communications with Ms. Marchick in connection with the *Bucky* project;
- the involvement of his then-girlfriend, Katie Speirs ("Ms. Speirs") in the *Bucky* project;
- being invited to Disney's lot in Burbank by Ms. Marchick twice for purposes of pitching *Bucky* to Ms. Marchick and her connections in the industry;
- his two meetings on Disney's Burbank lot—one at Mandeville in the Old Animation Building and one with representatives of Disney, also on the Burbank lot; pitching the *Bucky* project; leaving *Bucky* materials with Ms. Marchick and the Disney representatives respectively;
- Ms. Marchick's promises to help get *Bucky* into the right hands, sharing Bucky materials with her bosses at Mandeville Films, and with the right people at Disney, including directors;

---

[1] This Summary was amended to include references to trial exhibits and make a few minor updates to the Summary.

- Ms. Marchick requesting a trailer for *Bucky*, Mr. Woodall working on the *Bucky* trailer; and delivering the *Bucky* trailer to Ms. Marchick;
- throughout the years, delivering newer *Bucky* materials to Ms. Marchick and having additional communications with her, his brother, Benjamin Woodall, and her step-sister, Lindsay Woodall;
- his interactions with Ms. Marchick in 2016;
- meeting Peter Heckmann ("Mr. Heckmann") in Hawaii; Mr. Heckmann owning a sound studio in Kauai;
- Mr. Heckmann seeing potential in *Bucky*; funding the further development of the *Bucky* project; and agreeing to help get *Bucky* off the ground;
- Mr. Heckmann hiring Ms. Speirs to work at his sound studio and to continue to work on the *Bucky* project;
- the recording of Craig T. Nelson's voice for Pixar/Disney's *The Incredibles* at Mr. Heckmann's sound studio; *Bucky* materials being displayed during this time at the studio; Mr. Heckmann and Ms. Speirs pitching *Bucky* to *The Incredibles* team; Ms. Speirs' statements to Mr. Woodall about these events; Ms. Speir's handwritten notes about mailing *Bucky* materials to Disney and Pixar; her mailing of *Bucky* materials to Disney and Pixar;
- the practice of requesting the persons *Bucky* materials would be pitched to to keep *Bucky* materials confidential.

As to exhibits to be used during Mr. Woodall's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19, 20, 21-24, 25-28, 30, 31-37, 43, 44, 46, 47, 48, 49, 50, 52, 53, 54, 55, 56, 57, 59, 60, 61, 62, 65, 66, 68, 76, 81, 82, 89, 100, 106, 107, 110, 159, 204, 205, 209-215, 230, 231, 262, 265, 266, 268, 296

## 2. Benjamin Woodall

As an adverse witness, Benjamin G. Woodall ("Ben Woodall") is expected

to testify about:

As to exhibits to be used during Ben Woodall's testimony, Plaintiff identifies the following:

Exhibits 1-17,

- his interactions with his brother, Buck Woodall, about the *Bucky* project; introducing Buck Woodall to the step-sister of his wife, Lindsay Woodall;

- his understanding of Ms. Marchick's background and place of employment at the time;

- the arrangement of the meetings with Ms. Marchick on Disney's lot in Burbank in connection with the *Bucky* project;

- his attendance at one of the meetings with Buck Woodall and Ms. Marchick in Burbank;

- his interactions with his wife, Lindsay Woodall, Buck Woodall, and Ms. Marchick in connection with the *Bucky* project.

As to exhibits to be used during Mr. Woodall's testimony, Plaintiff identifies the following:

- Exhibits 9, 19, 30, 39, 43, 44, 62, 65, 66, 68, 76, 81, 82, 89, 100, 101, 102, 107, 110, 165, 204, 205, 209-215, 231, 296

**3. Jenny Marchick**

As an adverse witness, Ms. Marchick is expected to testify about:

- her background, education, career goals during the relevant time frame, and work history;

- her work at Mandeville Films and positions held at Mandeville, including but not limited to the scope of what she was permitted to do at Mandeville Films;

3

- the location of Mandeville Films and the nature of Mandeville Films' relationship/collaborations with Disney entities; her understanding of the First Look Deal;
- relationships Ms. Marchick developed during the course of her career, especially while working at Mandeville Films;
- being introduced to Buck Woodall and the *Bucky* project;
- her receipt of *Bucky* materials and her promises to Mr. Woodall to get *Bucky* into the right hands and helping with the *Bucky* project;
- her arranging of two meetings at Disney's Burbank lot with Mr. Woodall in connection with the *Bucky* project;
- her meeting with Mr. Woodall in connection with the *Bucky* project;
- the Mandeville submission waiver she had Mr. Woodall sign and what she then did with same;
- the second meeting she arranged for Mr. Woodall on Disney's Burbank lot;
- her efforts to get *Bucky* materials into the right hands;
- her providing *Bucky* materials to the representative at "Disney TV Animation;"
- how she knew and connected with the representative at "Disney TV Animation;"
- her interactions with the representative at "Disney TV Animation;"
- her relationship with Maggie Malone ("Ms. Malone");
- her efforts in attempting to pitch the *Bucky* project to Ms. Malone;
- her interactions with Ms. Malone, including but not limited to the attempt to pitch *Bucky* materials to Walt Disney Animation Studios and pitching materials to her in general;
- her request for a *Bucky* trailer and what she stated to Mr. Woodall in connection therewith;

Plaintiff's Summary of Witness Testimony

- her receipt of additional *Bucky* materials over the years, including but not limited to the *Bucky* trailer and what she did with same;
- her continuing relationship with Ms. Malone, including after Ms. Marchick left Mandeville Films;
- emails and other communications she had with Mr. Woodall over the years;
- communications she had with Ben and Lindsay Woodall in connection with Buck Woodall and the *Bucky* project;
- her relationship with Pamela Ribon;
- her relationship with Aaron and Jordan Kandell;
- her relationship with Don Hall;
- her relationship with Doug Short.

