GERARD P. FOX (SBN 151649)
ASHLEY R. MORRIS (SBN 225455)
GERARD FOX LAW, P.C.
1880 Century Park E, Suite 1410
GERARD FOX LAW P.C.
Los Angeles, CA 90067
Tel: (310) 441-0500
Fax:(310) 441-4447
gfox@gerardfoxlaw.com
amorris@gerardfoxlaw.com

GUSTAVO D. LAGE
EL'AD D. BOTWIN
(Admitted *Pro Hac Vice*)
SANCHEZ-MEDINA, GONZALEZ,
QUESADA, LAGE, GOMEZ &
MACHADO, LLP
1200 Brickell Avenue, Ste 950
Miami, Florida 33131
Tel.: (305) 377-1000
Fax: (786) 304-2214
glage@smgqlaw.com
ebotwin@smgqlaw.com

JAMES WES CHRISTIAN
(Admitted *Pro Hac Vice*)
CHRISTIAN ATTAR, LLC
2302 Fannin, Suite 500
Houston, Texas 77002
Tel.: (877) 710-5170
Fax: (713) 659-7641
jchristian@christianlevinelaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCK G. WOODALL, A.K.A. BUCK WOODALL, AN INDIVIDUAL,<br><br>    Plaintiff,<br><br>vs.<br><br>THE WALT DISNEY COMPANY, a Delaware corporation, et al.,<br><br>    Defendants. | Case No.: **2:20-cv-03772-CBM-E**<br><br>**FINAL PRETRIAL CONFERENCE ORDER**<br><br><br>Pre-Trial Conference Date: January 14, 2025<br>Time: 2:30 p.m.<br><br>Trial Date: February 25, 2025<br>Time: 10:00 a.m.<br><br><br>Assigned to Hon. Consuelo B. Marshall<br>Magistrate: Judge Charles F. Eick |

Following pretrial proceedings, pursuant to F. R. Civ. P. 16 and L.R. 16, IT IS ORDERED:

1.    The parties are (a) Plaintiff Buck G. Woodall ("Plaintiff"); and (b) Defendant Buena Vista Home Entertainment, Inc. ("Defendant").  Each of these parties has been served and has appeared.

Plaintiff's Version:

Plaintiff claims that all parties have been served and have appeared. Plaintiff claims that its Second Amended Complaint include trial claims not yet ruled on involving each of the Defendants and that trial must proceed according to the Second Amended Complaint.

Defendant's Version:

Plaintiff's claims against all other defendants named in the pleadings and not identified in the preceding paragraph have been disposed of by the Court's Order Re: Cross-Summary Judgment Motions [Dkt. No. 558].

The pleadings which raise the issues remaining to be tried are (a) Plaintiff's Second Amended Complaint [Dkt. No. 94] (the "Complaint"); and (b) Disney Defendants' Answer to Plaintiff's Second Amended Complaint [Dkt. No. 102].

2.    Federal jurisdiction and venue are invoked upon the grounds: This Action states a claim under the Copyright Act, 17 U.S.C. §§ 501, *et seq.*, and this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1338. Neither personal nor subject matter jurisdiction is contested.

3.      The trial is estimated to take 10 trial days. As stated in Section 13, Plaintiff is contemplating filing of motions for bifurcation on certain issues that could reduce Plaintiff's trial estimate to 4-5 trial days. Defendants intend to oppose any motions for bifurcation, including on the grounds that they would be untimely.

4.      The trial is to be a jury trial. At least seven (7) days prior to the trial date the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1; and (b) any special questions requested to be asked on voir dire.

5.      The following facts are admitted and require no proof:

     a.      Plaintiff Buck G. Woodall, also known as Buck Woodall, is a resident of Baja, Mexico, and Taos, New Mexico.

     b.      Defendant Buena Vista Home Entertainment, Inc. is a corporation duly organized and existing under the laws of the State of California, its principal place of business is in Burbank, California, and it is a direct or indirect subsidiary of The Walt Disney Company.

     c.      Plaintiff owns valid copyrights in the following works that have been deposited in the U.S. Copyright Office: (1) Registration Number VAu 000624809, entitled BUCKY; and (2) Registration Number PAu 003749546, entitled BUCKY THE SURFER BOY.

