Michael D. Roth (Bar. No. 217464)
mroth@kslaw.com
Arwen R. Johnson (Bar No. 247583)
arwen.johnson@kslaw.com
KING & SPALDING LLP
633 W. 5th Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443-4355

Robert N. Klieger (Bar No. 192962)
rklieger@hueston.com
Moez M. Kaba (Bar No. 257456)
mkaba@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4310
Facsimile: (888) 775-0898

Peter Shimamoto (Bar No. 123422)
pshimamoto@willenken.com
Kenneth M. Trujillo-Jamison
(Bar No. 280212)
ktrujillo-jamison@willenken.com
Michelle K. Millard (Bar No. 298245)
mmillard@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BUCK G. WOODALL, a.k.a. Buck Woodall, an individual,

Plaintiff,

v.

THE WALT DISNEY COMPANY, a Delaware Corporation; et al.,

Defendants.

Case No.: 2:20-cv-03772-CBM-E

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES PURSUANT TO 18 U.S.C. § 1836, CAL. CIV. CODE § 3426.4, AND 17 U.S.C. § 505**

Date: May 20, 2025
Time: 10:00 a.m.
Courtroom: 8D

Trial Date: February 25, 2025

Assigned to Hon. Consuelo B. Marshall
Magistrate Judge: Charles F. Eick

TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Plaintiff's Trade Secret Claims Were Objectively Specious And Filed And Maintained In Bad Faith ........ 2

B. The Fogerty Factors Overwhelmingly Support A Fee Award ........ 4

1. Defendants Achieved Complete Success ........ 4

2. Plaintiff's Copyright Claim Was Objectively Unreasonable ........ 5

3. Plaintiff's Bad Faith Was Manifest ........ 6

4. Plaintiff's Conduct Should Be Disincentivized ........ 8

C. The Requested Fees Are Reasonable ........ 8

III. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*Epikhin v. Game Insight N. Am.*,
2016 WL 1258690 (N.D. Cal. Mar. 31, 2016) ........................................4

*Gable v. Nat'l Broad. Co.*,
727 F. Supp. 2d 815 (C.D. Cal. 2010) ........................................4

*Kittrich Corp. v. Chilewich Sultan, LLC*,
2013 WL 12131376 (C.D. Cal. Feb. 20, 2013) ........................................4

*Masimo Corp. v. Apple Inc.*,
2022 WL 2177451 (C.D. Cal. Feb. 17, 2022) ........................................2

*Warner Chappell Music, Inc. v. Nealy*,
601 U.S. 366 (2024) ........................................5

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
705 F.2d 1515 (9th Cir. 1983) ........................................5

Statutes

17 U.S.C. § 507 ........................................5

## I. INTRODUCTION

Plaintiff focuses his response to Defendants' motion for attorneys' fees on the fact that he is "impecunious," arguing that a fee award would disincentivize starving artists from pursuing meritorious lawsuits in good faith. Defendants do not dispute that Plaintiff is impecunious. However, his lawsuit was not meritorious, and he most certainly did not pursue it in good faith. Instead, Plaintiff exhibited a "nothing to lose" mentality from the start, falsifying evidence and making false allegations, reaffirmed under oath, about when he first saw *Moana* and whether his purported trade secrets were publicly available. *All* of Plaintiff's claims as to *all* but one of the 15 Defendants were time-barred from the outset. His purported trade secrets were not secret, and the Confidentiality Agreement that Jenny Marchick allegedly signed, and to which every other Defendant allegedly agreed to be bound, was a sham. And Plaintiff had no evidence to support the fragment of a claim that did proceed to trial—no evidence of access, no evidence of substantial similarity of protectible expression, and no evidence to rebut Defendants' irrefutable showing of independent creation.

Fee awards do often send a message, but here, it would not be the message Plaintiff warns against. Defendants are not seeking to deter creators with limited resources from pursuing copyright claims in good faith. Instead, Defendants seek fees because Plaintiff filed claims he *knew* he could not win, and misrepresented facts and falsified evidence so that he could survive motions to dismiss and sustain those claims through five years of litigation in a transparent effort to leverage an undeserved settlement. Plaintiff and others like him *should* be "chilled" from prosecuting plainly frivolous actions in bad faith and forcing defendants to incur millions of dollars to defend against them. They *should* have something to lose, beyond a judgment in the defendants' favor. This is exactly the kind of case in which a fee award for Defendants advances the purposes of the Copyright Act, of the DTSA and CUTSA, and of the justice system as a whole.

