Michael D. Roth (Bar. No. 217464)
mroth@kslaw.com
Arwen R. Johnson (Bar No. 247583)
arwen.johnson@kslaw.com
KING & SPALDING LLP
633 W. 5th Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443-4355

Robert N. Klieger (Bar No. 192962)
rklieger@hueston.com
Moez M. Kaba (Bar No. 257456)
mkaba@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4310
Facsimile: (888) 775-0898

Peter Shimamoto (Bar No. 123422)
pshimamoto@willenken.com
Kenneth M. Trujillo-Jamison
   (Bar No. 280212)
ktrujillo-jamison@willenken.com
Michelle K. Millard (Bar No. 298245)
mmillard@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCK G. WOODALL, a.k.a. Buck Woodall, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE WALT DISNEY COMPANY, a Delaware Corporation; et al.,<br><br>Defendants. | Case No.: 2:20-cv-03772-CBM-E<br><br>**DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFF'S ATTORNEYS PURSUANT TO 28 U.S.C. § 1927**<br><br>Date:     May 20, 2025<br>Time:    10:00 a.m.<br>Courtroom:  8D<br><br>Trial Date:  February 25, 2025<br><br>Assigned to Hon. Consuelo B. Marshall<br>Magistrate Judge: Charles F. Eick |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 20, 2025 at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 8D of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendants The Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios, Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-to-Consumer & International, Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc., Buena Vista Books, Inc., Mandeville Films, Inc., Jenny Marchick, and Pamela Ribon (collectively, "Defendants") will, and hereby do, move for an award of sanctions against the current or former attorneys of record for Plaintiff Buck G. Woodall ("Plaintiff") as follows:

- Gustavo D. Lage, in the amount of $532,815.60, jointly and severally with Plaintiff's other attorneys of record to the extent set forth below;

- James Wesley Christian, jointly and severally with Gustavo D. Lage, in the amount of $421,268.60;

- Elad D. Botwin, jointly and severally with Gustavo D. Lage and James Wesley Christian, in the amount of $376,969.60;

- Luis E. Suarez and Patricia Melville Suarez, jointly and severally with Gustavo D. Lage, James Wesley Christian, and Elad D. Botwin, in the amount of $190,252.70; and

- Gerard P. Fox, jointly and severally with Gustavo D. Lage, James Wesley Christian, and Elad D. Botwin, in the amount of $198,546.05.

This motion is brought pursuant to 28 U.S.C. § 1927 on the grounds that Plaintiff's attorneys multiplied the proceedings unreasonably and vexatiously and should be required to pay the excess fees caused by such conduct.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Robert N. Klieger and Peter Shimamoto filed concurrently herewith, all pleadings, records, and papers on file, such matters of which this Court may take judicial notice, and such other evidence and argument as the Court may consider in connection with this motion.

This motion is made following the conferences of counsel pursuant to L.R. 7-3, which took place on March 17, 2025 with respect to Gustavo D. Lage, James Wesley Christian, and Elad D. Botwin, and on April 1 and 15, 2025 with respect to Luis E. Suarez and Patricia Melville Suarez.  Declaration of Robert N. Klieger ¶ 23.  Gerard P. Fox did not respond to Defendants' counsel's repeated requests for a conference of counsel pursuant to L.R. 7-3.  *Id*.

Dated:  April 22, 2025

HUESTON HENNIGAN LLP
KING & SPALDING LLP
WILLENKEN LLP

By:   */s/ Robert N. Klieger*
Robert N. Klieger
Attorneys for Defendants

1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................... 1

II.   LEGAL STANDARD ................................................................................ 3

III.  ARGUMENT ............................................................................................ 4

    A.    Plaintiff's Attorneys Engaged In Sanctionable Misconduct ................... 4

        1.    Plaintiff's Attorneys Unreasonably And Vexatiously Multiplied The Proceedings In Connection With The Falsified Confidentiality Agreement ............................................. 4

        2.    Plaintiff's Attorneys Unreasonably And Vexatiously Multiplied The Proceedings By Maintaining Trade Secret Claims Based On Publicly Available Materials .............. 11

        3.    Plaintiff's Attorneys Unreasonably And Vexatiously Multiplied The Proceedings By Maintaining Claims That Were Plainly Barred By The Statute Of Limitations ....................................................................................... 13

    B.    The Excess Fees Incurred As A Direct Result Of Plaintiff's Attorneys' Sanctionable Misconduct ...................................................... 14

    C.    Defendants' Fees Are Reasonable ........................................................ 17

        1.    The Number Of Hours For Which Defendants Seek Fees Is Reasonable ........................................................................ 17

        2.    Defendants' Requested Hourly Rates Are Reasonable .............. 19

    D.    Excess Fees Per Plaintiff's Attorney .................................................... 20

        1.    Gustavo D. Lage And Elad D. Botwin ....................................... 21

        2.    James Wesley Christian ............................................................... 23

        3.    Luis E. Suarez And Patricia Melville Suarez ............................. 24

        4.    Gerard P. Fox .............................................................................. 25

i

1

# TABLE OF CONTENTS (cont.)

2

Page

3

4    IV.    CONCLUSION ........................................................................................... 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR SANCTIONS

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Burda v. M. Ecker Co.*,
    2 F.3d 769 (7th Cir. 1993) ................................................................................ 4

*Cabrales v. Cnty. of Los Angeles*,
    864 F.2d 1454 (9th Cir. 1988) ....................................................................... 19

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ......................................................................... 19

*Carson v. Billings Police Dep't*,
    470 F.3d 889 (9th Cir. 2006) ......................................................................... 19

*City of Burlington v. Dague*,
    505 U.S. 557 (1992) ....................................................................................... 17

*Davis v. Bowron*,
    30 Fed. Appx. 373 (6th Cir. 2002) ................................................................ 14

*Estate of Blas v. Winkler*,
    792 F.2d 858 (9th Cir. 1986) ........................................................................... 4

*Good Job Games Bilism Yazilm ve Pazarlama A.S. v. SayGames LLC*,
    2023 WL 3260528 (N.D. Cal. May 4, 2023) ................................................ 20

*Habib v. Matson Navigation Co., Inc.*,
    2014 WL 4243703 (W.D. Wash. Aug. 26, 2014) ......................................... 25

*In re Luxury Imports of Sacrament, Inc.*,
    2012 WL 1608348 (E.D. Cal. May 8, 2012) ................................................ 14

*In re TCI Ltd.*,
    769 F.2d 441 (7th Cir. 1985) ........................................................................... 4

*Jolly Grp., Ltd. v. Medline Indus., Inc.*,
    435 F.3d 717 (7th Cir. 2006) ........................................................................... 5

TABLE OF AUTHORITIES (cont.)

