**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

Buck G. Woodall, a.k.a. Buck Woodall, an individual,

Plaintiff,

v.

The Walt Disney Company *et al.*,

Defendants.

Case No.: 2:20-cv-3772-CBM-E

**ORDER RE: DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 18 U.S.C. § 1836, CAL. CIV. CODE § 3426.4, AND 17 U.S.C. § 505**

The matter before the Court is Defendants The Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios, Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-to-Consumer & International, Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc., Buena Vista Books, Inc., Mandeville Films, Inc., Jenny Marchick, and Pamela Ribon's (collectively, "Defendants'") Motion for Attorneys' Fees Pursuant to 18 U.S.C. § 1836, Cal. Civ. Code § 3426.4, and 17 U.S.C. § 505. (Dkt. No. 812.)

## I. BACKGROUND

On April 24, 2020, Plaintiff filed this action asserting two causes of action against The Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios, Mandeville Films, Inc., Jenny Marchick, and Pamela Ribon: (1)

copyright infringement, 17 U.S.C. §§ 101 *et seq*.; and (2) accounting. (Dkt. No. 1.) On July 22, 2020, Plaintiff filed the First Amended Complaint ("FAC") as a matter of right, naming The Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios, Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-to-Consumer & International, Disney Book Group, Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc., Buena Vista Books, Inc., Mandeville Films, Inc., Jenny Marchick, and Pamela Ribon as Defendants, and asserting the following eight causes of action against: (1) copyright infringement, 17 U.S.C. § 501 *et seq*.; (2) violations of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836; (3) violations of the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq*.; (4) fraud; (5) fraudulent concealment; (6) false promises; (7) tortious interference with contractual relations; and (8) accounting. (Dkt. No. 18.) On April 14, 2021, the Court granted in part and denied in part Defendants' Motion to Dismiss the FAC as follows: 1) Defendants' Motion to Dismiss Plaintiff's copyright infringement claim (First Cause of Action) was denied; 2) Defendants' Motion to Dismiss Plaintiff's federal and state trade secrets claim (Second and Third Causes of Action) was granted with leave to amend; 3) Defendants' Motion to Dismiss Plaintiff's fraud, fraudulent concealment and false promise claims (Fourth, Fifth and Sixth Causes of Action) for failure to plead with sufficient particularity under Rule 9(b) was granted with leave to amend; 4) Defendants' Motion to Dismiss Plaintiff's tortious interference with contractual relations claim (Seventh Cause of Action) was granted with leave to amend; and 5) Defendants' Motion to Dismiss Plaintiff's accounting claim (Eighth "Cause of Action") was granted because it is not a cause of action. (Dkt. No. 91.)

On May 28, 2021, Plaintiff filed the Second Amended Complaint ("SAC") asserting five causes of action: (1) copyright infringement, 17 U.S.C. § 501 *et*

*seq*. (2) violations of Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836; (3) violations of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 *et seq*.; (4) fraud; and (5) false promises.[1] (Dkt. No. 94.) On November 1, 2024, the Court granted Defendants' Motion for Summary Judgment on Plaintiff's copyright claim except as to Defendant Buena Vista Home Entertainment ("BVHE"), and Plaintiff's trade secrets misappropriation, fraud, false promises, and conspiracy claims, on the ground those claims were time-barred. (Dkt. No. 558.) On November 1, 2024, the Court denied Defendants' Motion for Summary Judgment on the issues of access, substantial similarity, and independent creation. (*Id.*)[2] Based on the Court's summary judgment rulings, the sole remaining claim for trial was Plaintiff's copyright infringement claim based on distribution of *Moana* by Defendant BVHE after April 24, 2017. (*Id.*) Following a 10-day trial, a jury reached a verdict in favor of Defendant BVHE on Plaintiff's copyright claim upon finding Plaintiff did not prove the creators of *Moana* had access to Plaintiff's copyrighted works. (Dkt. No. 787.) Judgment was entered in favor of Defendants and against Plaintiff, and the action was dismissed with prejudice. (Dkt. No. 807.) Defendants now seek attorneys' fees in connection with Plaintiff's trade secrets and copyright infringement claims.

## II. STATEMENT OF THE LAW

18 U.S.C. § 1836(b)(3)(D) provides:

> In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may-- if a claim of the misappropriation is made in bad faith, which may be established by

[1] The SAC named the following Defendants: Defendants The Walt Disney Company, Walt Disney Pictures, Walt Disney Animation Studios, Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Consumer Products & Interactive Media, Inc., Walt Disney Direct-To-Consumer & International, Disney Book Group, LLC, Disney Interactive Studios, Inc., Disney Store USA, LLC, Disney Shopping, Inc., Buena Vista Home Entertainment, Inc., Buena Vista Books, Inc., Mandeville Films, Inc., Jenny Marchick, Pamela Ribon (collectively, "Defendants").

[2] The Court also granted in part and denied in part Plaintiff's motion for partial summary judgment on certain issues. (Dkt. No. 558.)

> circumstantial evidence, . . . award reasonable attorney's fees to the prevailing party.

Cal. Civ. Code § 3426.4 provides:

> If a claim of misappropriation is made in bad faith, . . . the court may award reasonable attorney's fees and costs to the prevailing party. Recoverable costs hereunder shall include a reasonable sum to cover the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the prevailing party.