As to exhibits to be used during Ms. Marchick's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 18, 29, 30, 38, 39, 42-44, 45, 46, 58, 62, 64, 65, 66, 68, 76, 81, 82, 89, 100, 101, 106, 107, 159, 167, 180, 188, 189, 190, 191, 198, 215, 241, 243, 102, 209-215, 291-221, 237, 241, 243, 244, 244, 269, 272, 273, 275, 276, 282, 296

**4. Katherine Speirs**

As an adverse witness, Katherine Speirs ("Ms. Speirs") is expected to testify about:

- working with Buck Woodall on the *Bucky* project;
- her communications with Ms. Marchick;
- arranging and attending the meeting on Disney's lot in Burbank in connection with *Bucky*;
- her understanding of the purpose of the meeting on Disney's lot in Burbank and promises made to Buck Woodall;
- moving to Hawaii with Buck Woodall;

Plaintiff's Summary of Witness Testimony

- working for Mr. Heckmann at his sound studio and on the *Bucky* project in Hawaii;
- her efforts to pitch the *Bucky* project to people in the industry;
- *The Incredibles* team coming to Mr. Heckmann's sound studio to record the voice of Craig T. Nelson;
- pitching *Bucky* to members of the Incredibles team;
- her handwritten notes in connection with her interactions with members of *The Incredibles* team;
- her mailing of *Bucky* materials to Disney and Pixar;
- the practice of requesting the persons *Bucky* materials would be pitched to to keep *Bucky* materials confidential;
- her and Buck Woodall ending their relationship.

As to exhibits to be used during Ms. Speir's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19, 20, 21-24, 25-28, 30, 31-37, 38, 39, 44, 47, 48, 49, 52, 61, 231, 296

**5. Larry Stewart**

Larry Stewart is expected to testify about:

- his handwriting analysis of Ms. Speirs handwriting;
- his handwriting analysis on the Confidentiality Agreement allegedly signed by Ms. Marchick.

As to exhibits to be used during Mr. Stewart's testimony, Plaintiff identifies the following:

- Exhibits 19,

**6. David Hoberman**

As an adverse witness, David Hoberman is expected to testify about:

- his history with Disney;
- Mandeville Films' First Look Deals with Disney entities;

- payroll;
- Mandeville Films' location;
- Disney's Old Animation Building;
- Mandeville Films hybrid films;
- Mandeville Films policies and business practices, including in connection with Mandeville Films executives;
- Mandeville Films' relationships with Disney representatives;
- Ms. Marchick's employment history at Mandeville Films;
- Ms. Marchick's evolving tasks, responsibilities, and skills;
- any communications in connection with *Bucky*;
- the receipt and retention of *Bucky* materials;
- meetings regarding *Bucky* materials;
- storage of *Bucky* materials;
- Mandeville Films submission waiver;
- the submission waiver signed by Buck Woodall;
- retention of submission waiver signed by Buck Woodall;
- retention of materials submitted by an artist to Mandeville Films;
- submissions of materials to Disney as to which Mandeville relinquished all rights;
- the process of submitting materials to Disney;
- collaboration with Disney on properties owned by Disney;
- Mandeville Films' creative involvement in a project;
- the current status of Mandeville Films.

As to exhibits to be used during Mr. Hoberman's testimony, Plaintiff identifies the following:

Exhibits 1-17, 18, 29, 39, 42, 45, 62, 63, 64, 65, 75, 76, 85, 163, 168, 189, 190, 269, 272, 273, 275, 276, 282, 296

**7. Todd Lieberman**

As an adverse witness, Todd Lieberman is expected to testify about:

- Mandeville Films' First Look Deals with Disney entities;
- payroll;
- Mandeville Films' location;
- Disney's Old Animation Building;
- Mandeville Films hybrid films;
- Mandeville Films policies and business practices, including in connection with Mandeville Films executives;
- Mandeville Films' relationships with Disney representatives;
- Ms. Marchick's employment history at Mandeville Films;
- Ms. Marchick's evolving tasks, responsibilities, and skills;
- any communications in connection with *Bucky*;
- the receipt and retention of *Bucky* materials;
- meetings regarding *Bucky* materials;
- storage of *Bucky* materials;
- Mandeville Films submission waiver;
- the submission waiver signed by Buck Woodall;
- retention of submission waiver signed by Buck Woodall;
- retention of materials submitted by an artist to Mandeville Films;
- submissions of materials to Disney as to which Mandeville relinquished all rights;
- the process of submitting materials to Disney;
- collaboration with Disney on properties owned by Disney;
- Mandeville Films' creative involvement in a project;
- the current status of Mandeville Films.