6.      The following facts, though stipulated, shall be without prejudice to any evidentiary objection: None.

7.     Claims and Defenses to be Presented at Trial:

**Plaintiff:**

(a)     Plaintiff plans to pursue the following claims against the following defendants:

Claim 1: Copyright Infringement, 17 U.S.C. § 501, *et seq.* - Against Defendant Buena Vista Home Entertainment, Inc.

(b)     The elements required to establish Plaintiff's claims are:

Claim 1: Copyright Infringement, 17 U.S.C. § 501, *et seq.*:

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On the plaintiff's copyright infringement claim, the plaintiff has the burden of proving by a preponderance of the evidence that:

(1)     the plaintiff is the owner of a valid copyright; and

(2)     the defendant copied original expression from the copyrighted work.

(c)     In brief, the key evidence Plaintiff relies on for each of the claims is:

Claim 1: Copyright Infringement, 17 U.S.C. § 501, *et seq.*:[1]

It has been established that Plaintiff duly complied with all statutory formalities of the Copyright Act of 1976 with respect to the registration of protectible elements of *Bucky,* of the Presentation Package and of the underlying

---

[1] **This section contains Plaintiff's contentions, which Defendant dispute, and is not intended to reflect findings of the Court.**

work, all of which are the subject of U.S. Registration No. VAu 000624809 and PAu 003749546.

At all times material hereto, Defendant, along with each Defendant named in the Complaint, was acting as the agent, employee, independent contractor, representing partner, or joint-venturer of the remaining Defendants with respect to the conspiratorial scheme set forth herein. In doing the things set forth in the Complaint, each of the Defendants was further acting within the course and scope of that relationship. Each of the Defendants in this action willfully gave consent to, ratified, aided-and-abetted and authorized the unlawful acts of the remaining Defendants alleged in the Complaint.

The Defendants, and each of them, were individually sued as participants and aiders and abettors in the wrongful conduct complained of in the Complaint, and the liability of each Defendant arises from the fact that each has engaged in all or part of the improper acts, plans, schemes, conspiracies, or transactions complained of herein with a purpose of furthering the Defendants' overall wrongful objectives.

During their engagement in the wrongful conduct alleged in the Complaint, each of the Defendants acted in concert with one another to intentionally and willfully injure Plaintiff as alleged herein, conducting themselves as co-conspirators and joint venturers with respect to the fraudulent theft and extensive exploitation of Plaintiff's intellectual property and trade secrets as alleged in the Complaint, as well as with respect to the additional misappropriations, misrepresentations, concealments and other misconduct alleged herein. This concerted action among the Defendants, and each of them, constituted a civil conspiracy to deliberately inflict the harm identified in the eight causes of action set forth in the Complaint.

Pursuant to the conspiracy described in the Complaint, the Defendants pirated, stole and otherwise purloined the registered, copyright and trade secret

protected and previously submitted Presentation Package and other materials, as fully set forth in the Complaint, belonging to Woodall in order for them to be able to produce the animated film, *Moana*. According to the best reports currently publicly available, *Moana* is one of highest grossing animated films in movie history, already earning worldwide theatrical box office receipts for Disney in excess of $690,000,000. Disney has further used the *Moana* feature as the basis for the normal DVD and Blue Ray worldwide release of the title in March 2017, generating an additional amount of receipts in excess of $103,000,000. As Woodall was not resident in the United States at the time of its theatrical release, he could not and did not see the *Moana* film until its release on DVD at the place of his then current foreign residence in or about late June of 2017. He thereafter undertook comparisons not only of the two projects but also of other materials subsequently released to the public by the Defendants regarding how *Moana* was made. Only through the late June 2017 viewing of *Moana* on DVD, and examining the subsequent explanation by the Defendants of how they made *Moana* as well as studying public record information disseminated by persons associated with *Moana's* production and release, was Woodall able to discover the actual violations of law complained of herein through comparing these materials of the Defendants, on the one hand, with the Presentation Package and other materials he had provided to the Defendants since 2003, on the other hand.