## II. ARGUMENT

### A. Plaintiff's Trade Secret Claims Were Objectively Specious And Filed And Maintained In Bad Faith

Plaintiff first argues that a fee award is not appropriate under the DTSA and CUTSA simply because his claims were ultimately dismissed as time-barred. Dkt No. 821 at 2. But Plaintiff did more than just file time-barred claims. He filed claims that he *knew* were time-barred based on the fact that he had seen *Moana*, and suspected copying, in December 2016, more than three years before he filed suit. That is why Plaintiff falsely alleged in his original and amended complaints that he had not seen *Moana* before late June or July of 2017—*i.e.*, within three years of filing suit. Dkt. No. 1 ¶ 5; Dkt. No. 18 ¶ 36; Dkt. No. 94 ¶ 36.

Even after Plaintiff admitted at his deposition, more than two years into the case, that he had actually seen *Moana* in the theater and suspected copying in December 2016, he still refused to dismiss the trade secret claims as time-barred. Indeed, in opposing the instant motion, Plaintiff continues to argue that "it was never specifically established in this case that a one-month-long investigation would be unreasonable as a matter of law." Dkt. No. 821 at 3. No one is arguing that Plaintiff was required to file suit within one month of seeing *Moana*. Plaintiff had 36 months after he saw the movie and suspected copying to complete whatever investigation he deemed appropriate and to file suit. He waited 41 months to file suit. That is why his claims were time-barred.[1]

---

[1] There is no merit to Plaintiff's argument that, under *Masimo Corp. v. Apple Inc.*, 2022 WL 2177451 (C.D. Cal. Feb. 17, 2022), his trade secret claims did not accrue when he first saw *Moana* and suspected copying. The plaintiff in Masimo suspected its former employees, who left to join Apple, *might* share the plaintiff's trade secret information with their new employer. *Id.* at *1. The court held the plaintiff's concern that trade secrets *might* be shared did not start the statute. *Id.* at *5. *Masimo* does not excuse a plaintiff from timely filing suit after he suspects misappropriation has *actually* occurred, as Plaintiff plainly did here.

Plaintiff did more than misrepresent when he first saw *Moana* and suspected copying. In preparing to file suit, Plaintiff took a confidentiality agreement that a teenager had signed when modeling for him, wrote in Marchick's name, backdated it 17 years, and filed it as "a true and correct copy" of a Confidentiality Agreement that Marchick had signed and to which every other Defendant had agreed to be bound. Dkt. No. 18 ¶¶ 29, 61 & Ex. C; Dkt. No. 94 ¶¶ 29, 67 & Ex. C. This was indispensable to Plaintiff's trade secret claims. The fact that Marchick had signed, and the other Defendants had agreed to be bound by, the Confidentiality Agreement was central to Plaintiff's contention that he had taken reasonable steps to protect the secrecy of his purported trade secrets. Except, they hadn't. Plaintiff simply made that up, and then reaffirmed it repeatedly under oath.[2]

Plaintiff also falsely alleged in his Second Amended Complaint that neither his "Bucky" trailer nor 2011 script had been posted to his website or deposited with the Copyright Office. Dkt. No. 94 ¶¶ 65-66, 78. Again, this was not a casual mistake. Plaintiff made those false allegations specifically because the Court had dismissed the trade secret claims from the First Amended Complaint based on Plaintiff's failure to identify any purported trade secret materials that had not been posted to his website or deposited with the Copyright Office. Dkt. No. 91 at 20.

---

[2] Plaintiff argues that the Confidentiality Agreement is a "red herring," because "Marchick repeatedly testified that she would not have reviewed *Bucky* materials unless the 'paperwork' was signed." Dkt. No. 821 at 4. The "paperwork" to which Marchick referred was a "submission waiver" by which *Plaintiff* would have waived various rights, not one in which Marchick would have promised confidentiality. Trial Tr. 1009:21-1010:2 (Marchick). Plaintiff also makes the bizarre assertion that "Defense counsel *intentionally refused* to confront Plaintiff with the document Young allegedly signed during his deposition, with the clear intention of dragging out this dispute for the very purpose now utilized in grand fashion." Dkt. No. 821 at 6. The document Pearl Young signed *is* the Confidentiality Agreement to which Plaintiff added Marchick's name. It was Exhibit 2 to Plaintiff's deposition, and was the subject of *more than 30 minutes* of questioning. Supp. Klieger Decl., Ex. A (Woodall Depo. Tr. 159:5-179:4).