Page(s)

*Lynwood Invs. CY Ltd. v. Konovalov*,
  2023 WL 2918754 (N.D. Cal. Apr. 11, 2023) ................................................. 20

*Mayorga v. Ronaldo*,
  656 F. Supp. 3d 1218 (D. Nev. 2023) ......................................................... 4

*Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*,
  210 F.3d 1112 (9th Cir. 2000) ................................................................ 3

*Pascual v. Wells Fargo Bank, N.A.*,
  2014 WL 582264 (N.D. Cal. Feb. 13, 2014) ................................................ 4

*Perfect 10, Inc. v. Giganews, Inc.*,
  2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ............................................ 19

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984) ............................................................................ 12

*Swanson v. EMC Mortg. Corp.*,
  2010 WL 1173089 (E.D. Cal. Mar. 23, 2010) ........................................... 14

*Trulis v. Barton*,
  107 F.3d 685 (9th Cir. 1995) ............................................................. 4, 23

*Van Berkel v. Fox Farm & Road Machinery*,
  581 F. Supp. 1248 (D. Minn. 1984) ...................................................... 14

*Van Gerwen v. Guaranatee Mut. Life Co.*,
  214 F.3d 1041 (9th Cir. 2000) ............................................................. 17

*W. Coast Theater Corp. v. City of Portland*,
  897 F.2d 1519 (9th Cir. 1986) ........................................................... 4, 23

*Williams v. Mt. Diablo Unified Sch. Dist.*,
  284 Fed. Appx. 513 (9th Cir. 2008) ....................................................... 5

*Williams v. White Castle Sys., Inc.*,
  526 F. Supp. 2d 830 (M.D. Tenn. 2007) ................................................. 14

## TABLE OF AUTHORITIES (cont.)

Page(s)

Statutes

17 U.S.C. § 507 .................................................................................. 13

18 U.S.C. § 1836 ................................................................................ 13

28 U.S.C. § 1927 ...................................................................... 1, 3, 4, 5

Cal. Civ. Code § 338 ...........................................................................13

Cal. Civ. Code § 3426.6 ...................................................................... 13

DEFENDANTS' MOTION FOR SANCTIONS

## I.    <u>INTRODUCTION</u>

Plaintiff Buck Woodall ("Plaintiff") filed this action in April 2020, with his operative complaint asserting claims against 15 defendants (collectively, "Defendants") for alleged trade secret misappropriation, fraud, and copyright infringement. In November 2024, after more than four years of litigation, the Court dismissed Plaintiff's trade secret and fraud claims in their entirety, as well as his copyright claim as to all Defendants besides Buena Vista Home Entertainment, Inc. ("Buena Vista"). Four months later, following a two-week trial, a jury returned a verdict in favor of Buena Vista on the remaining cause of action.

In the ordinary course, a prevailing defendant may pursue contractual or, in this case, statutory rights to recover fees from *the plaintiff*. Defendants filed such a motion, seeking to recover more than $5.6 million in fees they incurred defending against Plaintiff's claims. *See* Dkt. No. 812. The instant motion concerns less than one-tenth of those fees, totaling $532,815.60, that Defendants seek to recover from Plaintiff's primary counsel of record: Gustavo D. Lage ("Lage"), James Wesley Christian ("Christian"), Elad D. Botwin ("Botwin"), Luis E. Suarez ("Suarez"), Patricia Melville Suarez ("Melville"), and Gerard P. Fox ("Fox").

Under 28 U.S.C. § 1927, the Court may sanction attorneys who unreasonably and vexatiously multiply the proceedings. A plaintiff's attorney who continues to pursue a claim after it becomes clear that the claim lacks legal or factual support may be personally liable for the "excess" fees and costs that the defendants incur as a result.

Had Plaintiff simply filed a copyright suit against Buena Vista, claiming *Moana* infringed the copyright in his "Bucky" materials and seeking to recover profits attributable to the alleged infringement beginning three years before he filed suit, Buena Vista would not be seeking sanctions. Although the infringement claim was meritless, it was not so patently frivolous as to hold Plaintiff's attorneys responsible for fees. But Plaintiff's attorneys took a different approach:

*First,* Lage filed trade secret and fraud claims premised on a Confidentiality Agreement that Defendant Jenny Marchick allegedly had signed, and to which the other Defendants allegedly had agreed to be bound.  When Defendants' counsel advised Lage that the Confidentiality Agreement was a forgery, Lage warned Defendants about making such "easily disproven" assertions, and then engaged in months of gamesmanship to prevent Defendants from getting their hands on the original Confidentiality Agreement.  Only when those efforts failed did one of Plaintiff's *other* attorneys, Suarez, reveal that *Plaintiff* had written Marchick's name on the Confidentiality Agreement and backdated it by 17 years just before filing this lawsuit, and further that Plaintiff's attorneys had no idea who actually signed the agreement.  Yet, even then, Plaintiff's counsel of record—which by that point also included Christian, Suarez, Melville, and Botwin—did not withdraw the trade secret and fraud claims, or even seek leave to further amend the complaint to remove the Confidentiality Agreement and related allegations.  Instead, they, later joined by Fox, pressed forward with the claims as pleaded.

*Second*, Plaintiff's attorneys pursued trade secret claims based on information that could not possibly qualify for protection.  The Court dismissed Plaintiff's initial trade secret claims because materials Plaintiff had posted to his website or deposited with the Copyright Office cannot be trade secrets.  Lage "cured" this defect by filing an amended complaint alleging that neither the "Bucky" trailer nor a 2011 script had been posted to Plaintiff's website or deposited with the Copyright Office.  While that would have been a plausible cure *if true*, Plaintiff had, in fact, posted the trailer to his website and deposited a virtually identical script with the Copyright Office (which was one of the registered works at issue during trial).  Even after Defendants demonstrated the falsity of those allegations, Plaintiff's attorneys failed to withdraw the claims, and instead maintained them through summary judgment (or, in the case of Suarez and Melville, their earlier firing by Plaintiff).

*Third*, the First and Second Amended Complaints, both signed by Lage, alleged that Plaintiff could not, and did not, see *Moana* until June 2017, and that his trade secret, fraud, and copyright claims, all of which are governed by a three-year statute of limitations, were therefore timely. Whether or not Lage believed that at the time, Plaintiff admitted at deposition in October 2022 that he had seen *Moana* in the theater and suspected copying in December 2016, and had performed a detailed side-by-side comparison using the *Moana* DVD in March 2017, both more than three years before he filed suit. At that point, Lage, Christian, Suarez, Melville, and Botwin, and subsequently Fox, were duty-bound to dismiss the trade secret and fraud claims in their entirety, and to dismiss the copyright claim as to all Defendants besides Buena Vista. Instead, they continued to actively prosecute all of the claims, against all Defendants, through summary judgment (or, in the case of Suarez and Melville, their earlier firing by Plaintiff).

These were not nuanced issues of fact or law. The Confidentiality Agreement was falsified. The purported trade secrets were not secret. Plaintiff saw *Moana* more than three years before he filed suit. The moment Plaintiff's attorneys even suspected any of these facts, they should have paused to investigate and, upon ascertaining the true facts, dismissed everything except the single copyright claim against Buena Vista. They did the opposite, plowing ahead with the claims even *after* Defendants presented them with the true facts. As a result, Defendants were forced to incur hundreds of thousands of dollars in attorneys' fees defending against frivolous trade secret, fraud, and copyright claims long after they should have been dismissed. For the reasons set forth herein, Defendants request that the Court hold Plaintiff's attorneys of record responsible for those excess fees.

## II.    **LEGAL STANDARD**

Under section 1927, an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay the excess fees and costs caused by such conduct. 28 U.S.C. § 1927; *see Pac. Harbor Cap., Inc. v. Carnival*

*Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000) ("Section 1927 authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced.").  Section 1927 imposes a continuing duty on an attorney to dismiss claims when the attorney learns that the claims, even if filed in good faith, are no longer viable.  *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1986); *Burda v. M. Ecker Co.*, 2 F.3d 769, 778 (7th Cir. 1993); *see Trulis v. Barton*, 107 F.3d 685, 692 (9th Cir. 1995) (district court abused its discretion in *not* awarding section 1927 sanctions where attorney pursued claim that was plainly barred); *Pascual v. Wells Fargo Bank, N.A.*, 2014 WL 582264, at *7 (N.D. Cal. Feb. 13, 2014) (awarding section 1927 sanctions where plaintiff's attorneys maintained clearly time-barred claim).