17 U.S.C. § 505 provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

## III. DISCUSSION

### A. Trade Secrets Misappropriation Claims

#### (1) Bad Faith

Defendants move for an award of $1,794,051.55 in attorneys' fees incurred in connection with Plaintiff's federal and state trade secret misappropriation claims under the DTSA and CUTSA on the ground the claims were made in bad faith. Federal and California law permit an award of reasonable attorneys' fees to the prevailing party[3] if a trade secret misappropriation claim is made in "bad faith." 18 U.S.C. § 1836(b)(3)(D); Cal. Civ. Code § 3426.4. The term "bad faith" for purposes of attorneys' fees under both federal and California trade secret law requires the "objective speciousness of the plaintiff's claim ... and [the plaintiff's] subjective bad faith in bringing or maintaining the claim." *Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc.*, 268 F. App'x 555, 560 (9th Cir. 2008) (citing *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007); *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249 (Cal. Ct. App. 2002)). "Objective speciousness exists where there is a complete lack of

[3] Plaintiff does not dispute Defendants are the prevailing party on Plaintiff's trade secret misappropriation claims.

evidence supporting plaintiff's claim." *Id.* (quoting *Computer Econ., Inc. v. Gartner Grp., Inc.*, 1999 WL 33178020, at *6 (S.D. Cal. Dec. 14, 1999)); *see also CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1112 (9th Cir. 2007) (citing *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1263-64 (Cal. Ct. App. 2002)); *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1276 (Cal. Ct. App. 2009). "Subjective misconduct [or bad faith] exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." *Rent Info. Tech., Inc.*, 268 F. App'x at 560. Subjective bad faith "may be inferred where the specific shortcomings of the case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments raised." *Gemini Aluminum Corp.*, 95 Cal. App. 4th at 1264; *see also CRST Van Expedited, Inc.*, 479 F.3d at 1112 (citing *Gemini*, 95 Cal. App. 4th at 1263-64)). Moreover, "[s]ubjective bad faith may be inferred by evidence that [the plaintiff] intended to cause unnecessary delay, filed the action to harass [defendants], or harbored an improper motive. *FLIR Sys.*, 174 Cal. App. 4th at 1278.

Here, Plaintiff falsely alleged in his original complaint, the FAC, and SAC that he had not seen *Moana* and suspected copying until late June or July of 2017 (*see* Compl. ¶ 5 (alleging "[a]s Woodall was not resident in the United States at the time of theatrical release, he did not see the 'Moana' film until its release on DVD at the pace of his then current foreign residence, in the June-July 2017 timeframe"); FAC ¶ 36 (alleging "[a]s Woodall was not resident in the United States at the time of its theatrical release, he could not and did not see the Moana film until its release on DVD at the place of his then current foreign residence in or about late June of 2017"); SAC ¶ 36 (alleging "[a]s Woodall was not resident in the United States at the time of its theatrical release, he could not and did not see the Moana film until its release on DVD at the place of his then current foreign residence in or about late June of 2017"). However, Plaintiff's deposition

testimony contradicted Plaintiff's allegations in each of his complaints as to when he saw *Moana*. As noted by the Court in its summary judgment order, Plaintiff testified at his deposition that he watched *Moana* in the theater in December 2016. (Dkt. No. 558 at 4.) The Court thus granted summary judgment in favor of Defendants on Plaintiff's trade secrets claims because "[i]t is undisputed Plaintiff had suspicions that Moana misappropriated his trade secrets no later than in December 2016 when he watched Moana in a theater," "the statute of limitations on Plaintiff's trade secrets misappropriation claims began to run in December 2016 but Plaintiff did not file this lawsuit until April 24, 2020," and therefore Plaintiff's trade secrets misappropriation claims were time-barred under the applicable three-year statute of limitations. (*Id*. at 5.) The Court further found "[e]ven assuming the statute of limitations did not begin to run on Plaintiff's trade secrets claims in December 2016 when Plaintiff watched Moana in the theater," "it is undisputed Plaintiff had further suspicions that Moana used Plaintiff's purported trade secrets in March 2017," and it was undisputed Plaintiff "made screenshot comparisons from the DVD of *Moana* with Plaintiff's trade secrets on March 15, 2017," but Plaintiff did not file this lawsuit until April 24, 2020, and "Plaintiff's trade secret claims are thus untimely." (*Id*.) Thus, Plaintiff falsely alleged he had not seen *Moana* until June or July 2017 despite knowing he had seen *Moana* in theaters in 2016 and on DVD at the latest in March 2017, and continued to litigate his trade secrets claims based on this falsity for over four years until the Court ultimately granted summary judgment in favor of Defendants on Plaintiff's trade secret claims as time-barred. (Dkt. No. 558.) Accordingly, the Court finds Plaintiff's trade secret misappropriation claims were objectively specious and maintained in subjective bad faith because the trade secret misappropriation claims were time-barred and were based on false allegations as to when Plaintiff watched *Moana*. *See Rent Info. Tech*, 268 F. App'x at 560; *Alamar Biosciences, Inc. v. Difco Lab'ys, Inc.*, 1996 WL 784495, at *3 (E.D. Cal.

Feb. 27, 1996); *Gabriel Techs. Corp. v. Qualcomm Inc.*, 2013 WL 410103, at *8 (S.D. Cal. Feb. 1, 2013), *aff'd*, 560 F. App'x 966 (Fed. Cir. 2014); *Gemini Aluminum Corp.*, 95 Cal. App. 4th at 1264; *CRST Van Expedited, Inc.*, 479 F.3d at 1112; *FLIR Sys.*, 174 Cal. App. 4th at 1278.

Objective speciousness and subjective bad faith by Plaintiff is further evidenced by the fact Plaintiff's trade secret claims were based on a confidentiality agreement which Plaintiff falsely alleged was signed by Jenny Marchick and to which Plaintiff alleged Defendants acknowledged they were bound. (*See* FAC ¶¶ 29, 61; SAC ¶¶ 29, 67.) In denying Defendants' motion to dismiss Plaintiff's trade secret claims asserted in the SAC, the Court relied on the purported confidentiality agreement Plaintiff alleged was signed by Jenny Marchick and to which Defendants allegedly acknowledged that they were bound, noting: "Courts have found trade secret claims fail as a matter of law where the trade secret owner fails to obtain a non-disclosure agreement from persons receiving the purported trade secret information." (Dkt. No. 101 at 9.) The Court found although Defendants argued "Plaintiff does not and cannot dispute that he never asked any Disney entity to execute a confidentiality agreement," "here, the SAC alleges Plaintiff "has taken reasonable measures to keep secret including, without limitation, assuring that all persons gaining access to the trade secrets identified in paragraphs 56 through 59 of this Complaint, and the Woodall Trade Secrets, execute confidentiality agreements or otherwise clearly articulate their covenant not to disclose any of the Woodall Trade Secrets to the general public, directly or indirectly," and "Defendants all acknowledged that they were bound by the Confidentiality Agreement executed in favor of Woodall, which forbade any such use of these trade secrets that the Defendants had access to from and after 2003" (*Id.* at 9-10 (citing SAC ¶¶ 66, 67).) The Court thus concluded "[b]ecause the Court must accept as true factual allegations in the complaint for purposes of a motion to dismiss, the Court must accept as true the SAC's allegation that