As to exhibits to be used during Mr. Lieberman's testimony, Plaintiff identifies the following:

8

Exhibits 1-17, 18, 29, 39, 42, 45, 62, 63, 64, 65, 75, 76, 85, 163, 168, 189, 190, 269, 272, 273, 275, 276, 282, 296

### 7. Maggie Malone

As an adverse witness, Maggie Malone ("Ms. Malone") is expected to testify about:

- her background, education, and work history;
- her role in *Moana*;
- her relationship with Ms. Marchick;
- her interactions with Ms. Marchick about *Bucky* and/or Buck Woodall;
- the first pitches to John Lasseter for what eventually became *Moana* and who was present during pitches;
- how pitches were conducted at WDAS;
- accepting pitches from agents and persons with established relationship in the industry;
- sources used for pitches made at WDAS and potential projects at WDAS;
- the practice of "reverse pitching" at WDAS;
- the source of certain story elements used in *Moana*;
- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- hierarchy at WDAS.

As to exhibits to be used during Ms. Malone's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 239, 65, 67, 69-74, 76, 77, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 189, 190, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 227, 228, 229, 232-236, 238, 239, 242, 250, 269, 272, 273, 275, 276, 289, 296

Plaintiff's Summary of Witness Testimony

**8.  Doc Kane**

As an adverse witness, Doc Kane ("Mr. Kane") is expected to testify about:

- the recording of sound for *The Incredibles* on Kauai;
- Peter Heckmann and Ms. Speirs pitching *Bucky* to him and his wife;
- Ms. Speirs' handwritten notes;
- the photographs Mr. Kane produced in this case;
- his relationship with John Lasseter;
- his relationship with Osnat Shurer;
- his relationship with Ron Clements and John Musker.

As to exhibits to be used during Ms. Kane's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19-24, 64, 65, 240, 206, 207, 240, 258, 296

**9.  Deborah Pluimer**

As an adverse witness, Deborah Pluimer is expected to testify about:

- her work for Disney/Pixar;
- the recording of sound for *The Incredibles* on Kauai;
- Peter Heckmann and Ms. Speirs pitching *Bucky* to her and Doc Kane;
- Ms. Speirs' handwritten notes;
- the photographs Mr. Kane produced in this case.

As to exhibits to be used during Ms. Pluimer's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19-24, 65, 240, 206, 207, 240, 258, 296

**10. Peter Heckmann**

- Plaintiff will seek to admit the portions of the testimony of Peter Heckmann dated December 8, 2023, that were designated by Plaintiff at trial.

As to exhibits to be used during Mr. Heckmann's testimony, Plaintiff identifies the following:

- Exhibits 19, 27, 28, 21-28, 31-37, 47-48

**11. John Lasseter**

As an adverse witness, John Lasseter ("Lasseter") is expected to testify about:

- his background, education, and work history;
- his history and relationship with Ron Clements and John Musker;
- the efforts to get projects off the ground prior to firing Messrs. Clements and Musker and re-hiring them
- the first pitches to Mr. Lasseter for what eventually became *Moana* and who was present during pitches;
- in general, how pitches were conducted at WDAS;
- in general, sources used for pitches made at WDAS and potential projects at WDAS;
- the practice of "reverse pitching" at WDAS;
- the source of certain story elements used in *Moana*;
- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- his relationship and history with Doc Kane;
- his relationship with Maggie Malone;
- his relationship with Osnat Shurer.

As to exhibits to be used during Mr. Lasster's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 18, 19, 21-24, 62, 64, 65, 67, 69-74, 76, 77, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 206, 207, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250, 269, 272, 273, 275, 276, 296

Plaintiff's Summary of Witness Testimony

**12. John Musker**

As an adverse witness, John Musker ("Mr. Musker") is expected to testify about:

- his background, education, and work history;
- the works he has written and/or directed throughout his career;
- his relationship with Ron Clements ("Mr. Clements");
- his and Mr. Clements' efforts get projects off the ground and pitching projects to Disney, including but not limited to Terry Pratchett's Mort and Alfred Hitchcock's Fraidy Cat, prior to their departure from Disney; their efforts get projects off the ground thereafter; then being hired again by John Lasseter;
- the first pitches to John Lasseter for what eventually became *Moana* and who was present during pitches;
- in general, how pitches were conducted at Walt Disney Animation Studios ("WDAS");
- in general, sources used for pitches made at WDAS and potential projects at WDAS;
- the practice of "reverse pitching" at WDAS;
- the source of certain story elements used in *Moana*;
- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- the scope and length of the Moana team's research trips;
- research trips in other film projects he worked on;
- inspiration and sources for other film projects he worked on;
- his and Mr. Clements' statement to the public that *Moana* started as a time-traveling modern-day boy whose mission was to save an island and he encounters mythological figures on his journey;
- scrapped story elements;

---

12

- his relationship with John Lasseter;
- his relationship with Doc Kane;
- his relationship with Maggie Malone;
- his relationship with Osnat Shurer.