Disney is well known for its exploitation of all markets relating to its theatrical products, turning each theatrical title into a "franchise" of its own. A prime example is with respect to the immensely popular and profitable Disney stores worldwide, as well as online stores and marketing activities through licensing third party retailers of countless types and categories of products. *Moana* is no exception. As a further example of Disney's exploitation of the *Moana* franchise, in late 2019, Disney introduced its subscription based online streaming portal called Disney+, at which *Moana* is prominently displayed as being available to online subscribers.

1            Beginning in at least 2011 and continuing to the date of the Complaint,

2 Defendants knowingly conspired with each other to develop, produce, distribute, sell

3 and license products associated with both Disney and *Moana* that both infringe upon

4 the copyrights of Plaintiff and otherwise violate Plaintiff's rights as alleged herein.

5 These violations took numerous forms, including, but not limited to:

6            a.        Defendant Mandeville and its officers and directors were able

7 to bind Disney and induce action and inaction by Disney to further the conspiracy,

8 both through their relationships with officials at Disney and their co-venturing

9 creative relationships in other ventures with Disney. They used this ability to assure

10 that Disney affected their and Marchick's plan to steal *Bucky* for the sole objectives

11 of profit and self-aggrandizement;

12            b.        Ribon, who received a *Moana* screen credit "Story By,"

13 assisted the Defendants in morphing the *Bucky* screenplay into the *Moana*

14 screenplay knowing that by doing so she was assisting in the ultimate theft in

15 protection and furtherance of Marchick's fraud and in pursuing her own business

16 interests;

17            c.        In order to assure that Woodall continued to deliver all of his

18 *Bucky*-related ideas to and into the Defendant's fraudulent scheme, Marchick

19 repeatedly and systematically concealed the scheme and lied to Woodall in order to

20 both induce him to transfer his intellectual property and trade secrets to her as well

21 as to assure that Woodall wouldn't find out the truth until after *Moana* was released

22 and the fraudulent object of the conspiracy, i.e., the development and realization of

23 more than a billion dollars in profit, was realized;

24            d.        The Disney defendants operated as motion picture

25 conglomerates usually do in cases of intellectual property theft, with (i) the film

26 related entities of the conglomerate (in this case The Walt Disney Company, Walt

27 Disney Pictures and Walt Disney Animation Studios) assuring the exploitation,

28 development  and release of the movie into theatrical and secondary markets, and

(ii) then the commercialization entities (in this case Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-To-Consumer & International, Disney Book Group, LLC, Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc. and Buena Vista Books, Inc.) assuring and implementing the production and distribution of products derived from the motion picture on a national and worldwide basis. All of the foregoing Disney defendants intentionally affected these specific activities with classic wrongful intentions of making off with and profiting from the stolen assets, which they have done as of the date of filing the Complaint in the sum of nearly $1 billion.

Plaintiff will establish that Defendant's actions, as detailed above and in the Complaint, constitute unauthorized copying, reproduction, distribution, display, licensing, sale and commercial exploitation of Plaintiff's copyrighted work, as reflected in U.S. registration no. VAu 000624809 and PAu 003749546, which infringe Plaintiff's exclusive rights in violation of the Copyright Act of 1976, 17 U.S.C. § I01 et seq. Specifically, Defendant's infringing works copy quantitatively and qualitatively distinct, important, and recognizable portions of Plaintiff's copyrighted work. Such infringement of Plaintiff's copyrighted work includes Defendants' copying of the literal elements of Plaintiff's copyrighted work including the major themes and ideas, script outline, character development, illustrations and budgets.

Plaintiff will further establish that the Defendant did not seek or receive permission or consent from Plaintiff to copy any portion of Plaintiff's copyrighted work, and did so willfully, maliciously and intentionally. In fact, Defendant's conduct has at all times been knowing, willful, and with complete disregard for Plaintiff's rights. The inclusion of signature elements of Plaintiff's copyrighted work greatly enhances the financial value of Defendant's infringing products.