By the time of summary judgment, Plaintiff did not even dispute that he had posted the trailer to his website and deposited a script virtually identical to the 2011 script with the Copyright Office. Instead, Plaintiff argued—and, remarkably, continues to argue—that his decision to make his alleged trade secrets public is immaterial absent evidence "that the relevant people in the industry" viewed them. Dkt. No. 821 at 4. That is not the law. The case upon which he relies makes clear a trade secret plaintiff must prove information *both* derives value from not being generally know *and is the subject of reasonable effects to maintain its secrecy*. *Kittrich Corp. v. Chilewich Sultan, LLC*, 2013 WL 12131376, at *3, 5 (C.D. Cal. Feb. 20, 2013). Plaintiff's continuing assertion that he can claim as a trade secret material that he made publicly available simply underscores why a fee award is appropriate under the DTSA and CUTSA.

### B. The *Fogerty* Factors Overwhelmingly Support A Fee Award

A fee award is also warranted under the Copyright Act. Every one of the *Fogerty* factors weighs in favor of a fee award, most of them strongly. Defendants do not dispute that Plaintiff is impecunious, and that a fee award may deter him and others like him making false allegations and engaging in bad faith misconduct to maintain baseless copyright claims. That's the point. No one is trying to deter creators with limited resources from pursuing copyright claims in good faith. Defendants seek fees not simply because Plaintiff's claim failed, but because it was filed and litigated in bad faith from the start.

#### 1. Defendants Achieved Complete Success

Plaintiff admits Defendants achieved complete success but argues the first *Fogerty* factor should not be given much weight because Defendants prevailed on a "technical defense," *i.e.*, the statute of limitations. Dkt. No. 821 at 7; *see Epikhin v. Game Insight N. Am.*, 2016 WL 1258690, at *5 (N.D. Cal. Mar. 31, 2016) (degree of success factor "mitigated" were infringement claim was dismissed *without prejudice* based on failure to comply with registration requirements).

However, Defendants prevailed on more than a technical defense. Following a two-week trial, the jury unanimously ruled that Plaintiff failed to prove that *Moana*'s creators had access to any of his copyrighted works, which is an essential element of his infringement claim. *See Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 826 (C.D. Cal. 2010) (plaintiff must prove access by the creators of the allegedly infringing work). Because *Moana*'s creators are the same regardless of the defendant being sued, that means Plaintiff's copyright claim fails on the merits as *all Defendants*, including those as to which the claim was time-barred. Because Plaintiff's claim failed under both the statute of limitations *and on the merits*, the degree of success factor strongly favors a fee award.

**2. Plaintiff's Copyright Claim Was Objectively Unreasonable**

Plaintiff's copyright claim was objectively unreasonable on various grounds, the first being that it was time-barred in its entirety as to all but one Defendant. Contrary to Plaintiff's suggestion, the statute of limitations did not present a "close and difficult" question. Dkt. No. 821 at 9. Plaintiff saw *Moana* in December 2016 and was certain Defendants had copied his "Bucky" materials. Trial Tr. 560:24-561:2 (Woodall). He was required to file suit within three years thereafter. 17 U.S.C. § 507(b). That has been the clear law in the Ninth Circuit for more than 40 years. *See Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983).[3] That is why Plaintiff falsely alleged in his complaints that he had not seen *Moana* before June or July 2017. Dkt. No. 1 ¶ 5; Dkt. No. 18 ¶ 36; Dkt. No. 94 ¶ 36. Under the true facts, his claim was plainly time-barred.

---

[3] Plaintiff argues that the lack of clarity around this issue is demonstrated by the Supreme Court's ruling in *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024). *Nealy*, however, resolved a circuit split as to whether a plaintiff who *timely* files a claim under the discovery rule may seek damages reaching back more than three years. *Id.* at 370-71. The decision has no bearing on whether Plaintiff's claim was timely—which, under longstanding Ninth Circuit law, it was not.