Section 1927 sanctions must be supported by a finding of recklessness or subjective bad faith.  *See Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986).  "Recklessness is all that is necessary to justify an award of fees and costs under § 1927, and the award must be satisfied by the offending attorney personally—not the client."  *Mayorga v. Ronaldo*, 656 F. Supp. 3d 1218, 1224 (D. Nev. 2023).  "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious."  *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985).

## III.   ARGUMENT

### A.   Plaintiff's Attorneys Engaged In Sanctionable Misconduct

#### 1.   Plaintiff's Attorneys Unreasonably And Vexatiously Multiplied The Proceedings In Connection With The Falsified Confidentiality Agreement

Plaintiff commenced this action *pro se* on April 24, 2020.  Dkt. No. 1.  On July 22, 2020, Lage entered his appearance as lead counsel for Plaintiff.  Dkt. No. 17.  That same day, Lage signed and filed Plaintiff's First Amended Complaint ("FAC").  Dkt. No. 18.  The centerpiece of the FAC was a Confidentiality

1  Agreement that Marchick allegedly had executed on October 22, 2003. *Id.* ¶ 29.

2  The FAC alleged that only after Marchick had allegedly executed the

3  Confidentiality Agreement did Plaintiff provide her "extremely large quantities of

4  intellectual property and trade secrets associated with *Bucky*." *Id.*  The FAC

5  further alleged that every other Defendant was "bound by the Confidentiality

6  Agreement executed in favor of Woodall." *Id.* ¶ 61.  A "true and correct copy of

7  th[at] Confidentiality Agreement" was appended as Exhibit C to the FAC. *Id.* ¶ 29

8  & Ex. C.  The allegations regarding the Confidentiality Agreement were

9  incorporated into every one of Plaintiff's causes of action, and his trade secret,

10  fraud, and tortious interference claims in particular were premised on the

11  authenticity and alleged breach of that agreement. *Id.* ¶¶ 35, 39, 55, 61, 70, 73, 82,

12  83, 87, 91, 92, 99, 100, 107, 110, 112, 113, 115.

13      In September 2020, Defendants' counsel advised Lage that the

14  Confidentiality Agreement was a forgery.  Shimamoto Decl. ¶ 2.  Assuming Lage

15  was not already aware that Plaintiff had falsified the Confidentiality Agreement, he

16  should have inquired at that time. *See Williams v. Mt. Diablo Unified Sch. Dist.*,

17  284 Fed. Appx. 513, 514 (9th Cir. 2008).  And, upon being advised by Plaintiff

18  that *Plaintiff* had written Marchick's name on the Confidentiality Agreement and

19  backdated it by 17 years in preparing to file suit, Lage should have sought leave to

20  file a further amended complaint removing the Confidentiality Agreement and

21  related allegations and withdrawing the causes of action premised thereon. *See*

22  *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (section

23  1927 sanctions appropriate where counsel "pursue[d] a path that a reasonably

24  careful attorney would have known, after appropriate inquiry, to be unsound").

25  That is not what Lage did.  Instead, Lage responded to Defendants' counsel with

26  the following:

27      [Y]ou have suggested that either some or all of your clients will
       ultimately claim the Marchick confidentiality agreement is a forgery
28      and we appreciate your advising us of same; however, **your clients**

*may wish to note that easily disproven facts or perjurious comments about the veracity of certain documents is likely something they should think carefully about before introducing them into the fray.*

Shimamoto Decl., Ex. A at 10 (emphasis added).

Lage did file a Second Amended Complaint ("SAC") on May 28, 2021. Dkt. No. 94. However, like the prior complaint, the SAC attached the same Confidentiality Agreement that Marchick allegedly had executed in October 2003. *Id.* ¶ 29 & Ex. C. The allegations regarding the Confidentiality Agreement were again incorporated into every one of Plaintiff's causes of action, and his trade secret and fraud claims in particular were again premised on the authenticity and alleged breach of that agreement. *Id.* ¶¶ 33, 35, 39, 55, 56, 58, 67, 76, 79, 88, 95, 100, 101. The Court denied Defendants' motion to dismiss the trade secret claims, explaining that it was required to accept as true Plaintiff's allegations regarding the Confidentiality Agreement and Defendants' purported acknowledgement that they were bound thereto. Dkt. No. 101 at 10 & n.6.

During the parties' Rule 26(f) conference on October 29, 2021, Defendants' counsel advised Lage that they wanted to examine the original Confidentiality Agreement. Shimamoto Decl. ¶ 4. Christian entered an appearance for Plaintiff two weeks later, on November 10, 2021. Dkt. No. 117. Defendants' counsel wrote to Lage and Christian the following week, reiterating that "we would like to examine the original of the Confidentiality Agreement attached as Exhibit C to the Second Amended Complaint" and requesting "proposed dates and location for such an examination." Shimamoto Decl., Ex. B at 1. There was no response.

On November 30, 2021, Defendants' counsel wrote to Lage's colleague, Elad Botwin: "I have requested several times that plaintiff provide dates and location(s) where we can examine the original of the alleged 'Confidentiality Agreement' attached to the various complaints as Exhibit C. … Please provide that

information no later than December 7, 2021." *Id*., Ex. C at 1. Botwin responded two days later:

> With respect to what you call 'the original confidentiality agreement' … we cannot tell you when you can examine the original because the files we are aware of are electronic and we believe our client is still searching for the original. Again, as we have told you, our client is neither The Walt Disney Company nor Mandeville Studios. Rather, he is a man who has spent the better part of his life fighting with limited resources against such stalwarts. ***The moment we locate 'the original confidentiality agreement' (if in fact it is located), I will inform you immediately***.

*Id.*, Ex. D at 1 (emphasis added).

Defendants served requests for production and for admission asking Plaintiff to produce the "original of the Confidentiality Agreement attached as Exhibit C to the SAC" and to "[a]dmit that Defendant Jenny Marchick's handwriting is not contained anywhere on the Confidentiality Agreement attached as Exhibit C to the Second Amended Complaint." *Id.*, Ex. E (RFP No. 13); *id.*, Ex. F (RFA No. 1). In his responses to the requests for production, signed by Lage, Plaintiff agreed to produce the original Confidentiality Agreement if it could be "located after a reasonably diligent search." *Id.*, Ex. G (Resp. to RFP No. No. 13). Plaintiff was less forthright in his responses to the requests for admission, also signed by Lage, which feigned confusion as to the meaning of "handwriting":

> Plaintiff is unable to determine whether Defendants meant the term "handwriting" to mean strictly the dictionary definition of "handwriting" (i.e., often defined as "something written by hand") or whether Defendants meant the term "handwriting" to mean any words, letters, numbers, symbols and/or signatures, regardless of the kind of markings, emanating from or intended to be placed by the subject identified by the Defendants.