'Defendants all acknowledged that they were bound by the Confidentiality Agreement'" (SAC ¶ 67), and therefore "Defendants' contention that Plaintiff failed to take reasonable measures to keep the information secret and obtain confidentiality agreements is not a basis for dismissing Plaintiff's trade secret claims at the pleading stage." (Dkt. No. 101 at 10.) The record before the Court demonstrates defense counsel notified Plaintiff's counsel less than two months after Plaintiff filed the FAC regarding Defendants' belief that the confidentiality agreement attached to the FAC which Plaintiff alleged was a true and correct copy signed by Marchick was a forgery (Shimamoto Decl. ¶ 2), but on May 28, 2021 (i.e., more than eight months after Defendants notified Plaintiff's counsel of their belief the confidentiality agreement was a forgery), Plaintiff filed the SAC which again alleged the confidentiality agreement attached thereto was a true and correct copy of the confidentiality agreement signed by Marchick (Dkt. No. 94, SAC ¶ 29, Ex. C). On October 29, 2021, November 17, 2021, and November 30, 2021, defense counsel advised Plaintiff's counsel that Defendants sought to arrange an examination of the original confidentiality agreement by a forensic document expert. (Shimamoto Decl. ¶ 4.) However, Plaintiff attested in sworn responses to written interrogatories served on February 7, 2022 and August 29, 2022 that Marchick had signed the Confidentiality Agreement. (*Id.* ¶ 12 & Ex. I, Response to Interrogatory No. 13; *id.* ¶ 13 & Ex. J, Supp. Response to Interrogatory No. 13.)

On August 15, 2022, Defendants advised Plaintiff that a forensic document examiner retained by Defendants had determined to a high degree of probability based on his review of a copy of the Confidentiality Agreement that none of the handwriting on the agreement was Marchick's, much (if not all) of the handwriting was instead that of Plaintiff, and again requested that the original of the confidentiality agreement attached to the SAC be made available for Defendants' review. (Klieger Decl., Ex. I.) In Plaintiff's counsel's response, Plaintiff's counsel disagreed that Defendants were entitled to review the original

Confidentiality Agreement, stated it was "odd that you are complaining so vociferously even though no lawyer for [Defendants] has ever before in more than two years asked for the inspection of such paper-original of the Confidentiality Agreement" despite Defendants having repeatedly requested it, claimed defense counsel's August 15, 2022 letter was "the very first time the Defendants have made the bold claim of forgery with respect to the Confidentiality Agreement," asked why Defendants wanted to examine the original Confidentiality Agreement in light of Plaintiff's verified interrogatory responses that Marchick had signed that agreement, stated he "disagree[d] with all of [Defendants'] claims about the Confidentiality Agreement" and stated that Plaintiff's counsel looked forward to debunking those claims in court. (*Id.*, Ex. J.) Defendants eventually made arrangements for their forensic document examiner to review the original confidentiality agreement in "late September 2022." (*Id.* ¶ 13.)

However, in a letter dated September 17, 2022 to defense counsel, Plaintiff's counsel wrote:

> Our examination of the facts reveals that Plaintiff printed the name of the signor below the signature line when he retrieved this document from his files. Our understanding is that he did so to make things easy and identify one of the many signors of all confidentiality agreement. To be sure, as to the signor of the document, it is, at this point, unknown to us who signed the document in 2003.

(*Id.*, Ex. K.) Moreover, Plaintiff testified at his deposition on October 5, 2022 as follows:

> Q. Had you ever seen a copy of Exhibit 2 with only the signature, only the signature and the date or some other partial combination of handwriting, prior to 2020?
>
> A. Yes, when I first found the document in my files because my attorneys asked me to look for a confidentiality form or any - - I'm sorry.
>
> MR. SUAREZ: Don't reveal communications between the attorney and you.
>
> THE WITNESS: Okay, so not supposed to reveal anything between me and my attorneys. But when I found the document, it just had the

signature.

BY MR. KLIEGER:

Q. Where did you find the document?

A. In my files where I kept all my Bucky documents.

Q. Was it in that plastic trunk that had come from the storage unit?

A. Yes.

Q. At the time you retrieved this document from the trunk in 2020, did it have any handwriting on it other than the signature itself?

A. No.

. . .

Q. On Exhibit 2, the writing October 22nd, 2003, that is your handwriting, not Ms. Marchick's, correct?

A. Yes, correct.

Q. The handwritten name Jenny Marchick is your handwriting, not Ms. Marchick's, correct?

A. Yes.

. . .

Q. And if we had looked at this exact same document at sometime in 2019, there would have been no date and no name, correct?

A. Yes.

Q. What makes you believe it was October 22nd as opposed to October 21st or October 23rd?

A. I don't know. I just – that's when I thought it was signed. Right around that day and I didn't think it was so important which day it was as long as it was within the month or the year that it was executed or within two, three months, which is what I thought was correct.

(Plaintiff's Depo. 161:1-24, 163:19-164:1, 169:7-24.) Plaintiff further testified at his deposition as follows:

Q. Did you disclose to anybody that the date and name had been written by you in 2020 as opposed to by whoever signed the document at some point in the past?

A. Yes.

Q. Who did you disclose what to?

A. Multiple attorneys I believe.

Q. When?

A. When? I think prior to the time we filed –

. . .

Q. You recognize that this confidentiality agreement was attached to your first amended complaint, correct?

A. Yes.

Q. It was attached to your second amended complaint?

A. I don't remember that but if it was it was.

Q. To the best of your recollection -- well, strike that.

Did you review the amended complaints before they were filed?

A. Yes.

Q. Do you recall whether those complaints indicated that this a true-and-correct copy of a confidentiality agreement except that you, Buck Woodall, had added the date and handwritten name?

A. No, I don't recall that.

Q. Do you recall it simply said it was a true-and-correct copy without disclosing that information?

A. I believe so.

Q. And is that because you believe it's immaterial that you wrote the date and you wrote the name on this agreement?

MR. SUAREZ: Object to the form of the question.