As to exhibits to be used during Mr. Musker's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 67, 69-74, 76, 77, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 206, 207, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250, 256, 257, 260, 261, 262, 263, 265, 266, 268, 269, 270, 271,  272, 273, 275, 276, 294, 296

**13. Ron Clements**

As an adverse witness, Mr. Clements is expected to testify about:

- his background, education, and work history;
- the works he has written and/or directed throughout his career;
- his relationship with Mr. Musker;
- his and Mr. Musker's efforts get projects off the ground and pitching projects to Disney, including but not limited to Terry Pratchett's *Mort* and Alfred Hitchcock's *Fraidy Cat*, prior to their departure from Disney; their efforts get projects off the ground thereafter; then being hired again by John Lasseter;
- the first pitches to John Lasseter for what eventually became *Moana* and who was present during pitches;
- in general, how pitches were conducted at WDAS;
- in general, sources used for pitches made at WDAS and potential projects at WDAS;
- the practice of "reverse pitching" at WDAS;
- the source of certain story elements used in *Moana*;

13

Plaintiff's Summary of Witness Testimony

- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- the scope and length of the Moana team's research trips;
- research trips in other film projects he worked on;
- inspiration and sources for other film projects he worked on;
- his and Mr. Musker's statement to the public that *Moana* started as a time-traveling modern-day boy whose mission was to save an island and he encounters mythological figures on his journey;
- scrapped story elements;
- his relationship with John Lasseter;
- his relationship with Doc Kane;
- his relationship with Maggie Malone;
- his relationship with Osnat Shurer.

As to exhibits to be used during Mr. Clements' testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 67, 69-74, 76, 77, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 206, 207, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250, 256, 257, 260, 261, 262, 263, 265, 266, 268 269, 270, 271, 272, 273, 274, 275, 276, 296

**14. Marc Snetiker**

Marc Snetiker is expected to testify about:

- an article he wrote under the *title 10 fun facts about Moana that will make you say 'Wow, what a fun Moana fact*, dated January 11, 2017 (the "Snetiker article");
- a subpoena served to produce documents in this matter in connection with the Snetiker article;
- *Moana* directors' commentary about the Snetiker article.

14

As to exhibits to be used during Mr. Snetiker's testimony, Plaintiff identifies the following:

- Exhibit 64

**15. Pamela Ribon**

As an adverse witness, Pamela Ribon is expected to testify about:

- her role in coming in as a new writer for *Moana*;
- what she was told to focus on and/or avoid in writing/re-writing the *Moana* script;
- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- sources of inspiration for certain elements of the storyline for *Moana*;
- scrapped story elements;
- her relationship with Ms. Marchick;
- her relationship with Maggie Malone.

As to exhibits to be used during Ms. Ribon's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 69-74, 76, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 164, 169, 172, 181, 184, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-225, 226, 228, 229, 232-236, 238, 239, 242, 250, 296

**16. Don L. Hall**

As an adverse witness, Don Hall is expected to testify about:

- his role in connection with *Moana*;
- sources of inspiration for certain elements of the storyline for *Moana*;
- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- scrapped story elements;
- his relationship with Ms. Marchick;

- his relationship with Maggie Malone;
- his relationship with Mr. Musker and Mr. Clements;
- his relationship with Doc Kane;
- his relationship with Osnat Shurer.

As to exhibits to be used during Mr. Hall's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 69-74, 76, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250, 296

**17. Jessica Julius**

As an adverse witness, Jessica Julius is expected to testify about:

- her involvement in the *Moana* project;
- document retention practices at WDAS;
- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- scrapped story elements;
- her relationship with Maggie Malone.

As to exhibits to be used during Ms. Julius' testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 69-74, 184, 245, 76, 77, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 245, 250, 289, 296

**18. Osnat Shurer**

As an adverse witness, Osnat Shurer is expected to testify about:

- her involvement in the *Moana* project;

16

- her travels to Hawaii as an executive producer of three shorts relating to *The Incredibles*: *Mr. Incredible and Pals* (2005); *The Making of the Incredibles* (2005); and *More Making of 'The Incredibles'* (2005);
- her presence at the Kauai sound studio in connection with *The Incredibles* projects;
- her communications with Sony Pictures Animation representatives about *Moana*;
- her involvement in books involving *Moana* surfing and Moana speaking with a turtle while on a surfboard;
- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- scrapped story elements;
- her relationship with Doc Kane;
- her relationship with John Lasseter;
- her relationship with Maggie Malone.

As to exhibits to be used during Ms. Shurer's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19, 21-24, 62, 64, 65, 67, 69-74, 76, 77, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 159, 180, 224, 228, 229, 235, 238, 246, 247, 160-162, 164, 166, 169-179, 180, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 225, 226, 227, 228, 229, 232-236, 238, 239, 242, 246, 247, 250, 262, 265, 266, 268, 269, 272, 273, 275, 276, 290, 291, 297

**19. Sarah Eggebrecht**

As an adverse witness, Sarah Eggbrecht is expected to testify about:

- the location, handling, and storage of pitch materials;
- document retention practices;
- Disney+ streaming services;

- expenses in connection with Disney+, including as it relates to *Moana* as Disney+ content;
- revenues in connection with *Moana*.

As to exhibits to be used during Ms. Eggbrecht's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 69-74, 76, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250, 296

### 20. Pearl Young

Pearl Young is expected to testify about:

- a confidentiality agreement Defendants believe she signed in connection with *Bucky*.

### 21. Jeff Ranjo

As an adverse witness, Jeff Ranjo is expected to testify about:

- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- scrapped story elements.