As a proximate and foreseeable result of Defendant's wrongful conduct, Plaintiff has been irreparably harmed and will continue to sustain injury and damage unless Defendant is enjoined.

As a result of the aforesaid infringement, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to its ownership rights in Plaintiff's copyrighted work. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching itself to the detriment of Plaintiff. Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, in an exact amount to be proven at trial.

**Defendant:**

The single claim to be tried is Plaintiff's copyright infringement claim based on distribution of *Moana* by Defendant Buena Vista Home Entertainment after April 24, 2017. [Dkt. No. 558 at 35.] The Court granted the other named defendants' motions for summary judgment on all claims for relief. [*Id.* at 33-34.] Plaintiff did not plead claims against those other defendants for conspiracy to commit copyright infringement or aiding and abetting copyright infringement, and any such claims would be preempted by the Copyright Act, as well as time-barred, in any event. *See Benke v. Departure Agency, Inc.*, 2011 WL 13129964, at *2 (C.D. Cal. Aug. 11, 2011) (citing cases); *Goldberg v. Cameron*, 2009 WL 2051370, at *6-7 (N.D. Cal. July 10, 2009) (claims for contributory or vicarious copyright infringement accrue, and the statute of limitations runs, from first act of direct infringement).

(a)    Defendant plans to pursue the affirmative defense of independent creation and, to the extent it is considered an affirmative defense, the doctrine of scènes-à-faire.

1

2      (b)    The elements required to establish Defendant's affirmative defense of

3   independent creation are that the *Moana* filmmakers created *Moana* independently,

4   without knowledge of or exposure to Plaintiff's copyrighted work(s).  The elements

5   required to establish Defendant's defense under the doctrine of scènes-à-faire, to the

6   extent it is considered an affirmative defense, are that certain elements of Plaintiff's

7   copyrighted work(s) are so common or trite that they are not protectable under

8   copyright law.

9

10     (c)    In brief, the key evidence Defendant relies on for its affirmative

11  defense of independent creation consists of the testimony of John Musker, Ron

12  Clements, and Jessica Julius and the contents of the development files for *Moana*.

13  In brief, the key evidence Defendant relies on for its defense under the doctrine of

14  scènes-à-faire consists of the expert testimony of Jeff Rovin and examples of other

15  films in the same genres containing the same standard or stock elements that Plaintiff

16  alleges are protectable.

17

18     8.     In view of the admitted facts and the elements required to establish the

19  claims and affirmative defenses, the following issues remain to be tried:

20         a.     whether Defendant copied original expression from Plaintiff's

21  copyrighted work(s);

22         b.     whether any expression that Defendant is found to have copied

23  from Plaintiff's copyrighted work(s) is unprotectable under the doctrine of scènes-

24  à-faire;

25         c.     whether the *Moana* filmmakers created *Moana* independently,

26  without knowledge of or exposure to Plaintiff's copyrighted work(s); and

27         d.     the extent of Plaintiff's damages, if any.

28

---

FINAL PRETRIAL CONFERENCE ORDER

9

e.     Plaintiff further claims that the issues of access, theft, conspiracy, substantial similarity, striking similarity and post-2017 distribution revenues remain to be tried.

9.     Plaintiff continues to claim that the party Defendants to this action have knowingly suppressed evidence and that, accordingly, discovery can never be closed. Further, Defendants have a continuing obligation to supplement discovery under the Federal Rules of Civil Procedure.

Defendant contends that the Court has properly rejected Plaintiff's claims of discovery misconduct, including  it the Court's Order Re: Plaintiff's Third Motion for Issuance of an Order to Show Cause Re: Contempt Against All Thirteen Disney Defendants and Against Said Defendants' Counsel of Record [Dkt. No. 393]. Beyond the parties' continuing obligations to supplement, discovery has closed, and the case is ready for trial.

10.     All disclosures under Fed. R. Civ. P. 26(a)(3)(A)(i) and (iii) have been made. Plaintiff has not yet made the disclosures required by Fed. R. Civ. P. 26(a)(3)(A)(ii).