Plaintiff's copyright claim was also objectively unreasonable based on the absence of any evidence of access by *Moana*'s creators. Plaintiff argues he had "no less than six theories of access." Dkt. No. 821 at 12. There was no shortage of theories; but theories without evidence are mere conjecture and do not support the objective reasonableness of a claim. Contrary to Plaintiff's assertion, the jurors were not led to believe that direct evidence of copying was required. *See* Dkt. No. 821 at 12-13. The jurors were specifically, and correctly, instructed that access requires only that *Moana*'s creators "had a reasonable opportunity to read, view, or copy Plaintiff's copyrighted works before *Moana* was created," and that access may be shown by "a chain of events connecting Plaintiff's copyrighted works and opportunity of the creators of *Moana* to read, view, or copy Plaintiff's copyrighted works such as dealings through a third party that had access to Plaintiff's copyrighted works and with whom both Plaintiff and the creators of *Moana* were dealing," as well as by striking similarity. Dkt. No. 780, Inst. 24. Plaintiff's claim did not fail because of instructional error; it failed because of a lack of evidence.

Although the jury did not reach the issues of substantial similarity or independent creation, the Court plainly can (and logically should) consider the evidence on those issues in evaluating the objective reasonableness of Plaintiff's claim. Plaintiff argues that he presented "an extraordinary case of substantial similarity" based on the fact that "this Court already found, thrice, that sufficient similarity exists for the case to proceed to trial." Dkt. No. 821 at 14. The case proceeded to trial on substantial similarity because there were "dueling expert opinions," Dkt. No. 558 at 24, not because Plaintiff had made "an extraordinary case of substantial similarity." And the trial testimony of Plaintiff's expert confirmed that he had compared the wrong works, failed to engage in necessary filtering, and based his opinions on similarities in unprotectible ideas rather than expression. The fact that Plaintiff paid an "expert" to render an opinion may be enough to create a triable issue, but it does not mean Plaintiff had any credible

basis for claiming substantial similarity under copyright law. Nor should the Court overlook the complete absence of evidence to rebut Buena Vista's showing of independent creation—a showing that was so irrefutable that not even Plaintiff believes that *Moana*'s creators copied his works. Trial Tr. 712:3-6 (Woodall).

### 3. Plaintiff's Bad Faith Was Manifest

Plaintiff does not even attempt to offer an innocent explanation for much of his misconduct. He does not claim to have forgotten that he saw *Moana* in the theater in December 2016 or offer any other explanation for why he repeatedly claimed that he could not and did not see the movie until June or July 2017. While Plaintiff does contend that he made an "honest mistake" with respect to the falsified Confidentiality Agreement, Dkt. No. 821 at 6, neither his explanation for that "mistake" nor his attorneys' months-long efforts to prevent that "mistake" from coming to light lend any credibility to that contention.

Plaintiff's interrogatory responses, in which he falsely attested that various Defendants "assisted in some capacity in the final development of characters and story lines associated with *Moana*," underscore his bad faith. Dkt. Nos. 812-37 to 812-42. Plaintiff argues this was a reasonable "belief" as to Buena Vista Books, since it published "side-stories" associated with *Moana*. Dkt. No. 821 at 14-15. Setting aside that Plaintiff verified purported *facts*, not beliefs, his explanation makes no sense with respect to the other Defendants. Instead, as Plaintiff admitted at deposition, he verified the responses under oath without having any idea whether they were true. Dkt. No. 812-2 (Pl.s' Depo. Tr. 241:18-243:5).[4]

Finally, Plaintiff provides no coherent explanation for his ceaseless attempts to drag the non-Buena Vista Defendants back into the case after their dismissal on

---

[4] Remarkably, Plaintiff suggests that Defendants, upon receiving perjured interrogatory responses, should have moved to compel "a better response." Dkt. No. 821 at 15. Needless to say, when a party is caught serving a perjured response, the burden is not on the propounding party to move for a "better" one.

summary judgment, or for seeking to disgorge billions of dollars in Disney+ revenues from Buena Vista, which had nothing to do with, and derived no revenues from, Disney+. Indeed, Plaintiff continues to insist that Disney+ revenues were improperly excluded because "DVD sales and streaming are both … home entertainment," without regard to whether Bunea Vista had any involvement in streaming. Dkt. No. 821 at 16. This reckless indifference to the actual facts, and the actual law, combined with Plaintiff's misrepresentations and falsification of evidence, confirms that this case was not brought and maintained in good faith to advance the purposes of the Copyright Act.