*Id.*, Ex. H (Resp. to RFA No. 1). Plaintiff insisted Marchick's "handwriting" appeared on the Confidentiality Agreement under that latter meaning. *Id.*

Plaintiff's document production did not include the original Confidentiality Agreement, but it did include a photograph of the original. *Id.* ¶ 12. The metadata

associated with the photograph showed a creation date of April 8, 2020, or just over two weeks before Plaintiff filed this lawsuit. *Id.* That strongly suggested Plaintiff possessed the original at the time the lawsuit was filed, and that it had either been destroyed or was being withheld notwithstanding counsel's promise to produce it "[t]he moment" it was located. *Id.*, Ex. D at 1.

Defendants propounded additional requests for admission on May 27, 2022, in which they asked Plaintiff, in back-to-back requests, to admit he either *did* or *did not* still possess the original Confidentiality Agreement. *Id.*, Ex. I (RFA Nos. 3, 4). Lage objected to the requests as "vague and ambiguous with respect to the word 'original,'" and Plaintiff refused to respond on that basis. *Id.*, Ex. J (Resp. to RFA Nos. 3, 4). That the objection was asserted in bad faith is confirmed by the fact that Lage had no difficulty understanding the term when he agreed to produce the "original of the Confidentiality Agreement" months earlier. *See id.*, Ex. G (Resp. to RFP No. 13).

By letter dated August 5, 2022, Defendants took issue with Lage's bad faith objection and Plaintiff's resulting refusal to admit or deny the requests:

> The term "original" as used in this context means the version that was physically signed by the person whose handwriting appears on the document, as opposed to a copy of the document, which is the only version Plaintiff has produced to date. The term "original" could not possibly have any other meaning in the context of these requests.

*Id.*, Ex. K at 2. In addition to Lage and Christian, Defendants' counsel also copied Suarez and Melville, who had recently entered their appearances as additional attorneys of record for Plaintiff. Dkt. Nos. 171, 172. There was no response.

Defendants proceeded to retain a forensic document examiner to review the photograph—and, if ever produced, the original—of the Confidentiality Agreement and assess its authenticity. On August 15, 2022, Defendants' counsel wrote to Botwin, again copying Lage, Christian, Suarez, and Melville, informing them that the examiner had "confirmed that neither the signature nor any of the

other handwriting visible in the JPEG file belongs to Ms. Marchick" and had

further "determined to a high degree of probability that at least Ms. Marchick's

printed name and date were applied *by Plaintiff himself.*"  Klieger Decl., Ex. A.

The letter continued:

> Plaintiff would be well advised to acknowledge his falsification of the
> Confidentiality Agreement and voluntarily dismiss his claims with
> prejudice.  Should Plaintiff refuse, his counsel would be well advised
> to withdraw from the continued prosecution of a case founded on
> falsified evidence.  Absent that, we demand that Plaintiff *immediately*
> produce the original of the Confidentiality Agreement (which, for
> clarity, means the physical document to which Ms. Marchick's name,
> date, and purported signature were applied in ink, as opposed to a
> photocopy, photograph, or electronic version of the document).  In the
> event Plaintiff purports no longer to possess the original, please
> provide us an explanation, under penalty of perjury, as to when and
> how the original came to be lost or destroyed at some point between
> April 8, 2020 and the present.

*Id.*

Botwin responded on August 16, 2022.  *Id.,* Ex. B.  Botwin disputed that

Plaintiff was required to produce the original Confidentiality Agreement, despite

both he and Lage having agreed to do so months earlier.  *Id.* at 1.  Botwin claimed

that "no lawyer for your clients has ever before in more than two years asked for

the inspection of such a paper-original of the Confidentiality Agreement," despite

Defendants' counsel having repeatedly done precisely that.  *Id.*  Botwin stated that

this was "[t]he very first time the Defendants have made the bold claim of ***forgery***

with respect to the Confidentiality Agreement," despite Defendants having raised

that concern two years earlier.  *Id*. at 2.  Finally, Botwin disputed that the

handwriting on the Confidentiality Agreement was Plaintiff's.  *Id.*  Botwin

formally entered his appearance the very next day.  Dkt. No. 184.

Defendants' counsel continued to insist upon an inspection of the original

Confidentiality Agreement and threatened to elevate the dispute to the Magistrate

Judge unless Plaintiff made the original available for examination by their forensic

1  document examiner.  Klieger Decl. ¶ 4.  Plaintiff's attorneys relented, and with that

2  examination looming, finally came clean in a September 17, 2022 letter to

3  Defendants' counsel:

> Our examination of the facts reveals that Plaintiff printed the name of
> the signor below the signature line when he retrieved the document
> from his files.  Our understanding is that he did so to make things easy
> and identify one of the many signors of all confidentiality agreements.
> To be sure, as to the signor of the document, it is, at this point,
> unknown to us who signed the document in 2003.

8  Shimamoto Decl., Ex. L.  In other words, *Plaintiff* had added Marchick's name,

9  and the actual signor of the agreement was anyone's guess.  (Through their own

10 independent investigation, Defendants had correctly identified the signature as that

11 of Pearl Young, who had modeled for Plaintiff as a teenager.  *Id.* ¶ 17.)

12     Defendants moved for terminating sanctions based on Plaintiff's falsification

13 of the Confidentiality Agreement and his attorneys' months of gamesmanship to

14 prevent Defendants from discovering the truth.  *See* Dkt. No. 213.  The Court

15 denied the motion because "Defendants do not offer an expert report or declaration

16 from their expert regarding the authenticity of the Confidentiality Agreement, and

17 fact discovery and expert discovery have not closed."  Dkt. No. 243 at 2.

18     Plaintiff's attorneys took the Court's ruling as carte blanche to continue

19 prosecuting trade secret and fraud claims that *they knew* were premised on a

20 falsified Confidentiality Agreement.  Despite actual knowledge regarding

21 Plaintiff's falsification of evidence, Plaintiff's attorneys refused to withdraw the

22 trade secret and fraud claims.  Indeed, they did not even amend the complaint to

23 remove the Confidentiality Agreement and related allegations.  They treated the

24 Court's denial of the terminating sanctions motion as an invitation to continue

25 litigating claims that they knew had no basis in fact, and thereby forced Defendants

26 to incur hundreds of thousands of dollars in excess attorneys' fees to litigate the

27 trade secret and fraud claims through summary judgment.  That is precisely the

28 kind of abuse that section 1927 sanctions are intended to redress.

DEFENDANTS' MOTION FOR SANCTIONS

### 2. Plaintiff's Attorneys Unreasonably And Vexatiously Multiplied The Proceedings By Maintaining Trade Secret Claims Based On Publicly Available Materials

The falsified Confidentiality Agreement was not the only problem with Plaintiff's trade secret claims. Plaintiff's counsel also unreasonably and vexatiously multiplied the proceedings by maintaining those claims based on materials Plaintiff had made *publicly available* and that therefore could not possibly qualify for trade secret protection under federal or state law.

In Defendants' motion to dismiss the FAC, Defendants argued that Plaintiff's trade secret claims failed because Plaintiff had made his claimed trade secrets public through Copyright Office deposits or by posting them to his website. Dkt. No. 68 at 21-22. In opposing that motion, Lage did not deny that Plaintiff had posted much of his purported trade secret materials to his website, but he insisted that "Woodall prominently posted a confidentiality agreement to restrict use of information posted on his websites" and the materials therefore qualified for trade secret protection. Dkt. No. 72 at 19. The Court flatly rejected that argument and dismissed the trade secret claims. Dkt. No. 91 at 19-20. However, the Court granted Plaintiff leave to amend to identify any purported trade secrets that he had *not* posted to his website or deposited with the Copyright Office. *Id.* at 20.