THE WITNESS: I'm not an attorney. That's my attorneys' jobs to make those calls. I have no idea.

(Plaintiff's Depo. 170:1-9, 172:13-173:16.) Plaintiff also testified at trial that he found an unaltered version of a confidentiality agreement in his files in the Spring of 2020 when he was preparing to file this lawsuit (Trial Transcript 701:10-12), that unaltered version of the confidentiality agreement had a signature but no name and no date (*id*. 701:13-17), and Plaintiff handwrote Marchick's name and backdated the agreement which Plaintiff alleged Marchick signed and which Plaintiff attached to the FAC and SAC. (Trial Transcript 699:24-700:22, 700:3-

23.) Plaintiff further testified at trial that Plaintiff did not believe the signature on the confidentiality agreement was Marchick's signature, but instead Pearl Young's signature. (Trial Transcript 707:7-11.) Therefore, Plaintiff's assertion and continued prosecution of trade secret claims based on a confidentiality agreement which Plaintiff falsely alleged was signed by Marchick further demonstrates Plaintiff's trade secrets claims were objectively specious and brought/maintained with subjective bad faith. *See Gemini Aluminum Corp.*, 95 Cal. App. 4th at 1264; *CRST Van Expedited, Inc.*, 479 F.3d at 1112; *FLIR Sys., Inc.*, 174 Cal. App. 4th at 1276.

Furthermore, at the motion to dismiss stage, the Court rejected Plaintiff's contention that the availability of a confidentiality agreement on Plaintiff's website was a basis for showing materials posted on his website were trade secrets, reasoning "the Confidentiality Agreement on the website is not signed, the agreement does not provide that any visitors viewing Plaintiff's website are bound by the agreement, and Plaintiff does not argue nor demonstrate that third parties viewing Plaintiff's website actually executed the Confidentiality Agreement." (Dkt. No. 91 at 19-20 (citing *KEMA, Inc. v. Koperwhats*, 2010 WL 3464708, at *4 (N.D. Cal. Sept. 1, 2010) ("[T]he failure to secure non-disclosure agreements from others in possession of any remaining portions [not deposited with the Copyright Office] is fatal to a trade secret claim").) However, at the summary judgment stage, Plaintiff argued "Defendants are expected to argue that Plaintiff displayed his trade secrets on his website, but the website expressly prompted each visitor to sign a Confidentiality Agreement." (Dkt. No. 432 at 28-29.) Thus, Plaintiff continued to litigate his trade secrets claim through summary judgment based on a theory that the Court had rejected at the motion to dismiss stage—which further demonstrates Plaintiff's subjective bad faith as to his trade secrets claims.[4] *See*

[4] Plaintiff did not dispute at the summary judgment stage that his trade secrets were available on his website. Moreover, during trial Plaintiff sought to introduce the trailer into evidence based on webpage from which the trailer could be

*Rent Info. Tech., Inc.*, 268 F. App'x at 560. Moreover, as the Court noted in its motion to dismiss the FAC Order in April 2021, "[c]ourts have consistently denied the existence of a trade secret where, . . . the claimed trade secret is submitted without redaction for registration with the United States Copyright Office." (*See* Dkt. No. 91 (citing *Manchester v. Sivantos GmbH*, 2019 WL 3531419, at *4 (C.D. Cal. Aug. 2, 2019); *Siegler v. Sorrento Therapeutics, Inc.*, 2019 WL 581719, at *11 (S.D. Cal. Feb. 13, 2019); *Mobile Active Defense, Inc. v. Los Angeles Unified Sch. Dist.*, 2015 WL 12860491, at *5 (C.D. Cal. 2015)).) However, Plaintiff continued to prosecute his trade secrets claims based on a 2011 script which Plaintiff knew contained all the same information and content as a 2014 script Plaintiff had registered with the U.S. Copyright Office, which further demonstrates Plaintiff's subjective bad faith.

Therefore, the Court finds Plaintiff's trade secret misappropriation claims were objectively specious and brought/maintained in bad faith, and therefore an award of reasonable attorneys' fees to Defendants for Plaintiff's trade secrets claims is warranted here. *See* 18 U.S.C. § 1836(b)(3)(D); Cal. Civ. Code § 3426.4.

**(2) Reasonable Fees**

"The Supreme Court has instructed that '[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate,' an approach commonly known as 'lodestar.'" *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (citation omitted). "The hours expended and the rate should be supported by adequate documentation and other evidence." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). "The district court must give some

---

publicly viewed in 2009. (Klieger Decl. Ex. E, Plaintiff's Proposed Trial Ex. 62; *see also* Trial Ex. 1379 at 4:28-4:44 (stating "visit the website buckcreations.com" to view "the finished trailer").)

concise but *clear* explanation of how it came up with the amount," and the court must provide a "comprehensible" explanation for any fee reductions. *Id.* (internal quotations and citations omitted); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 486 (9th Cir. 2015), *cert. denied sub nom. San Diego Unified Sch. Dist. v. T.B.*, 136 S. Ct. 1679 (2016). The party seeking an attorneys' fees award bears the burden of establishing the reasonableness of the hourly rates requested. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

**(a) Hourly Rate**

"Reasonable hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *Hanlon*, 150 F.3d at 1029. "[T]he established standard when determining a reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979.

Defendants seek approval of the following hourly rates for defense counsel from Hueston Hennigan: $1,363 for Moez Kaba (partner), $1,363 for Robert Klieger (partner), $1,075 for Sourabh Mishra (partner), $650 for Deeksha Kohli (associate), and $200 for Laurice Starks (paralegal). Defendants also seek approval of the following hourly rates for defense counsel from Willenken LLP: $594 for Peter Shimamoto (partner), $436 for Kenneth Trujilo-Jamison, $436 for Michelle Millard, and $356 for Sherin Varghese. Based on the evidence and affidavits submitted by defense counsel, the Court finds the hourly rates requested are reasonable based on the prevailing rates in the community for similar work performed by attorneys of comparable skill, experience, and reputation.[5] *See Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006); *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *20 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847

[5] *See* Klieger Decl. ¶¶ 20, 23-24, 26-31, Ex. O-R; Shimamoto Decl. ¶¶ 25-26, Exs. W-Z.