As to exhibits to be used during Mr. Ranjo's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 69-74, 76, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 198, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250

### 22. Defendants' Custodians of Records of Entities include:

- ○ The Walt Disney Company

As an adverse witness, the custodian of records of The Walt Disney

---

18

*Plaintiff's Summary of Witness Testimony*

Company is expected to testify about:

- wholly-owned subsidiaries of The Walt Disney Company;
- operations and control of subsidiaries of The Walt Disney Company;
- control over the day-to-day operations of its subsidiaries;
- board members and executives;
- interactions between The Walt Disney Company and subsidiaries regarding strategy, budget, and operations;
- recording of profits and losses;
- consolidations into financial statements of The Walt Disney Company;
- transfers funds between subsidiaries and purpose of same;
- allocation of corporate overhead costs across the various Disney entities;
- sharing of revenue streams, such as merchandising, licensing, or digital content;
- capitalization of subsidiaries;
- coordination of tax strategies;
- shared resources and operations;
- services across Disney subsidiaries;
- control of intellectual property associated with Disney-owned brands
- marketing and advertising budgets;
- autonomy in hiring, procurement, vendor selection;
- brand and identity;
- cross-promotional efforts;
- infrastructure and maintenance of centralized data center;
- conflicts of interest among Disney entities/subsidiaries;
- legal and compliance policies;
- legal departments;
- intercompany agreements and shared services agreements;
- internal audits;

Plaintiff's Summary of Witness Testimony

- the location, retention, and storage of documents in connection with *Moana*, including all pitch materials;
- the location, retention, and storage of pitch materials in general;
- the ownership and operation of Disney+;
- the ownership and operation of Disney Channel;
- the ownership and operation of Disney DTC LLC;
- revenues incurred in connection with *Moana* after April 24, 2017;
- revenues and expenses incurred via Disney+;
- revenues and expenses incurred in connection with *Moana* via Disney+;
- the receipt and retention of Buck Woodall's materials;
- The Walt Disney Company's public filings with the Securities and Exchange Commission.

As to exhibits to be used during the WDC's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19, 29, 40, 41, 42, 45, 51, 62, 63, 64, 65, 67, 69-74, 75, 76, 79, 83, 84, 85, 86-88, 90-99, 103-105, 108-158, 160-162, 163, 164, 166, 167, 168, 169-179, 180, 181-187, 189, 190, 191, 192-197, 198, 199-200, 201, 202, 203, 208, 216-218, 19, 221, 222-224, 226, 228, 229, 232-236, 237, 238, 239, 242, 250, 259, 262, 265, 266, 268, 267, 269, 272, 273, 275, 276, 279-281, 282, 283-288, 292, 293, 295, 296, 296

  o  Walt Disney Pictures

As an adverse witness, the custodian of records of Walt Disney Pictures is expected to testify about:

- history of Walt Disney Pictures;
- parent company and subsidiaries;
- operations and control of Walt Disney Pictures and subsidiaries;
- operations and control over the day-to-day operations;
- board members and executives;

- interactions with parent and subsidiaries regarding strategy, budget, and operations;
- recording of profits and losses;
- consolidations into financial statements;
- transfers funds between parent and subsidiaries and purpose of same;
- allocation of corporate overhead costs across Disney entities;
- sharing of revenue streams, such as merchandising, licensing, or digital content;
- capitalization of subsidiaries;
- coordination of tax strategies;
- shared resources and operations;
- services across Disney subsidiaries;
- control of intellectual property associated with Disney-owned brands
- marketing and advertising budgets;
- autonomy in hiring, procurement, vendor selection;
- brand and identity;
- cross-promotional efforts;
- infrastructure and maintenance of centralized data center;
- conflicts of interest among Disney entities/subsidiaries;
- legal and compliance policies;
- legal departments;
- intercompany agreements and shared services agreements;
- internal audits;
- involvement in the making and/or distribution of *Moana*;
- the location, retention, and storage of documents in connection with *Moana*, including all pitch materials;
- the location, retention, and storage of pitch materials in general;
- the ownership and operation of Disney+;

Plaintiff's Summary of Witness Testimony

- revenues incurred in connection with *Moana* after April 24, 2017;
- revenues and expenses incurred via Disney+;
- revenues and expenses incurred in connection with *Moana* via Disney+;
- the receipt and retention of Buck Woodall's materials;
- The Walt Disney Company's public filings with the Securities and Exchange Commission.

As to exhibits to be used during WDP's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19, 29, 40, 41, 42, 45, 51, 62, 63, 64, 65, 67, 69-74, 75, 76, 79, 83, 84, 85, 86-88, 90-99, 103-105, 108-158, 160-162, 163, 164, 166, 167, 168, 169-179, 180, 181-187, 189, 190, 191, 192-197, 198, 199-200, 201, 202, 203, 208, 216-218, 219-221, 222-224, 226, 228, 229, 232-236, 237, 238, 239, 242, 250, 259, 262, 265, 266, 268, 276, 269, 272, 273, 275, 276, 279-281, 283-288, 292, 293, 295, 296
  - o Walt Disney Animation Studios

As an adverse witness, the custodian of records of WDAS is expected to testify about:

- history of WDAS;
- parent company and subsidiaries;
- operations and control of WDAS and subsidiaries;
- operations and control over the day-to-day operations;
- board members and executives;
- interactions with parent and subsidiaries regarding strategy, budget, and operations;
- recording of profits and losses;
- consolidations into financial statements;
- transfers funds between parent and subsidiaries and purpose of same;

22

Plaintiff's Summary of Witness Testimony

- allocation of corporate overhead costs across Disney entities;
- sharing of revenue streams, such as merchandising, licensing, or digital content;
- capitalization of subsidiaries;
- coordination of tax strategies;
- shared resources and operations;
- services across Disney subsidiaries;
- control of intellectual property associated with Disney-owned brands
- marketing and advertising budgets;
- autonomy in hiring, procurement, vendor selection;
- brand and identity;
- cross-promotional efforts;
- infrastructure and maintenance of centralized data center;
- conflicts of interest among Disney entities/subsidiaries;
- legal and compliance policies;
- legal departments;
- intercompany agreements and shared services agreements;
- internal audits;
- involvement in the making and/or distribution of *Moana*;
- the location, retention, and storage of documents in connection with *Moana*, including all pitch materials;
- the location, retention, and storage of pitch materials in general;
- the ownership and operation of Disney+;
- revenues incurred in connection with *Moana* after April 24, 2017;
- revenues and expenses incurred via Disney+;
- revenues and expenses incurred in connection with *Moana* via Disney+;
- the receipt and retention of Buck Woodall's materials;

- The Walt Disney Company's public filings with the Securities and Exchange Commission.