Plaintiff served, but did not file, his exhibit list.  Defendant filed and served its exhibit list in accordance with the Local Rules.  The parties will file a joint exhibit list, which combines Plaintiff's and Defendant's previously exchanged lists, under separate cover.  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

Defendant objects to Exhibit Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 18, 19, 20, 25, 26, 27, 28, 29, 31, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50,

51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 68, 75, 76, 81, 82, 89, 100, 101, 102, 107, 110, 156, 159, 163, 165, 167, 168, 188, 189, 190, 191, 198, 204, 205, 206, 207, 209, 210, 211, 212, 213, 214, 215, 217, 219, 220, 221, 223, 224, 225, 227, 228, 229, 232, 233, 235, 236, 237, 238, 239, 241, 242, 243, 244, 245, 246, 247, 248, 249, and 250.

The objections and grounds therefore are:

Exhibit No. 1:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 2:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 3:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 4:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 5:  Fed.R.Evid. 401, 402, 403, 802; Order Re: Defendants' Motion to Exclude the Opinions and Testimony of Plaintiff's Retained Expert David Roman Under Daubert and FRE 702 [Dkt. No. 559] at 5.

Exhibit No. 6:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 7:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 8:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 9:  Fed.R.Evid. 401, 402, 403, 901.

Exhibit No. 18:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 19:  Fed.R.Evid. 901.

Exhibit No. 20:  Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 25:  Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 26:  Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 27:  Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 28:  Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 29:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 31:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 32:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 33:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 34:  Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 35:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 36:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 37:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 39:  Fed.R.Evid. 802, 901.

Exhibit No. 40:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 41:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 42:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 43:  Fed.R.Evid. 802.

Exhibit No. 44:  Fed.R.Evid. 802.

Exhibit No. 45:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 46:  Fed.R.Evid. 802.

Exhibit No. 47:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 48:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 49:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 50:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 51:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 52:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 53:  Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 54:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 55:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 56:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 57:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 58:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 59:  Fed.R.Evid. 401, 402, 403, 901.

Exhibit No. 60:  Fed.R.Evid. 401, 402, 403, 901.

Exhibit No. 61:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 62:   Fed.R.Evid. 401, 402, 403, 802; Order Re: Defendants' Motion to Exclude the Opinions and Testimony of Plaintiff's Retained Expert David Roman Under Daubert and FRE 702 [Dkt. No. 559] at 5.

Exhibit No. 63: Fed.R.Evid. 401, 402, 403.

Exhibit No. 65: Fed.R.Evid. 401, 402, 403, 901.

Exhibit No. 66: Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 68: Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 75: Fed.R.Evid. 401, 402, 403.

Exhibit No. 76: Fed.R.Evid. 401, 402, 403, 901.

Exhibit No. 81: Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 82: Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 89: Fed.R.Evid. 401, 402, 403.

Exhibit No. 100:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 101:  Fed.R.Evid. 802.

Exhibit No. 102:  Fed.R.Evid. 802.

Exhibit No. 107:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 110:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 156:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 159:  Fed.R.Evid. 401, 402, 403, 901.

Exhibit No. 163:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 165:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 167:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 168:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 188:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 189:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 190:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 191:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 198:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 204:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 205:  Fed.R.Evid. 401, 402, 403, 802.

Exhibit No. 206:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 207:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 209:  Fed.R.Evid. 802.

Exhibit No. 210:  Fed.R.Evid. 802.

Exhibit No. 211:  Fed.R.Evid. 802.

Exhibit No. 212:  Fed.R.Evid. 802.

Exhibit No. 213:  Fed.R.Evid. 802.

Exhibit No. 214:  Fed.R.Evid. 802.

Exhibit No. 215:  Fed.R.Evid. 802.

Exhibit No. 217:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 219:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 220:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 221:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 223:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 224:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 225:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 227:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 228:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 229:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 232:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 233:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 235:  Fed.R.Evid. 401, 402, 403, 901.