#### 4. Plaintiff's Conduct *Should* Be Disincentivized

Plaintiff argues that the final *Fogerty* factor, which focuses on considerations of compensation and deterrence, weighs against an award of fees because he is "impecunious" and a fee award would discourage "starving artists" from defending the copyrights in their original works. Dkt. No. 821 at 19. Defendants are not blind to the potential chilling effect that a fee award may have in cases in which a plaintiff has pursued claims in good faith. That is why the instant motion focuses on the frivolous and bad faith tactics that Plaintiff has employed since day one. A fee award that is premised on Plaintiff's knowingly false allegations, falsification of evidence, perjured discovery responses, and needless prolonging of this litigation will not disincentivize starving artists from pursuing claims in good faith when they genuinely, and reasonably, believe that their works have been infringed. At the same time, it *is* important to deter Plaintiff and others like him from forcing defendants, and the courts, to devote extraordinary time and resources to the disposition of claims that are filed and maintained in demonstrable bad faith.

### C. The Requested Fees Are Reasonable

Plaintiff argues that the requested fees are unreasonable because of excessive hourly rates and certain "unreasonable billing practices." Dkt. No. 821

at 20-23. The requested rates are reasonable using Plaintiff's own metrics. The average hourly billing rates in this case were $1,100 for partners and $455 for associates—which, as discussed in the moving papers, reflect a substantial discount off of the attorneys' standard rates. Shimamoto, Klieger, and Kaba are all highly experienced litigators who are 20 years or more out of law school, and are therefore at the top end of the Laffey Matrix submitted with Plaintiff's response. Dkt. No. 821-5 at 1. Their Laffey Matrix rate, without any adjustments, would be $1,141, or just above the average partner rate actually charged in this case. *Id.* Meanwhile the average associate rate in this case was significantly *below* that of similarly situated attorneys in the Laffey Matrix. *Id.*[5]

In terms of "unreasonable billing practices," Plaintiff questions why the case required more than one partner and could not have been handled exclusively by Shimamoto and his associates at Willenken. Dkt. No. 821 at 21. Without commenting on Plaintiff's own attorney composition, it was hardly unreasonable to staff two partners on this case (Shimamoto and Klieger) during two years of extensive discovery and motion practice, and Shimamoto and his associates did not participate in the trial. Particularly in view of Plaintiff's alleged $23.7 billion in damages, there is no plausible claim of overstaffing.

Plaintiff also takes issue with the fact that more than one attorney attended certain hearings, depositions, and meet and confers, and that the requested fees include fees incurred in connection with one unsuccessful motion to compel, an

---

[5] Plaintiff expresses a preference for the Real Rate Report (RRR) published by Wolters Kluwer, which provides more granular data by practice area, firm size, and attorney experience and recognition. Dkt. No. 821 at 21. However, Plaintiff does not submit relevant data from the RRR, but instead attaches a screenshot of one page from a sample report on the Wolters Kluwer website. Dkt. No. 821-4 at 2. While that sample report reflects a "mean rate" of $784 for the Los Angeles legal market, that appears to be an "all attorney" rate, rather than a partner rate, and its parameters are otherwise entirely unclear. *Id.*

unsuccessful motion for terminating sanctions, several contemplated motions that Defendants ultimately did not file, and certain "clerical and other basic tasks" such a responding to emails from the Clerk. Dkt. No. 821 at 22-23. However, Plaintiff does not identify the fees actually charged in any of these categories, which, aside from the terminating sanctions motion—which was based on the very bad faith misconduct that makes a fee award appropriate, and plainly should be included—are comparatively negligible. Plaintiff also falsely asserts that "all of Hueston Hennigan's timesheets are block-billed" (*id.* at 23) when, in reality, only one attorney block-billed his time (with no reason to question the accuracy of the time recorded), and an across-the-board reduction would therefore be unwarranted.

Finally, Plaintiff argues that Defendants should have separately apportioned fees to the fraud claims, despite the fact that those claims were based on the very same falsified Confidentiality Agreement as the trade secret claims. Dkt. No. 821 at 23-24. Because Defendants did not incur fees in connection with their defense of the fraud claims that were not also incurred in connection with the trade secret claims, there is no basis for an apportionment and reduction of the requested fees.

## III. CONCLUSION

For the reasons set forth above and in the moving papers, Defendants respectfully request that the Court grant their motion and award fees under the DTSA, CUTSA, and the Copyright Act in the amount of $5,681,328.30.

Dated: April 22, 2025

HUESTON HENNIGAN LLP
KING & SPALDING LLP
WILLENKEN LLP

By: */s/ Robert N. Klieger*
Robert N. Klieger
Attorneys for Defendants