Plaintiff reasserted the trade secret claims in the SAC—which, like the FAC, was signed by Lage—alleging that neither his "Bucky" trailer nor a 2011 script for the project had been posted to his website or deposited with the Copyright Office. Dkt. No. 94 ¶ 65. The Court expressly relied on those allegations in denying Defendants' motion to dismiss the trade secret claims. Dkt. No. 101 at 7-9.

Defendants thereafter engaged in substantial investigation and discovery regarding the steps that Plaintiff had taken to protect the secrecy of his purported trade secrets. Shimamoto Decl. ¶ 18; Klieger Decl. ¶ 5. Yet, by the time Defendants filed their summary judgment motion in May 2024, Plaintiff no longer

DEFENDANTS' MOTION FOR SANCTIONS

1  denied that he had posted the trailer to his website (as well as on his public

2  YouTube page).  In fact, Lage sought to introduce the trailer into evidence at trial

3  by way of the webpage from which the trailer could be publicly viewed at least as

4  far back as 2009.  *See* Klieger Decl., Ex. C (Pl.'s Proposed Trial Ex. 62); *see also*

5  Trial Ex. 1379 at 4:28-4:44 (encouraging viewers to "visit the website

6  buckcreations.com" to view "the finished trailer"); Klieger Decl., Ex. D

7  (BENPRIV0019) (directing prospective counsel to "have a look at my trailer on

8  You-Tube").  Lage argued, however, that the availability of the trailer on

9  Plaintiff's website was immaterial because a confidentiality agreement had also

10  been posted on the website.  Dkt. No. 432 at 28-29.  That was precisely the same

11  argument the Court had rejected *four years earlier.*  Dkt. No. 91 at 19-20.

12      By the time of Defendants' summary judgment motion, discovery had also

13  shown that nearly two-thirds of the "Bucky" trailer had been broadcast on a local

14  television channel in Hawaii in the late 2000s.  *See* Trial Ex. 1379; Klieger Decl.,

15  Ex. E (Resp. to RFA No. 23).  Lage argued that, notwithstanding that public

16  broadcast, the trailer qualified for trade secret protection because the channel did

17  not reach a large audience.  *See* Dkt. No. 432 at 29.  That argument, like the trade

18  secret claims themselves, was frivolous.  It makes no difference how many people

19  actually watched the trailer on public television in Hawaii; Plaintiff's decision to

20  make the trailer available for public viewing eviscerated any claim of trade secret

21  protection.  *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).

22      Finally, Lage's assertion in the SAC that Plaintiff's 2011 script had not been

23  deposited with the Copyright Office, while literally true, was highly misleading.

24  Discovery revealed that the 2011 script was virtually identical in all but formatting

25  to the script that Plaintiff *had* deposited with the Copyright Office, meaning any

26  viable claim of trade secret protection was lost.  *See* Klieger Decl., Ex. F.

27      Had Lage not falsely alleged in the SAC that the trailer and 2011 script had

28  been maintained in secret, the trade secret claims would not have proceeded to

discovery.  But because of those false allegations, Defendants had to engage in more than two years of affirmative discovery directed almost entirely at the bogus trade secret claims, again warranting sanctions under section 1927.  Shimamoto Decl. ¶ 18; Klieger Decl. ¶ 5.

3. **Plaintiff's Attorneys Unreasonably And Vexatiously Multiplied The Proceedings By Maintaining Claims That Were Plainly Barred By The Statute Of Limitations**

Plaintiff's attorneys also unreasonably and vexatiously multiplied the proceedings by maintaining claims that were plainly barred by the statute of limitations.  The statute of limitations on each of Plaintiff's trade secret, fraud, and copyright infringement claims was three years.  18 U.S.C. § 1836(d); Cal. Civ. Code §§ 338(d), 3426.6; 17 U.S.C. § 507(b).  The FAC and SAC, both signed by Lage, alleged that Plaintiff "could not and did not see the *Moana* film until its release on DVD at the place of his then current foreign residence in or about late June of 2017."  Dkt. No. 18 ¶ 36; Dkt. No. 94 ¶ 36.  That was untrue.  As Plaintiff eventually admitted, he saw *Moana* in the theater in December 2016 and immediately suspected that it had been copied from his "Bucky" project.  Klieger Decl., Ex. G (Pl.'s Depo. Tr. 243:14-247:25); *see also* Trial Tr. 560:24-561:2 (Woodall).  Because Plaintiff did not file suit until more than three years later, his trade secret and fraud claims were time-barred in their entirety, and his copyright claim was time-barred as to all but one of the 15 Defendants.

Even affording Plaintiff's attorneys the benefit of the doubt, and assuming they had been lied to by their own client about when he first saw *Moana*, the truth nonetheless became known to them no later than Plaintiff's deposition in October 2022.  Suarez defended that deposition, and the transcript of the deposition was obviously available to his co-counsel.  Plaintiff admitted not only that he had seen *Moana* in the theater and suspected copying in December 2016, but also that he had acquired the movie on DVD and performed a detailed side-by-side comparison

1   to his "Bucky" project by no later than March 15, 2017.  Klieger Decl., Ex. G

2   (Pl.'s Depo. Tr. 243:14-247:25, 254:9-12).  At Suarez's specific request,

3   Defendants' counsel marked as an exhibit the metadata accompanying one of the

4   screenshots from Plaintiff's document production proving that Plaintiff had

5   watched *Moana* on DVD, in English, more than three years before he filed suit

6   *See id.*, Ex. G (Pl.'s Depo. Tr. 249:22-251:1, 252:7-15); *id.*, Ex. H.  This is not a

7   nuanced area of law; Plaintiff's claims were plainly time-barred.

8       Plaintiff's attorneys should have dismissed the trade secret and fraud claims

9   in their entirety, and the copyright claim as to 14 of the 15 Defendants,

10  immediately after that deposition.  *See Davis v. Bowron*, 30 Fed. Appx. 373, 376

11  (6th Cir. 2002); *Williams v. White Castle Sys., Inc.*, 526 F. Supp. 2d 830, 847

12  (M.D. Tenn. 2007).  Plaintiff's attorneys "had an ethical duty to refuse to pursue a

13  baseless claim."  *In re Luxury Imports of Sacrament, Inc.*, 2012 WL 1608348, at *1

14  (E.D. Cal. May 8, 2012); *see Van Berkel v. Fox Farm & Road Machinery*, 581 F.

15  Supp. 1248, 1251 (D. Minn. 1984) (upon learning his client's claims were time-

16  barred, plaintiff's counsel "had a professional duty to dismiss a baseless law suit,

17  even over the objection of his client, and to do it promptly"); *accord Swanson v.

18  EMC Mortg. Corp.*, 2010 WL 1173089, at *6 (E.D. Cal. Mar. 23, 2010).  Had

19  Plaintiff refused to dismiss the claims, it would have been incumbent upon

20  Plaintiff's attorneys to withdraw.  Plaintiff's attorneys did neither, and instead

21  forced Defendants to incur hundreds of thousands of dollars in attorneys' fees in

22  connection with additional written discovery, depositions, and motion practice

23  directly in connection with those claims.  Defendants are entitled to recover those

24  fees, and the other excess fees discussed above, under section 1927.