F.3d 657 (9th Cir. 2017); *Camacho*, 523 F.3d at 980; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

**(b) Hours Expended**

Defendants contend approximately one-half of the fees they incurred through the Court's summary judgment ruling "pertained substantially to the misappropriation claims and closely related fraud claims." Defense counsel declares that from the inception of the case through the Court's summary judgment ruling, defense counsel billed 4,225 hours in this case. (Klieger Decl. ¶ 17.) Defense counsel further declares "[a]lthough Plaintiff's claims in this case were overlapped significantly and shared a common factual basis, I estimate that one-half of the fees incurred during this first phase of the case [i.e., through summary judgment] pertained in substantial part to the misappropriation claims *and closely related fraud claims*, and that the one-half of the fees pertained in substantial part to the copyright infringement claim." (*Id.* ¶ 18 (emphasis added).)[6] Therefore, the trade secrets and fraud claims are so "inextricably intertwined" that apportionment is impossible and "an estimated adjustment would be meaningless." *Gracie v. Gracie*, 217 F.3d 1060, 1069-70 (9th Cir. 2000); *see also Padgett v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir. 2013).

As to Plaintiff's contention that there were Plaintiff's lawyers performing duplicative work and attending the same hearing, deposition and meet and confers, "the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort." *McGrath v. Cty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (citing *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n. 9 (9th Cir. 1989)). Furthermore, Plaintiff "bears the burden of providing specific evidence to

[6] Defendants state they did not incur fees in connection with their defense of the fraud claims that were not also incurred in connection with the trade secret claims and thus contend there is no basis for an apportionment and reduction of the requested fees for Plaintiff's trade secrets claims.

challenge the accuracy and reasonableness of the hours charged," which Plaintiff fails to do here. *See id.*[7]

Plaintiff challenges the "more than 20 hours" of time spent by defense counsel Klieger spent preparing for the hearing on the cross-summary judgment motions. However, Plaintiff fails to demonstrate the 27.9 hours spent preparing for and attending the hearing on the cross-summary judgment motions was unreasonable or excessive, particular given the complexity and volume of filings and evidence filed in connection with the summary judgment motions. *See, e.g., Voggenthaler v. Maryland Square LLC*, 2012 WL 5944420, at *5 (D. Nev. Nov. 26, 2012). Plaintiff also challenges hours spent by defense counsel drafting declarations in support of the independent creation defense which Plaintiff contends should have been prepared by the witnesses themselves. (Opp. at 23 (citing Dkt. Nos. 812-43 at 232, 234, 237, 238).) Plaintiff cites to no authority that time spent drafting declarations for witnesses is not compensable. *Cf. Kelly v. Wengler*, 7 F. Supp. 3d 1069, 1078 (D. Idaho 2014), *aff'd*, 822 F.3d 1085 (9th Cir. 2016).

Plaintiff further challenges "overly vague" time entries "such as countless unspecified telephone calls and meetings." However, Plaintiff does not identify specific time entries or specific hours he contends should be deducted as "vague"[8] as required to meet his "burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath*, 67 F.3d at 255 (citing *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984); *Gates v. Gomez*, 60 F.3d 525, 534-35 (9th Cir. 1995)). "The party opposing a fee request must meet that burden with specific objections to specific billing entries"—which Plaintiff fails to

[7] Moreover, "the trial court need not expressly rule on each of the [plaintiff's] objections" to the unreasonableness of the hours worked such as objections based on purported "overstaffing" and "duplication of effort." *McGrath*, 67 F.3d at 255 (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992)).

[8] Instead, Plaintiff references "DE 812-15" which is the entirety of time entries for all defense counsel and staff from Hueston Hennigan.

do here. *Teixeira v. BMW of N. Am., LLC*, 2026 WL 712979, at *5 (C.D. Cal. Feb. 11, 2026) (quoting *Abselet v. All. Lending Grp., Inc.*, 2018 WL 11696646, at *2 (C.D. Cal. Aug. 28, 2018)). Therefore, the Court declines to exclude fees billed by defense counsel as "overly vague."

Plaintiff also argues Defendants seek fees for partners Klieger and Shimamoto for clerical work or other "basic tasks" that ordinarily would be performed by a secretary, paralegal, or associate such as sending emails to the Clerk about hearings and documents at an hourly rate of $1,363, or drafting basic stipulations and proposed orders. Clerical work is not compensable. *See Neil v. Comm'r of Soc. Sec.*, 495 F. App'x 845, 847 (9th Cir. 2012); *Spitz Techs. Corp. v. Nobel Biocare USA LLC*, 2018 WL 6016149, at *3 (C.D. Cal. Aug. 13, 2018), *aff'd*, 773 Fed. App'x 625 (Fed. Cir. 2019); *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *32 (C.D. Cal. Nov. 23, 2013); *Cruz v. Alhambra School Dist.*, 601. F Supp. 2d 1183, 1193 (C.D. Cal. 2009). Drafting stipulations and proposed orders do not constitute non-compensable clerical tasks. However, time billed by defense counsel Klieger and Shimamoto for emailing the clerk about hearings and documents are clerical tasks which are not compensable. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). The Court found four instances of defense counsel Shimamoto billing for emailing the clerk regarding a hearing or documents prior to the Court's summary judgment ruling totaling 0.4 hours, which the Court deducts from the fee award for Plaintiff's trade secrets claims.[9] The Court found two instances of defense counsel Klieger billing for emailing the

---

[9] *See* Dkt. No. 812-43 (3/25/2022 ("Exchange emails with Magistrate Eick's clerk re courtesy copies of motion to compel, form for declaration and exhibits.") 0.10 hours); 9/23/2023 ("Exchange emails with judge's clerk re courtesy copy of Mandeville motion to compel; communicate with A. Morris and assistant re same.") 0.10 hours; 5/13/2024 ("Exchange emails with plaintiff's counsel about format of submissions of evidence for oppositions to summary judgment motions; draft email to court clerk re same; send email to court clerk.") 0.10 hours; and 5/14/2024 ("Multiple emails with court clerk, plaintiff's counsel re stipulation re citations to previously filed evidence on motion for summary judgment.") 0.10 hours).)

clerk regarding a hearing or documents prior to the Court's summary judgment ruling.[10] Because the two time entries by Klieger are block-billed so the Court cannot determine how much of the time billed for the particular time entry related to emailing the clerk regarding a hearing/documents, the Court deducts the full amount for those two block-billed time entries from the fee award (i.e., 11.5 hours on 11/27/23, and 1.3 hours on 5/13/24).