As to exhibits to be used during the WDAS's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19, 40, 41, 51, 62, 64, 65, 67, 69-74, 76, 79, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 167, 169-179, 180, 181-187, 189, 190, 191, 192-197, 199-200, 201, 202, 203, 208, 216-218, 219-221, 222-224, 226, 228, 229, 232-236, 237, 238, 239, 242, 250, 259, 262, 265, 266, 268, 267, 269, 272, 273, 275, 276, 279-281, 283-288, 292, 293, 295, 296

   o   Disney Television Animation

As an adverse witness, the custodian of records of Disney Television Animation is expected to testify about:

- wholly-owned subsidiaries of The Walt Disney Company;
- operations and control of subsidiaries of The Walt Disney Company;
- control over the day-to-day operations of its subsidiaries;
- board members and executives;
- interactions between The Walt Disney Company and subsidiaries regarding strategy, budget, and operations;
- recording of profits and losses;
- consolidations into financial statements of The Walt Disney Company;
- transfers funds between subsidiaries and purpose of same;
- allocation of corporate overhead costs across the various Disney entities;
- sharing of revenue streams, such as merchandising, licensing, or digital content;
- capitalization of subsidiaries;
- coordination of tax strategies;
- shared resources and operations;

- services across Disney subsidiaries;
- control of intellectual property associated with Disney-owned brands
- marketing and advertising budgets;
- autonomy in hiring, procurement, vendor selection;
- brand and identity;
- cross-promotional efforts;
- infrastructure and maintenance of centralized data center;
- conflicts of interest among Disney entities/subsidiaries;
- legal and compliance policies;
- legal departments;
- intercompany agreements and shared services agreements;
- internal audits;
- the location, retention, and storage of documents in connection with *Moana*, including all pitch materials;
- the location, retention, and storage of pitch materials in general;
- the ownership and operation of Disney+;
- the ownership and operation of Disney Channel;
- revenues incurred in connection with *Moana* after April 24, 2017;
- revenues and expenses incurred via Disney+;
- revenues and expenses incurred in connection with *Moana* via Disney+;
- the receipt and retention of Buck Woodall's materials;
- The Walt Disney Company's public filings with the Securities and Exchange Commission.

As to exhibits to be used during the WDC's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19, 29, 40, 41, 42, 45, 51, 62, 63, 64, 65, 67, 69-74, 75, 76, 79, 83, 84, 85, 86-88, 90-99, 103-105, 108-158, 160-162, 163, 164, 166, 167, 168, 169-179, 180, 181-187, 189, 190, 191, 192-197, 198, 199-200,

Plaintiff's Summary of Witness Testimony

201, 202, 203, 208, 216-218, 19, 221, 222-224, 226, 228, 229, 232-236, 237, 238, 239, 242, 250, 259, 262, 265, 266, 268, 267, 269, 272, 273, 275, 276, 279-281, 282, 283-288, 292, 293, 295, 296, 296

o   Disney Enterprises, Inc.

As an adverse witness, the custodian of records of Disney Enterprises is expected to testify about:

- history of Disney Enterprises;
- parent company and subsidiaries;
- operations and control of Disney Enterprises and subsidiaries;
- operations and control over the day-to-day operations.
- board members and executives;
- interactions with parent and subsidiaries regarding strategy, budget, and operations;
- recording of profits and losses;
- consolidations into financial statements;
- transfers funds between parent and subsidiaries and purpose of same;
- allocation of corporate overhead costs across Disney entities;
- sharing of revenue streams, such as merchandising, licensing, or digital content;
- capitalization of subsidiaries;
- coordination of tax strategies;
- shared resources and operations;
- services across Disney subsidiaries;
- control of intellectual property associated with Disney-owned brands
- marketing and advertising budgets;
- autonomy in hiring, procurement, vendor selection;
- brand and identity;

Plaintiff's Summary of Witness Testimony

- cross-promotional efforts;
- infrastructure and maintenance of centralized data center;
- conflicts of interest among Disney entities/subsidiaries;
- legal and compliance policies;
- legal departments;
- intercompany agreements and shared services agreements;
- internal audits;
- involvement in the making and/or distribution of *Moana*;
- the location, retention, and storage of documents in connection with *Moana*, including all pitch materials;
- the location, retention, and storage of pitch materials in general;
- the ownership and operation of Disney+;
- revenues incurred in connection with *Moana* after April 24, 2017;
- revenues and expenses incurred via Disney+;
- revenues and expenses incurred in connection with *Moana* via Disney+;
- the receipt and retention of Buck Woodall's materials;
- The Walt Disney Company's public filings with the Securities and Exchange Commission.