Exhibit No. 236:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 237:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 238:  Fed.R.Evid. 401, 402, 403.

Exhibit No. 239:  Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 241: Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 242: Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 243: Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 244: Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 245: Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 246: Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 247: Fed.R.Evid. 401, 402, 403, 802, 901.

Exhibit No. 248: Fed.R.Evid. 401, 402, 403.

Exhibit No. 249: Fed.R.Evid. 401, 402, 403.

Exhibit No. 250: Fed.R.Evid. 401, 402, 403.

11.    The parties have filed their respective witness lists with the Court. Other than as ordered by the Court for good cause, the witness lists constitute the totality of the witnesses that can be called except for purposes of impeachment.

Defendant has marked evidence it intends to present by way of deposition testimony in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1: (a) transcript of deposition of Pearl Young, dated December 7, 2022; (b) transcript of deposition of Katherine Speirs, dated March 29, 2023; and (c) transcript of deposition of Osnat Shurer, dated May 16, 2023.

Plaintiff has not yet marked any evidence it intends to present by way of deposition testimony in accordance with L.R. 16-2.7, and Defendant objects to the presentation of any such evidence on that basis. Plaintiff will file any testimony by deposition via separate cover.

12.    The following law and motion matters and motions in limine, and no others, are pending:

a.      Defendant's Motion *In Limine* No. 1 to Exclude Evidence or Argument Rendered Irrelevant or Inadmissible by Summary Judgment Ruling (Dkt. No. 565);

b.      Defendant's Motion *In Limine* No. 2 to Exclude Evidence or Argument Regarding Alleged Discovery Violations or Failures to Produce (Dkt. No. 566);

c.      Defendant's Motion *In Limine* No. 3 to Exclude Evidence or Argument Regarding Unrelated Infringement Claims and Credit Disputes (Dkt. No. 567);

d.      Defendant's Motion *In Limine* No. 4 to Exclude Evidence or Argument Regarding Moana 2 or Other Derivative Works (Dkt. No. 568);

e.      Defendant's Motion *In Limine* No. 5 to Exclude Evidence or Argument of Plaintiff's Unregistered 2016 Treatment Entitled "*Bucky* The Surfer Boy" (Dkt. No. 570);

f.      Defendant's Motion *In Limine* No. 6 to Preclude Plaintiff from Presenting Cumulative Experts and Offering Undisclosed Opinions on Profits (Dkt. No. 580);

g.      Defendants' Motion to Exclude Opinions and Testimony of Plaintiff's Retained Expert Terry Hunt (A) Regarding Substantial Similarity, and (B) that *Moana* "Copied" *Bucky* (Dkt. No. 564);

h.      Defendant's Motion to Exclude or Limit Opinions and Testimony of Plaintiff's Expert Cedar Boschan (Dkt. No. 569); and

i.      Defendant's Motion to Preclude Plaintiff's Retained Expert Stan Smith from Opining at Trial About Disney+ (Dkt. No. 576).

Defendant contends that, pursuant to LR 7-9, Plaintiff's oppositions to the foregoing motions were due on December 24, 2024.  Because Plaintiff did not file any oppositions by December 24, 2024, or any time since, Defendant contends that Plaintiff should be deemed to have consented to the granting of those motions.

LR 7-12; *see, e.g., Patel v. Cnty. of Riverside*, 2019 WL 8758839, at *1 (C.D. Cal. Dec. 17, 2019) (granting motions *in limine* based on plaintiff's failure to file oppositions); *Ibekwe v. White*, 2016 WL 6963051, at *1 (C.D. Cal. Feb. 23, 2016) (same); *Vago v. Cnty. of Los Angeles*, 2015 WL 13697386, at *3 (C.D. Cal. Aug. 7, 2015) (same); *J.W. v. City of Oxnard*, 2008 WL 4810298, at *7 (C.D. Cal. Oct. 27, 2008) (same); *see also Writers Guild of Am., W, Inc. v. Film Engine Prods., Inc.*, 2009 WL 2381499, at *2 (C.D. Cal. July 31, 2009) (Marshall, J.) ("Pursuant to Local Rule 7-12, Film Engine's failure to file an opposition 'may be deemed consent to the granting' of the Motion. Accordingly, the Court construes Film Engine's failure to file an opposition as consent to the granting of the Motion.")