25  **B.    The Excess Fees Incurred As A Direct Result Of Plaintiff's**

26  **Attorneys' Sanctionable Misconduct**

27      Defendants have taken an exceptionally conservative approach to calculating

28  the excess fees they incurred as a direct result of the above misconduct.

***Motion to dismiss the FAC and accompanying Rule 11 motion***. Defendants' motion to dismiss the FAC was directed at all of Plaintiff's causes of action, including those for copyright infringement, trade secret misappropriation, fraud, and tortious interference. *See* Dkt. No. 68. Defendants are not claiming as excess fees any of the fees incurred in connection with researching and drafting the portions of the motion and reply directed at the copyright claim. Rather, they seek to recover as excess fees only those fees incurred specifically in connection with researching and drafting the portions of the motion and reply directed at the trade secret, fraud, and tortious interference claims, and one-half of the fees that did not relate to specific claims (*e.g.*, drafting the statement of facts). Those fees would not have been incurred but for Lage:

- failing to timely investigate Defendants' assertion that the Confidentiality Agreement upon which those claims was based had been falsified, and to voluntarily dismiss the claims based on that investigation; and

- asserting trade secret claims based on materials that Plaintiff had made publicly available on his website or deposited with the Copyright Office.

Defendants are also seeking to recover the fees they incurred in connection with the Rule 11 motion they filed alongside their motion to dismiss the FAC, which was directed entirely at the trade secret claims. *See* Dkt. Nos. 71, 78.

***Motion to dismiss the SAC***. Defendants' motion to dismiss the SAC was directed *exclusively* at Plaintiff's trade secret and fraud claims, and Defendants therefore seek to recover all of the fees incurred in connection with that motion as excess fees. Those fees would not have been incurred but for Lage:

- failing to timely investigate Defendants' assertion that the Confidentiality Agreement upon which those claims was based had been falsified, and to voluntarily dismiss the claims based on that investigation; and

- asserting trade secret claims based on a trailer that had been posted to Plaintiff's website, and a script that was virtually identical to one

15

deposited with the Copyright Office, and therefore did not qualify for
trade secret protection based on the Court's earlier ruling on Defendants'
motion to dismiss the FAC.  *See* Dkt. No. 91 at 20 (posting of
confidentiality agreement on website "does not demonstrate Plaintiff kept
information secret that was publicly available on his website"); *id.*
(Copyright Office deposit "cannot be a trade secret").

*Discovery and discovery motions*.  Defendants are not claiming as excess
fees or costs *any* of the fees or costs they incurred in connection with defensive
discovery, whether in the form of written discovery directed to Defendants,
depositions of Defendants or of witnesses associated with Defendants, or discovery
motions filed by Plaintiff.  Defendants also are not claiming as excess fees and
costs any fees or costs incurred in connection with expert discovery.  Instead,
Defendants seek to recover only a portion of the fees they incurred in connection
with their *affirmative* fact discovery and related discovery motions.  Although the
vast majority of Defendants' affirmative fact discovery was directed to Plaintiff's
trade secret claims, Defendants conservatively seek to recover only one-half of
those fees as excess fees resulting from Plaintiff's counsels' misconduct.

*Terminating sanctions motion*.  Defendants seek to recover as excess fees
the fees they incurred in connection with their motion for terminating sanctions.
*See* Dkt. No. 213.  Although the Court denied that motion, *every one* of
Defendants' contentions in that motion—that Plaintiff had falsified the
Confidentiality Agreement, that he had publicly disclosed his purported trade
secrets, and that he had misrepresented when he first saw *Moana*—proved true.
Defendants would not have filed that motion had Plaintiff's attorneys adhered to
their duty to dismiss claims that, even if originally filed in good faith, were utterly
lacking in legal and factual support.

*Cross-motions for summary judgment*.  With respect to the parties' cross-
motions for summary judgment, Defendants seek to recover as excess fees only the

1   fees incurred in connection with researching, drafting, preparing to argue, and
2   argue the portions of the summary judgment papers pertaining to the trade secret
3   and fraud claims or the statute of limitations bar to those and the copyright claim.
4   Those fees would not have been incurred but for Plaintiff's maintenance of claims
5   that were frivolous based on when Plaintiff first saw *Moana* and suspected it had
6   been copied from his "Bucky" materials, the falsified Confidentiality Agreement,
7   and materials that Plaintiff had publicly disclosed and therefore plainly did not
8   qualify for trade secret protection.

9   ***Trial preparation and trial***.  Defendants are not seeking to recover any fees
10   or costs that they incurred after the Court's summary judgment ruling, and in
11   connection with trial preparation and trial, as excess fees or costs.

12      **C.    Defendants' Fees Are Reasonable**

13      To calculate reasonable attorneys' fees, courts use the lodestar approach.
14   *See City of Burlington v. Dague*, 505 U.S. 557, 559-60 (1992).  The lodestar is
15   calculated by multiplying the number of hours reasonably expended on the
16   litigation by a reasonable hourly rate.  *See Van Gerwen v. Guaranatee Mut. Life*
17   *Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

18      **1.    The Number Of Hours For Which Defendants Seek Fees Is**
19           **Reasonable**

20      Defendants' counsel billed, in the aggregate, at least 640.85 hours *more* than
21   they would have billed but for the sanctionable misconduct of Plaintiff's attorneys.

22      ***Motions to dismiss and for Rule 11 sanctions***.  Defendants' seek
23   reimbursement for 177.10 hours, totaling $108,285.00 in fees, in connection with
24   researching and briefing Defendants' motion to dismiss the trade secret, fraud, and
25   tortious interference claims from the FAC and the accompanying Rule 11 motion,
26   and their motion to dismiss the trade secret and fraud claims from the SAC.
27   Shimamoto Decl. ¶¶ 20-21, 23-24 & Ex. N; *see* Dkt. Nos. 68-69, 71, 76, 78, 83,
28   95, 97.

***Affirmative fact discovery***.  Defendants seek reimbursement for 223.05 hours, totaling $165,693.05 in fees, in connection with affirmative fact discovery and related discovery motions, including multiple sets of written discovery, review and analysis of Plaintiff's document productions, researching and drafting several related motions to compel (*see* Dkt. Nos. 159, 169, 192, 199, 214, 249, 253), and preparing for and taking Plaintiff's deposition, as well as in connection with third-party document and deposition discovery, including depositions of Benjamin Woodall, Michael Bauman, Katie Spiers, Pearl Young, and Peter Heckmann. Klieger Decl. ¶¶ 13-14, 16 & Ex. I; Shimamoto Decl. ¶¶ 20, 22, 24 & Ex. N.

***Motion for terminating sanctions***.  Defendants seek reimbursement for 62.85 hours, totaling $85,301.80 in fees, in connection with researching, briefing, preparing to argue, and arguing their motion for terminating sanctions.  Klieger Decl. ¶¶ 13-15 & Ex. I; Shimamoto Decl. ¶¶ 20-21, 24 & Ex. N; *see* Dkt. Nos. 213, 223, 229.

***Cross-motions for summary judgment***.  Defendants seek reimbursement for 177.7 hours, totaling $173,535.75 in fees, in connection with researching, briefing, preparing to argue, and arguing the portions of the cross-motions for summary judgment that pertained to the trade secret and fraud claims and statute of limitations issues.  Klieger Decl. ¶¶ 13-15, 17 & Ex. I; Shimamoto Decl. ¶¶ 20-21, 23-24 & Ex. N; *see* Dkt. Nos. 403-418, 420-431, 467-477, 486, 491, 492, 494.[1]

All of these hours were reasonable in view of the tasks performed.