Plaintiff also seeks a reduction for the following fees sought by Defendants re: *Moana 2*:

1. 2/7/24 Klieger, Robert N. 0.7 $954.10 TELEPHONE CALL AND EMAIL CORRESPONDENCE WITH J. CHOW; REVIEW S. EGGEBRECHT CORRESPONDENCE WITH FINANCIAL RECONCILIATION; EMAIL CORRESPONDENCE WITH J. MARCHICK RE MOANA 2; EMAIL CORRESPONDENCE WITH J. ROVIN RE TRANSCRIPT REVIEW (Dkt. No. 812-15 at 41);

2. 2/8/24 Klieger, Robert N. 1.2 $1,635.60 VIDEOCONFERENCE WITH J. CHOW, J. MCGUIRE, AND P. SHIMAMOTO RE MOANA 2; EMAIL CORRESPONDENCE WITH J. ROVIN RE TRANSCRIPT REVIEW; REVIEW NOTICE TAKING CONTEMPT MOTION UNDER SUBMISSION AND EMAIL CORRESPONDENCE RE SAME; EMAIL CORRESPONDENCE WITH M. ALOHALANI BROWN RE DEPOSITION SCHEDULING; EMAIL CORRESPONDENCE WITH P. SHIMAMOTO AND J. CHOW RE INDEPENDENT CREATION PROJECT (*id.*);

3. 2/15/24 Klieger, Robert N. 3.7 $5,043.10 ATTEND MOANA 2 SCREENING AND DISCUSSION WITH PRODUCERS; EMAIL CORRESPONDENCE WITH H. KYLES RE DEPOSITION SCHEDULING; PREPARE FOR T. HUNT DEPOSITION (*id.*);

4. 02/08/2024 PS L110 A106 Meeting with J. McGuire, JYC, RNK re Moana 2 - 0.20 $120.00 (Dkt. No. 812-43 at 226);

---

[10] *See* Dkt. No. 812-15 (11/27/23 Klieger time entry ("Draft opposition to contempt motion and declaration in support of same; email correspondence with E. Botwin re Heckmann deposition; review J. Rovin additions to draft report; review P. Shimamoto revisions to draft report' email correspondence with clerk re hearing date") 11.5 hours), and 5/13/24 Klieger time entry ("REVIEW AND REVISE DRAFT EMAIL TO CLERK RE EVIDENCE IN SUPPORT OF SUMMARY JUDGMENT OPPOSITIONS; TELEPHONE CALL WITH J. CHOW; DRAFT OBJECTIONS TO R. COULTER DEPOSITION NOTICE") 1.3 hours).

5. 02/15/2024 PS L120 A109 Attend screening of Moana 2 and review and analyze same re potential plaintiff claims, and conversation with producers and Disney attorneys after screening - 1.80 $1,080.00 (*id*. at 227); and

6. 02/16/2024 PS L120 A104 Review Bucky materials re time portal to compare to Moana 2 - 0.2 $120.00 (*id*.).[11]

Because *Moana 2* was not basis for Plaintiff's claims in this action, hours by defense counsel identified above re: *Moana 2* are not recoverable in this action. As to the time entries on 2/7/24, 2/8/24 and 2/15/24 by defense counsel Klieger which are block-billed so the Court cannot determine how much of the time billed for the particular time entry related to *Moana 2*, the Court deducts the full amount for those block-billed time entries from the fee award (i.e., 0.7 hours on 2/7/24, 1.2 hours on 2/8/24 and 3.7 hours on 2/15/24).

Plaintiff also contends all of Hueston Hennigan's timesheets are block-billed. The time entries for defense counsel Klieger of Hueston Hennigan through the Court's summary judgment ruling are block-billed because they lump together multiple tasks rather than itemize time expended on each separate task, which make it difficult for the Court to determine how much time was spent on a particular task/activity and whether such time spent was reasonable. (*See* Klieger Decl. Ex. N.) However, the time entries through the Court's summary judgment ruling for other counsel from Hueston Hennigan are not block-billed. (*See id*.) Moreover, Plaintiff does not challenge the fees for time entries from co-defense counsel's law firm Willenken LLP based on block billing. "While block billing creates some impediments to the analysis of attorney fee bills, the Supreme Court has indicated that it is not a basis for refusing to award attorneys' fees." *Trulock v. Hotel Victorville*, 92 F. App'x 433, 434 (9th Cir. 2004) (citing *Hensley v.*

---

[11] Plaintiff also challenges a 1/21/25 time entry by defense counsel Klieger for 13.8 which he contends relates to *Moana 2*. Because that time entry occurred after the Court's summary judgment ruling, it is not included in the Court's fee award for Plaintiff's trade secrets claims.

*Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). Therefore, the Court applies a 20% reduction for block billing only as to time entries for defense counsel Klieger that are block-billed. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Lindsay v. Dadigan*, 2017 WL 11635471, at *4 (C.D. Cal. Aug. 1, 2017). Because defense counsel declares 50% of hours spent through the Court's summary judgment ruling related to Plaintiff's trade secrets claims, the Court applies a 20% reduction from the compensable hours billed by defense counsel Klieger through the Court's summary judgment ruling (i.e., (1670.9 hours minus 11.5 hours on 11/27/23, minus 1.3 hours on 5/13/24, minus 0.7 hours on 2/7/24, minus 1.2 hours on 2/8/24, minus 3.7 hours on 2/15/24) times 50% minus 20% reduction).