As to exhibits to be used during Disney Enterprises' testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19, 40, 41, 51, 62, 64, 65, 67, 69-74, 76, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250, 259, 269, 272, 273, 275, 276, 279-281, 283-288, 292, 293, 295, 296

  o Disney Consumer Products, Inc.

As an adverse witness, the custodian of records of Disney Consumer

Products is expected to testify about:

- history of Disney Consumer Products;
- parent company and subsidiaries;
- operations and control of Disney Consumer Products and subsidiaries;
- operations and control over the day-to-day operations;
- board members and executives;
- interactions with parent and subsidiaries regarding strategy, budget, and operations;
- recording of profits and losses;
- consolidations into financial statements;
- transfers funds between parent and subsidiaries and purpose of same;
- allocation of corporate overhead costs across Disney entities;
- sharing of revenue streams, such as merchandising, licensing, or digital content;
- capitalization of subsidiaries;
- coordination of tax strategies;
- shared resources and operations;
- services across Disney subsidiaries;
- control of intellectual property associated with Disney-owned brands
- marketing and advertising budgets;
- autonomy in hiring, procurement, vendor selection;
- brand and identity;
- cross-promotional efforts;
- infrastructure and maintenance of centralized data center;
- conflicts of interest among Disney entities/subsidiaries;
- legal and compliance policies;
- legal departments;
- intercompany agreements and shared services agreements;

- internal audits;
- involvement in the making and/or distribution of *Moana*;
- the location, retention, and storage of documents in connection with *Moana*, including all pitch materials;
- the location, retention, and storage of pitch materials in general;
- the ownership and operation of Disney+;
- revenues incurred in connection with *Moana* after April 24, 2017;
- revenues and expenses incurred via Disney+;
- revenues and expenses incurred in connection with *Moana* via Disney+;
- the receipt and retention of Buck Woodall's materials;
- The Walt Disney Company's public filings with the Securities and Exchange Commission.

As to exhibits to be used during Disney Consumer Product's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19, 40, 41, 51, 62, 64, 65, 67, 69-74, 76, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 248, 249, 250, 259, 267, 269, 272, 273, 275, 276, 279-281, 283-288, 292, 293, 295, 296

     o  Disney Consumer Products & Interactive Media, Inc.

As an adverse witness, the custodian of records of Disney Consumer Products & Interactive Media is expected to testify about:

- history of Disney Consumer Products & Interactive Media;
- parent company and subsidiaries;
- operations and control of Disney Consumer Products & Interactive Media and subsidiaries;
- operations and control over the day-to-day operations;

- board members and executives;
- interactions with parent and subsidiaries regarding strategy, budget, and operations;
- recording of profits and losses;
- consolidations into financial statements;
- transfers funds between parent and subsidiaries and purpose of same;
- allocation of corporate overhead costs across Disney entities;
- sharing of revenue streams, such as merchandising, licensing, or digital content;
- capitalization of subsidiaries;
- coordination of tax strategies;
- shared resources and operations;
- services across Disney subsidiaries;
- control of intellectual property associated with Disney-owned brands
- marketing and advertising budgets;
- autonomy in hiring, procurement, vendor selection;
- brand and identity;
- cross-promotional efforts;
- infrastructure and maintenance of centralized data center;
- conflicts of interest among Disney entities/subsidiaries;
- legal and compliance policies;
- legal departments;
- intercompany agreements and shared services agreements;
- internal audits;
- involvement in the making and/or distribution of *Moana*;
- the location, retention, and storage of documents in connection with *Moana*, including all pitch materials;
- the location, retention, and storage of pitch materials in general;

Plaintiff's Summary of Witness Testimony

- the ownership and operation of Disney+;
- revenues incurred in connection with *Moana* after April 24, 2017;
- revenues and expenses incurred via Disney+;
- revenues and expenses incurred in connection with *Moana* via Disney+;
- the receipt and retention of Buck Woodall's materials;
- The Walt Disney Company's public filings with the Securities and Exchange Commission.

As to exhibits to be used during Disney Consumer Products & Interactive Media's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19, 40, 41, 51, 62, 64, 65, 67, 69-74, 76, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250, 259, 267, 260, 279-281, 283-288, 292, 293, 295, 296

  o Walt Disney Direct-to-Consumer & International

As an adverse witness, the custodian of records of Walt Disney Direct-to-Consumer & International is expected to testify about:

- history of Walt Disney Direct-to-Consumer & International
- parent company and subsidiaries;
- operations and control of Walt Disney Direct-to-Consumer & International and subsidiaries;
- operations and control over the day-to-day operations;
- board members and executives;
- interactions with parent and subsidiaries regarding strategy, budget, and operations;
- recording of profits and losses;
- consolidations into financial statements;
- transfers funds between parent and subsidiaries and purpose of same;

31

- allocation of corporate overhead costs across Disney entities;
- sharing of revenue streams, such as merchandising, licensing, or digital content;
- capitalization of subsidiaries;
- coordination of tax strategies;
- shared resources and operations;
- services across Disney subsidiaries;
- control of intellectual property associated with Disney-owned brands
- marketing and advertising budgets;
- autonomy in hiring, procurement, vendor selection;
- brand and identity;
- cross-promotional efforts;
- infrastructure and maintenance of centralized data center;
- conflicts of interest among Disney entities/subsidiaries;
- legal and compliance policies;
- legal departments;
- intercompany agreements and shared services agreements;
- internal audits;
- involvement in the making and/or distribution of *Moana*;
- the location, retention, and storage of documents in connection with *Moana*, including all pitch materials;
- the location, retention, and storage of pitch materials in general;
- the ownership and operation of Disney+;
- revenues incurred in connection with *Moana* after April 24, 2017;
- revenues and expenses incurred via Disney+;
- revenues and expenses incurred in connection with *Moana* via Disney+;
- the receipt and retention of Buck Woodall's materials;

Plaintiff's Summary of Witness Testimony

- The Walt Disney Company's public filings with the Securities and Exchange Commission.