Plaintiff contemplates filing of the following motions:

a.    Motion for Leave to Amend to Conform to evidence relating to the copyright material;

b.    Motion in Limine to preclude Defendants from representing to Court that Summary Judgement absolved them of liability for copyright infringement;

c.    Motion in Limine for order of production of all documents and accounting records demonstrating credits and/or debits between Defendant, on the one hand, and The Walt Disney Company and its affiliates, on the other hand, from May-2017 through the date of trial;

d.    Motion in Limine for order of production of all accounting records appertaining or relating to revenue, or the transfer of such revenues directly or indirectly to any affiliate of The Walt Disney Company, arising out of home viewing of *Moana*;

e.    Motion in Limine to preclude consideration by the jury of *Moana 2* in connection with the trial over the theft and unlawful distribution and home public performance of *Moana 1*;

f.      Motion in Limine to exclude references to the Summary Judgement ruling in a manner suggesting exoneration of all Disney entities;

g.      Motion in Limine to exclude evidence or testimony suggesting Defendant acts as an isolated entity;

h.      Motion in Limine to require clarification of Defendant's relationship with the Disney Affiliates;

i.      Motion in Limine to exclude evidence regarding Plaintiff's financial condition or motive in filing suit;

j.      Motion in Limine to allow evidence of Disney's corporate structure and interconnected revenue streams;

k.      Motion to Bifurcate Fraud;

l.      Motion to Bifurcate Conspiracy Claims;

m.      Motion to Clarify Statute if Limitations Ambiguity for Dismissed Defendants;

n.      Motion in Limine to Preclude Arguments on Statute of Limitations for post-2017 Damages;

o.      Motion to Compel Production of Post-June-2017 Financial Document;

p.      Motion in Limine to Preclude Evidence or Testimony Suggesting Theatrical Releases Limits Streaming Liability;

q.      Motion to Bifurcate Liability for Post-June-2017 Streaming Revenues from Theatrical Revenues;

r.      Motion in Limine to Permit Introduction of Evidence on Disney's Corporate Interconnectedness;

s.      Motion for Jury Instruction to Address Corporate Revenue Allocation and Timeliness Issues;

t.      Motion in Limine to exclude "industry custom" arguments;

   u.    Motion to Preclude expert opinions of Ronnie Coulter as to what should be paid a screenwriter of a feature film.

   v.    Plaintiff further contemplates filing responses in opposition to Defendant's various motions *in limine*, motions to exclude, and motion to preclude, listed above.

   Defendant contends that *all* of the foregoing motions were required to be filed and noticed for hearing no later than at the final pretrial conference in accordance with LR 6-1 and Section 7(e) of the Court's Standing Order [Dkt. No. 6] and, because none have been filed, any future filing would be untimely and should be denied on that ground alone.

   13.    Bifurcation of the following issues for trial is ordered:  None, however, Plaintiff is contemplating filing of motions for bifurcation on certain issues as detailed above, which motions Defendant would oppose, including as untimely.

   14.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated this 24th day of February, 2025.


CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

Approved as to form and content (except as to Plaintiff's contentions set forth on pages 3 through 8, which are expressly disputed by Defendant).

GERARD FOX LAW PC

SANCHEZ-MEDINA, GONZALEZ, QUESADA, LAGE, GOMEZ & MACHADO, LLP

By:    *s/Gustavo D. Lage*
       Gustavo D. Lage, Esq.
       Attorneys for *Plaintiff*

HUESTON HENNIGAN LLP
KING & SPALDING LLP
WILLENKEN LLP

By:    */s/ Robert N. Klieger*
       Robert N. Klieger
       Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 3rd day of January, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.


Respectfully Submitted,


By:   _s/Gustavo D. Lage_
Gustavo D. Lage, Esq.
Attorneys for _Plaintiff_