## 2.    Defendants' Requested Hourly Rates Are Reasonable

Defendants' requested rates, ranging from $600 to $1,363 for partners and $360 to $440 for associates, also are reasonable.  To determine whether attorneys'

---

[1] These hours exclude the substantial time billed by Michael D. Roth and Arwen R. Johnson of King & Spalding LLP, who joined Willenken and Hueston Hennigan as counsel-of-record for Defendants in June 2024, after much of the litigation that is the subject of this motion occurred.

rates are reasonable, a court evaluates whether the requested rates align with the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  The court may also take into account the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained. *See Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988).

As an initial matter, Defendants' counsels' rates are presumed reasonable because they are the rates Defendants actually paid. *See Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) ("That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market."); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *20 (C.D. Cal. Mar. 24, 2015) ("[T]he actual rate that [the attorney] can command in the market is itself highly relevant proof of the prevailing community rate.").  Defendants' requested rates are also reasonable given the risks of the case, the qualifications and experience of Defendants' attorneys, and the successful result they obtained.

Willenken has received national recognition as one of the most elite litigation firms in the country, including by Benchmark Litigation, *The American Lawyer*, and *Corporate Counsel*.  Shimamoto Decl. ¶ 26.  Peter Shimamoto has more than 30 years of experience in complex commercial litigation, with an emphasis on entertainment and intellectual property matters. *Id*. & Ex. S. Shimamoto, along with Kenneth Trujillo-Jamison, Michelle Millard, and Sherin Varghese, regularly represent Fortune 500 companies and other clients in high-profile copyright and other intellectual property disputes. *Id*. & Exs. T-V.

Hueston Hennigan has also been recognized as one of the best litigation trial firms in the country, including recognition as U.S. Trial Firm of the Year for each of the past three years by Benchmark Litigation and Law360.  Klieger Decl. ¶ 20.

DEFENDANTS' MOTION FOR SANCTIONS

Robert Klieger has been ranked by Chambers USA in both Media & Entertainment and General Commercial Litigation, has been recognized as a Litigation Star and Entertainment Litigation Attorney of the Year by Benchmark Litigation, and has been recognized in *The Best Lawyers in America* every year since 2020. *Id.* ¶ 21. Klieger regularly represents clients in high-stakes litigation, including frequent copyright and other intellectual property disputes. *Id.* & Ex. M.[2]

Courts in the Ninth Circuit have found rates similar to those charged in this matter to be reasonable in copyright infringement cases. *See, e.g.*, *Lynwood Invs. CY Ltd. v. Konovalov*, 2023 WL 2918754, at *6-7 (N.D. Cal. Apr. 11, 2023) (approving $1,293.75 partner rate), *rev'd in part on other grounds*, 2024 WL 4688895 (9th Cir. Nov. 6, 2024); *Good Job Games Bilism Yazilm ve Pazarlama A.S. v. SayGames LLC*, 2023 WL 3260528, at *8-9 (N.D. Cal. May 4, 2023) (approving $1,025 partner rate). Moreover, the rates charged by Willenken and Hueston Hennigan's attorneys in this matter reflect substantial discounts off their standard rates. Klieger Decl. ¶ 13; Shimamoto Decl. ¶ 19.

For all of these reasons, Defendants' requested rates are reasonable.

### D.    Excess Fees Per Plaintiff's Attorney

Because Lage, Botwin, Christian, Suarez, Melville, and Fox served as attorneys of record for Plaintiff over different time periods, the excess fees attributable to each are not the same and are calculated as set forth below.

### 1.    Gustavo D. Lage And Elad D. Botwin

Lage has been lead counsel for Plaintiff since July 2020. Lage signed and filed the FAC, which attached the falsified Confidentiality Agreement and asserted trade secret, fraud, and tortious interference claims based thereon. Dkt. No. 18.

---

[2] Because Moez Kaba and the other lawyers at Hueston Hennigan joined the case for trial and were not involved in discovery or the cross-motions for summary judgment, none of their time is included in the excess fees that Defendants seek to recover by way of this motion.

1   Defendants' counsel brought the forgery directly to Lage's attention in September

2   2020.  Shimamoto Decl. ¶ 2.  In response, Lage cautioned Defendants "that easily

3   disproven facts or perjurious comments about the veracity of certain documents is

4   likely something they should think carefully about before introducing them into the

5   fray."  *Id.*, Ex. A at 10.  Eight months later, Lage signed and filed the SAC, which

6   attached the same falsified Confidentiality Agreement and reasserted trade secret

7   and fraud claims based thereon.  Dkt. No. 94.

8       Lage and Botwin then engaged in months of gamesmanship in an effort to

9   avoid having to produce the original Confidentiality Agreement.  In December

10  2021, Botwin promised Plaintiff's attorneys would produce the "original

11  Confidentiality Agreement" the moment it was located—a promise that Lage

12  affirmed in Plaintiff's February 2022 responses to Defendants' requests for

13  production.  Shimamoto Decl., Exs. D, G.  When months passed without a

14  production, Defendants propounded requests for Plaintiff to admit that he either

15  did, or did not, possess the original Confidentiality Agreement.  *Id.*, Ex. I.  Lage

16  objected to the requests as "vague and ambiguous with respect to the word

17  'original,'" and Plaintiff refused to respond on that basis.  *Id.*, Ex. J.

18      When Defendants' counsel wrote to Botwin in August 2022 to provide

19  clarity with respect to the term "original," Botwin denied that Defendants had ever

20  requested a copy of the original Confidentiality Agreement, denied that Plaintiff

21  was obligated to produce the original Confidentiality Agreement, denied that

22  Defendants had ever questioned the authenticity of the Confidentiality Agreement,

23  and rejected any challenge to its authenticity.  Klieger Decl., Ex. B.  It was only

24  after Defendants engaged a forensic document examiner and threatened to move to

25  compel an inspection of the original Confidentiality Agreement that Plaintiff's

26  counsel finally came clean, admitted that they possessed the original

27  Confidentiality Agreement, and disclosed that Plaintiff had written Marchick's

28

1  name on and backdated the Confidentiality Agreement by 17 years in preparation

2  for filing this lawsuit.  Klieger Decl. ¶ 4; Shimamoto Decl., Ex. L.

3      Even then, Lage and Botwin failed to amend the SAC to remove the

4  Confidentiality Agreement and allegations related thereto, or to withdraw the trade

5  secret and fraud claims premised on its authenticity.  Indeed, the SAC—including

6  the allegation that Exhibit C thereto is a "true and correct copy" of a

7  Confidentiality Agreement signed by Marchick— remained the operative

8  complaint not only through summary judgment but through trial, with Plaintiff

9  ultimately admitting that the signature on the agreement was not Marchick's only

10  under cross-examination at trial.  *See* Trial Tr. 540:6-10.