* * *

Accordingly, the Court awards attorneys' fees to Defendants for Plaintiff's trade secrets claims in the amount of **$1,555,518.10** based on the following hours and hourly rates:

| TIMEKEEPER | TOTAL HOURS | HOURLY RATE | TOTAL FEES |
|---|---|---|---|
| Klieger, Robert | 661 | $1,363 | $900,943 |
| Moez, Kaba | 7.2 | $1,363 | $9,813.60 |
| Shimamoto, Peter | 712.05 | $594 | $422,957.70 |
| Trujilo-Jamson, Kennth | 44.6 | $436 | $19,445.60 |
| Milllard, Michelle | 251.3 | $436 | $109,566.80 |
| Varghese, Sherin | 260.65 | $356 | $92,791.40 |
| **TOTAL** | **1936.8** | | **$1,555,518.10** |

**B. Copyright Infringement Claim**

17 U.S.C. § 505 of the Copyright Act provides the Court may "award a reasonable attorney's fee to the prevailing party as part of the costs." "Prevailing

plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527, 534 (1994) (hereinafter, *Fogerty I*). "The touchstone of the decision to award attorneys' fees is whether the successful defense, and the circumstances surrounding it, further the Copyright Act's 'essential goals.'" *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653 (9th Cir. 2020) (citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 209 (2016)); *see also Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 816 (9th Cir. 2003) (citing *Fogerty*, 510 U.S. at 527). Courts "may consider (but [are] not limited to) five factors in making an attorneys' fees determination ... (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) [objective] reasonableness of [the] losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence." *Tresona*, 953 F.3d at 653 (citing *Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006)). In addition, the Ninth Circuit has "added as additional considerations: . . . the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017) (citing *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 559-60 (9th Cir. 1996) (hereinafter, *Fogerty II*); *see also Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Graham-Sult v. Clainos*, 719 F. App'x 562, 568 (9th Cir. 2017). These factors "may be considered but are not exclusive and need not all be met." *Perfect 10*, 847 F.3d at 675 (citation omitted).

**(1) Degree of Success**

The Court granted summary judgment on Plaintiff's copyright claim in favor of all defendants except for BVHE for distribution after April 24, 2017 on the ground Plaintiff's copyright claim was time-barred. (Dkt. No. 558.) Because the Court granted summary judgment in favor of all Defendants except for BVHE

on the copyright claim based on the statute of limitations rather than the merits of Plaintiff's copyright infringement claim, this weighs against awarding fees. *See Michael Grecco Prods., Inc. v. BDG Media, Inc.*, 2020 WL 11629239, at *2 (C.D. Cal. Apr. 24, 2020) (quoting *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653 (9th Cir. 2020)); *Wolf v. Travolta*, 2016 WL 1676427, at *4 (C.D. Cal. Apr. 25, 2016). However, at trial, the jury returned a verdict in favor of BVHE on Plaintiff's remaining copyright infringement claim based on BVHE's distribution of *Moana* after April 24, 2017 upon finding Plaintiff failed to prove the creators of *Moana* had access to Plaintiff's works, which weighs in favor of a fee award.

**(2) Frivolousness and Motivation**

"[A] plaintiff's culpability is no longer required" for an award of attorneys' fees to a prevailing defendant under the Copyright Act. *Fogerty II*, 94 F.3d at 558. While not required, the Court may consider bad faith and motivation in determining whether to award attorneys' fees to a prevailing defendant. *Id*. at 555-58; *see also Scott v. Meyer*, 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010); *King v. IM Glob.*, 2017 WL 2620695, at *3 (C.D. Cal. Jan. 25, 2017) (citing *Fogerty II*, 94 F.3d at 558). Here, Plaintiff's false allegations in each of his complaints as to when he saw *Moana* (*see* supra) were relevant to the issue of whether Plaintiff's copyright infringement claim was time-barred. Moreover, the Confidentiality Agreement attached to his complaints which Plaintiff falsely alleged was signed by Marchick and which Plaintiff had handwritten Marchick's name and backdated 17 years, was used by Plaintiff to attempt to establish Defendants' access to Plaintiff's copyrighted works. These false allegations by Plaintiff evidence bad faith or improper motive by Plaintiff with respect to his copyright claim.[12]

[12] Moreover, it appears Plaintiff had no basis for Plaintiff's sworn interrogatory responses signed under penalty of perjury regarding certain Defendants' involvement in the development of *Moana* the motion picture. (*See* Shimamoto

Moreover, on November 1, 2024, the Court issued its summary judgment order which stated based on the Court's summary judgment rulings, the sole remaining claim for trial was Plaintiff's copyright infringement claim for distribution of *Moana* by BVHE after April 24, 2017. (Dkt. No. 558.) Despite the Court's summary judgment ruling on November 1, 2024, Plaintiff repeatedly sought to try his copyright claim against non-BVHE Defendants, and try issues that were not relevant to the copyright claim against BVHE including testimony from Plaintiff's experts regarding billions of dollars in damages based on Disney+ revenue without demonstrating BVHE received any revenue from Disney+. (*See, e.g.*, Dkt. Nos. 665, 677, 687, 712, 734.) Therefore, the record demonstrates Plaintiff appeared to be motivated by a large damages recovery from deep pocketed defendants, which weighs in favor of a fee award. *See Scott v. Meyer*, 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010); *Corwin v. Walt Disney World Co.*, 2008 WL 754697, at *12 (M.D. Fla. Mar. 18, 2008). Moreover, Plaintiff filed numerous motions on the eve of trial which the Court denied, and which increased the fees incurred by Defendants. *See Yue v. Storage Tech. Corp.*, 2008 WL 4185835, at *5 (N.D. Cal. Sept. 5, 2008).[13]

**(3) Objective Reasonableness**

Here, Plaintiff falsely alleged that he had not seen *Moana* until June or July 2017, and thus was able to avoid dismissal at the pleading stage on statute of limitations grounds because the Court was required to accept Plaintiff's allegations as true at the 12(b)(6) stage. However, Plaintiff knew he had seen *Moana* in the theater in 2016 and on DVD no later than March 2017, and thus

---

Decl. Ex. P-U.) Plaintiff testified during his deposition that he did not know whether any of these defendants assisted "in a consultation capacity in final development of characters and story lines associated with Moana" after he had previously signed his sworn interrogatory responses swearing to the contrary.