As to exhibits to be used during Walt Disney Direct-to-Consumer & International's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 19, 40, 41, 51, 62, 64, 65, 67, 69-74, 76, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250, 259, 267, 269, 272, 273, 275, 276, 279-281, 283-288, 292, 293, 295, 296

### 23. Custodian of Records, Sony Pictures Animation

As an adverse witness, the custodian of records of Sony Pictures Animation is expected to testify about:

- the receipt and retention of *Bucky* materials;
- Sony Pictures Animation release in connection with *Bucky* materials;
- communications regarding *Bucky* materials and *Bucky* project, including but not limited to communications with Ms. Marchick;
- communications with Disney representatives about *Moana*;
- communications with Maggie Malone;
- communications with Osnat Shurer;
- communications with Buck Woodall;
- internal communications and memos in connection with *Bucky*;
- communications to and from Ronni Coulter;
- projects handled by Ms. Marchick.

As to exhibits to be used during Sony Pictures Animation's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 65, 76, 83, 84, 106, 219-221, 241

### 23. Jared Bush

As an adverse witness, Jared Bush is expected to testify about:

- his involvement in *Moana*;
- what he was told to focus on and/or avoid in writing/re-writing the *Moana* script;
- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- sources of inspiration for certain elements of the storyline for *Moana*;
- scrapped story elements;
- his relationship with Ms. Marchick.

As to exhibits to be used during Mr. Bush's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 69-74, 76, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250

- **24. Aaron Kandell**

As an adverse witness, Aaron Kandell is expected to testify about:

- his involvement in *Moana*;
- what he was told to focus on and/or avoid in writing/re-writing the *Moana* script;
- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- sources of inspiration for certain elements of the storyline for *Moana*;
- scrapped story elements;
- his relationship with Ms. Marchick;
- his departure from the Moana project.

As to exhibits to be used during Aaron Kandell's testimony, Plaintiff

Plaintiff's Summary of Witness Testimony

identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 69-74, 76, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179,  181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250

### 25. Jordan Kandell

As an adverse witness, Jordan Kandell is expected to testify about:

- his involvement in *Moana*;
- what he was told to focus on and/or avoid in writing/re-writing the *Moana* script;
- pitch and brainstorm sessions, meetings, screenings, notes, memos and emails in connection with *Moana*;
- sources of inspiration for certain elements of the storyline for *Moana*;
- scrapped story elements;
- his relationship with Ms. Marchick;
- his departure from the Moana project.

As to exhibits to be used during Jordan Kandell's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 69-74, 76, 78, 79, 80, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250

### 26. Stan V. Smith, Ph.D.

As an expert witness on damages, Stan V. Smith is expected to testify about:

- the expert reports of Stan Smith in this matter.

As to exhibits to be used during Stan Smith's testimony, Plaintiff identifies the

following:

- Exhibit 254

### 27. Cedar A. Boschan

As an expert witness on damages, Cedar A. Boschan is expected to testify about:

- the expert reports of Cedar Boschan in this matter.

As to exhibits to be used during Ms. Boschan's testimony, Plaintiff identifies the following:

- Exhibit 251

### 28. Terry Hunt, Ph.D.

As an expert witness on liability, Terry Hunt is expected to testify about:

- the expert report of Terry Hunt in this matter.

As to exhibits to be used during Dr. Hunt's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 69-74, 76, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250, 253, 289-291

### 29. Sarah Nilsen, Ph.D.

As an expert witness, Sarah Nilsen expected to testify about:

- the expert report of Sarah Nilsen in this matter.

As to exhibits to be used during Dr. Nilsen's testimony, Plaintiff identifies the following:

- Exhibit 255

### 30. David Roman, Ph.D.

As an expert witness on liability, David Roman is expected to testify about:

- the expert reports of David Román, including but not limited to questions of substantial similarity and access.

As to exhibits to be used during Dr. Roman's testimony, Plaintiff identifies the following:

- Exhibits 1-17, 62, 64, 65, 67, 69-74, 76, 83, 84, 86-88, 90-99, 103-105, 108-158, 160-162, 164, 166, 169-179, 181-187, 192-197, 199-200, 201, 202, 203, 208, 216-218, 222-224, 226, 228, 229, 232-236, 238, 239, 242, 250, 252, 289-291

PLAINTIFF RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THIS WITNESS LIST AS WELL AS TO CALL ANY NECESSARY WITNESS FOR IMPEACHMENT OR REBUTTAL.

Dated: February 12, 2025                Respectfully Submitted,

                                        SANCHEZ-MEDINA, GONZALEZ, QUESADA, LAGE, GOMEZ & MACHADO, LLP

                                        By: *s/Gustavo D. Lage*
                                        Gustavo D. Lage, Esq.
                                        *Attorneys for Plaintiff*

Plaintiff's Summary of Witness Testimony

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 12th date of February 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated: February 12, 2025          Respectfully Submitted,

By: *s/Gustavo D. Lage*
Gustavo D. Lage, Esq.