11      To "cure" deficiencies in the FAC, Lage also alleged in the SAC that

12  Plaintiff's "Bucky" trailer had never been made public (Dkt. No. 94 ¶ 78), despite

13  the fact that Plaintiff had posted it to his website and allowed it to be broadcast in

14  substantial part on public television in Hawaii.  On summary judgment more than

15  four years later, Lage argued that it did not matter that Plaintiff had posted the

16  trailer to his website because a confidentiality agreement had also been posted to

17  the website—an argument the Court had already specifically rejected four years

18  earlier.  Dkt. No. 91 at 19-20; Dkt. No. 432 at 28-29.  And Lage argued that the

19  trailer's broadcast on public television in Hawaii was immaterial given the low

20  viewership of the channel, ignoring that *any* public broadcast of the trailer was

21  utterly inconsistent with Lage's insistence that Plaintiff had taken reasonable steps

22  to protect its secrecy.  Dkt. No. 432 at 20; Dkt. No. 474 at 13.  Those legal

23  positions were beyond frivolous.

24      Equally inexcusable was Lage and Botwin's failure to dismiss the trade

25  secret and fraud claims as to all Defendants, and the copyright claim as to 14 of the

26  15 Defendants, after Plaintiff *admitted* at his October 2022 deposition that,

27  contrary to the allegations in the SAC, he had seen *Moana* in the theater and

28  suspected copying by December 2016.  *See* Klieger Decl., Ex. G (Pl.'s Depo. Tr.

243:14-247:25).  Even if Lage and Botwin had been unaware of the true facts before then, they were under a continuing duty to dismiss the claims once it became clear that they were time-barred.  *See Trulis*, 107 F.3d at 692; *W. Coast Theater*, 897 F.2d at 1528.  Instead, they forced Defendants to litigate the claims through summary judgment.

Given Lage's central role in all of the sanctionable misconduct, Defendants should be awarded all of their excess fees as against him, in the aggregate amount of $532,815.60.  *See* Klieger Decl. ¶ 19 & Ex. I; Shimamoto Decl. ¶ 25 & Ex. N. Because Botwin did not enter his appearance until August 17, 2022, Defendants seek excess fees against Botwin in a lesser amount of $376,969,60.  *See* Klieger Decl. ¶ 19 & Ex. J; Shimamoto Decl. ¶ 25 & Ex. P.  Lage and Botwin's responsibility for those excess fees should be joint and several with Christian, Suarez, Melville, and Fox to the extent set forth below.

### 2.    James Wesley Christian

Christian has been counsel of record for Plaintiff from November 10, 2021 to the present.  He has been on all of the relevant correspondence and pleadings from then forward.  Christian argued on behalf of Plaintiff at the hearing on Defendants' motion for terminating sanctions, and he was therefore intimately familiar with Defendants' specific contentions regarding the falsified Confidentiality Agreement, the fact that Plaintiff's purported trade secrets had been publicly available, and the falsity of the allegation in the SAC that Plaintiff had first seen *Moana* within three years of filing suit.  As counsel of record, Christian, like Lage and Botwin, was duty-bound to dismiss the trade secret, fraud, and, as to all but one of the Defendants, copyright claims once it became clear that they were neither factually nor legally viable.  Christian should therefore be jointly and severally liable with Lage for the excess fees incurred after he joined as counsel of record in November 2021, in the aggregate amount of $421,268.60.  *See* Klieger Decl. ¶ 19 & Ex. I; Shimamoto Decl. ¶ 25 & Ex. O.

DEFENDANTS' MOTION FOR SANCTIONS

### 3.    Luis E. Suarez And Patricia Melville Suarez

Suarez and Melville were counsel of record for Plaintiff from August 4, 2022 to July 12, 2023.  To his credit, it was Suarez who first admitted in September 2022, shortly after joining the case, that Plaintiff had handwritten Marchick's name on the Confidentiality Agreement, and that Plaintiff's counsel had no idea whose signature actually appeared on the agreement.  Shimamoto Decl.., Ex. L.  But neither Suarez nor Melville took any corrective action based on that admission, whether to dismiss the affected claims or even just amend the SAC to remove the falsified Confidentiality Agreement and related allegations.

Moreover, Suarez defended Plaintiff's October 2022 deposition at which Plaintiff admitted that the allegations in the SAC concerning when he had first seen *Moana* were false, and that he had actually seen the movie and suspected copying more than three years before he filed suit.  *See* Klieger Decl., Ex. G (Pl.'s Depo Tr. at 243:14-247:25, 254:9-12).  At that point, Suarez and Melville knew that Plaintiff's trade secret and fraud claims were time-barred in their entirety, and that the copyright claim was time-barred in substantial part.  Yet, Suarez and Melville did nothing over the remaining nine months of their engagement to withdraw those time-barred claims.  They, like Lage and Christian, thereby violated their continuing duties as counsel of record and should be jointly and severally liable for the excess fees incurred through their firing in July 2023, in the aggregate amount of $190,252.70.  *See* Klieger Decl. ¶ 19 & Ex. K; Shimamoto Decl. ¶ 25 & Ex. Q.[3]

### 4.    Gerard P. Fox

Fox has been counsel of record for Plaintiff since June 12, 2023, and was on all relevant correspondence and pleadings through December 2024.  By the time

---

[3] Following their firing, Suarez and Melville's firm filed a notice of charging lien against any recovery Plaintiff may obtain in this action, including on his frivolous and time-barred trade secret and fraud claims.  Dkt. No. 268.

DEFENDANTS' MOTION FOR SANCTIONS

Fox entered his appearance, Plaintiff had already admitted that he had seen *Moana* and suspected copying in December 2016, and the authenticity of the Confidentiality Agreement had been thoroughly debunked.  That the true facts, and the resulting frivolousness of the trade secret, fraud, and, as to all but one Defendant, copyright claims, were known to Fox from the outset of his engagement means he either should never have appeared as counsel of record or, once having appeared, should have promptly dismissed those claims.  *See Habib v. Matson Navigation Co., Inc.*, 2014 WL 4243703, at *6 (W.D. Wash. Aug. 26, 2014) ("Once current counsel entered his notice of appearance in this matter, he subjected himself to the Rules and standards of this Court.  At that point, Plaintiff's counsel had an affirmative duty to evaluate the claims being made and a continuing duty to dismiss any claims that were no longer viable.").  Fox should therefore be jointly and severally liable with Lage, Christian, and Botwin for the excess fees incurred after June 12, 2023, in the aggregate amount of $198,546.05.  *See* Klieger Decl. ¶ 19 & Ex. L; Shimamoto Decl. ¶ 25 & Ex. R.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully respect that, based on the egregious misconduct described above, the Court grant their motion and award sanctions under section 1927.

Dated:  April 22, 2025

HUESTON HENNIGAN LLP
KING & SPALDING LLP
WILLENKEN LLP

By:   */s/ Robert N. Klieger*
Robert N. Klieger
Attorneys for Defendants

DEFENDANTS' MOTION FOR SANCTIONS

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that, on this 22nd day of April 2025, I electronically filed

4   the foregoing with the Clerk of the Court using the CM/ECF system, which will

5   send notification of such filing to the Electronic Service List for this case.  I also

6   served the foregoing and all supporting papers on the following attorneys, who I

7   understand are no longer on the Electronic Service List for this case:

8        Luis E. Suarez
         lsuarez@hsmpa.com
9        Patricia Melville Suarez
         pmelville@hsmpa.com
10       HEISE SUAREZ MELVILLE
         2990 Ponce de Leon Boulevard, Suite 300
11       Coral Gables, Florida 33134
12

13

14

15                                    By:  /s/ Robert N. Klieger

16                                         Robert N. Klieger
                                           Attorneys for Defendants
17

18

19

20

21

22

23

24

25

26

27

28