[13] Defendants cite to no authority in support of their contention that the failure to call at trial witnesses included on a witness list evidences bad faith or improper motive.

knew or should have known that his copyright claim was time-barred. Accordingly, Plaintiff's position regarding the timeliness of his copyright claim was objectively unreasonable, which weighs in favor of awarding attorneys' fees. *See Kirtsaeng*, 579 U.S. at 205, 209; *Michael Grecco Prods.*, 2020 WL 11629239, at *2.[14] On the other hand, the Court denied Defendants' motion for summary judgment on the merits with respect to issues of access, substantial similarity and independent creation based on triable issues of fact (Dkt. No. 558), which weighs against finding Plaintiff's copyright infringement claim as to Defendant BVHE was objectively unreasonable.

**(4) Compensation and Deterrence, the Purposes of the Copyright Act, and Impecunious Plaintiff**

"The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty I*, 510 U.S. at 524. "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible," and "[t]o that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id*. at 527. Here, Defendants fail to demonstrate how prevailing on Plaintiff's copyright claim on technical grounds based on the statute of limitations on summary judgment as to certain defendants promotes the purposes of the Copyright Act such as encouraging the production of original literary, artistic and musical expression for the public or enriching the public through access to creative works. *See Abbas v. Vertical Ent., LLC*, 2022 WL 19236657, at

[14] *See also Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 895 (6th Cir. 2004); *Mahan v. Roc Nation, LLC*, 2015 WL 4388885, at *2 (S.D.N.Y. July 17, 2015), *aff'd*, 2016 WL 730653 (2d Cir. Feb. 24, 2016); *Zamoyski v. Fifty-Six Hope Rd. Music Ltd., Inc.*, 767 F. Supp. 2d 218, 223 (D. Mass. 2011).

*1 (C.D. Cal. Aug. 2, 2022) (citing *Michael Grecco Prod.*, 2020 WL 11629239, at *3); *Epikhin v. Game Insight N. Am.*, 2016 WL 1258690, at *9 (N.D. Cal. Mar. 31, 2016) (citing *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013); *Fogerty I*, 510 U.S. at 524))); *cf. Fogerty II*, 94 F.3d at 560.[15] However, Defendants' successful defense on the issue of access at trial as to Plaintiff's copyright claim against BVHE would have applied to all Defendants had Plaintiff's untimely copyright claim against non-BVHE Defendants survived summary judgment, and "serves the purpose of enriching the general public through access to creative works" and a fee award would compensate Defendants for time spent defending against Plaintiff's copyright claim. *Fogerty I*, 510 U.S. at 527; *Scott v. Meyer*, 2010 WL 2569286, at *4 (C.D. Cal. June 21, 2010) (quoting *Fogerty II*, 94 F.3d at 559); *YS Built, LLC v. Huang*, 2017 WL 1093207, at *4 (W.D. Wash. Mar. 23, 2017), *aff'd sub nom. YS Built LLC v. Ya Hsing Chiang Cind Huang*, 739 Fed. Appx. 414 (9th Cir. 2018).

Plaintiff also provides evidence he is unable to pay the $3,887,330.75 in attorneys' fees sought by Defendants for his copyright claim. Plaintiff declares:

> I would be unable to pay attorney's fees even if the asserted amount were to be significantly reduced to almost zero. I live on my parents' farm in Todos Santos, Mexico, and have virtually no income. I have no assets other than an interest in a farm that is my homestead. Because I am indigent, I could not pay and never did pay a retainer in this case. My attorneys agreed to take this case on a contingency basis . . . . I never even paid a penny in costs/expenses. . . . Though I am a real estate photographer and videographer and also have a palm tree business, these jobs bring me virtually no income, perhaps

[15] As to Defendants' contention that Plaintiff's misconduct with respect to making knowingly false allegations, falsification of evidence, perjured discovery responses, and unnecessary prolonging of this litigation, should be disincentivized and Plaintiff should be deterred from pursuing frivolous lawsuits such as his separate action against Defendants regarding *Moana 2*, in determining whether to award attorneys' fees to a prevailing defendant under the Copyright Act, "the question is whether a successful *defense* of the action furthered the purposes of the Act, not whether a *fee award* would do so." *Mattel*, 353 F.3d at 816. *See Wolf*, 2016 WL 1676427, at *7; *Smith v. Weeknd*, 2020 WL 8174617, at *4 (C.D. Cal. Sept. 4, 2020) (quoting *Muromura v. Rubin Postaer & Assocs.*, 2015 WL 5456583, at *2 (C.D. Cal. Sept. 17, 2015); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014)).

> $1,000 a month, because I live in a very remote village in Mexico, where I take care of my parent's property. I am also taking care of my young daughter, and my wife has stage IV cancer, which poses an additional serious hardship, both financially and emotionally. . . . I cannot afford to move back to the United States, let alone with my young daughter.

(Plaintiff's Decl. ¶¶ 3, 4, 5, 6, 8.) Awarding costs alone may be sufficient to "adequately deter [a] [p]laintiff and others from bringing additional unmeritorious claims," even where the plaintiff's litigation position was objectively unreasonable. *See Rearden LLC v. Walt Disney Co.*, 2025 WL 2172719, at *2 (N.D. Cal. July 31, 2025) (citing *Althouse v. Warner Bros. Ent.*, 2014 WL 12599798, at *3 (C.D. Cal. June 17, 2014). Here, Plaintiff has been taxed costs in the amount of $54,162 (Dkt. No. 830), which the Court finds sufficient to deter Plaintiff and others from bringing additional patently meritless or unreasonable copyright claims. *See Rearden*, 2025 WL 2172719, at *2; *Althouse*, 2014 WL 12599798, at *3.

* * *

Therefore, considering the factors discussed above and the circumstances of this case, the Court declines to award attorneys' fees to Defendants on Plaintiff's copyright infringement claim.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion for Attorneys' Fees as to Plaintiff's federal and state trade secrets claims and awards Defendants **$1,555,518.10** in attorneys' fees for Plaintiff's trade secrets claims pursuant to 18 U.S.C. § 1836 and Cal. Civ. Code § 3426.4. The Court **DENIES** Defendants' Motion for Attorneys' Fees as to Plaintiff's copyright infringement claim pursuant to 17 U.S.C. § 505.

**IT IS SO ORDERED.**

DATED: May 14, 2026.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE